UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK COTTER, et al., <br>     Plaintiffs, <br> v. <br> LYFT, INC., <br>     Defendant. | Case No. 13-cv-04065-VC <br><br> **ORDER** |

## I. INTRODUCTION

Patrick Cotter and Alejandra Maciel, two former drivers for Lyft, Inc., bring this putative nationwide class action against Lyft under California's wage and hour laws. Specifically, the plaintiffs allege that: (i) California law requires Lyft to treat all drivers throughout the nation as employees rather than independent contractors; and (ii) because Lyft classifies and pays these drivers as independent contractors, it is depriving them of California's minimum wage, along with other rights that California law confers upon employees.

The Court issued an order to show cause, questioning whether the plaintiffs, who the complaint alleges are California residents who drove for Lyft in California, may bring claims under California's wage and hour laws on behalf of people who drove for Lyft in other states. The Court now strikes the class allegations. If the plaintiffs wish to file an amended complaint that pleads a proper wage and hour class action, they may do so within 21 days.

## II. DISCUSSION

### A. The California Wage And Hour Laws Asserted In The Complaint Do Not Create A Cause Of Action For People Who Perform Work Entirely In Another State.

The plaintiffs argue that California's connection with the claims brought on behalf of the drivers who work in other states is sufficient to justify application of California wage and hour law to those claims. In particular, the plaintiffs allege that Lyft's principal place of business is in California, that its decision to classify drivers as independent contractors was made in California,

and that its decision to implement the "administrative fee" that the plaintiffs challenge was made in California. They contend that because of these connections, California wage and hour laws can potentially apply to work performed by drivers exclusively in other states, and the only thing that might bar the application of those laws is if they if conflict with the law of the drivers' home states. Therefore, the plaintiffs argue, they may bring claims on behalf of a nationwide class under California law unless Lyft demonstrates that another state has a greater interest in applying its own law. And the plaintiffs contend that because California's laws are more worker-protective than those of other states, Lyft will be unable to show that the other states have a greater interest in applying their own laws.

There are several problems with this argument. As a preliminary matter, the plaintiffs are wrong that California's wage and hour laws are the most worker-protective. Washington and Oregon, for example, both have higher minimum wages than California. *See* United States Dep't of Labor, Minimum Wage Laws in the States (Jan. 1, 2014), *available at* http://www.dol.gov/whd/minwage/america.htm. Therefore, pursuit of claims under California law on behalf of people in those states appears against their interest. Moreover, even if California law were most protective of workers, each state has the right (subject to federal law, of course) to regulate the work performed within its own borders without regard to another state's approach to regulating the employer-employee relationship. But most importantly, by jumping straight to a conflict of laws analysis, the plaintiffs skip an important analytical step. A court conducts a conflict of laws analysis only where the laws of multiple states could conceivably apply to the same claim. Where only one state's law applies, no such analysis is necessary. And as explained below, the California wage and hour laws asserted here simply do not apply to employees who work exclusively in another state. Therefore, regardless of the connection between Lyft and California, Lyft drivers who worked in other states cannot bring claims under California's wage and hour statutes.

State statutes are presumed not to have extraterritorial effect. *See, e.g.*, *North Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1, 4 (1916) ("Ordinarily the statutes of a state have no force beyond its boundaries. . . . Although a state may have the power to legislate concerning the rights

2

1  and obligations of its citizens with regard to transactions occurring beyond its boundaries, the
2  presumption is that it did not intend to give its statutes any extraterritorial effect.").  This
3  presumption is rebutted only where a contrary intent is "clearly expressed or reasonably to be
4  inferred from the language of the act or from its purpose, subject-matter, or history."  *Id.* (internal
5  quotation marks omitted).  In *North Alaska Salmon Co.*, the California Supreme Court considered
6  whether a worker injured outside of California could seek compensation under the state's workers'
7  compensation statute.  174 Cal. 1 (1916).  The statute "define[d] the conditions upon which the
8  right to compensation rest[ed], [and] simply declare[d] that liability for the compensation provided
9  shall exist where the given conditions concur."  *Id.* at 4.  At the time, there was nothing in the law
10 "to indicate that the compensation provisions were intended to apply to injuries occurring in
11 foreign jurisdictions."  *Id.*  The statute contained nothing about "the place of injury," nor did it
12 contain any other "language from which the intention to extend [its] operation . . . beyond the
13 territorial limits of the state [could] be inferred."  *Id.* at 4-5.  Therefore, the Court held, the statute
14 was limited to injuries that occurred within California.  *See id.* at 6 (explaining that because "there
15 is nothing in the act which by express words or clear implication manifests an intent to have it
16 operate extraterritorially, . . . the settled rules of interpretation prohibit our giving it any such
17 effect.").

18 More recently, California's Supreme Court has explained that an employee may be
19 understood to be a "wage earner of California," and therefore subject to the state's wage orders, if
20 the "employee resides in California, receives pay in California, and works exclusively, or
21 principally, in California."  *Tidewater Marine W., Inc. v. Bradshaw*, 14 Cal. 4th 557, 578 (1996).
22 The Court left open the possibility that the state's wage orders—and, presumably, other labor
23 provisions—"may" be enforced outside of California "in limited circumstances, such as when
24 California residents working for a California employer travel temporarily outside the state during
25 the course of the normal workday but return to California at the end of the day."  *Id.*  But there is
26 no hint that the wage and hour laws could apply to people who work exclusively in other states.
27 And in *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191 (2011), the California Supreme Court
28 considered and rejected an argument similar to the one the plaintiffs make here—that because the

3

company was based in California and because decisions about the workers' employment status were made in California, California law should govern the employer-employee relationship. Rather than focusing on the location of the company or its decisionmakers, the Court focused on the location of the work. The Court held that the California Labor Code applies to overtime work "performed in California," *id*. at 1206, but that California law did not, at least on the facts of that case, "apply to overtime work performed outside California for a California-based employer by out-of-state plaintiffs." *Id*. at 1209.[1]

Beyond these cases, the idea that the wage and hour provisions do not apply to people who perform work exclusively in other states finds support in the provisions themselves. For example, the California Labor Code directs the Industrial Welfare Commission "to ascertain the wages paid to all employees *in this state*, to ascertain the hours and conditions of labor and employment in the various occupations, trades, and industries in which employees are employed *in this state*, and to investigate the health, safety, and welfare of those employees." Cal. Lab. Code § 1173 (emphasis added). And "[o]ne of the functions of the Department of Industrial Relations is to foster, promote, and develop the welfare of the *wage earners of California*." *Id.* § 50.5 (emphasis added). Conversely, where the legislature has intended a Labor Code provision to apply to a broader range of people, it has said so explicitly. The current workers' compensation statute, for example, applies to certain accidents that occur "outside of this state" and characterizes this application as

---

[1] Several other courts, including the California Court of Appeal (in an unpublished decision), have come to the same conclusion—that the critical factor is where the work at issue is performed, and California's wage and hour laws do not apply to work performed primarily outside of California. *See, e.g.*, *Campagna v. Language Line Servs., Inc.*, No. 5:08-CV-02488-EJD, 2012 WL 1565229, at *3 (N.D. Cal. May 2, 2012) ("None of the cases read California wage and hour laws to cover out-of-state work performed by nonresidents who primarily work outside California."); *Jimenez v. Servicios Agricolas Mex, Inc.*, 742 F. Supp. 2d 1078, 1099 (D. Ariz. 2010) ("Other courts have similarly concluded that the place where the work takes place is the critical issue."); *Sarviss v. Gen. Dynamics Info. Tech., Inc.*, 663 F. Supp. 2d 883, 900-01 (C.D. Cal. 2009) ("In sum, because [the plaintiff] indisputably spent the vast majority of his employment working outside of California . . . the Court finds that the . . . wage order does not presumptively apply to that employment and that the presumption against extraterritorial application of the wage orders has been left unrebutted." (emphasis omitted)); *Priyanto v. M/S Amsterdam*, No. CV 07-3811 (AHM), 2009 WL 175739, at *8 (C.D. Cal. Jan. 23, 2009) ("Plaintiffs cannot show that they work in the state of California, and consequentially cannot show that . . . the California wage and hour laws can be applied to them without violating the presumption against extraterritoriality."); *Guy v. IASCO*, No. B168339, 2004 WL 1354300, at *5 (Cal. Ct. App. June 17, 2004).

1  "extraterritorial."  Cal. Lab. Code § 3600.5.

2        Here, the plaintiffs propose to represent class members who are residents of other states, who drive for Lyft exclusively in those states, and who apparently never set foot in California in furtherance of their work with the company.  The California wage and hour laws at issue here do not create a cause of action for people who fit this description, even if they work for a California-based company that makes all employment-related decisions in California.

      The opposite conclusion would raise serious constitutional concerns.  "The Commerce Clause . . . precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State."  *Edgar v. MITE Corp.*, 457 U.S. 624, 642-43 (1982); *see also Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989) ("[A] statute that directly controls commerce occurring wholly outside the boundaries of a State exceeds the inherent limits of the enacting State's authority and is invalid.  The critical inquiry is whether the practical effect of the regulation is to control conduct beyond the boundaries of the State.").  The compensation of nonresidents who work exclusively outside the state would seem to constitute "commerce that takes place wholly outside of [California's] borders."  Whether California may constitutionally regulate this compensation is therefore, at best, a difficult question.  *See Sarviss*, 663 F. Supp. 2d at 901 ("The Court's interpretation [that California wage and hour law does not apply to employees who principally worked outside of the state] avoids the potential dormant commerce clause issues that may arise from the application of California wage and hour law to a job that was performed almost entirely outside of California with team members from various states."); *Campbell*, 42 Cal. App. 4th at 1859 (holding that "applying [California's] employment-discrimination regime to nonresidents employed outside the state," even those employed by a California employer "would raise difficult issues of constitutional law"); *Mitchell v. Abercrombie & Fitch*, No. C2-04-306, 2005 WL 1159412, at *4 (S.D. Ohio May 17, 2005) (explaining that the application of California's wage and hour laws "across the country, despite differing wage laws throughout the other states[,] . . . . creates the type of burden on interstate

commerce that the Commerce Clause prohibits").[2]  Although the wage and hour laws themselves are clear that they do not apply to work performed exclusively outside the state, these constitutional concerns cement that conclusion.

### B. The Choice Of Law Provision In The Contract Between Lyft And Its Drivers Does Not Create A Cause Of Action Under California Law.

The plaintiffs argue that even if California does not directly provide a statutory cause of action for drivers outside the state, these drivers may bring claims under the state's Labor Code because the contract between Lyft and its drivers contains a California choice of law provision. That provision states: "This agreement shall be governed by the laws of the State of California without regard to choice-of-law principles."

This argument conflates statutory claims that exist independent of the contract with claims that arise from the agreement itself.  California's labor laws "are part of a broad regulatory policy defining the obligations" of employers "*without regard to* the substance of [their] contractual obligations."  *Narayan v. EGL, Inc.*, 616 F.3d 895, 897 (9th Cir. 2010) (emphasis added); *see also id.* ("[S]tatutes enacted to confer special benefits on workers are designed to defeat rather than implement contractual arrangements." (internal quotation marks omitted)).  Although the agreement "will likely be used as evidence" to support their statutory claims, their "claims do not arise out of the contract, involve the interpretation of any contract terms, or otherwise require there

---

[2] The analysis of class claims brought under the Labor Code differs from the analysis that applies to putative nationwide class actions brought under California statutes that *do* provide a cause of action for non-California plaintiffs, such as the state's consumer protection laws.  Where, for example, a product is allegedly mislabeled in California but purchased in another state, there may be a conflict of laws issue—California provides a cause of action for the mislabeling, regardless of where the product is purchased, and other states may provide a cause of action for products purchased in the state, regardless of where they were labeled.  But even if another state is ultimately found to have a greater interest in applying its law to the claim, there is no question that California law provides a cause of action.  Therefore, there are at least some circumstances under which a plaintiff could pursue a class action under California consumer protection law, even where the putative class includes non-California purchasers.  For instance, a choice of law analysis could conclude that there is no material difference between California consumer protection law and the law of another state in which a product was purchased, in which case there would be nothing wrong with applying California law to the claims of the purchasers in that state.  *See Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 590 (9th Cir. 2012).  Here, however, there is no circumstance in which drivers who worked exclusively outside of California can bring claims under the California wage and hour laws asserted in this case, because California simply does not provide a cause of action for them.  Therefore, the class claims must be stricken at the outset.

to be a contract" in the first place. *Narayan*, 616 F.3d at 899; *see Elijahjuan v. Superior Court*, 210 Cal. App. 4th 15, 21 (2012) (holding that a lawsuit "to enforce rights arising under the Labor Code benefitting employees but not independent contractors" did not "concern the application or interpretation of the" parties' employment agreements because the "petitioners' rights under the Labor Code are distinct from their contractual rights under the [a]greements"). *See also Narayan*, 616 F.3d at 899; *Quinonez v. Empire Today, LLC*, No. 10-cv-02049 (WHA), 2010 U.S. Dist. LEXIS 117393, at *6-7 (N.D. Cal. Nov. 4, 2010); *Ronlake v. US-Reports, Inc.*, No. 11-cv-2009 (LJO) (MJS), 2012 U.S. Dist. LEXIS 14588, at *11 (E.D. Cal. Feb. 6, 2012).[3] The choice of law provision governing the agreement is therefore inapplicable to the plaintiffs' wage and hour claims.

Even if the choice of law provision were intended to confer upon out-of-state drivers a cause of action for violation of California's wage and hour laws, it could not do so. An employee cannot create by contract a cause of action that California law does not provide. "When a law contains geographical limitations on its application, . . . courts will not apply it to parties falling outside those limitations, even if the parties stipulate that the law should apply." *Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1223 (9th Cir. 2003); *see also Risinger v. SOC LLC*, 936 F. Supp. 2d 1235, 1251 (D. Nev. 2013) ("If the law does not vest a right onto a party in a particular situation (as when it refuses to be applied extraterritorially), then the party cannot be heard to complain of its choice to be bound by that law."); *Wright v. Adventures Rolling Cross Country, Inc.*, No. 12-cv-0982 (EMC), 2012 U.S. Dist. LEXIS 104378, at *13 (N.D. Cal. May 3, 2012) ("[T]he California Labor Code provisions at issue implicitly contain geographical limitations and . . . when a law contains geographical limitations on its application, courts will not apply it to parties falling outside those limitations, even if the parties stipulate that the law should apply." (internal quotation marks and alteration omitted)); *Hadfield v. A.W. Chesterton Co.*, No. 20084382, 2009 WL 3085921, at *3 (Mass. Super. Sept. 15, 2009) ("[T]he choice of law provision does not affect applicability of the Wage Act."); *Sawyer v. Mkt. Am., Inc.*, 190 N.C. App. 791, 795

---

[3] *But see Galen v. Redfin Corp.*, No. A138642, 2014 WL 3564056, at *5 (Cal. Ct. App. July 21, 2014) (declining to follow *Elijahjuan*).

1  (N.C. Ct. App. 2008) ("[T]he choice of law provision in the parties' contract, although it requires
2  us to apply North Carolina law, does not change the limits or requirements of the North Carolina
3  statutes thus applied."); *Vendetti v. Compass Envtl., Inc.*, 2006 U.S. Dist. LEXIS 77609, at *7
4  (N.D. Ill. Oct. 25, 2006) ("Assuming . . . that it is proper to apply Illinois law, the Wage Act is
5  nonetheless inapplicable here, because we cannot interpret it to extend to employees who have not
6  performed work while physically present within the state of Illinois."). California wage and hour
7  law contains such a limitation: It does not apply extraterritorially. Parties cannot, by contract,
8  extend its reach.

9  The Ninth Circuit's decision in *Gravquick* is not to the contrary. In that case, the parties
10 entered into a distribution contract that was to "be governed and construed under the laws of the
11 State of California." *Gravquick*, 323 F.3d at 1222. When the defendant—a California
12 manufacturer—refused to renew the agreement, the plaintiff—a Danish distributor—sued, alleging
13 that the refusal violated the California Equipment Dealer's Act. *Id.* at 1221. Although the parties
14 agreed that their distribution agreement fell "within the literal terms" of the Act, they disagreed
15 about whether the statute "contains unstated geographical limitations that," despite the choice of
16 law provision, would "prevent its application" to non-California distributors. *See id.* at 1222. The
17 Ninth Circuit held that it did not. *Id.* Therefore, the Court reasoned, the California choice of law
18 provision could be applied to govern the plaintiff's claims. *See id.* at 1222-23.

19 Thus, as with their argument that the mere connection between Lyft and California allows
20 the application of California law to work performed elsewhere, the plaintiffs skip a preliminary
21 analytical step in arguing that the choice of law provision should apply here. When companies
22 from different states enter into a distribution agreement where goods are transported between
23 states, they may, to avoid future confusion, specify which state's law applies to the transaction,
24 since both laws could potentially apply. *See Gravquick*, 323 F.3d at 1225. And in this case, it
25 made sense for the parties to identify which state's law applies to interpretation of the contract
26 itself, because the parties who entered into that contract are from different states (Lyft being from
27 California and the driver being from elsewhere), meaning that the contract law of either state could
28 apply. But with respect to the employer-employee relationship relating to work performed

exclusively in one state, only the law of that state can apply, which means a choice of law provision has no application in this context.

This is not to say the drivers could never have entered into a contract with Lyft that would have imposed substantive obligations similar to the ones California imposes for work performed inside its borders.  For example, there would presumably be nothing wrong with a contractual provision that stated, "Lyft agrees to pay its drivers an amount equal to California's minimum wage" (at least where the relevant drivers work in a jurisdiction with a lower minimum wage than California's).  Lyft would then have a contractual obligation to pay its drivers that amount.  But it would be a contractual obligation, not a statutory one, and failure to pay the prescribed amount would give rise to a breach of contract claim.  In this case the parties did not adopt contractual provisions borrowing California's substantive rules regarding wages and the employer-employee relationship.  Instead, even if the plaintiffs were correct about the intended meaning of the choice of law provision, the most that can be said is that the parties attempted to give the drivers the ability to sue Lyft under California wage and hour law.  But because California's wage and hour provisions do not create a cause of action for work performed exclusively outside the state, and because parties cannot create a cause of action under the wage and hour statutes where none exists, the plaintiffs cannot seek to enforce those provisions on behalf of a nationwide class.

## III. CONCLUSION

The class claims are stricken with leave to amend.  In the event the plaintiffs choose to amend their complaint, they must do so within 21 days of this order.  If necessary, the Court will address any jurisdictional questions that arise from the amended complaint after it is filed.

**IT IS SO ORDERED.**

Dated: August 7, 2014

_____
VINCE CHHABRIA
United States District Judge