THOMAS M. MCINERNEY, State Bar No. 162055
tmm@ogletreedeakins.com
CHRISTOPHER M. AHEARN, State Bar No. 239089
chris.ahearn@ogletreedeakins.com
ALEX SANTANA, State Bar No. 252934
alex.santana@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Steuart Tower, Suite 1300
One Market Plaza
San Francisco, CA  94105
Telephone:    415.442.4810
Facsimile:     415.442.4870

Attorneys for Defendant
LYFT, INC.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| PATRICK COTTER and ALEJANDRA MACIEL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LYFT, Inc., and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 3:13-cv-04065-VC<br><br>**DEFENDANT LYFT, INC.'S REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFFS PATRICK COTTER AND ALEJANDRA MACIEL AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>Complaint Filed: September 3, 2013<br>Trial Date: None Set<br>Judge: Hon. Vince Chhabria<br><br>Hearing Date: January 29, 2015<br>Hearing Time: 10:00 a.m.<br>Location: Courtroom 4<br>Judge: The Hon. Vince Chhabria |

# TABLE OF CONTENTS

I.  INTRODUCTION. ........................................................................................................ 1

II. THE UNDISPUTED FACTS SUPPORT A FINDING THAT PLAINTIFFS WERE INDEPENDENT CONTRACTORS AND NOT EMPLOYEES OF LYFT. ...................................................................................... 1

   A. Plaintiffs Controlled the Manner and Means By Which They Accessed The Lyft Platform as Drivers ........................................................... 2

      1. Plaintiffs Were Able To Access Competing Ridesharing Platforms While Simultaneously Accessing the Lyft Ridesharing Platform ............................................................................ 2

      2. Lyft Is Not A Taxi Company ............................................................. 5

      3. The Lyft Terms of Service Do Not Give Rise To An Employment Relationship Between Lyft and Plaintiffs ...................... 7

      4. The Mere Presence of a Mutual Termination Provision in the TOS Is Not Dispositive and Can In Fact an Independent Contractor Relationship. ..................................................................... 8

      5. Lyft's "Suggestions" and Frequently Asked Questions Do Not Give Rise to an Employment Relationship. ............................... 10

   B. Plaintiffs Do Not Satisfy the Industrial Welfare Commission's Standard for an Employment Relationship ..................................................... 12

   C. Plaintiffs Fail to Address Lyft's Hearsay Objection ..................................... 14

III. CONCLUSION. ......................................................................................................... 15

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Arnold v. Mut. Of Omaha Ins. Co.*,
   202 Cal. App. 4th ................................................................................................................. 9, 10

*Ayala v. Antelope Valley Newspapers, Inc.*,
   59 Cal. 4th 522 (2014) ....................................................................................................... 7, 9, 10

*Beaumont-Jacques v. Farmers Group, Inc.*,
   217 Cal. App. 4th 1138 (2013) ........................................................................... 1, 8, 10, 11

*Bowerman v. Field Asset Serv., Inc.*,
   No. 13-cv-00057-WHO, 2014 WL 4676611 (N.D. Cal. Sept. 17, 2014) ................................ 11

*Brown v. Wal-Mart Stores, Inc.*,
   No. 5:09-cv-03339, 2012 WL 3672957 ................................................................................. 14

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................................................................... 1

*Fowler v. Varian Associates, Inc.*,
   196 Cal. App. 3d 34 (1987) ................................................................................................... 4, 7

*Grant v. Woods*,
   71 Cal.App.3d 647 (1977) .......................................................................................................... 7

*Gunawan v. Howroyd-Wright Empl. Agency*,
   997 F. Supp. 2d 1058 (C.D. Cal. 2014) ................................................................................... 13

*Hennigan v. Insphere Ins. Solutions, Inc.*,
   2014 WL 1600034 ...................................................................................................................... 9

*Martinez v. Combs*,
   49 Cal. 4th 35 (2010) .......................................................................................................... 12, 13

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ................................................................................................................... 1

*Nissan v. Fire & Marine Ins. Co., Ltd. v. Frtiz Cos.*,
   210 F.3d 1099 (9th Cir. 2000) ................................................................................................... 1

*Rabanal v. Rideshare Port Mgmt. LLC*,
   No. B239708, 2013 WL 6020340 (Cal. App. 2 Dist. Nov. 14, 2013) .................................... 11

*Rosales v. El Rancho Farms*,
   2011 WL 6153276 (E.D. Cal. Dec. 12, 2011) ......................................................................... 12

*Ruiz v. Affinity Logistics Corp.*,
   887 F. Supp. 2d 1034 (S.D. Cal. 2012) ................................................................................. 4, 5

*Ruiz v. Affinity Logistics Corp.*,
 754 F. 3d 1093 (9th Cir. 2014) ..................................................................................................4, 5

*S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*,
 48 Cal. 3d 341 (1989) ....................................................................................................................9

*Saleem v. Corp. Transp. Grp. Ltd*,
 Case No. 12-cv-08450, 2014 WL 4626075 (S.D.N.Y. Sept. 16, 2014) ....................................9

*Tieberg v. Unemp't Ins. App Bd.*,
 2 Cal.3d 943 (1970) .......................................................................................................................7

*Varisco v. Gateway Sci. and Eng'g*,
 166 Cal.App.4th 1099 (2008) ........................................................................................................9

*Yellow Cab Coop., Inc. v. Workers' Comp. Appeals Board*,
 226 Cal. App. 3d 1288 (1991) ..............................................................................................5, 6, 7

*Yellow Taxi Co. of Minneapolis v. NLRB*,
 721 F. 2d 366 (D.D.C. 1983) ........................................................................................................7

**OTHER AUTHORITIES**

Federal Rules of Civil Procedure

    Rule 26 ...........................................................................................................................................14

    Rule 56(c) ........................................................................................................................................1

    Rule 56(c)(2) ...................................................................................................................................1

Federal Rules of Evidence 403 ..........................................................................................................14

## I.  INTRODUCTION.

The undisputed evidence presented by Lyft, Inc. ("Lyft") establishes that plaintiffs Patrick Cotter and Alejandra Maciel (collectively "plaintiffs") are independent contractors under California law.  For their part, plaintiffs have ignored the applicable standard for determining whether individuals are independent contractors or employees.  Instead, and without any legal support, plaintiffs point to every aspect of the interactions between them and Lyft (regardless of how minimal) as somehow evidence of "control" that creates an employment relationship.  In reality, the relevant and most important aspects of the interactions between plaintiffs and Lyft weigh heavily in favor of finding an independent contractor relationship.  Numerous courts have also recognized that maintaining basic quality standards and making suggestions do not convert an independent contractor relationship into one of employment. Indeed, prevailing law compels a finding that plaintiffs are not employees of Lyft.

## II.  THE UNDISPUTED FACTS SUPPORT A FINDING THAT PLAINTIFFS WERE INDEPENDENT CONTRACTORS AND NOT EMPLOYEES OF LYFT.

A motion should be granted if there is "no genuine issue as to any material fact" and if the "movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c).  Defendant can meet its burden on summary judgment either by:  (1) negating an essential element of plaintiffs' claims; or (2) showing plaintiffs do not have sufficient evidence of an element to carry their burden of persuasion at trial.  *Nissan v. Fire & Marine Ins. Co., Ltd. v. Frtiz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  In opposing Lyft's motion, plaintiffs cannot rely on allegations but must instead set out specific admissible facts showing a genuine issue for trial; mere opinions or beliefs will not meet this burden.  Fed. R. Civ. P. 56(c)(2); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  The facts upon which plaintiffs rely must be admissible at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). While "the existence of an employment relationship is a question for the trier of fact," it "can be decided by the court as a matter of law if the evidence supports only one reasonable conclusion."  *Beaumont-Jacques v. Farmers Group, Inc.*, 217 Cal. App. 4th 1138, 1142-43 (2013) (*quoting Angelotti v. The Walt Disney Co.*, 192 Cal. App. 4th 1394, 1404 (2000)).

DEFENDANT LYFT, INC.'S REPLY IN SUPPORT OF MSJ AND IN OPPOSITION TO PLAINTIFFS' MSJ

Plaintiffs have failed to point to a single case (because none exists) that supports their argument that they are not independent contractors when accessing the Lyft platform as drivers. Ultimately, plaintiffs cannot escape the following undisputed facts, which establish that they were not employees of Lyft: (1) plaintiffs were able to simultaneously access Lyft's platform and other ridesharing platforms that are in direct competition with Lyft; (2) plaintiffs determined whether and when to access the Lyft platform as drivers; (3) plaintiffs determined which ride requests to accept and whether to accept any ride requests at all; (4) plaintiffs determined the areas they chose to drive in within the geographic regions where the Lyft platform functioned; (5) Lyft did not dictate to plaintiffs the routes they should take when providing rides using the Lyft platform; (6) Lyft did not require that plaintiffs wear uniforms or adhere to particular grooming standards; (7) plaintiffs supplied the primary instrumentalities (i.e., vehicle, gas, phone) necessary to provide rides on the platform; (8) plaintiffs were paid amounts that were solely in the discretion of Lyft riders, not Lyft, and were paid on a per-ride basis instead of being paid an hourly rate; and (9) the Terms of Service ("TOS") expressly establish an independent contractor relationship pursuant to which Lyft expressly disclaims the type of control and rights to control that plaintiffs have alleged. For these reasons, Lyft is entitled to summary judgment against plaintiffs and plaintiffs' Motion for Summary Judgment should be denied.

> **A.   Plaintiffs Controlled the Manner and Means By Which They Accessed The Lyft Platform as Drivers**
>
> **1.   Plaintiffs Were Able To Access Competing Ridesharing Platforms While Simultaneously Accessing the Lyft Ridesharing Platform**

It is undisputed that Cotter and Maciel were never prohibited from accessing the Lyft platform as drivers while simultaneously engaging in tasks for any other business venture they might have chosen to engage in. Importantly, Cotter or Maciel, or any other driver accessing the Lyft platform, has always been able to simultaneously access the Lyft platform and platforms for other online transportation communities such as Sidecar or Uber. (Deposition of

DEFENDANT LYFT, INC.'S REPLY IN SUPPORT OF MSJ AND IN OPPOSITION TO PLAINTIFFS' MSJ

Komal Kirtikar ("Kirtikar Depo."), 118:17-22).[1] Plaintiffs do not contest this fact but argue instead that they were "effectively precluded" from accessing competing platforms because they were allegedly subjected to adverse action for not accepting all ride requests.

Plaintiffs offer nothing in the form of evidence in support of this argument, which is also directly contradicted by plaintiffs' own testimony. Indeed, plaintiffs testified that they had full control over the times when they accessed the Lyft platform and that they were not required to drive at any time, even when they had reserved time on the platform. (Deposition of Alejandra Maciel ("Maciel Depo."), 73:21-75:17, 77:23-78:6, 103:7-16, 112:23-113:5, 114:15-18; Deposition of Patrick Cotter ("Cotter Depo."), 51:19-23, 146:3-147:8, 147:22-148:7).[2] Plaintiffs fail to point to a single instance where Lyft required them to log on to the Lyft platform and accept a ride request for the purpose of providing a service to a rider. No evidence is offered because it never occurred. Plaintiffs were free to have the Lyft application open along with the application of a competing ridesharing service and then log off the Lyft application the moment they accepted a ride from a ridesharing service other than Lyft.

Plaintiffs' argument that they were prevented from simultaneously driving for competing rideshare platforms because Lyft allegedly required them to accept all ride requests is without merit even if one were to assume that the plaintiffs elected to not log off the Lyft platform and simply allowed ride requests to come in without accepting them. Plaintiffs admitted at their depositions that they maintained complete control over whether to accept rides. (Maciel Depo., 78:23-79:4; Cotter Depo., 132:14-17, 149:22-150:2). Plaintiffs also admitted that they were not subjected to any discipline by Lyft and that their access to the Lyft platform was never removed as a result of refusing to accept ride requests. (Maciel Depo., 172:6-14, 175:1-4; Cotter Depo., 188:25-189:20). Indeed, Maciel knew that she could block ride requests from particular riders at her discretion, and Cotter testified that he knew he could

---

[1] Relevant portions of the Kirtikar Deposition are attached to the Declaration of Alex Santana ("Santana Decl."), ¶ 3, Ex. B ((Dkt. 76)

[2] Relevant portions of the Cotter Deposition are attached to the Santana Decl., ¶ 4, Ex. C ((Dkt. 76). Relevant portions of the Maciel Deposition are attached to the Santana Decl., ¶ 5, Ex. D ((Dkt. 76)

avoid certain riders with a low passenger rating because, in his view, they were not ideal passengers.  (Maciel Depo., 95:20-96:3; Cotter Depo., 132:14-133:11).

Plaintiffs also argue that they were precluded from driving for Lyft's competitors by advancing the argument that "Lyft Drivers cannot, as a practical matter, provide a ride for a Lyft Rider and a rider for another car service at the same time."  (Plainiffs' Reply (Dkt. 79), 14:9-10).  Lyft concedes that plaintiffs were not capable of driving two passengers to two separate locations at the same time, in light of the fact they cannot be at two places at once.  Aside from being facially absurd (imagine the scene involving one Lyft passenger and one Uber passenger in one's car at the same time, travelling to diametrically opposed destinations), the reasoning employed by plaintiffs is not supported by any case law.  That a plumber could not physically use his tools to fix sinks in two separate homes at the same exact time does not convert that plumber into an employee of the homeowner whose sink he happens to be working on at any given moment.  Plaintiffs' argument presents not just problems of time and space but also real world conflicts with the California Labor Code and the claims plaintiffs have asserted.  For example, plaintiffs' third cause of action in this matter is for failure to pay minimum wage in violation of the Labor Code.  Should plaintiffs prevail in their claim to be deemed employees, they and others throughout the state could presumably claim wages for the same periods of time from multiple ridesharing platforms simply by logging into each platform as many drivers regularly do.  This activity in the ridesharing marketplace runs contrary to the duty of loyalty that is owed by individuals who are actually employees under the long-standing legal tenet that a servant cannot serve two masters.  *Fowler v. Varian Associates, Inc.*, 196 Cal. App. 3d 34, 41 (1987) (employees owe a duty of loyalty to their employer to not engage in a competing business).

Plaintiffs cite to *Ruiz v. Affinity Logistics Corp.*, 887 F. Supp. 2d 1034, 1044 (S.D. Cal. 2012) *rev'd by* 754 F. 3d 1093 (9th Cir. 2014) in arguing that plaintiffs being "free to do as they pleased while *not* working for Lyft is immaterial."  (Plaintiffs' Reply, 14:10-13).  However, as is discussed above, drivers such as the plaintiffs were free to stay logged into the Lyft platform even while providing a ride to a passenger through a competing platform.  Moreover, the facts

1   in *Ruiz* are in stark contrast to this case.  In *Ruiz*, the Ninth Circuit held that delivery drivers
2   were not properly classified as independent contractors where, among other things, the
3   defendant strongly discouraged the plaintiffs from working for competitors by requiring the
4   plaintiffs to leave their delivery trucks and keys with the defendant at the end of scheduled
5   shifts.  *Ruiz, supra,* 754 F. 3d at 1099.  Here, plaintiffs had no such restrictions placed upon
6   them as they were able to simultaneously solicit ride requests from multiple ridesharing
7   platforms, as well as perform any other work.
8           Lastly, plaintiffs advance the argument that they were not able to maintain full-time jobs
9   while accessing the Lyft platform as drivers.  (Plaintiffs' Reply, 14:13-16).  This argument is
10  also directly contradicted by plaintiffs' own testimony.  Both Maciel and Cotter admit that they
11  maintained other jobs during the time that they were accessing the Lyft platform as drivers.
12  (Maciel Depo., 80:24-81:22; Cotter Depo., 62:20-64:25).  Cotter even applied for a full-time
13  employment position at Lyft, listing his driving activities as a "hobby," which is obviously how
14  he viewed it at the time.  (Santana Decl., ¶ 7, Exs. F and G).  Moreover, plaintiffs admit that
15  they solely controlled when they chose to access the Lyft platform, which means that they could
16  choose (within their sole control) to work around any other commitments.  (Maciel Depo.,
17  73:21-75:17, 77:23-78:6, 103:7-16, 112:23-113:5, 114:15-18; Cotter Depo., 51:19-23, 146:3-
18  147:8, 147:22-148:7).  For these reasons, plaintiffs' ability to simultaneously access multiple
19  ridesharing platforms is strong evidence that plaintiffs were not employees of Lyft.
20          **2.      Lyft Is Not A Taxi Company**
21          Plaintiffs mistakenly rely on the 24-year old decision (which predates the widespread
22  use of the internet and mobile phones) in *Yellow Cab Coop., Inc. v. Workers' Comp. Appeals*
23  *Board*, 226 Cal. App. 3d 1288 (1991) in arguing that drivers accessing the Lyft platform are
24  like taxi cab drivers.  (Plaintiffs' Reply, 12:1-13:16).  The *Yellow Cab* case involved an
25  employer which exercised significantly more control than Lyft ever had the right to exercise
26  with plaintiffs under the TOS.  In *Yellow Cab*, the Court of Appeal affirmed a decision from the
27  Workers' Compensation Appeals Board finding that an injured cab driver was an employee of a
28  cab company for workers' compensation purposes.  *Yellow Cab*, 226 Cal. App. 3d at 1302.  In

1   comparing *Yellow Cab* to the case at hand, plaintiffs fail to identify the key distinctions with the
2   *Yellow Cab* case.  As a preliminary matter, the company in *Yellow Cab* maintained a fleet of
3   vehicles that it leased to drivers for a fee on a per shift basis in shifts lasting ten hours.  *Yellow*
4   *Cab*, 226 Cal. App. 3d at 1291-1292.  The court in *Yellow Cab* stated that the cab company's
5   "enterprise consists of operating a fleet of cabs for public carriage."  *Yellow Cab*, 226 Cal. App.
6   3d at 1293-1294.  As such, *Yellow Cab's* primary source of income was from the maintenance
7   of its fleet of vehicles and leasing of those vehicles to drivers.
8          In contrast to *Yellow Cab*, it is undisputed that at no point in time has Lyft ever owned
9   or leased vehicles for the purpose of providing transportation services on the Lyft platform.
10  (Declaration of Komal Kirtikar dated December 22, 2014 ("Second Kirtikar Decl."), ¶ 2 (Dkt.
11  77).  It is further undisputed that plaintiffs provided their own vehicles to operate when
12  accessing the Lyft platform as drivers.  (*Id*.; Maciel Depo., 50:17-52:5; Cotter Depo., 72:19-
13  75:2, 86:18-87:5).  Lyft is a technology company that maintains a ridesharing platform that it
14  licensed to drivers and riders interested in accessing the platform.  Lyft collects an
15  administrative fee on transactions between riders and drivers but does not, as in the *Yellow Cab*
16  case, derive revenue from leasing vehicles to drivers.
17         Plaintiffs also failed to note that the alleged employer in *Yellow Cab* assigned shifts to
18  drivers in increments of ten hours and that it imposed this control so that it could lease its
19  vehicles more than once per day.  *Yellow Cab*, 226 Cal. App. 3d at 1289-1299.  The court
20  further noted that the practice resembled a paradigmatic employment relationship in that it,
21  "significantly restricted [the] applicant's independence."  *Id*.  In contrast, plaintiffs here were
22  never required to drive any particular hours, and they could drive as little or often as they chose.
23  Although plaintiffs could reserve space on the Lyft platform, plaintiffs admit that they could
24  elect to not drive during those hours if they chose not to do so.  (Maciel Depo., 73:21-75:17,
25  77:23-78:6, 103:7-16, 112:23-113:5, 114:15-18; Cotter Depo., 51:19-23, 146:3-147:8, 147:22-
26  148:7).  Indeed, Maciel testified that she accessed the platform as a driver during hours that
27  were convenient for her work as a musician.  (Maciel Depo., 80:24-81:22).  The claimant in
28  *Yellow Cab* did not have the freedom or control over his schedule that the plaintiffs in this case

1 had when accessing the Lyft platform.

2   Lastly, the petitioner in *Yellow Cab* precluded the claimant from driving cabs for other
3 companies. *Yellow Cab*, 226 Cal. App. 3d at 1289; *see also Fowler*, *supra*, 196 Cal. App. 3d at
4 41; *Yellow Taxi Co. of Minneapolis v. NLRB*, 721 F. 2d 366, 374-378 (D.D.C. 1983) (noting the
5 importance of the ability to work for other clients without employer's consent in determining
6 whether an individual is an independent contractor). The court in *Yellow Cab* stated that this
7 restriction was the "most significant" factor in the assessment of the court. *Id.* As is addressed
8 above, Lyft did not preclude plaintiffs from accessing the ridesharing platforms of Lyft's
9 competitors. Plaintiffs were even free to simultaneously access the Lyft platform along with
10 other platforms. (Kirtikar Depo. at 118:17-22). As such, the *Yellow Cab* case is easily
11 distinguishable from the case at hand.

12   **3.**  **The Lyft Terms of Service Do Not Give Rise To An Employment**
13     **Relationship Between Lyft and Plaintiffs**

14   Plaintiffs acknowledge that Lyft has set forth substantial evidence that it did not in fact
15 exercise control over "when Plaintiffs worked, whom they picked up, and where they drove."
16 (Plaintiffs' Reply, 4:23-26) (internal citations omitted). Plaintiffs argue that Lyft had the right
17 to control these aspects of plaintiffs' working conditions, but do so while ignoring the
18 substantial evidence cited by Lyft showing that plaintiffs controlled the manner and means in
19 which they accessed the Lyft platform. Indeed, plaintiffs do not address Lyft's lengthy and
20 detailed discussion of the agreement between the parties, and ignore clear California Supreme
21 Court precedent holding that written agreements are the necessary starting points for an
22 assessment of the right to control analysis. *Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal.
23 4th 522, 535 (2014) (holding that the written agreement is the starting point for the analysis but
24 affirming that the course of conduct is also relevant to determining whether an individual is an
25 independent contractor or an employee); *see also Grant v. Woods*, 71 Cal. App. 3d 647, 653
26 (1977) (holding that written agreements are a significant factor in assessing the right to control);
27 *Tieberg v. Unemp't Ins. App Bd.*, 2 Cal.3d 943, 952 (1970).
28   Plaintiffs do not contest that they agreed to and accepted the Lyft TOS prior to

accessing the Lyft platform as drivers. (*See* Declaration of Komal Kirtikar dated December 22, 2014 ("Second Kirtikar Decl."), ¶ 3, Ex. A; Deposition of Patrick Cotter ("Cotter Depo."), 80:12-82:4, Ex. 2; Deposition of Alejandra Maciel ("Maciel Depo.") 71:25-72:4; 120:17-121:20, Ex. 19). The contents of the TOS are also not in dispute. Specifically, the TOS provide that plaintiffs decided, in their sole discretion, whether to offer or accept a ride once a rider and driver are matched on the platform. (Second Kirtikar Decl., Exs. A-F at 2). The TOS further state that individuals accessing the Lyft platform are "solely responsible" for their "interactions with other users" and that Lyft has no control over the actual transportation provided using the platform."[3] The TOS further state, and plaintiffs do not contest, that payments from riders to drivers were voluntary and made at the sole discretion of riders.[4]

The TOS do not contain any reservation of rights for Lyft to dictate to plaintiffs whether to drive on the platform, when to drive, where to drive, what routes to take or any requirement to accept all ride requests. In fact, the TOS do not contain any reservation of the right to control drivers' conduct or to require them to even access the Lyft platform. Indeed, plaintiffs do not contest that they could have entered a licensing agreement with Lyft and then elected to never access the platform at all as the TOS and Lyft never required plaintiffs to take any action.

### 4. The Mere Presence of a Mutual Termination Provision in the TOS Is Not Dispositive and Can In Fact an Independent Contractor Relationship.

The TOS between Lyft and plaintiffs are for an indefinite period and permit either side to terminate the agreement at any time. (Cotter Depo., Ex. 2; Maciel, Depo., Ex. 1). Much of plaintiffs' motion is based on the argument that the mutual termination provision is somehow dispositive of the independent contractor analysis. It is not. In fact, courts have repeatedly affirmed that independent contractor agreements may be mutually terminable and for an indefinite term. *Beaumont-Jacques v. Farmers Group, Inc.*, 217 Cal. App. 4th at 1147 ("'the right to terminate their arrangement was a mutual one[,]… these circumstances show an

---

[3] Second Kirtikar Decl., Ex. A at 7; Ex. B at 7; Ex. C at 12; Ex. D at 11; Ex. E at 12; Ex. F at 11.
[4] Second Kirtikar Decl., Ex. A at 2; Ex. B at 2; Ex. C at 2-3; Ex. D at 2-3; Ex. E at 2-3; Ex. F at 2-3.

association, rather than the relation of employer and employee.'") (internal citations omitted); *Arnold v. Mut. Of Omaha Ins. Co.*, 202 Cal. App. 4th 580, 584 (2011) ("Either party could terminate the contract with or without cause through written notice to the other"); *Hennigan v. Insphere Ins. Solutions, Inc.*, 2014 WL 1600034, at *14 ("A mutual termination clause is evidence of an independent-contractor relationship… Since there was a mutual termination clause here, this factor weighs in favor of [the defendant]."); *Varisco v. Gateway Sci. and Eng'g*, 166 Cal.App.4th 1099, 1107 (2008) ("An independent contractor agreement can properly include an at-will clause giving the parties the right to terminate the agreement. Such a clause does not, in and of itself, change the independent contractor relationship into an employee-employer relationship."); *Saleem v. Corp. Transp. Grp. Ltd*, Case No. 12-cv-08450, 2014 WL 4626075 at *14 (S.D.N.Y. Sept. 16, 2014) ("drivers could terminate the agreements at will, a fact that courts have found favors a finding of independent contractor status" and "were free to take extended breaks from driving whenever they wished, were never under any obligation to book into the dispatch system at a particular time, and were free to work for competitor car services.").

Plaintiffs' reliance on *Ayala* in support of the proposition that the inquiry ends where the agreement between the parties contains a mutual termination provision is clearly contradicted by the *Ayala* decision itself. Instead, *Ayala* holds that the standards expressed in *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341 (1989) must also be considered as part of the assessment. *Ayala*, 59 Cal. 4th at 532. Plaintiffs, relying on the presence of a mutual termination provision, imply that every suggestion provided by Lyft to drivers was a potential cause for termination and that every limitation built into the Lyft platform was a form of control sufficient to convert plaintiffs into employees. However, plaintiffs provide no support for their position and set forth no logical basis for why each suggestion or restriction that they point to results in the creation of an employment relationship. For example, in discussing the 60-mile geographic region that covered the San Francisco Bay Area during the time that plaintiffs accessed the Lyft platform, plaintiffs state that, "the actual impact of this control on Plaintiffs is irrelevant." (Plaintiffs' Reply, 7:26-28). The argument reflects plaintiffs' fundamental

misunderstanding of *Ayala* and every other opinion addressing the independent contractor analysis, as not every suggestion or restriction by Lyft is an exercise of control that transforms Lyft drivers into employees.

Plaintiffs similarly argue that Lyft exercised control by retaining the ability to shut down the platform at any time. Plaintiffs' argument is based on a provision in the TOS advising users that, "Lyft and the Services may be temporarily unavailable from time to time for maintenance or other reasons."[5] Plaintiffs do not present any reasoned argument or authority in support of their position that regular maintenance of the on-line platform would somehow transform Lyft into an employer simply because the platform would not be available at every possible moment that plaintiffs might have sought to offer rides. Other real-world scenarios involving independent contractors highlight the absurdity of plaintiffs' argument. For example, is a hair dresser that rents space at a salon an employee of the salon just because he or she only services customers during the salon's operating hours, instead of twenty-four hours a day, seven days a week? Would such hairdresser be an employee of the salon if the salon owner retained the discretion to close the salon on holidays? Is the operator of an office building the employer of independent contractors working in the building because it retains the right to shut down or close off access to the building for security or maintenance reasons? Of course not.

### 5. Lyft's "Suggestions" and Frequently Asked Questions Do Not Give Rise to an Employment Relationship.

Lyft has cited to numerous cases holding that individuals who control when and where they work, and who to work with (including competitors of their business partners), are independent contractors and not employees. *Beaumont-Jacques*, 217 Cal. App. 4th at 1144-45 (individual is independent contractor where she determined, "her own day-to-day hours, including her vacations; on most days, fixing the time for her arrival and departure at her office and elsewhere, including lunch and breaks … paying for her costs … deducting those costs as a business expense in her personal tax returns; and, identifying herself as self-employed in those returns."); *Arnold v. Mut. of*

---

[5] Second Kirtikar Decl., Ex. A at 7-8; Ex. B at 7; Ex. C at 12; Ex. D at 11; Ex. E at 12; Ex. F at 11.

*Omaha Ins. Co.*, 202 Cal.App.4th at 589 (insurance agent is an independent contractor where she determined when and where to work and also worked for other companies); *Rabanal v. Rideshare Port Mgmt. LLC*, No. B239708, 2013 WL 6020340 (Cal. App. 2 Dist. Nov. 14, 2013) (holding that van drivers who determined when they worked and could work with competitors of an entity were not employees of that entity); *Bowerman v. Field Asset Serv., Inc.*, No. 13-cv-00057-WHO, 2014 WL 4676611, at *8 (N.D. Cal. Sept. 17, 2014) (same).

Plaintiffs attempt to distinguish this authority with overly broad, exaggerated and unsupported statements concerning Lyft's control over the manner and means of plaintiffs' activity on the Lyft platform. Plaintiffs further point to the Rules of the Road and to the Frequently Asked Questions ("FAQs") section of Lyft's website as additional examples of "control" over drivers. (Plaintiffs' Reply 7:1-20). In doing so, plaintiffs fail to address the major themes that are consistently found where courts deem individuals to be independent contractors instead of employees – control over when and where to work and control over who to work with. Instead, plaintiffs' argument is relegated to a desperate attempt to turn basic quality standards into control sufficient to create an employment relationship.

Lyft implements certain reasonable restrictions to maintain the overall quality of the ridesharing community in order to ensure a positive experience for drivers and riders accessing the platform and to avoid conflict with existing laws and safety regulations. This practice is common in business communities where the participants are independent contractors using a hosted platform. For example, eBay restricts some items available for sale on the eBay platform, such as cosmetics, food and healthcare items. In addition, while eBay generally permits the sale of used clothing, it prohibits the sale of used undergarments.[6] Much like eBay, Lyft may insist upon basic standards to insure that the "satisfactory performance of the independent contract[.]" *Beaumont-Jacques*, 217 Cal.App.4th at 1143 (*quoting McDonald v. Shell Oil Co.*, 44 Cal.2d 785, 790 (1955) (holding that an entity may insist on, "the right to inspect, the right to make suggestions or recommendations as to details of the work, [and] the right to prescribe alterations or deviations in

---

[6] An overview of eBay's prohibited and restricted items may be found at http://pages.ebay.com/help/policies/items-ov.html.

the work'" – without changing the relationship from independent contractor to employee."); *see also Rosales v. El Rancho Farms*, 2011 WL 6153276, at *14-*16 (E.D. Cal. Dec. 12, 2011) (Defendant was not plaintiffs' employer even though its personnel trained them, inspected their work, and supervised them to ensure that they were performing their work according to specifications because supervision for the purpose of quality control is "collateral, indirect control" that does not create a joint employer relationship).

Moreover, the FAQs are placed on Lyft's website to assist members of the ridesharing community with questions that might arise when using Lyft as either a driver or a passenger. Plaintiffs point to no evidence that they ever read the FAQs, let alone evidence showing that they were asked to review and abide by the FAQs. That plaintiffs point to fist bumps, radio preferences and other minor suggestions, while ignoring the major factors that constitute an employment relationship, reflects the weakness of plaintiffs' case.

### B. Plaintiffs Do Not Satisfy the Industrial Welfare Commission's Standard for an Employment Relationship

Plaintiffs' alternative argument that it satisfies the standard for establishing an employment relationship pursuant to the Industrial Welfare Commission's ("IWC") definition is without merit. Plaintiffs cannot establish an employment relationship under any of the three alternative definitions maintained by the IWC. *See Martinez v. Combs*, 49 Cal. 4th 35, 64 (2010) (stating that the IWC's three alternative definitions for "employ" are: "(a) to exercise control over the wages, hours or working conditions, or (b) to suffer or permit to work, or (c) to engage, thereby creating a common law employment relationship.") The first IWC definition is the common law control test which the plaintiffs cannot establish because Lyft did not exercise control over the wages, hours or working conditions of plaintiffs. *Id*. at 64-65. As is stated above, Lyft did not exercise control over the wages, hours or working conditions of plaintiffs because plaintiffs alone determined when and where to access the Lyft platform and riders determined the amount of the donation in their sole discretion. (Maciel Depo., 73:21-75:17, 77:23-78:6, 103:7-16, 112:23-113:5, 114:15-18; Cotter Depo., 51:19-23, 146:3-147:8, 147:22-148:7).[7]

---

[7] Second Kirtikar Decl., Ex. A at 2; Ex. B at 2; Ex. C at 2-3; Ex. D at 2-3; Ex. E at2-3; Ex. F at2-3.

Lyft also did not suffer or permit plaintiffs to work nor did it engage plaintiffs to create a common law employment relationship. The court in *Martinez* held that the essence of liability under the "suffer or permit" test is the "failure to prevent the work from occurring." *Martinez*, 49 Cal. 4th at 70. This test is of course more directly applicable to off-the-clock cases where the existence of an employment relationship of some kind is known to exist, and the question is only as to whether wages can be recovered and from whom. Indeed, an individual may only perform work that is compensable under the Wage Orders of the IWC when that individual is under the control of an entity with which he or she has an employment relationship. *Gunawan v. Howroyd-Wright Empl. Agency*, 997 F. Supp. 2d 1058, 1063 (C.D. Cal. 2014) (holding that an individual cannot perform compensable work under California's wage and hour laws when not in an employment relationship). As the *Gunavan* court noted, *Martinez* is "not easily translated out of the context in which it was developed[,]" where there "was no question whether the employees in *Martinez* were employees, nor whether they had performed compensable work." *Gunawan*, 997 F. Supp. 2d at 1064. (holding that "in the context of determining whether an individual is an employee at all, the [*Martinez*] test is less directly applicable.") As stated by the *Gunawan* court, the analysis of employment status as an initial matter, even under the *Martinez* test and the wage orders' "suffer or permit" language ultimately hinges on the extent to which the purported employer exercises control. *Id*. As is set forth above, no such sufficient control existed as to the plaintiffs here.

In the case at hand, plaintiffs were not in an employment relationship with Lyft so they cannot satisfy the suffer or permit standard. Moreover, the TOS do not require plaintiffs to do anything with respect to accessing the ridesharing platform, and plaintiffs arranged rides with and for riders, not Lyft. *Martinez v. Combs*, 49 Cal. 4th at 70-77 (affirming summary judgment in favor of defendants who were downstream beneficiaries of the economic activity). Lyft permitted access only to the ridesharing platform whereas plaintiffs contracted with riders, not with Lyft, to provide transportation services. Indeed, riders and drivers retained the right to permit and end a ride arranged through the Lyft platform without the involvement of Lyft. Instead, Lyft simply accounted for the activity that had occurred through the use of the

1 ridesharing platform.  For these reasons, plaintiffs' argument is without merit and fails.

2      **C.**     **Plaintiffs Fail to Address Lyft's Hearsay Objection**

3      Lyft objects to the introduction of additional materials by plaintiffs in an attempt to authenticate evidence that was not properly introduced in plaintiffs' opening brief.  As a preliminary matter, the materials that Lyft objects to constitute inadmissible hearsay.  Plaintiffs also offer no explanation for their failure to properly authenticate evidence that was not produced by Lyft in this litigation.  This includes Exhibits J, N, O, W, III, JJJ, RRR and SSS. Instead, plaintiffs point to testimony that was not introduced in their opening brief to authenticate some of the documents and offers an inadmissible declaration of Gary Freedline to authenticate others.  Plaintiffs should not be permitted to introduce new evidence at this time to authenticate documents and should not be permitted to introduce the declaration of Mr. Freedline because he was not identified as a witness in plaintiffs' Rule 26 disclosures.[8]  *Brown v. Wal-Mart Stores, Inc.*, No. 5:09-cv-03339, 2012 WL 3672957, at \*\*2-3 (N.D. Cal. Aug. 24, 2012) (citing *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)).

     Moreover, the very fact that the referenced documents are being offered as supposed admissions by Lyft, Inc. as to the named plaintiffs raises serious due process concerns because as to many of the documents (in particular Exhibits AA, XX-ZZ, CCC, LLL-OOO and QQQ), there is no apparent relationship between the content of the documents and the named plaintiffs. *See* FRE 403.  For example, document QQQ contains a discussion of mentor training videos that occurred after Cotter's tenure, and toward the very end of Maciel's tenure; and there is no evidence to suggest that Cotter or Maciel watched the videos in question. Thus, even if the above-referenced documents are statements by Lyft, a declaration of counsel cannot show that such statements applied specifically to the named plaintiffs, as opposed to other drivers, or time periods and locations not at issue with regard to this motion, which focuses only on the named

---

[8] Plaintiffs' Initial Disclosures, Supplemental Initial Disclosures and Second Supplemental Initial Disclosures are attached as Exhibits A, B and C, respectively, to the Declaration of Alex Santana dated January 14, 2015.

Plaintiffs' claims. Such documents require an evidentiary link to the named plaintiffs themselves, which a declaration of counsel simply cannot supply.

### III. CONCLUSION.

For all of the foregoing reasons, defendant Lyft, Inc. is entitled to summary judgment as to each cause of action asserted by plaintiffs Patrick Cotter and Alejandra Maciel. Moreover, a trier of fact can only conclude that plaintiffs were independent contractors from the undisputed facts. As such, plaintiffs' Motion for Summary Judgment should be denied.

DATED: January 14, 2015

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By: /s/ Christopher M. Ahearn
      Thomas M. McInerney
      Christopher M. Ahearn
      Alex Santana
      Attorneys for Defendant
      LFYT, INC.

20003548.6

DEFENDANT LYFT, INC.'S REPLY IN SUPPORT OF MSJ AND IN OPPOSITION TO PLAINTIFFS' MSJ