1  Counsel listed on following page.

2

3

4

5

6

7                          **UNITED STATES DISTRICT COURT**

8                          **NORTHERN DISTRICT OF CALIFORNIA**

9

10  PATRICK COTTER, ALEJANDRA MACIEL,        **Case No.: 3:13-cv-04065-VC**
    and JEFFREY KNUDTSON, on behalf of
11  themselves and all others similarly situated,   **Hon. Vince Chhabria**

12                              Plaintiffs,   **FOURTH AMENDED COMPLAINT
                                             FOR: (1) FIRST VIOLATION OF THE
13                                           CALIFORNIA UNFAIR
                                             COMPETITION LAW (CAL. BUS. &
14                    v.                      PROF. CODE § 17200, *et seq.*); (2)
                                             CONVERSION; (3) FAILURE TO PAY
15  LYFT, INC.,                              MINIMUM WAGE (CAL. LAB. CODE
                                             §§ 1194, 1197,  CAL. CODE REGS. TIT.
16                              Defendant.    8 § 11090); (4) SECOND VIOLATION
                                             OF THE CALIFORNIA UNFAIR
17                                           COMPETITION LAW (CAL. BUS. &
                                             PROF. CODE § 17200, *et seq.*); (5)
18                                           FAILURE TO FURNISH ACCURATE
                                             WAGE STATEMENTS (CAL. LAB.
19                                           CODE § 226); (6) REIMBURSEMENT
                                             (CAL. LAB. CODE § 2802); (7) THIRD
20                                           VIOLATION OF THE CALIFORNIA
                                             UNFAIR COMPETITION LAW (CAL.
21                                           BUS. & PROF. CODE § 17200, *et seq.*);
                                             AND (8) PENALTIES PURSUANT TO
22                                           THE LABOR CODE PRIVATE
                                             ATTORNEYS GENERAL ACT OF
23                                           2004 (CAL. LAB. CODE § 2698, *et seq.*)
24
                                             **CLASS ACTION**
25

26

27

28

Matthew D. Carlson (State Bar No. 273242)
CARLSON LEGAL SERVICES
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (510) 239-4710
Email: mcarlson@carlsonlegalservices.com

Shannon Liss-Riordan (*Pro Hac Vice*)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
Email: sliss@llrlaw.com

Attorneys for Plaintiffs

Plaintiffs Patrick Cotter, Alejandra Maciel, and Jeffrey Knudtson (hereafter "Plaintiffs"), by and through their attorneys, bring this action on behalf of themselves and all others similarly situated against Defendant Lyft, Inc. (hereafter "Lyft" or "Defendant") and hereby allege as follows:

## I. NATURE OF THE ACTION

1.    Lyft is a San Francisco-based car service that refers to itself as a "ride-sharing business." Through its software implemented in the Lyft mobile phone application (the "Lyft Platform"), Lyft provides a means to enable a person who seeks transportation to a destination via automobile ("Rider(s)") to be picked up by a nearby person who is willing to transport the Rider to his or her destinations via automobile ("Driver(s)").

2.    This is a California class action[1] that challenges Lyft's policy of misclassifying its Drivers as "independent contractors" unprotected by the California Labor Code. Because Drivers are in fact Lyft employees, this action also challenges Lyft's policy of taking 20% of gratuity payments given by Riders to Lyft's Drivers, an illegal practice under California Labor Code § 351, which prohibits an employer from taking any amount of gratuity given to an employee. Lyft's violation of Cal. Lab. Code § 351 is also a violation of Cal. Bus. & Prof. Code § 17200, *et seq.* This action also challenges Lyft's failure to pay its Drivers the minimum wage under California law in violation of Cal. Lab. Code § 1194, Cal. Lab. Code § 1197, and Wage Order 9. Lyft's failure to pay minimum wage is also a violation of Cal. Bus. & Prof. Code § 17200, *et seq.* This matter also challenges Lyft's practice of failing to provide its Drivers with wage statements that accurately reflect, for example, their hours worked or rates of pay in violation of California Labor Code § 226, and Lyft's practice of failing to reimburse its Drivers for mileage costs in violation Cal. Lab. Code § 2802.

---

[1] Plaintiffs do not waive their right to assert claims on behalf of a national class, and for appellate purposes reserve their rights with respect to this issue.

## II.  JURISDICTION

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy between Lyft and each named Plaintiff exceeds $75,000, inclusive of all recoverable attorneys' fees and penalties, exclusive of interest and costs, and because Plaintiff Maciel is a citizen of a Mexico and Lyft is a citizen of California. The Court also has continuing jurisdiction over this matter because, at the time of filing, it had jurisdiction pursuant to 28 U.S.C. § 1332(d).

## III. VENUE

4.       This Court is the proper venue for this matter pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiffs' claims and the claims of putative class members occurred in the Northern District of California. Specifically, the policies and practices at issue in this litigation were and are implemented  at Lyft's principal place of business in San Francisco, California.

## IV.  THE PARTIES

5.      Plaintiff Patrick Cotter is a citizen of Washington, domiciled in Seattle. Plaintiff Cotter provided services as a Lyft Driver starting in September 2012. Plaintiff Cotter's employment with Lyft was terminated by Lyft in January 2013.

6.      Plaintiff Alejandra Maciel is a citizen of Mexico, domiciled in Tlayacapan, Mexico. Plaintiff Maciel provided services as a Lyft Driver starting on August 9, 2013. Plaintiff Maciel's employment with Lyft was terminated by Lyft on September 13, 2013.

7.      Plaintiff Jeffrey Knudtson is a citizen of California, domiciled in Santa Barbara. Plaintiff Knudtson began providing services as a Lyft Driver in October 2013 and is currently a Lyft Driver. At various times, it has not been uncommon for Plaintiff to work for Lyft ten hours per day, seven days per week.

//
//

8.   Defendant Lyft, Inc. is a Delaware corporation with its headquarters and principal place of business in San Francisco, CA. Lyft's accounting, human resources, and all other departments are located in its San Francisco, CA headquarters.

### V. FACTUAL ALLEGATIONS

9.   As described above, Lyft is a San Francisco-based car services that refers to itself as a "ride-sharing business" that uses its "Lyft Platform" software to "match" an individual who needs a ride (a Rider) with someone willing to provide a ride (a Driver).[2]

10.  Lyft's business works as follows: The Lyft Platform is implemented via an application that must be downloaded to an iPhone or Android-based cellular phone by all Drivers and any prospective Rider. If a prospective Rider is in need of a Driver, the Rider uses the application to request a ride from a Driver in the Rider's geographical vicinity. All available Lyft Drivers in the vicinity are informed of the request via the Lyft application. The first Lyft Driver to accept a request is then "matched" with the Rider, and proceeds to pick up the Rider and transport him or her to his or her destination.

11.  Lyft expects its Drivers to accept all incoming requests from Riders unless the Driver is in the process of transporting another Rider at the time of a request.

12.  Drivers can receive requests whenever they indicate via the Lyft application that they are available to provide rides.

13.  Drivers and Riders were and are required to agree to the Lyft's Terms of Services ("TOS") as a prerequisite to utilizing the Lyft Platform.

14.  Lyft's uniform TOS provides that the agreement is governed by the laws of the State of California without regard to choice of law principles.

15.  Lyft's uniform TOS and all policies therein were drafted, created, implemented, and carried out in the state of California.

---

[2] Plaintiffs are three of many Lyft Drivers throughout California, and accordingly the term "Driver" or "Drivers" as used herein is a term intended to encompass all Lyft Drivers in California, including Plaintiffs.

16.   Lyft misclassifies its Drivers as "independent contractors" rather than employees protected by the California Labor Code.

17.   In fact and pursuant to California law, all Lyft Drivers are properly considered employees for reasons including, but not limited to, the following:

   a.   Pursuant to Lyft's uniform business model, Drivers provide a service (i.e., transporting Riders) that benefits Lyft;

   b.   Pursuant to Lyft's uniform TOS, Lyft retains the right to terminate Drivers for any or no reason, without explanation, at any time;

   c.   Pursuant to Lyft's uniform TOS, Lyft retains the right to terminate Drivers if, in Lyft's discretion, the Driver behaved in a way that could be regarded as inappropriate;

   d.   Pursuant to Lyft's uniform business model, Drivers do not engage in a business distinct from Lyft's business; rather, Drivers' services are the primary or sole source of income for Lyft;

   e.   Pursuant to Lyft's uniform TOS, Lyft does not require Drivers to possess any skill above and beyond that necessary to obtain a normal driver's license;

   f.   Pursuant to Lyft's uniform business model, Drivers' tenure with Lyft was for an indefinite period of time;

   g.   Pursuant to Lyft's uniform business model, Lyft provides Drivers with the only instrumentality by which a Driver can perform services for Lyft, namely Lyft's software;

   h.   Pursuant to Lyft's uniform TOS, Lyft does not require Drivers to invest in any equipment or materials required for his or her services; rather all Drivers must already own or have the legal right to operate a vehicle in good operating condition before he or she can work as a Lyft Driver. All

Drivers must also already be named on an insurance policy covering the Driver's vehicle before he or she can work as a Lyft Driver;

i.  Pursuant to Lyft's uniform policy, Drivers must place a large pink mustache provided by Lyft on the front of the Driver's vehicle while the Driver is in the course of transporting a Rider;

j.  Pursuant to Lyft's uniform TOS, Lyft prohibits Drivers from setting rates of pay for their services; rather, their rates are determined by Lyft;

k.  Pursuant to Lyft's uniform TOS, Lyft requires its Drivers to consent to receiving email communications and text messages from Lyft, which include message notification emails, emails or text messages informing Drivers of potential available Riders, and emails or text messages informing Drivers of Lyft's promotions. Drivers are required to pay for receiving these text messages at the rate applied by the Driver's mobile phone service provider;

l.  Pursuant to Lyft's uniform policy, Drivers must undergo a two hour training session during which Drivers are told how to interact and converse with Riders;

m.  Pursuant to Lyft's uniform policy, Drivers' vehicles are evaluated for aesthetic purposes, including cleanliness, and Drivers' vehicles must pass this appearance evaluation in order for Drivers to work for Lyft;

n.  Pursuant to Lyft's uniform TOS, Lyft retains the right to shut down the Lyft Platform and the Lyft application, thereby retaining the right to prevent Drivers from picking up Riders;

o.  Pursuant to Lyft's uniform TOS, Lyft, at its sole discretion, may make available promotion offers to Riders without consulting with its Drivers;

//

p. Pursuant to Lyft's uniform policy, Lyft retains the right to take adverse action against Drivers who do not work hours they are signed up to work;

q. Pursuant to Lyft's uniform policy, Lyft retains the right to take adverse action against Drivers who do not accept a request for a ride from a Rider;

r. Pursuant to Lyft's uniform policy, Lyft retains the right to take adverse action against Drivers who cancel requested rides prior to picking up the passenger;

s. Pursuant to Lyft's uniform policy, Drivers are required to watch training videos that instruct them on how to interact with Riders;

t. Pursuant to Lyft's uniform policy, Drivers are not permitted to transport Riders more than 60 miles;

u. Pursuant to Lyft's uniform policy, Lyft advertises that Drivers receive an average hourly rate of pay;

v. Pursuant to Lyft's uniform TOS, Lyft procures insurance that provides Drivers with automobile liability insurance;

w. Pursuant to Lyft's uniform policy, Lyft maintains records of Drivers' hours worked;

x. Pursuant to Lyft's uniform policy, Drivers are not permitted to hire their own employees to drive for Lyft; and

y. Pursuant to Lyft's uniform policy, Drivers are required to abide by Lyft's "Rules of the Road" and instructions on their available "FAQs."

18. Despite the fact that Drivers are, in fact, Lyft employees, Lyft, during the relevant time period, took 20% of the gratuity given by Riders to Drivers as an "administrative fee."

19. During the time period in which payments by Lyft Riders were voluntary donations, Lyft was prohibited from taking any portion of the gratuity given by Riders to Drivers (i.e., the "administrative fee") because, pursuant to Cal. Lab. Code § 351, such voluntary

payments were sole property of Lyft Drivers.

20.     Despite the fact that Drivers are, in fact, Lyft employees, Lyft nevertheless failed to pay its Drivers any wage, including minimum wage during the time period in which payments by Lyft Riders were voluntary donations because it is impermissible to credit gratuities given by Riders to Drivers to Lyft's minimum wage obligation under California law.

21.     Despite the fact that Drivers are, in fact, Lyft employees, Lyft nevertheless failed to provide its Drivers with itemized wage statements showing the information required by California Labor Code § 226.

22.     Despite the fact that Drivers are, in fact, Lyft employees, Lyft nevertheless failed to reimburse its Drivers for the mileage costs they necessarily incurred because Lyft Drivers must use automobiles to transport Riders.

## VI. CLASS ACTION ALLEGATIONS

**Plaintiffs' Claims for Conversion and First Claim for Violation of Cal. Bus. & Prof. Code § 17200, *et seq.***

23.     Plaintiffs' claims for conversion and their claims pursuant to Cal. Bus. & Prof. Code § 17200, *et seq.* are brought on behalf of themselves and all others similarly situated pursuant to the class action mechanism set forth in Federal Rule of Civil Procedure 23.

24.     This putative class is defined as:

> "All individuals who worked as Lyft Drivers in California during the time period in which payments by Lyft Riders were voluntary donations who had a gratuity payment from one or more Riders reduced by Lyft's administrative fee." [3]

25.     Plaintiffs hereafter refer to this putative class as the "Gratuity Class."

//

//

---

[3] Plaintiffs are informed and believe that Lyft's policies that underlie this action began in May 2012. Given the statutes of limitations on Plaintiffs' claims for conversion (three years) and pursuant to Cal. Bus. & Prof. Code § 17200, *et seq.*, (four years), no further temporal limitation on the class definition is required.

**A.    ASCERTAINABILITY**

26.    It is administratively feasible to determine the members of the Gratuity Class through Lyft's records because Lyft maintains all Drivers' personal information, including contact information and pay records.

**B.    NUMEROSITY**

27.    While Plaintiffs are unaware of the exact number of Lyft Drivers in California, they are informed and believe that there are hundreds if not thousands of Drivers geographically dispersed throughout California.

**C.    COMMONALITY**

28.    Members of the Gratuity Class share common issues of fact, including but not limited to:

      a.    Whether Drivers are subject to the uniform TOS and policies identified above; and

      b.    Whether, during the time period in which payments by Lyft Riders were donations voluntary, pursuant to Lyft's uniform TOS, Lyft took a 20% administrative fee from gratuities given to Drivers by Riders, regardless of the amount of the gratuity.

29.    Members of the Gratuity Class share common issues of law, including:

      a.    Whether members of the Gratuity Class were misclassified by Lyft as independent contractors under California law;

      b.    Whether Lyft unlawfully took as "administrative fees" gratuities given to members of the Gratuity Class in violation of Cal. Lab. Code § 351; and

      c.    Whether Lyft's conduct in violating of Cal. Lab. Code § 351 is an unlawful business practice pursuant to Cal. Bus. & Prof. Code § 17200, *et seq*.

//
//

30. The common issues of law can be answered with proof common to members of the Gratuity Class, including:

        a.  Lyft's TOS, to which Lyft and all Drivers must agree;

        b.  Lyft's policies and practices applicable to all Drivers, including policies that tend to show Drivers are in fact employees rather than independent contractors;

        c.  Lyft's policies or practices concerning its "administrative fee;" and

        d.  All other facts common to the Gratuity Class alleged above.

**D.   TYPICALITY**

31. Plaintiffs' claims are typical of the claims of all members of the Gratuity Class. First, Plaintiffs, like all members of the Gratuity Class, were misclassified by Lyft as independent contractors.

32. Second, Plaintiffs, like all members of the Gratuity Class, were harmed by Lyft's policy of taking an "administrative fee" from gratuities given by Riders to Drivers.

**E.   ADEQUACY**

33. Plaintiffs are members of the Gratuity Class and will fairly and adequately represent and protect the interests of the members of the Gratuity Class. Plaintiffs have no conflicts of interests with members of the Gratuity Class.

34. Counsel for Plaintiffs are competent and experienced in litigating employment-based class actions, including actions based on alleged misclassification.

**F.   PREDOMINANCE**

35. Common questions of law and fact predominate over individual issues in this action for several reasons. First, the issue of misclassification can be resolved with proof of Lyft policies applicable to all Drivers in the Gratuity Class, including but not limited to the Lyft's uniform TOS. Second, the issue of Lyft's liability under Cal. Lab. Code § 351 can be established as to all members of the Gratuity Class with proof that Lyft took an

"administrative fee" from every gratuity given by a Rider to a Driver during the time period in which payments by Lyft Riders were voluntary donations.

**G.    SUPERIORITY**

36.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the relatively small monetary value of the claims asserted by members of the Gratuity Class, most if not all members of the Gratuity Class would likely find the cost of individually litigating their claims against Lyft to be prohibitive. Further, thousands of individual proceedings in lieu of a class action would be an unnecessary burden on the court system as well as the parties. Additionally, many members of the Gratuity Class may be unaware that they have legal recourse against Lyft for the conduct alleged herein.

**VII. CLASS ACTION ALLEGATIONS**

**Plaintiffs' Minimum Wage Claims Pursuant to Cal. Lab. Code § 1194, Cal. Lab. Code § 1197, Wage Order 9 and Second Claim for Violation of Cal. Bus. & Prof. Code § 17200, *et seq.***

37.    Plaintiffs' claims pursuant to Cal. Lab. Code § 1194, Cal. Lab. Code § 1197, and Wage Order 9, as well as Plaintiffs' second claim for violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, for Lyft's failure to pay minimum wage are brought on behalf of themselves and all others similarly situated pursuant to the class action mechanism set forth in Federal Rule of Civil Procedure 23.

38.    This putative class is defined as:

> "All individuals who worked as Lyft drivers in California during the time period in which payments by Lyft Riders for Lyft rides were voluntary donations."[4]

//

---

[4] Plaintiffs are informed and believe that Lyft's policies that underlie this action began in May 2012. Given the statutes of limitations on Plaintiffs' claims for failure to pay minimum wage (three years) and their claims for violation of Cal. Bus. & Prof. Code § 17200 (four years) arising from their minimum wage claims, no temporal limitation on the class definition is required.

39.   Plaintiffs hereafter refer to this putative class as the "Minimum Wage Class."

**A.   ASCERTAINABILITY**

40.   It is administratively feasible to determine the members of the Minimum Wage Class through Lyft's records because Lyft maintains all Drivers' personal information, including contact information and driving time records.

**B.   NUMEROSITY**

41.   While Plaintiffs are unaware of the exact number of Lyft Drivers in California, they are informed and believe that there are hundreds if not thousands of Drivers geographically dispersed throughout the California.

**C.   COMMONALITY**

42.   Members of the Minimum Wage Class share common issues of fact, including but not limited to:

    a.   Whether Drivers are subject to the uniform TOS and policies identified above; and

    b.   Whether, pursuant to Lyft's uniform policy, Drivers are not paid minimum wage for hours worked.

43.   Members of the Minimum Wage Class share common issues of law, including:

    a.   Whether members of the Minimum Wage Class were misclassified by Lyft as independent contractors under California law;

    b.   Whether Lyft unlawfully failed to pay members of the Minimum Wage Class minimum wage as required by California law;

    c.   Whether Lyft's conduct in violating of Cal. Lab. Code § 1194, Cal. Lab. Code § 1197, and Wage Order 9 is an unlawful business practice pursuant to Cal. Bus. & Prof. Code § 17200, *et seq.*; and

    d.   Whether members of the Minimum Wage Class are entitled to liquidated damages for Lyft's failure to pay minimum wage.

44. The common issues of law can be answered with proof common to members of the Minimum Wage Class, including:

      a. Lyft's TOS, to which Lyft and all Drivers must agree;

      b. Lyft's policies and practices applicable to all Drivers, including policies that tend to show Drivers are in fact employees rather than independent contractors;

      c. Lyft's policies or practices concerning (or lack thereof) concerning its payment of minimum wage to Drivers; and

      d. All other facts common to the Minimum Wage Class alleged above.

**D.   TYPICALITY**

45. Plaintiffs' claims are typical of the claims of all members of the Minimum Wage Class. First, Plaintiffs, like all members of the Minimum Wage Class, were misclassified by Lyft as independent contractors.

46. Second, during the time period in which payments by Lyft Riders were voluntary donations, Plaintiffs, like all members of the Minimum Wage Class, were not paid wages for any hours worked for Lyft.

**E.   ADEQUACY**

47. Plaintiffs are members of the Minimum Wage Class and will fairly and adequately represent and protect the interests of the members of the Minimum Wage Class. Plaintiffs have no conflicts of interests with members of the Minimum Wage Class.

48. Counsel for Plaintiffs are competent and experienced in litigating employment-based class actions, including actions based on alleged misclassification.

**F.   PREDOMINANCE**

49. Common questions of law and fact predominate over individual issues in this action for several reasons. First, the issue of misclassification can be resolved with proof of Lyft policies applicable to all Drivers in the Minimum Wage Class, including but not limited

to the Lyft's uniform TOS. Second, the issue of Lyft's liability under Cal. Lab. Code § 1194, Cal. Lab. Code § 1197, Wage Order 9, and Cal. Bus. & Prof. Code § 17200, *et seq.*, can be established as to all members of the Minimum Wage Class with proof that Lyft does not pay any of its Drivers any wages.

## G.    SUPERIORITY

50.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the relatively small monetary value of the claims asserted by members of the Minimum Wage Class, most if not all members of the Minimum Wage Class would likely find the cost of individually litigating their claims against Lyft to be prohibitive. Further, thousands of individual proceedings in lieu of a class action would be an unnecessary burden on the court system as well as the parties. Additionally, many members of the Minimum Wage Class may be unaware that they have legal recourse against Lyft for the conduct alleged herein.

## VIII. CLASS ACTION ALLEGATIONS

### Plaintiffs' Claims Pursuant to Cal. Lab. Code § 226

51.    Plaintiffs' claims for inaccurate wage statements pursuant to Cal. Lab. Code § 226 is brought on behalf of themselves and all others similarly situated pursuant to the class action mechanism set forth in Federal Rule of Civil Procedure 23.

52.    This putative class is defined as:

      "All individuals who worked or currently work as Lyft drivers in California from January 1, 2013, through the disposition of this action." [5]

53.    Plaintiffs hereafter refer to this putative class as the "Wage Statement Class."

//

//

---

[5] The temporal limitation on this class is based on the January 1, 2013 amendment of Cal. Lab. Code § 226 to state "An employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide a wage statement."

**A.   ASCERTAINABILITY**

54.   It is administratively feasible to determine the members of the Wage Statement Class through Lyft's records because Lyft maintains all Drivers' personal information, including contact information.

**B.   NUMEROSITY**

55.   While Plaintiffs are unaware of the exact number of Lyft Drivers in California, they are informed and believe that there are hundreds if not thousands of Drivers geographically dispersed throughout California.

**C.   COMMONALITY**

56.   Members of the Wage Statement Class share common issues of fact, including but not limited to:

      a.   Whether Drivers are subject to the uniform TOS and policies above; and

      b.   Whether, pursuant to Lyft's business model, Drivers were not and are not provided with wage statements that comply with Cal. Lab. Code § 226.

57.   Members of the Wage Statement Class share common issues of law, including:

      a.   Whether members of the Wage Statement Class were misclassified by Lyft as independent contractors under California law; and

      b.   Whether Lyft unlawfully failed to provide members of the Wage Statement Class with wage statements that comply with Cal. Lab. Code § 226.

58.   The common issues of law can be answered with proof common to members of the Wage Statement Class, including:

      a.   Lyft's TOS, to which Lyft and all Drivers must agree;

      b.   Lyft's policies and practices applicable to all Drivers, including policies that tend to show Drivers are in fact employees rather than independent contractors;

     c.  Lyft's policies or practices (or lack thereof) concerning wage statements for its Drivers; and

     d.  All other facts common to the Wage Statement Class alleged above.

**D.  TYPICALITY**

59.  Plaintiffs' claims are typical of the claims of all members of the Wage Statement Class. First, Plaintiffs, like all members of the Wage Statement Class, were misclassified by Lyft as independent contractors.

60.  Second, Plaintiffs, like all members of the Wage Statement Class, never received a wage statement that complied with Cal. Lab. Code § 226.

**E.  ADEQUACY**

61.  Plaintiffs are members of the Wage Statement Class and will fairly and adequately represent and protect the interests of the members of the Wage Statement Class. Plaintiffs have no conflicts of interests with members of the Wage Statement Class.

62.  Counsel for Plaintiffs are competent and experienced in litigating employment-based class actions, including actions based on alleged misclassification.

**F.  PREDOMINANCE**

63.  Common questions of law and fact predominate over individual issues in this action for several reasons. First, the issue of misclassification can be resolved with proof of Lyft policies applicable to all Drivers, including but not limited to the Lyft TOS. Second, the issue of Lyft's liability under Cal. Lab. Code § 226 can be established with proof that Lyft never provided wage statements to its Drivers.

**G.  SUPERIORITY**

64.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the relatively small monetary value of the claims asserted by members of the Wage Statement Class, most if not all members of the Wage Statement Class would likely find the cost of individually litigating their claims

against Lyft to be prohibitive. Further, thousands of individual proceedings in lieu of a class action would be an unnecessary burden on the court system as well as the parties. Additionally, many members of the Wage Statement Class may be unaware that they have legal recourse against Lyft for the conduct alleged herein.

## IX. CLASS ACTION ALLEGATIONS

**Plaintiffs' Claims for Reimbursement Pursuant to Cal. Lab. Code § 2802 and Third Claim for Violation of Cal. Bus. & Prof. Code § 17200,** *et seq.*

65.  Plaintiffs' claims for reimbursement under Cal. Lab. Code § 2802, as well as Plaintiffs' fourth claim for violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, is brought on behalf of themselves and all others similarly situated pursuant to the class action mechanism set forth in Federal Rule of Civil Procedure 23.

66.  This putative class is defined as:

> "All individuals who worked or currently work as Lyft drivers in California." [6]

67.  Plaintiffs hereafter refer to this putative class as the "Reimbursement Class."

## A.   ASCERTAINABILITY

68.  It is administratively feasible to determine the members of the Reimbursement Class through Lyft's records because Lyft maintains all Drivers' personal information, including contact information and records of miles driven.

## B.   NUMEROSITY

69.  While Plaintiffs are unaware of the exact number of Lyft Drivers in California, they are informed and believe that there are hundreds if not thousands of Drivers geographically dispersed throughout California.

//

---

[6] Plaintiffs are informed and believe that Lyft's policies that underlie this action began in May 2012. Given the statutes of limitations on Plaintiffs' claims for reimbursement (three years) and their claims for violation of Cal. Bus. & Prof. Code § 17200 (4 years) arising from their reimbursement claims, no temporal limitation on the class definition is required.

**C.      COMMONALITY**

70.      Members of the Reimbursement Class share common issues of fact, including but not
limited to:

        a.   Whether Drivers are subject to the uniform TOS and policies identified
above; and

        b.   Whether pursuant to Lyft's uniform policy, Drivers are not reimbursed for
necessary and reasonable mileage costs.

71.      Members of the Reimbursement Class share common issues of law, including:

        a.   Whether members of the Gratuity Class were misclassified by Lyft as
independent contractors under California law;

        b.   Whether mileage costs incurred by Lyft Drivers are "necessary and
reasonable" business expenditures; and

        c.   Whether Lyft unlawfully failed to reimburse Drivers for mileage costs in
violation of Cal. Lab. Code § 2802.

72.      The common issues of law can be answered with proof common to members of the
Reimbursement Class, including:

        a.   Lyft's TOS, to which Lyft and all Drivers must agree;

        b.   Lyft's policies and practices applicable to all Drivers, including policies
that tend to show Drivers are in fact employees rather than independent
contractors;

        c.   The common nature of all Drivers' employment responsibilities (i.e.,
transporting Riders via automobile);

        d.   Lyft's policies or practices concerning mileage reimbursement; and

        e.   All other facts common to the Gratuity Class alleged above.

//

//

**D.   TYPICALITY**

73. Plaintiffs' claims are typical of the claims of all members of the Reimbursement Class. First, Plaintiffs, like all members of the Reimbursement Class, were misclassified by Lyft as independent contractors.

74. Second, Plaintiffs, like all members of the Reimbursement Class, were harmed by Lyft's policy of failing to pay Drivers for mileage costs.

**E.   ADEQUACY**

75. Plaintiffs are members of the Reimbursement Class and will fairly and adequately represent and protect the interests of the members of the Reimbursement Class. Plaintiffs have no conflicts of interests with members of the Reimbursement Class.

76. Counsel for Plaintiffs are competent and experienced in litigating employment-based class actions, including actions based on alleged misclassification.

**F.   PREDOMINANCE**

77. Common questions of law and fact predominate over individual issues in this action for several reasons. First, the issue of misclassification can be resolved with proof of Lyft policies applicable to all Drivers in the Gratuity Class, including but not limited to the Lyft's uniform TOS. Second, the issue of Lyft's liability under Cal. Lab. Code § 2802 and Cal. Bus. & Prof. Code § 17200 can be established as to all members of the Gratuity Class with proof that Lyft does not pay for mileage expenses incurred by any Lyft Drivers, and proof that all Drivers' mileage costs are necessarily incurred as a direct result of their employment with Lyft.

78. Further, Lyft has no policy in place that allowed or allows any Driver to request reimbursement for mileage.

**G.   SUPERIORITY**

79. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the relatively small monetary value of the

claims asserted by members of the Reimbursement Class, most if not all members of the Reimbursement Class would likely find the cost of individually litigating their claims against Lyft to be prohibitive. Further, thousands of individual proceedings in lieu of a class action would be an unnecessary burden on the court system as well as the parties. Additionally, many members of the Reimbursement Class may be unaware that they have legal recourse against Lyft for the conduct alleged herein.

## X. FIRST CLAIM

### Violation of Business & Professions Code § 17200, *et seq.*

### Arising from Violation of Cal. Lab. Code § 351

80. Plaintiffs, on behalf of themselves and members of the Gratuity Class, reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein.

81. Pursuant to California law, Lyft was and/or is the employer of Plaintiffs and members of the Gratuity Class.

82. Pursuant to Cal. Lab. Code § 351, it is unlawful for an employer to collect, take, or receive any gratuity or a part thereof that is paid, given to, or left for an employee by a patron.

83. During the time period in which payments by Lyft Riders were voluntary donations, Lyft unlawfully collected, took, or received a portion of the gratuities paid, given, or left by Riders to or for Drivers despite the fact that the full amount of the gratuities paid, given, or left by Riders to or for Drivers was the sole property of the Drivers.

84. Lyft's unlawful taking of gratuities constitutes an unlawful business practice prohibited by California Business & Professions Code § 17200, *et seq*. and is independently actionable under California Business & Professions Code § 17200, *et seq*.

//

//

85.   As a result of Lyft's unlawful conduct, Plaintiffs and members of the Gratuity Class suffered economic losses in the amount of the administrative fees deducted from the gratuities given to them by Riders and are entitled to restitution in that amount.

## XI.  SECOND CLAIM

### Conversion

86.   Plaintiffs, on behalf of themselves and members of the Gratuity Class, reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein.

87.   Pursuant to California law, Lyft was and/or is the employer of Plaintiffs and members of the Gratuity Class.

88.   Plaintiffs and members of the Gratuity Class had a right to possess the full amount of gratuities given to them by Riders. Such gratuities are considered property under California Law. *See* Cal. Lab. Code § 351.

89.   During the time period in which payments by Lyft Riders were voluntary donations, Lyft wrongfully and illegally took from Plaintiffs and members of the Gratuity Class a portion of the gratuities given to Plaintiffs and members of the Gratuity Class by Riders as an "administrative fee."

90.   Plaintiffs and members of the Gratuity Class suffered economic harm in the amount of the "administrative fees" taken from the gratuities given to them by Riders.

## XII.  THIRD CLAIM

### Violation of Cal. Lab. Code § 1194, Cal. Lab. Code § 1197, and Wage Order 9

91.   Plaintiffs, on behalf of themselves and members of the Minimum Wage Class, reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein.

//

//

92. Pursuant to California law, Lyft was and/or is the employer of Plaintiffs and members of the Minimum Wage Class and purposefully misclassified Plaintiffs and members of the Minimum Wage Class as independent contractors.

93. Cal. Lab. Code § 1194 states that any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

94. Cal. Lab. Code § 1197 states that the minimum wage is that set by the commission in the applicable wage order, in this case Wage Order 9 (applicable to transportation workers). Wage Order 9 incorporates by reference the minimum wage set by statute.

95. During the time period in which payments by Lyft Riders were voluntary donations, Plaintiffs and members of the Minimum Wage Class were not paid any wage for hours worked.

96. Accordingly, Plaintiffs and members of the Minimum Wage Class are entitled to minimum wage back pay and interest thereon, liquidated damages in the amount of the minimum wage back pay and interest thereon, reasonable attorneys' fees, costs of suit, and penalties.

## XIII.  FOURTH CLAIM

**Violation of Business & Professions Code § 17200, *et seq.***

**Arising from Violation of Cal. Lab. Code §§ 1194, Cal. Lab. Code § 1197 and Wage Order 9**

97. Plaintiffs, on behalf of themselves and members of the Minimum Wage Class, reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein.

98. Pursuant to California law, Lyft was and/or is the employer of Plaintiffs and members of the Minimum Wage Class.

99. Cal. Lab. Code § 1194 states that any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

100. Cal. Lab. Code § 1197 states that the minimum wage is that set by the commission in the applicable wage order, in this case Wage Order 9 (applicable to transportation workers). Wage Order 9 incorporates by reference the minimum wage currently set by statute.

101. During the time period in which payments by Lyft Riders were voluntary donations, Plaintiffs and members of the Minimum Wage Class were not paid any wage for hours worked.

102. Lyft's unlawful failure to pay minimum wage in accordance with the above provisions constitutes an unlawful business practice prohibited by California Business & Professions Code § 17200, *et seq*. and is independently actionable under California Business & Professions Code § 17200, *et seq*.

103. As a result of Lyft's unlawful conduct, Plaintiffs and members of the Minimum Wage Class suffered economic losses as a result of Lyft's failure to pay minimum wage and are entitled to restitution.

## XIV.  FIFTH CLAIM

### Violation of Cal. Lab. Code § 226

104. Plaintiffs, on behalf of themselves and members of the Wage Statement Class, reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein.

105. Pursuant to California law, Lyft was and/or is the employer of Plaintiffs and members of the Wage Statement Class and purposefully misclassified Plaintiffs and members of the Wage Statement Class as independent contractors.

//

106.   Cal. Lab. Code § 226 states that every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee and, beginning July 1, 2013, if the employer is a temporary services employer as defined in Section 201.3, the rate of pay and the total hours worked for each temporary services assignment.

107.   Lyft unlawfully failed to provide Plaintiffs and members of the Wage Statement Class with accurate itemized wage statements in writing showing gross wages earned, total hours worked, deductions, net wages earned, pay period, the name of the employee and the last four digits of his or her social security number, the legal name of the employer, and all applicable hourly rates.

*//*

108.   Plaintiffs and members of the Wage Statement Class "suffered injury" as defined in Cal. Lab. Code § 226 (as amended effective January 1, 2013) because they were not provided with a complete and accurate wage statement.

109.   The injuries suffered by Plaintiffs and members of the Wage Statement Class were as a result of Lyft's knowing and intentional failure to comply with Cal. Lab. Code § 226(a).

110.   Accordingly, Plaintiffs and each member of the Wage Statement Class are entitled to recover fifty dollars for the initial pay period in which a violation of § 226 occurred, and one hundred dollars for each violation of § 226 in a subsequent pay period, not to exceed a penalty of four thousand dollars per member of the Wage Statement Class.

## XV. SIXTH CLAIM

### Violation of Cal. Lab. Code § 2802

111.   Plaintiffs, on behalf of themselves and members of the Reimbursement Class, reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein.

112.   Pursuant to California law, Lyft was and/or is the employer of Plaintiffs and members of the Reimbursement Class.

113.   Cal. Lab. Code § 2802 requires an employer to indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties.

114.   Plaintiffs and members of the Reimbursement Class incurred unreimbursed mileage costs, including but not limited to costs for gasoline;

115.   Such mileage costs were incurred because Plaintiffs and members of the Reimbursement Class are Lyft Drivers and were therefore required to use automobiles to transport Riders; Such mileage costs were incurred necessarily in order for Plaintiffs and members of the Reimbursement Class to perform their job duties as automobile Drivers for Lyft.

//

116. Accordingly, Plaintiffs and each member of the Reimbursement Class are entitled to reimbursement for incurred mileage costs.

## XVI.  SEVENTH CLAIM

### Violation of Business & Professions Code § 17200, *et seq.*

### Arising from Violation of Cal. Lab. Code § 2802

117. Plaintiffs, on behalf of themselves and members of the Reimbursement Class, reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein.

118. Pursuant to California law, Lyft was and/or is the employer of Plaintiffs and members of the Reimbursement Class.

119. Cal. Lab. Code § 2802 requires an employer to indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties.

120. Plaintiffs and members of the Reimbursement Class incurred unreimbursed mileage costs, including but not limited to costs for gasoline;

121. Such mileage costs were incurred because Plaintiffs and members of the Reimbursement Class are Lyft Drivers and were therefore required to use automobiles to transport Riders;

122. Such mileage costs were incurred necessarily in order for Plaintiffs and members of the Reimbursement Class to perform their job duties as automobile Drivers for Lyft.

123. Lyft's unlawful failure to reimburse its Drivers in accordance with the above provision constitutes an unlawful business practice prohibited by California Business & Professions Code § 17200, *et seq.* and is independently actionable under California Business & Professions Code § 17200, *et seq.*

124. As a result of Lyft's unlawful conduct, Plaintiffs and members of the Reimbursement Class suffered economic losses as a result of Lyft's failure to reimburse for necessary work related expenses and are entitled to restitution.

## XVII. EIGHTH CLAIM

**Penalties Pursuant to the Labor Code Private Attorneys General Act of 2004**

**(Representative Action)**

125.   Plaintiffs, on behalf of current or former Lyft Drivers in California, reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein.

126.   Cal. Lab. Code § 2699 provides for civil penalties for violations of California Labor Code provisions that may be recovered through a civil action brought by an aggrieved employee.

127.   Plaintiffs and all current and former Lyft Drivers in California are aggrieved employees as defined by Cal. Lab. Code § 2699(c) because they suffered injury as a result the Labor Code violations committed by Lyft as described herein.

128.   Plaintiffs have complied with the notice requirement of Cal. Lab. Code § 2699.3 by sending written notice by certified mail to Defendant and to the California Labor & Workforce Development Agency ("LWDA") of the Labor Code violations asserted in this Complaint.

129.   It has been 33 days or more since the LWDA was notified of the Labor Code violations asserted in this Complaint, and the LWDA has not provided any notice that it will or will not investigate the alleged violations of which it was informed.

130.   Lyft has not cured the Labor Code violations of which it was informed.

## PRAYER FOR RELIEF

131.   Plaintiffs, on behalf of themselves and the members of each putative class, pray for relief as follows:

   a.     Certification of this action as a class action as described above;

   b.     Designation of Plaintiffs as representatives of the each putative class;

   c.     Designation of Plaintiffs' Counsel as Class Counsel for each putative class;

d.     Restitution pursuant to Plaintiffs' claim under Cal. Bus. & Prof. Code § 17200, *et seq.* arising from Defendant's violation of Cal. Lab. Code § 351, or, in the alternative, compensatory damages pursuant to Plaintiffs' conversion claim;

e.     Damages for failure to pay minimum wage pursuant to Cal. Lab. Code §§ 1194, 1194.2, 1197, and Wage Order 9, or, in the alternative, restitution pursuant to Plaintiffs' claim under Cal. Bus. & Prof. Code § 17200, *et seq.*

f.     Damages for failure to reimburse pursuant to Cal. Lab. Code § 2802, or, in the alternative, restitution pursuant to Plaintiffs' claim under Cal. Bus. & Prof. Code § 17200, *et seq.*;

g.     Statutory penalties pursuant to Cal. Lab. Code § 226;

h.     Civil penalties pursuant to the Labor Code Private Attorneys General Act of 2004;

i.     Injunctive relief pursuant to Cal. Bus. & Prof. Code § 17200, *et seq.*;

j.     Pre-judgment and post-judgment interest pursuant to Cal. Lab. Code § 1194 and Cal. Civ. Code § 3287;

k.     Attorneys' fees as provided by Cal. Code. Civ. P. § 1021.5, Cal. Lab. Code § 1194, and Cal. Lab. Code § 226, or as provided by the parties' agreement, if any; and

l.     Costs as provided by Cal. Lab. Code § 1194, Cal. Lab. Code § 226, Fed. R. Civ. P. 54(d), Local Rule 54-3, and/or Cal. Code Civ. P. § 1021 or as provided by the parties' agreement, if any.

//
//
//
//
//
//

1

2

**DEMAND FOR JURY TRIAL**

Plaintiffs, by and through their attorneys, hereby request a jury trial on all issues so

triable.

Dated: July 15, 2015                    Carlson Legal Services


By:   ___/s/  Matthew D. Carlson_____
                              Matthew D. Carlson
                              Attorney for Plaintiffs