Matthew D. Carlson (State Bar No. 273242)
CARLSON LEGAL SERVICES
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (510) 239-4710
Email: mcarlson@carlsonlegalservices.com

Shannon Liss-Riordan (*Pro Hac Vice*)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
Email: sliss@llrlaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK COTTER, ALEJANDRA MACIEL, and JEFFREY KNUDTSON, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>   v.<br><br>LYFT, INC.,<br><br>     Defendant. | **Case No.: 3:13-cv-04065-VC**<br><br>**Hon. Vince Chhabria**<br><br>**NOTICE OF MOTION AND MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hearing date: February 18, 2016<br>Time: 10:00 a.m.<br>Courtroom: 4 |

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................... 1

II.     RELEVANT FACTS....................................................................................... 2

  A.    LITIGATION HISTORY ................................................................................ 2

    1.  Plaintiffs' Claims ............................................................................... 2

    2.  Discovery and Motion Practice ......................................................... 3

    3.  Mediation History .............................................................................. 4

      i.    The Risk Posed by Lyft's Arbitration Provisions............................. 4

      ii.   The Risk of The Court Declining to Certify a Class ....................... 7

      iii.  The Risk of Proceeding to Trial With a Certified Class................. 8

      iv.   The Risk of Lyft Successfully Appealing Orders in Plaintiffs' Favor ........... 8

  B.    THE PROPOSED SETTLEMENT AGREEMENT ................................... 9

III.    LEGAL STANDARD ................................................................................. 13

IV.     DISCUSSION.............................................................................................. 15

  A.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE ........... 15

    1.  Plaintiffs Satisfy Each of the Four Rule 23(a) Prerequisites................. 15

      i.    The Settlement Class is Sufficiently Numerous and Ascertainable. ............. 15

      ii.   Class Members Share Common Issues of Law and Fact.............................. 16

      iii.  Plaintiffs' Claims are Identical to Class Members' Claims......................... 17

      iv.   Plaintiffs and Their Counsel Will Adequately Represent the Class. ............. 18

    2.  Plaintiffs Satisfy the Rule 23(b)(3) Predominance and Superiority Requirements. ................... 18

      i.    Common Issues Predominate Over Individualized Issues............................ 19

      ii.   A Class Action Is Superior to Tens of Thousands of Individual Actions ..... 20

    3.  Plaintiffs' Proposed Class Notice Is Sufficient. ................................. 22

  B.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT.... 22

    1.  The Monetary and Non-Monetary Terms of the Settlement Are Within the Range of Possible Approval. ................... 23

      a.    There Are Substantial Risks Associated With Further Litigation. ............... 23

      b.    The Settlement Provides Substantial Non-Monetary and Monetary Value To Drivers............... 24

2.    The Settlement Is the Product of Years of Litigation, Substantial Discovery, and Multiple Mediation Sessions Under the Guidance of Judge Ryu. .................... 26

3.    The Settlement Has No Obvious Deficiencies. ....................................... 27

4.    The Settlement Does Not Unfairly Grant Preferential Treatment to Any Class Members. .......................................................................................... 28

V.    CONCLUSION ...................................................................................... 29

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Table of Authorities**

**Cases**

*Acosta v. Trans Union, LLC*
   243 F.R.D. 377 (C.D. Cal. 2007)................................................................26

*Alonzo v. Maximus, Inc.*
   275 F.R.D. 513 (C.D. Cal. 2011)................................................................20

*Am. Exp. Co. v. Italian Colors Rest.*
   133 S. Ct. 2304 (2013) ................................................................5

*Amaral v. Cintas Corp. No. 2*
   163 Cal. App. 4th 1157 (2008) ................................................................7

*Amchem Prods., Inc. v. Windso*
   521 U.S. 591 (1997) ................................................................15

*Amey v. Cinemark USA Inc*
   No. 13-CV-05669-WHO, 2015 WL 2251504 (N.D. Cal. May 13, 2015)................................7

*Armstrong v. Davis*
   275 F.3d 849 (9th Cir. 2001) ................................................................17

*AT&T Mobility LLC v. Concepcion*
   563 U.S. 333 (2011) ................................................................5

*Ayala v. Antelope Valley Newspapers, Inc.*
   59 Cal. 4th 522 (2014) ................................................................19

*Barnes v. The Equinox Grp., Inc.*
   No. C 10-3586 LB, 2013 WL 3988804 (N.D. Cal. Aug. 2, 2013) ........................28

*Bond. v. Ferguson Enterprises, Inc.*
   No. 1:09-CV-01662, 2011 WL 284962 (E.D. Cal. Jan. 25, 2011) ......................27

*Boyd v. Bank of Am. Corp.*
   300 F.R.D. 431 (C.D. Cal. 2014)................................................................20

*Boyd v. Bechtel Corp.*
   485 F.Supp. 610 (N.D.Cal.1979)................................................................26

*Churchill Village, L.L.C. v. General Elec. Co.*
   361 F.3d 566 (9th Cir. 2004) ................................................14, 22, 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Cobarruviaz v. Maplebear, Inc.*
No. 15-CV-00697-EMC, 2015 WL 6694112 (N.D. Cal. Nov. 3, 2015) ............................... 5, 6

*Cotton v. Hinton*
559 F.2d 1326 (5th Cir. 1977) ................................................................................. 23

*Covillo v. Specialtys Cafe*
No. C-11-00594 DMR, 2014 WL 954516 (N.D. Cal. Mar. 6, 2014) ............................... 29

*Custom LED, LLC v. eBay, Inc*
No. 12-CV-00350-JST, 2013 WL 6114379 (N.D. Cal. Nov. 20, 2013) ................................. 27

*Dalton v. Lee Publications, Inc.*
270 F.R.D. 555 (S.D. Cal. 2010) ............................................................................. 21

*Deaver v. Compass Bank*
No. 13-CV-00222-JSC, 2015 WL 4999953 (N.D. Cal. Aug. 21, 2015) ........................ passim

*Doe v. D.M. Camp & Sons*
624 F.Supp.2d 1153 (E.D.Cal.2008) ........................................................................ 7

*Dudum v. Carter's Retail, Inc.*
No. 14-CV-00988-HSG, 2015 WL 5185933 (N.D. Cal. Sept. 4, 2015) ................................ 13

*Estrella v. Freedom Fin'l Network*
2010 U.S. Dist. LEXIS 61236 (N.D. Cal. 2010) ....................................................... 16

*Hanlon v. Chrysler Corp.*
150 F.3d 1011 (9th Cir. 1988) ............................................................................. passim

*Hanon v. Dataproducts Corp.*
976 F.2d 497 (9th Cir.1992) ................................................................................. 17

*Harris v. Vector Mktg. Corp.*
No. 08–5198, 2011 WL 1627973 (N.D.Cal. Apr. 29, 2011). .................................... 26

*Harris v. Vector Mktg. Corp.*
No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878 (N.D. Cal. Apr. 29, 2011) ................. 14

*Hendricks v. StarKist Co*
No. 13-CV-00729-HSG, 2015 WL 4498083 (N.D. Cal. July 23, 2015) ........................... 28

*Hodges v. Akeena Solar, Inc.*
274 F.R.D. 259 (N.D. Cal. 2011) ........................................................................... 18

*Hopson v. Hanesbrands, Inc.*
No. CV–08–0844, 2009 WL 928133 (N.D.Cal. Apr. 3, 2009) ................................. 29

*In re High-Tech Employee Antitrust Litig.*
No. 11-CV-02509-LHK, 2015 WL 5159441 (N.D. Cal. Sept. 2, 2015) ................................. 25

*In re Mego Fin. Corp. Sec. Litig.*
213 F.3d 454 (9th Cir.2000) ................................. 29

*In re Netflix Privacy Litig.*
No. 5:11-CV-00379-EJD, 2013 U.S. Dist. LEXIS 37286 (N.D. Cal. Mar. 18, 2013) ............. 14

*In re Omnivision Techs., Inc.*
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................. 24

*In re Tableware Antitrust Litig.*
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................. 1, 22, 23

*In re TFT-LCD (Flat Panel) Antitrust Litig.*
No. M 07-1827 SI, 2011 WL 1753784 (N.D. Cal. May 9, 2011) ................................. 6

*Iskanian v. CLS Transp. Los Angeles, LLC*
59 Cal. 4th 348 (2014) ................................. 7

*Kamar v. Radio Shack Corp.*
254 F.R.D. 387 (C.D. Cal. 2008) ................................. 20

*Knight v. Red Door Salons, Inc.*
No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ................................. 28

*Krzesniak v. Cendant Corp.*
No. C 05-05156 MEJ, 2007 U.S. Dist. LEXIS 47518 (N.D. Cal. June 20, 2007) ................. 15

*Levin v. Caviar, Inc.*
Civ. A. No. 15-cv-01285 (N.D. Cal.) ................................. 5

*Loewen v. Lyft, Inc.*
No. 15-CV-01159-EDL, 2015 WL 5440729 (N.D. Cal. Sept. 15, 2015) ................................. 5, 6

*Lozano v. AT&T Wireless Services, Inc.*
504 F.3d 718 (9th Cir. 2007) ................................. 17

*Lundell v. Dell, Inc.*
No. CIVA C05-3970 JWRS, 2006 WL 3507938 (N.D. Cal. Dec. 5, 2006) ................................. 23

*Lusby v. GameStop Inc.*
  No. C12-03783 HRL, 2015 WL 1501095 (N.D. Cal. Mar. 31, 2015) .............................. 28, 29

*Marciano v. DoorDash, Inc.*
  Civ. A. No. 115-cv-287843 (Santa Clara Sup. Ct.) .................................................... 5

*Marisol v. Giuliani*
  126 F.3d 372 (2nd Cir. 1997) ................................................................................ 17

*Mazur v. eBay Inc.*
  257 F.R.D. 563 (N.D.Cal.2009) ............................................................................ 15

*McClellan v. SFN Grp., Inc.*
  No. C 10-5972 SBA, 2012 WL 2367905 (N.D. Cal. June 21, 2012) ...................................... 23

*Miller v. Ghirardelli Chocolate Co.*
  No. 12-CV-04936-LB, 2015 WL 758094 (N.D. Cal. Feb. 20, 2015) .............................. 23, 24

*Monterrubio v. Best Buy Stores, L.P.*
  291 F.R.D. 443 (E.D. Cal. 2013) ........................................................................... 25

*Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*
  No. CV123224FMOAGRX, 2015 WL 7422597 (C.D. Cal. Nov. 16, 2015) .......................... 20

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*
  221 F.R.D. 523 (C.D. Cal. 2004) ..................................................................... 13, 23

*Nen Thio v. Genji, LLC*
  14 F. Supp. 3d 1324 (N.D. Cal. 2014) ................................................................... 27

*Noll v. eBay, Inc.*
  309 F.R.D. 593 (N.D. Cal. 2015) .................................................................... 20, 21

*Norris-Wilson v. Delta-T Grp., Inc.*
  270 F.R.D. 596 (S.D. Cal. 2010) ......................................................................... 20

*O'Connor v. Boeing N. Am., Inc.*
  184 F.R.D. 311 (C.D.Cal.1998) .......................................................................... 15

*O'Connor v. Uber Techs., Inc.*
  No. 13-CV-03826-EMC, 2015 WL 8292006 (N.D. Cal. Dec. 9, 2015) ....................... 5, 8, 20

*O'Connor v. Uber Techs., Inc.*
  No. C-13-3826 EMC, 2015 WL 5138097 (N.D. Cal. Sept. 1, 2015) ..................... 16, 19, 20

*Officers for Justice v. Civil Serv. Comm'n*

   688 F.2d 615 (9th Cir. 1982) ................................................................. 14, 23, 24

*Opalinski v. Robert Half Int'l Inc.*

   761 F.3d 326 (3d Cir. 2014) ..................................................................................... 6

*Ortiz v. CVS Caremark Corp.*

   No. C–12–05859 EDL, 2014 WL 1117614 (N.D.Cal. Mar.19, 2014) ...................... 7

*Rannis v. Recchia*

   380 F. App'x 646 (9th Cir. 2010) ........................................................................... 15

*Rodriguez v. Haye*

   591 F.3d 1105 (9th Cir. 2010) ................................................................................ 17

*Sakkab v. Luxottica Retail N. Am., Inc.*

   803 F.3d 425 (9th Cir. 2015) .................................................................................... 7

*Singer v. Becton Dickinson & Co.*

   No. 08-CV-821-IEG (BLM), 2010 WL 2196104 (S.D. Cal. June 1, 2010) ............ 24

*Sotelo v. MediaNews Grp., Inc.*

   207 Cal. App. 4th 639 (2012) ................................................................................. 20

*Staton v. Boeing Co.*

   327 F.3d 938 (9th Cir.2003) ................................................................................... 13

*Tan v. GrubHub, Inc.*

   Civ. A. No. 15-cv-051228 (N.D. Cal.) ...................................................................... 5

*Tijero v. Aaron Bros., Inc.*

   No. C 10-01089 SBA, 2013 WL 60464 (N.D. Cal. Jan. 2, 2013) ........................... 28

*Tokoshima v. Pep BoysManny Moe & Jack of California*

   No. C-12-4810-CRB, 2014 WL 1677979 (N.D. Cal. Apr. 28, 2014) ..................... 20

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL–CIO v. ConocoPhillips Co.*

   593 F.3d 802 (9th Cir.2010) ................................................................................... 15

*Vasquez v. Coast Valley Roofing, Inc.*

   670 F. Supp. 2d 1114 (E.D. Cal. 2009) .................................................................. 15

*Villegas v. J.P. Morgan Chase & Co.*

   No. CV 09-00261 SBA EMC, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ....... 26

*Vinh Nguyen v. Radient Pharm. Corp.*
  No. 11–cv–00406, 2014 WL 1802293 (C.D.Cal. May 6, 2014) ............................................. 28

*Vizcaino v. Microsoft Corp.*
  290 F.3d 1043 (9th Cir. 2002) ................................................................................. 24

*Wal-Mart Stores, Inc. v. Dukes*
  131 S. Ct. 2541 (2011) .......................................................................................... 16

*Yadira v. Fernandez*
  No. C-08-05721 RMW, 2011 WL 4101266 (N.D. Cal. Sept. 8, 2011) ..................................... 7

*York v. Starbucks Corp.*
  No. CV 08-07919 GAF PJWX, 2012 WL 10890355 (C.D. Cal. Nov. 1, 2012) ........................ 6

*Zenelaj v. Handybook Inc.*
  82 F. Supp. 3d 968 (N.D. Cal. 2015) ........................................................................ 5

**Statutes**

Cal. Bus. & Prof. Code § 17200 ................................................................................ 3

Cal. Lab. Code § 1174 ............................................................................................ 4

Cal. Lab. Code § 1182 ............................................................................................ 3

Cal. Lab. Code § 1194 ............................................................................................ 3

Cal. Lab. Code § 1197 ............................................................................................ 3

Cal. Lab. Code § 1198 ............................................................................................ 3

Cal. Lab. Code § 201 ............................................................................................. 3

Cal. Lab. Code § 202 ............................................................................................. 3

Cal. Lab. Code § 203 ............................................................................................. 3

Cal. Lab. Code § 226 ............................................................................................. 3

Cal. Lab. Code § 2699 ........................................................................................ 3, 7

Cal. Lab. Code § 2802 ............................................................................................ 3

Cal. Lab. Code § 351 ............................................................................................. 3

Cal. Lab. Code § 510 ............................................................................................. 3

Cal. Lab. Code § 512 ............................................................................................. 3

**Rules**

Federal Rule of Civil Procedure 23 ....................................................................... passim

**Other Authorities**

Industrial Welfare Commission Wage Order No. 9................................................ 3, 17

Manual for Complex Litig., Third, § 30.41 (1995)..................................................... 14

**TO DEFENDANT AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE**

**NOTICE** that on Thursday, February 18, 2016, at 10:00 a.m., or as soon thereafter as the matter can be heard before the Honorable Vince Chhabria, in Courtroom 4, 17th Floor, U.S. District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA, 94102, Plaintiffs will and hereby do move the Court pursuant to Federal Rule of Civil Procedure 23 for an Order:

(1) preliminarily approving the Settlement Agreement between Plaintiffs and Lyft, Inc., dated January 26, 2016, on the grounds that its terms are sufficiently fair, reasonable, and adequate for notice to be issued to the class;

(2) certifying the proposed settlement class for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23(c);

(3) approving the form and content of the proposed class notice and notice plan;

(4) appointing Lichten & Liss-Riordan, P.C. and Carlson Legal Services to represent the class as class counsel;

(5) appointing Garden City Group as Settlement Administrator;

(6) scheduling a hearing regarding final approval of the proposed settlement, Class Counsel's request for attorneys' fees and costs, and enhancement payments to the named Plaintiffs; and

(7) granting such other and further relief as may be appropriate.

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities below; the Declaration of Shannon Liss-Riordan filed concurrently herewith; all supporting exhibits filed herewith; all other pleadings and papers filed in this action; and any argument or evidence that may be presented at the hearing in this matter.

## I.     INTRODUCTION

Pursuant to Federal Rule of Procedure Rule 23, Plaintiffs Patrick Cotter, Alejandra Maciel, and Jeffrey Knudtson move this court for an order preliminarily approving a proposed class action settlement agreement ("Settlement" or "Agreement") entered into by Plaintiffs and Defendant Lyft, Inc.  The Settlement follows years of hard-fought litigation and was achieved with the assistance of Magistrate Judge Donna Ryu, who oversaw four separate mediation sessions. The Settlement Agreement is attached hereto as Exhibit 1.

The Agreement has two primary components: a non-reversionary payment in the amount of $12,250,000, and forward-looking non-monetary relief.  The forward-looking non-monetary component of the settlement includes a number of changes to Lyft's business practices, described in detail below, the most significant of which require Lyft to change its Terms of Service to (1) remove Lyft's current at-will termination provision and replace it with a provision that allows Lyft to deactivate drivers only for specific delineated reasons or after notice and an opportunity to cure period is provided, and (2) provide that Lyft will pay for the arbitration fees and costs unique to arbitration for claims brought by a driver against Lyft related to a driver's deactivation, pay-related issues, or alleged employment relationship with Lyft.  Together, the non-monetary changes provide Drivers a real benefit and a practical mechanism through which they can challenge terminations that they contend violate Lyft's contract and disputes relating to compensation.

The Settlement readily satisfies the standard for preliminary approval—it is within the range of possible approval to justify sending notice to class members and scheduling final approval proceedings. *See In re Tableware Antitrust Litig*., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

Accordingly, Plaintiffs seek an order:  (1) granting preliminary approval of the Settlement, (2) certifying a Settlement Class for settlement purposes only, (3) approving the manner and forms of giving notice to the Class, (4) appointing Lichten & Liss-Riordan, P.C. and

Carlson Legal Services to represent the class as class counsel; (5) appointing Garden City Group as Settlement Administrator, and (6) establishing a timetable for final approval of the Settlement.

## II.   RELEVANT FACTS

## A.   LITIGATION HISTORY

### 1.   Plaintiffs' Claims

This case is a putative class action brought on behalf of California Lyft Drivers[1] against Defendant Lyft, Inc.  Through a mobile phone application (the "Lyft Platform"), individuals who seek a ride ("Rider(s)") are "matched" with a nearby person who is willing to transport the Rider to his or her destination via automobile ("Driver(s)"). Plaintiffs contend that Lyft misclassified them and all other Lyft Drivers in California as independent contractors and that they are instead employees entitled to protection under the California Labor Code.

Plaintiffs have asserted statutory claims pursuant to Cal. Lab. Code § 2802 (failure to reimburse for work-related expenses); Cal. Lab. Code §§ 1182.12, 1194, 1194.2, 1197, 1197.1 and Industrial Welfare Commission Wage Order No. 9 ("Wage Order 9") (failure to pay minimum wage); Cal. Lab. Code § 226 (failure to furnish accurate wage statements). Plaintiffs have also asserted a common law conversion claim arising from Lyft's failure to remit all gratuities to Drivers, and a claim pursuant to Cal. Bus. & Prof. Code § 17200, *et seq.* predicated on each of the above Labor Code violations and additionally predicated on violation of Cal. Lab. Code § 351 (unlawful taking of gratuities), and a claim for penalties pursuant to the Labor Code Private Attorneys General Act of 2004 ("PAGA"). Dkt. No. 144.[2]

---

[1]       This case was initially filed as a national class action. *See* Dkt. No. 1. However, on August 7, 2014, the Court ruled that Plaintiffs could proceed on behalf of only California Lyft Drivers. Dkt. No. 51.

[2]       In addition, for settlement purposes, Plaintiffs have amended their Complaint to add additional related claims against Lyft arising from their alleged misclassification of Drivers, including claims under Cal. Lab. Code § 510, 1194, 1198, and Wage Order 9 (failure to pay overtime wages); Cal. Lab. Code §§ 226.7, 512, and Wage Order 9 (failure to provide meal periods); Cal. Lab. Code § 226.7 and Wage Order 9 (failure to authorize and permit rest periods); Cal. Lab. Code §§ 201, 202, and 203 (failure to pay wages when due); (cont'd)

### 2.     Discovery and Motion Practice

In the nearly two and a half years this case has been pending, the parties have engaged in extensive discovery. Plaintiffs have propounded and received Lyft's responses to 79 document requests, 66 interrogatories, and 13 requests for admission. Liss-Riordan Decl. at ¶ 2. Plaintiffs have taken three depositions of Lyft's persons most knowledgeable concerning eight different topics and 25 subtopics. Liss-Riordan Decl. at ¶ 3. At the time the parties reached this settlement, depositions pursuant to Rule 30(b)(6) concerning nine additional topics, ten interrogatories, eight document requests, and a third party deposition subpoena issued to a former Lyft manager were pending. Liss-Riordan Decl. at ¶ 4.

In response to Plaintiffs' written discovery, and in connection with the parties' mediation sessions with Judge Ryu, Lyft has produced thousands of documents and provided data that has allowed Plaintiffs to make an informed decision regarding Lyft's potential damages and penalty exposure in this case. Liss-Riordan Decl. at ¶ 29.

In addition, Lyft has propounded substantial written discovery to each of Plaintiffs Cotter (185 document requests, 35 interrogatories, 38 requests for admission), Maciel (181 document requests, 35 interrogatories, 38 requests for admission), and Knudtson (23 document requests, 20 interrogatories, 36 requests for admission). Liss-Riordan Decl. at ¶ 5. Plaintiffs searched for and provided numerous documents (250 by Cotter, 275 by Maciel, and 1,202 by Knudtson). *Id.* Additionally, Cotter and Maciel were each deposed for a full day; Maciel flew to San Francisco from Mexico specifically for her deposition. Liss-Riordan Decl. at ¶ 6.

The parties have engaged in motion practice relating to the substantive merits of this action, via cross-motions for summary judgment, both of which the Court denied, finding that the case would need to be tried to a jury. Dkt. No. 94.

//

---

Cal. Lab. Code § 1174 (failure to maintain accurate payroll records); and Wage Order 9 (failure to pay for reporting time). *See* Exh. E.

At the time the parties reached this proposed settlement, Plaintiffs were in the final stages of preparing a motion for class certification. (Liss-Riordan Decl. at ¶ 7.) Lyft had made clear that it intended to vigorously oppose the motion on numerous grounds, most significantly on grounds that Plaintiffs could not proceed on a classwide basis due to arbitration and class waiver provisions in Lyft's contracts with its Drivers. Liss-Riordan Decl. at ¶ 8.

### 3.    Mediation History

At the parties' March 31, 2015, case management conference, the Court suggested that there might be a "third way" to resolve this case, and suggested that the parties mediate the case with the assistance of Judge Ryu, an experienced Magistrate Judge with extensive involvement in class action wage and hour litigation, both as a judge and in her private practice as an employment lawyer prior to her appointment.

The parties accepted the Court's suggestion, and, beginning on June 5, 2015, engaged in four formal, in-person mediation sessions with Judge Ryu. Liss-Riordan Decl. at ¶ 9. In connection with these sessions, Lyft provided extensive confidential information necessary for Plaintiffs to evaluate potential damages and penalties, discussed below.

On November 2, 2015, the parties reached an agreement in principle to resolve this case. Liss-Riordan Decl. at ¶ 10. Since then, the parties have engaged in extensive discussions to finalize the details of the agreement. *Id.*

Plaintiffs' decision to accept the terms of this agreement was based upon Counsel's experience, in light of the known benefits of the resolution, and weighed against the risks of continued litigation, including the following:

### i.    *The Risk Posed by Lyft's Arbitration Provisions*

Every Lyft Driver is subject to an arbitration provision included in Lyft's Terms of Service. Liss-Riordan Decl. at ¶ 12. Drivers who have worked for Lyft since May 8, 2014 (approximately 75 percent of all Drivers) are subject to an arbitration provision with an express class action waiver, while all other Drivers are subject to an arbitration provision without an express class action waiver. Liss-Riordan Decl. at ¶ 13. Plaintiffs' Counsel, and no doubt the

Court, is cognizant of the fact that arbitration agreements have become major roadblocks for class action wage and hour litigation since the United States Supreme Court's decisions in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), and *Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304 (2013). Lyft's arbitration agreement threatened to prove to be such a roadblock in this case, as it has already withstood a challenge to its enforceability by another federal court in this district. *See Loewen v. Lyft, Inc.*, No. 15-CV-01159-EDL, 2015 WL 5440729 (N.D. Cal. Sept. 15, 2015) (compelling individual arbitration of consumer claims asserted against Lyft). *See also* Liss-Riordan Decl. at ¶¶ 14-15.

Plaintiffs' Counsel has litigated the enforceability of arbitration provisions extensively in the context of other "sharing economy" cases, and courts have regularly compelled individual arbitration. *See, e.g.*, *Levin v. Caviar, Inc.*, Civ. A. No. 15-cv-01285 (N.D. Cal.), Dkt. 43 (compelling claims to arbitration); *Zenelaj v. Handybook Inc.*, 82 F. Supp. 3d 968, 979 (N.D. Cal. 2015) (granting motion to compel arbitration); *Cobarruviaz v. Maplebear, Inc.*, No. 15-CV-00697-EMC, 2015 WL 6694112, *8-10 (N.D. Cal. Nov. 3, 2015) (compelling individual arbitration); *see also Marciano v. DoorDash, Inc.*, Civ. A. No. 115-cv-287843 (Santa Clara Sup. Ct.) (motion to compel arbitration pending), *Tan v. GrubHub, Inc.*, Civ. A. No. 15-cv-051228 (N.D. Cal.) (motion to compel arbitration anticipated).[3] *See also* Liss-Riordan Decl. at ¶ 15. While Plaintiffs' Counsel did successfully argue to Judge Chen that the arbitration provisions in *O'Connor v. Uber Techs., Inc.*, 2015 WL 8292006 (N.D. Cal. Dec. 9, 2015), are unenforceable because they contained illegal PAGA waivers coupled with a non-severability clause,[4] the Lyft arbitration provision contains an express severability clause, precluding a similar argument in

---

[3]     In addition to these California cases, *see also Bekele v. Lyft, Inc.,* Civ. A. No. 1:15-cv-11650 (D. Mass.) (motion to compel arbitration pending since April 2015); *Emmanuel v. Handy Techs., Inc.*, Civ. A. No. 1:15-cv-12914 (D. Mass) (motion to compel arbitration pending since August 2015); *Busick v. Maplebear, Inc. d/b/a Instacart*, JAMS No. 1100081511 (Butler, Arb.) (filed in arbitration).

[4]     Judge Chen's order on this issue has been appealed. *See* Ninth Cir. Appeal No. 15-17420, 15-17422.

this case.  *See also* Liss-Riordan Decl. at ¶ 15.Further, another court has already ruled that the Lyft arbitration provision does not contain enough substantively unconscionable terms so as to render the entire provision unenforceable. *See Loewen*, 2015 WL 5440729.[5] *Id.*

In sum, Plaintiffs gave substantial consideration to the impact that Lyft's arbitration provisions could have on this litigation and concluded that the provisions created what may well be enormous hurdles to class certification. Liss-Riordan Decl. at ¶ 17.

Plaintiffs also considered the potential for PAGA claims to provide for an avenue for non-individual relief. Liss-Riordan Decl. at ¶ 18. However, Plaintiffs consider this potential avenue limited for several reasons: First, the relief is primarily for the benefit of the state, rather than the workers. Cal. Lab. Code § 2699(i). Second, a court may reduce awarded PAGA penalties if the Court concludes, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory. Cal. Lab. Code § 2699(e)(2); *see also York v. Starbucks Corp.*, No. CV 08-07919 GAF PJWX, 2012 WL 10890355, at *10 (C.D. Cal. Nov. 1, 2012) ("PAGA's section 2699(e) (2) provides the Court with the ability to fashion an appropriate penalty in this case that will not offend notions

---

[5]    While Plaintiffs would argue that Lyft waived its right to compel arbitration as to all class members, Lyft would argue that it may have done so for the Named Plaintiffs, but not with respect to unnamed class members. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2011 WL 1753784, *4 (N.D. Cal. May 9, 2011) (holding that defendants did not waive right to compel arbitration as to unnamed plaintiffs even though they did not move to compel arbitration against named plaintiffs prior to class certification). Additionally, while Plaintiffs would also argue that, because Lyft implemented a revised arbitration provision with an express class waiver during the pendency of the litigation, the provision would not be enforceable, Judge Chen recently rejected this very argument. *See O'Connor*, Civ. A. No. 13-3826, Dkt. 435 at 5 (allowing Uber to continue distributing revised arbitration agreements to putative class members—although not certified class members—during the pendency of the case). Further, while Plaintiffs would argue that individuals subject to arbitration provisions without an express class action waiver could proceed on a classwide basis – though perhaps in arbitration – Plaintiffs recognize that a number of courts have compelled individual arbitration even in the absence of an express class waiver. *See, e.g. Cobarruviaz*, 2015 WL 6694112, at *10 (compelling individual arbitration pursuant to arbitration provision without express class waiver); *see also Opalinski v. Robert Half Int'l Inc.*, 761 F.3d 326, 335 (3d Cir. 2014) *cert. denied*, 135 S. Ct. 1530, 191 L. Ed. 2d 558 (2015). *See also* Liss-Riordan Decl. at ¶ 16.

of due process."); *see also Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1214 (2008) (holding that a PAGA penalty in the amount of one-third of damages award was "proportional to [defendant's] misconduct."). Given the potentially large PAGA penalties at issue, Plaintiffs recognize the risk that any PAGA award could be significantly reduced. <u>Third</u>, Plaintiffs also considered the possibility Lyft could argue that Plaintiffs' PAGA claim is too unmanageable for trial, given the size of the class and the potential for individualized assessments of whether and in what pay period each Driver was subject to Labor Code violations. *See Ortiz v. CVS Caremark Corp.,* No. C–12–05859 EDL, 2014 WL 1117614, at *4 (N.D.Cal. Mar.19, 2014) (finding PAGA claims unmanageable); *see also Amey v. Cinemark USA Inc*, No. 13-CV-05669-WHO, 2015 WL 2251504, at *16 (N.D. Cal. May 13, 2015) (noting "concerns about manageability related to the numerous 'aggrieved employees' that the plaintiff sought to represent.") <u>Fourth</u>, Plaintiffs are mindful of the fact that Lyft would likely argue that PAGA penalties arising from claims that also provide for damages constitutes an impermissible double recovery, or at least is a basis for the Court to dramatically limit a PAGA award. *Yadira v. Fernandez*, No. C-08-05721 RMW, 2011 WL 4101266, at *3 (N.D. Cal. Sept. 8, 2011) citing *Doe v. D.M. Camp & Sons*, 624 F.Supp.2d 1153, 1174 (E.D.Cal.2008) (recognizing that "[w]here state law provides for statutory damages, the trial court's discretion may be called upon to prevent double recovery"). <u>Fifth</u>, while the California Supreme Court and Ninth Circuit have held that PAGA waivers are unenforceable, and that this rule is not preempted by the Federal Arbitration Act, *see Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 384 (2014) *cert. denied*, 135 S. Ct. 1155 (2015), *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 431 (9th Cir. 2015)*,* this conclusion has not yet been reviewed by the United States Supreme Court.

ii.      *The Risk of The Court Declining to Certify a Class*

While Plaintiffs believe that class certification of this action would be appropriate regardless of whether there is a settlement, they also recognize that Lyft would be able to assert a number of arguments in opposition to a motion for class certification, which if successful,

could result in no recovery whatsoever for the vast majority, if not all, Lyft Drivers. Liss-Riordan Decl. at ¶¶ 19-20.[6]

### iii. The Risk of Proceeding to Trial With a Certified Class

Even assuming that Plaintiffs could have a class certified, Plaintiffs would have to convince every member of the jury that Drivers were misclassified, then also prevail on their substantive claims, and then also prove damages and applicable penalties, each of which Lyft would vigorously oppose. Liss-Riordan Decl. at ¶ 21.

### iv. The Risk of Lyft Successfully Appealing Orders in Plaintiffs' Favor

Lastly, the settlement was agreed to in light of Plaintiffs' recognition that, should they surmount the various hurdles just described, Lyft would undoubtedly appeal orders relating to class certification, arbitration, and/or the substantive merits of the case. Liss-Riordan Decl. at ¶ 22.

Particularly given the risks that arbitration agreements have created for plaintiffs in pursuing class action wage and hour claims, as discussed herein, it was and is Counsel's belief that this settlement is a fair resolution of highly disputed claims, and is a significant achievement in obtaining classwide relief in the face of an arbitration agreement that has already been enforced by a federal court in this district. Liss-Riordan Decl. at ¶¶ 23, 73.

---

[6] Notably, the parties agreed to the essential terms of this agreement after the initial class certification order in *O'Connor*, in which Judge Chen determined that the misclassification issue could be adjudicated on a classwide basis but held that the reimbursement claim, on the record in front of the Court at the time, could not. The parties in this case reached an agreement in principle while this question was still an open one in *O'Connor*, before Judge Chen issued the Supplemental Class Certification Order (on December 9, 2015), in which he did certify the reimbursement class, based on extensive supplemental filings and additional argument. *O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC, 2015 WL 8292006 (N.D. Cal. Dec. 9, 2015). Moreover, Plaintiffs recognize that there is no guarantee that this Court would necessarily have agreed with Judge Chen's analysis concerning classwide adjudication of the independent contractor defense, classwide adjudication of Plaintiffs' substantive claims, or the impact of arbitration agreements on the class certification analysis. Liss-Riordan Decl. at ¶20. Indeed, this Court has voiced doubts over whether Lyft Drivers with "sparse work schedules" would have similar claims to Drivers with "heavier or more regular schedules," thus suggesting that it might not permit classwide resolution of all Lyft Drivers' claims. Dkt. No. 94 at 18:15-18.

**B.      THE PROPOSED SETTLEMENT AGREEMENT**

As noted above, the parties' agreement provides for monetary compensation to class members as well as forward-looking non-monetary relief. The monetary component of the agreement is a $12,250,000 non-reversionary Settlement Fund. Exh. 1 at ¶ 30. The Settlement Fund, less costs of claims administration, attorneys' fees and costs, and class representative enhancements ("Net Settlement Fund"), will be distributed to Class Members pursuant to a plan of allocation. Exh. 1 at ¶¶ 39-50.

The plan of allocation for distributing the Net Settlement Fund is based on a points system that reflects the amount of work performed by Drivers. *Id.* Each Driver who submits a claim (either by mail, or by electronic means) will be allocated a number of points reflecting the amount of time each she or he was in "Ride Mode," which includes the time during which a Driver was en route to pick up a rider after accepting a ride request, and the time during which a Driver was actually transporting a rider.[7] *Id.* The base number of points allocated to Drivers who make claims will be enhanced in two circumstances:

(1) Drivers who worked more than 30 hours per week in at least 50 percent of their weeks worked (and who therefore arguably have stronger claims than other Drivers)[8] are allocated a 50% increase in the number of points; and

(2) Drivers who worked for Lyft in the time period during which payments for rides were voluntary and during which Lyft took an "administrative fee" from such payments, including amounts beyond the suggested payment amounts (January 14, 2013-December 23,

---

[7]      For the time period before Lyft maintained data of time spent in Ride Mode, the baseline points assignment to each class member will be determined by the number of rides provided. The parties have reasonably estimated the average duration of a ride in this period and allocated points accordingly.

[8]      While Plaintiffs do not concede that Drivers who work longer or more consistent hours necessarily have stronger claims, they do recognize that the Court has indicated its views otherwise in its summary judgment order. (*See* Dkt. No. 94 at 18:15-18 ("particularly given Cotter and Maciel's relatively sparse work schedules, one could easily imagine a reasonable jury concluding that they were independent contractors, even if other Lyft drivers with heavier or more regular schedules might properly be deemed employees").

2013), and who therefore may have additional damages (under Plaintiffs' gratuity claim), are allocated a 20% increase in points. *Id.*

Having reviewed extensive data provided by Lyft during the settlement negotiations, Plaintiffs note that, pursuant to this formula, Drivers who, more often than not, have worked close to full time hours for Lyft (*i.e.* those Drivers who fall into category (1) above, as they drove for 30 hours or more per week for more than half of the weeks they provided Lyft rides)—who arguably have the strongest claims on the merits—will receive larger payments than Drivers who provided few Lyft rides. *Id.*[9]

Under the Agreement, notice will be distributed to class members via email, with follow-up mailed notice for those class members for whom email is returned as undeliverable. Exh. 1 at ¶ 55; Exhs. B and C (class notice and summary notice). Settlement payments will be made by direct payment via an electronic transfer of funds if possible, or by check if necessary or by request. Exh. 1 at ¶ 46.  In order to obtain a payment, class members will be able to make a claim electronically, or send in a simple form, through which they can confirm that their electronic payment information on file with Lyft is up to date (or request to receive a payment by check). *Id.* at ¶¶ 39, 20(f); *see also* class notice and summary notice. Approximately one month prior to the Final Approval hearing, a reminder will be sent to class members who have not yet submitted claims. *Id.* at ¶ 59. The Administrator will also make additional efforts to locate and encourage the filing of claims by class members who have not yet submitted claims whose settlement shares are likely to be greater than $200 (for instance, by mailing notice in addition to emailing notice).  *Id.*[10]

//

---

[9]      A review of the data reveals that, of the more than 100,000 Drivers who have provided rides for Lyft passengers in California, the vast majority drove for less than a combined total of approximately 50 hours (*i.e.* less than two weeks of <u>total</u> work). Liss-Riordan Decl. at ¶ 65.

[10]      The Agreement also provides for additional reminder notices as may be reasonably necessary to encourage the submission of claims by these class members, prior to the final distribution of funds. *Id.*

NOTICE OF MOTION AND MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:13-CV-04065-VC

10

Following the initial distribution, the Settlement Administrator will make reasonable, good faith efforts to distribute payments to Class Members who have not successfully received payment (either because their electronic payment information is no longer valid or they did not cash the check sent to them). *Id.* at ¶ 46. After 180 days, there will be a second distribution of all unclaimed funds to those class members whose residual shares would likely be at least $50. Id. If, following the second distribution, there are any remaining funds that have not been able to be distributed (i.e., electronic payment information is out of date and the administrator is not able to, with reasonable attempts, locate the class member to obtain updated information, or checks continue to remain uncashed), such funds will be distributed to the parties' agreed upon, and court approved, *cy pres* beneficiary, which will have a direct and substantial nexus to the interests of the class. *Id.* at ¶ 75.

Significantly, this settlement is non-reversionary. *Id.* at ¶ 31. No funds from the settlement, including unclaimed funds, will revert to Lyft; the full amount of the Net Settlement Fund, other than a small portion that may go to *cy pres*, will be paid to Drivers. *Id.*

In addition to monetary compensation, Lyft has also agreed as part of this settlement to implement the following forward-looking changes to its business practices:

(1) Lyft will no longer be able to deactivate Drivers at will, for any reason, and instead will only be able to deactivate Drivers for specific, delineated reasons or after providing notice and an opportunity to cure.  Drivers will be able to contend that a deactivation for any other reason constitutes breach of contract by Lyft and, as described below, will have a realistic avenue to challenge any such breaches by Lyft. This limitation on Lyft's ability to deactivate Drivers at will, and corresponding agreement to deactivate Drivers for only specific reasons or after notice and an opportunity to cure, provides a significant protection to Lyft Drivers that they do not currently have and is more in line with an independent contractor relationship.

(2) Drivers who are subject to deactivation for: (i) insufficient passenger ratings, (ii) excessive cancellations, (iii) safety reasons, or (iv) no longer qualifying to provide rides or to

operate their vehicles, will be given notice and opportunity to cure the issues prior to termination of the agreement.

(3) For any Drivers who want to challenge their deactivation, or threat of deactivation, as not being justified under the Terms of Service, Lyft will pay all arbitration-specific fees for the Drivers to arbitrate these claims before a neutral arbitrator.

(4) Lyft will also pay all arbitration-specific fees for any claims brought by Drivers relating to Driver compensation or relating to an alleged employment relationship.[11]

(5) Lyft will implement a pre-arbitration negotiation process (which Drivers will have the option to participate in), which will provide Drivers with the opportunity to resolve minor disputes with Lyft without having to invoke the arbitration process.

(6) Lyft will provide additional information about potential passengers to Drivers prior to the Driver accepting any ride request, such as passenger ratings, estimated time to passenger pickup, and more detailed passenger profile information, to assist them in making the decision as to whether to accept or decline the ride request.  Because, under the Terms of Service, Lyft will no longer be able to deactivate Drivers for any reason in Lyft's discretion, and will not be able to deactivate Drivers for declining ride requests, Drivers will be able to reject ride requests without fear of deactivation.

(7) Lyft will create a "favorite" driver option pursuant to which Drivers who are designated by Riders as a "favorite" are entitled to certain benefits. This new feature will provide additional benefits to Drivers who provide the best Lyft rides. *Id.* at ¶ 37; Exh. D (summary of non-monetary terms).

In exchange for these monetary and non-monetary concessions, Lyft Drivers who have given at least one ride in California will release all claims arising from their alleged

---

[11]    As Lyft's current contract requires arbitration cost-splitting between drivers and Lyft, this agreement by Lyft to pay arbitration fees will provide Drivers with a realistic opportunity to challenge their deactivation, or threat of deactivation, as well as vindicate their rights concerning the most common areas of dispute that Drivers have with the company, without having to pay significant private arbitration-related fees.

misclassification as independent contractors. *Id.* at ¶¶ 64-72. Except for the named plaintiffs, the release does not provide for release of claims unrelated to this core allegation, *e.g.* claims for discrimination. *Id.*

While the agreement does not require Lyft to reclassify its Drivers as employees, it will provide significant benefits and added protections to Lyft Drivers that they do not currently have, require changes to Lyft's business practices that are more consistent with an independent contractor relationship, and provide monetary relief proportional to both the strength of the Drivers' claims and the amount of time they have Driven for Lyft. *Id.* at ¶ 37; 39-50.

### III.   LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Dudum v. Carter's Retail, Inc.*, No. 14-CV-00988-HSG, 2015 WL 5185933, at *2 (N.D. Cal. Sept. 4, 2015) *citing Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.1992).

"Approval under 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004) *citing* Manual for Complex Litig., Third, § 30.41 (1995)).

At the preliminary approval stage, where the parties have reached a settlement agreement prior to class certification, the Court "must peruse the proposed compromise to ratify both the propriety of class certification for settlement purposes and the fairness of the settlement." *Deaver v. Compass Bank*, No. 13-CV-00222-JSC, 2015 WL 4999953, at *4 (N.D. Cal. Aug. 21, 2015) *citing Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir.2003). The purpose of the Court's preliminary evaluation of the proposed Settlement is to determine whether it is within "the range of reasonableness," and thus whether notice to the Settlement Class of the terms and conditions of the settlement, and the scheduling of a formal fairness hearing, are

worthwhile. "At the preliminary approval stage, the Court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval…. Closer scrutiny is reserved for the final approval hearing." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878, at *23-24 (N.D. Cal. Apr. 29, 2011) (citing cases and treatises).

The approval of a proposed settlement of a class action is a matter of discretion for the trial court. *Churchill Village, L.L.C. v. General Elec. Co.*, 361 F.3d 566, 575 (9th Cir. 2004*)*. In exercising that discretion, however, courts recognize that as a matter of sound policy, settlements of disputed claims are encouraged and a settlement approval hearing should "not be turned into a trial or rehearsal for trial on the merits." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), cert. denied sub nom. *Byrd v. Civil Serv. Comm'n*, 459 U.S. 1217 (1983) ("OFJ"). Furthermore, courts must give "proper deference" to the settlement agreement, because "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988) ("Hanlon") (quotations omitted).

Moreover, the fairness and reasonableness of a settlement agreement is presumed where, as here, "that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel." *In re Netflix Privacy Litig.*, No. 5:11-CV-00379-EJD, 2013 U.S. Dist. LEXIS 37286, *11 (N.D. Cal. Mar. 18, 2013).

//

//

1

## IV.    DISCUSSION

2

## A.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

3

Pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), Plaintiffs propose that the Court certify

4

the following class for settlement purposes: "All Drivers who gave at least one Ride in

5

California during the Settlement Class Period." The proposed settlement class can be certified

6

under Rule 23 if Plaintiffs satisfy the four prerequisites identified in Rule 23(a) as well as one of

7

the three subdivisions of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

8

### 1.    Plaintiffs Satisfy Each of the Four Rule 23(a) Prerequisites

9

"The four requirements of Rule 23(a) are commonly referred to as 'numerosity,'

10

'commonality,' 'typicality,' and 'adequacy of representation' (or just 'adequacy'), respectively."

11

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union,*

12

*AFL–CIO v. ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir.2010).

13

#### i.    The Settlement Class is Sufficiently Numerous and Ascertainable.

14

The numerosity requirement mandates that the class be "so numerous that joinder of all

15

members is impracticable." Fed.R.Civ.P. 23(a)(1). In general, courts find the numerosity

16

requirement satisfied when a class includes at least 40 members. *Rannis v. Recchia*, 380 F.

17

App'x 646, 651 (9th Cir. 2010); *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114,

18

1121 (E.D. Cal. 2009) (numerosity is presumed at a level of 40 members); *Krzesniak v. Cendant*

19

*Corp.*, No. C 05-05156 MEJ, 2007 U.S. Dist. LEXIS 47518, *19 (N.D. Cal. June 20, 2007)

20

("numerosity may be presumed when the class comprises forty or more members"). In addition,

21

the class should be "ascertainable," *Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D.Cal.2009),

22

meaning that the class definition must be "definite enough so that it is administratively feasible

23

for the court to ascertain whether an individual is a member." *O'Connor v. Boeing N. Am., Inc.*,

24

184 F.R.D. 311, 319 (C.D.Cal.1998).

25

Here, more than 100,000 Drivers have given at least one Lyft ride in California.

26

Accordingly, the settlement class is both sufficiently numerous and ascertainable.

27

//

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

    ii.  *Class Members Share Common Issues of Law and Fact.*

In order to satisfy Rule 23(a)(2)'s commonality requirement, a plaintiff must "affirmatively demonstrate" that their claims depend upon at least one common contention the truth or falsity of which "will resolve an issue that is central to the validity" of each one of the class members' "claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). That is, the lawsuit must call upon the court or jury to decide at least one factual or legal question that will generate a common answer "apt to drive the resolution of the litigation." *Id.*; *see also id.* at 2556 (holding that "even a single common question" will suffice to satisfy Rule 23(a)) (citation and internal modifications omitted).

The "commonality requirement has been 'construed permissively,' and its requirements deemed minimal." *Estrella v. Freedom Fin'l Network*, 2010 U.S. Dist. LEXIS 61236 (N.D. Cal. 2010) (*quoting Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-1020 (9th Cir. 1998)).

District courts throughout this circuit have found that "commonality is met when the proposed class of plaintiffs asserts that class members were improperly classified as independent contractors instead of employees." *O'Connor v. Uber Techs., Inc.*, No. C-13-3826 EMC, 2015 WL 5138097, at *8 (N.D. Cal. Sept. 1, 2015) ("Most notably, the common legal issue of whether all class members should be classified as employees or independent contractors is one whose answer would not only be "apt to drive the resolution of the litigation," but could in fact be outcome determinative.") (collecting cases where commonality was established when the underlying question was whether class members were independent contractors).

Here, all class members share the key question of whether they have been improperly classified as independent contractors, which could be resolved primarily with Lyft's Terms of Service, as detailed below. Additionally, class members share common questions of law with respect to their substantive claims, specifically whether Lyft's policies and practice relating to reimbursement, gratuities, payment of wages, pay statements, meal and rest periods, payment of wages upon Driver separation from the company, record keeping, and reporting time pay violate

the Labor Code and/or Wage Order 9. These common questions are sufficient to meet the requirements of Rule 23(a)(2).

               iii.     *Plaintiffs' Claims are Identical to Class Members' Claims.*

Rule 23(a)(3)'s typicality requirement focuses on the relationship of facts and issues between the class and its representatives. *Hanlon*, 150 F.3d at 1020. "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Id.* "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992) (citation and internal quotation marks omitted).

"Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (*quoting Hanlon*, 150 F. 3d at 1020). "In determining whether typicality is met, the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718, 734 (9th Cir. 2007). Thus, typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (*quoting Marisol v. Giuliani*, 126 F.3d 372, 376 (2nd Cir. 1997)).

Here, the named Plaintiffs and all Class Members have been injured by their uniform classification as independent contractors, and all assert the same claims and request the same damages and/or penalties arising therefrom. Accordingly, Plaintiffs meet the Rule 23(a)(3) typicality requirement.

//

//

*iv.     Plaintiffs and Their Counsel Will Adequately Represent the Class.*

Members of a class may sue as representatives on behalf of the class only if they "will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Here, neither Plaintiffs nor their counsel have any conflicts of interest with other class members. Plaintiffs do not seek any different relief from the relief that they seek on behalf of all other class members. Additionally, the Named Plaintiffs have demonstrated that they are familiar with the basis for the suit and their responsibilities.[12] *See Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 267 (N.D. Cal. 2011).

Plaintiffs' Counsel has also demonstrated their ability to zealously represent the interests of the class by, for example, defeating Lyft's motion for summary judgment, by obtaining the information necessary to evaluate the merits and damages at issue in the case, by obtaining information necessary to successfully move for class certification, and by negotiating a resolution of this matter that provides Lyft drivers with monetary relief as well as significant non-monetary forward-looking relief. As documented in Plaintiffs' previous filings, Plaintiffs' Counsel, and in particular Shannon Liss-Riordan, have substantial experience litigating and settling complex actions involving the same issues raised by this case.[13]

## 2.     Plaintiffs Satisfy the Rule 23(b)(3) Predominance and Superiority Requirements.

Rule 23(b)(3) requires the Court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a

---

[12]     *See* Dkt. Nos. 69-5; 69-6 (excerpts of deposition transcripts in support of Plaintiffs' Motion for Summary Judgment).

[13]     Dkt. No. 118-6-10 (Declaration of Shannon Liss-Riordan in Support of Motion to Appoint Interim Class Counsel and supporting exhibits); Dkt. No. 118-2 (Declaration of Matthew D. Carlson in Support of Motion to Appoint Interim Class Counsel).

class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). These provisions are referred to as the "predominance" and "superiority" requirements. *See Hanlon*, 150 F.3d at 1022–1023.

i.      *Common Issues Predominate Over Individualized Issues*

To meet the Rule 23(b)(3) predominance requirement in an independent contractor misclassification class action, both (1) the independent contractor defense and (2) substantive claims must be resolvable with classwide proof.  *O'Connor*, 2015 WL 5138097, at *8.

In *O'Connor*, Judge Chen determined that Uber's independent contractor defense could be resolved on a classwide basis under the common law *Borello* test because each of the *Borello* factors could be assessed with common proof. *O'Connor*, 2015 WL 5138097, at *16 citing *Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522, 533 (2014) (alteration in original) (analyzing the "primary" *Borello* factor, the right to control); *see also O'Connor*, 2015 WL 5138097, at *22 ("every single *Borello* secondary factor can be adjudicated on a classwide basis using common proof.")

The same holds true here. With respect to the "right to control" factor, each version of Lyft's Terms of Service includes an at-will termination provision that permits Lyft to "terminate" Drivers "at any time, for any or no reason, without explanation," and each version of Lyft's Terms of Service provides Lyft with the express reservation of the right to terminate for what it considers "inappropriate conduct." *See* Dkt. Nos. 69-7, 69-8, 69-9, 69-10; *see also Ayala*, 59 Cal.4th at 533 (uniform right to terminate the services of putative class members is the strongest possible evidence that classwide assessment of employment status is appropriate.) Lyft has also uniformly maintained the unfettered *right* to impose on its Drivers rules or standards as it sees fit. (Dkt. Nos. 69-26 (Lyft "Rules of the Road," 69-27 to 69-49 (various Lyft answers to "FAQs"). The one aspect of drivers' work that Lyft does *not* have unfettered right to control – their work schedules – may weigh in Lyft's favor as a matter of *liability*, but because Lyft *uniformly* exercises little or no control over work schedules, this in fact weighs in favor of

class certification. *O'Connor*, 2015 WL 5138097, at *17.[14]

Additionally, Plaintiffs' substantive claims are appropriate for classwide resolution, as liability with respect to each hinges on Lyft's policies or practices.[15]

> ## ii.   A Class Action Is Superior to Tens of Thousands of Individual Actions

"[T]o meet the requirement of superiority, a plaintiff must show that a class action is the "most efficient and effective means of resolving the controversy." *Noll v. eBay, Inc.*, 309 F.R.D. 593, 604 (N.D. Cal. 2015). "Where recovery on an individual basis would be dwarfed by the

---

[14]    Additionally, as in *O'Connor*, Plaintiffs assert that all eight secondary *Borello* factors are also resolvable on a classwide basis in this case: (1) Per each of Lyft's Terms of Service, all Lyft drivers are required to be the "sole user" of their account, and therefore cannot set up their own transportation companies to contract with Lyft or hire their own employees and/or contractors to drive for Lyft; (2) all Lyft Drivers have one and only job responsibility for Lyft – driving; (3) Lyft has uniformly required that Drivers have only the skill necessary to obtain an ordinary driver's license in order to drive for Lyft; (4) Lyft and its Drivers have made the same investments in instrumentalities over time: Drivers have provided their own vehicles, insurance, and cellular phones, and Lyft has provided the Lyft application and supplemental insurance; (5) each of Lyft's Terms of Service provide that the contracts are for an open-ended duration, until such time as one party terminates the agreement; (6) all Lyft Drivers are uniformly paid pursuant to Lyft's non-negotiable formula on a per-ride basis; and (7) all Lyft Drivers' work is part of the regular business of Lyft; and (8) Lyft's Terms of Service have consistently stated that all Drivers are purportedly independent contractors.

[15]    *See O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC, 2015 WL 8292006, at *15 (N.D. Cal. Dec. 9, 2015) (Uber drivers' reimbursement claim appropriate for class treatment); *O'Connor*, 2015 WL 5138097, at *30 (Uber drivers' gratuity claim appropriate for class treatment); *Tokoshima v. Pep BoysManny Moe & Jack of California*, No. C-12-4810-CRB, 2014 WL 1677979, at *6 (N.D. Cal. Apr. 28, 2014) ("Plaintiffs' minimum wage claim rises and falls on the legality of a common, company-wide policy."); *Boyd v. Bank of Am. Corp.*, 300 F.R.D. 431, 440 (C.D. Cal. 2014) (overtime class and wage statement claims appropriate for class treatment); *Sotelo v. MediaNews Grp., Inc.*, 207 Cal. App. 4th 639, 654 (2012) ("A class ... may establish liability by proving a uniform policy or practice by the employer that has the effect on the group of making it likely that group members will [] miss rest/meal breaks."); *Norris-Wilson v. Delta-T Grp., Inc.*, 270 F.R.D. 596, 611 (S.D. Cal. 2010) (waiting time claims appropriate for class treatment); *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 400 (C.D. Cal. 2008) *aff'd sub nom. Kamar v. RadioShack Corp.*, 375 F. App'x 734 (9th Cir. 2010) (reporting time claim appropriate for class treatment); *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc*., No. CV123224FMOAGRX, 2015 WL 7422597, at *31 (C.D. Cal. Nov. 16, 2015) (section 1174 claim appropriate for class treatment); *Alonzo v. Maximus, Inc.*, 275 F.R.D. 513 (C.D. Cal. 2011) (UCL claims predicated on Labor Code violations appropriate for class treatment).

cost of litigating on an individual basis, this factor weighs in favor of class certification." *Id.*
Class adjudication of misclassification-based cases is particularly appropriate, as "it would be
far more efficient to resolve the question of employment status on a class-wide, rather than
individual, basis." *Dalton v. Lee Publications, Inc.*, 270 F.R.D. 555, 565 (S.D. Cal. 2010).
"From either a judicial or litigant viewpoint, there is no advantage in individual members
controlling the prosecution of separate actions. There would be less litigation or settlement
leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon*, 150
F.3d at 1023.

Here, a class action would be the superior method of litigating the claims of tens of
thousands of Lyft Drivers in California for several reasons: First, a jury would be able to resolve
the issue of whether Lyft Drivers throughout California have been misclassified, dramatically
reducing the inefficiency of having the question resolved on an individual basis. Second, a jury
would also be able to resolve issues surrounding class members' substantive claims on a
classwide basis, again reducing the inefficiency of having those questions resolved on an
individual basis. Third, individual proceedings over damages that for the vast majority of
Drivers will likely not exceed $1,000 (for example, Plaintiff Cotter's likely damages are
estimated to be approximately $411.21($335.78 for expense reimbursement plus $12.57 for
withheld gratuities)) are both inefficient and unrealistic. Fourth, if required to proceed outside of
this class proceeding, all Drivers would be subject to an arbitration provision that incorporates
the American Arbitration Association Commercial Rules, which, on their face, require the filing
party to pay significant filing fees and a portion of the arbitrator's compensation. Under these
rules, it would cost most, if not all, Drivers $1,550 in administrative fees, *plus* arbitrator
compensation, to pursue the claims raised here.[16]  As a practical matter, this deterrent would
essentially eliminate the possibility of recovery for all but the most motivated Drivers.

---

[16]     *See* www.adr.org → Commercial Arbitration Rules and Mediation Procedures → View
Fee Schedule.  Although Plaintiffs would challenge the enforceability of this fee-splitting
provision, the result is not assured. (*See* Liss-Riordan Decl. at ¶¶ 24-28, Exhs. A-D thereto.)

For all of these reasons, the proposed class should be certified for settlement purposes.

### 3.    Plaintiffs' Proposed Class Notice Is Sufficient.

For any class certified under Rule 23(b)(3), class members must be afforded the best notice practicable under the circumstances, which includes individual notice to all members who can be identified through reasonable effort. *Deaver v. Compass Bank*, No. 13-CV-00222-JSC, 2015 WL 4999953, at *10 (N.D. Cal. Aug. 21, 2015). The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). *Id.* citing Fed.R.Civ.P. 23(c)(2)(B). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Id.* citing *Churchill*, 361 F.3d at 575 (internal quotation marks omitted).

Here, Plaintiffs' proposed Class Notice satisfies each of the above requirements and should be approved by the Court. *See* Exh. B.

## B.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT.

Preliminary approval of a settlement and notice to the class is appropriate if it (1) falls within the range of possible approval; (2) is the product of serious, informed, noncollusive negotiations, (3) has no obvious deficiencies; and (4) does not improperly grant preferential treatment to class representatives or segments of the class. *Deaver*, 2015 WL 4999953, at *6; *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). At this stage, "the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out." *Id.*

"In conducting this evaluation, it is neither for the court to reach any ultimate conclusions regarding the merits of the dispute, nor to second guess the settlement terms."

*McClellan v. SFN Grp., Inc.*, No. C 10-5972 SBA, 2012 WL 2367905, at *2 (N.D. Cal. June 21, 2012) citing *Officers for Justice v*, 688 F.2d at 625.

Counsel's judgment that the Settlement is fair and reasonable is entitled to great weight. *See Churchill*, 361 F.3d at 576-77 (Ninth Circuit took into account the views of class counsel and defendants' counsel in support of the settlement); *OFJ*, 688 F.2d at 625 (same).[17]  In fact, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *NRTC*, 221 F.R.D. at 528 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). Indeed, there is generally "an initial presumption of fairness when a proposed class settlement, which was negotiated at arms' length by counsel for the class, is presented for court approval." *Newberg* § 11.41.

### 1.     The Monetary and Non-Monetary Terms of the Settlement Are Within the Range of Possible Approval.

The Court must determine whether the proposed settlement falls within the range of possible approval. To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiff's expected recovery balanced against the value of the settlement offer, in light of the risks of further litigation. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080. "When determining the value of a settlement, courts consider both the monetary and nonmonetary benefits that the settlement confers." *Miller v. Ghirardelli Chocolate Co.*, No. 12-CV-04936-LB, 2015 WL 758094, at *5 (N.D. Cal. Feb. 20, 2015).

#### a.     There Are Substantial Risks Associated With Further Litigation.

A careful risk/benefit analysis must inform Counsel's valuation of a class's claims. *Lundell v. Dell, Inc*., No. CIVA C05-3970 JWRS, 2006 WL 3507938, at *3 (N.D. Cal. Dec. 5,

---

[17]     *See also Nat'l Rural Telcoms. Coop.*, 221 F.R.D. at 528 ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight").

2006) (approving settlement that was "the product of uncertainty and careful risk/benefit analyses on both sides")

As discussed above, there are four substantial risks of further litigation: (1) that Lyft could successfully compel individual arbitration of class members' claims; (2) that Plaintiffs would not succeed in obtaining class certification; (3) that Plaintiffs would not obtain a unanimous verdict on the misclassification issue and/or on their substantive claims; and (4) the risks on appeal.

        b.    *The Settlement Provides Substantial Non-Monetary and Monetary Value To Drivers.*

With these risks in mind, the next step of this analysis is the evaluation of the non-monetary and monetary terms of the settlement agreement. *Miller*, 2015 WL 758094, at *5.

The most valuable aspects of this settlement agreement may well be the non-monetary components, discussed above. These terms provide practical and on-going benefits to Class Members, and strongly support preliminary approval. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002) ("Incidental or non-monetary benefits conferred by the litigation are a relevant circumstance."); *Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *5 (S.D. Cal. June 1, 2010) (holding that non-monetary benefits to the class members weighed in favor of granting final approval of the settlement).

With respect to the monetary terms of the settlement, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice*, 688 F.2d at 628. This is due, in large part, to the potential pitfalls of further litigation. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) ("Plaintiffs here have agreed to accept a smaller certain award rather than seek the full recovery but risk getting nothing."). Thus, the monetary value of the settlement need not meet any particular percentage threshold of the overall potential value of the case. *Id*. Additionally, "finality and speed of recovery" weigh in favor of approval, especially

where there is a risk that the Class could receive less by proceeding through litigation. *Deaver*, 2015 WL 8526982, at *7.

Here, Plaintiffs have analyzed the potential monetary value of their claims if they were to succeed in proving their misclassification claim.  Based on extensive data provided by Lyft, Plaintiffs have calculated that Lyft's likely exposure to damages and penalties–should Plaintiffs succeed in opposing arbitration, obtaining class certification, prevailing at trial, and upholding the verdict on appeal–is just over $70,000,000. (Discussed in depth at Liss-Riordan Decl. at ¶¶ 29-73.) Thus, the $12,250,000 monetary component of the settlement is just under 20% of this estimated potential value. This places the monetary value of the settlement well within the range of possible approval. *See In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5159441, at *4 (N.D. Cal. Sept. 2, 2015) (approving settlement valued at 14% of available damages).[18] And, significantly, as discussed above, all net settlement funds will be distributed to Drivers; no funds will revert to Lyft. *See, e.g. Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013) (settlement term prohibiting reversion weighed in favor of preliminary approval).

Ultimately, after consideration of the monetary and non-monetary terms of the settlement, and after assessment of the substantial risks of further litigation, Plaintiffs' Counsel, drawing on decades of experience litigating cases like this one, and with the input of Judge Ryu, determined that agreement is fair and reasonable and constitutes a positive result for the class in this case.  This settlement falls within the range of possible approval, and the Court should grant

---

[18]    Citing *In re Toys R Us–Del., Inc.–Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453–54 (C.D.Cal.2014) (granting final approval of a settlement providing for consideration reflecting 3% of possible recovery ($391.5 million settlement with exposure up to $13.05 billion)); *Reed v. 1–800 Contacts, Inc.*, No. 12–CV–02359 JM BGS, 2014 WL 29011, at *6 (S.D.Cal. Jan. 2, 2014) (granting final approval where settlement represented 1.7% of possible recovery (net settlement fund of $8,288,719.16, resolving claims worth potentially $499,420,000)); *In re LDK Solar Sec. Litig.*, No. C 07–5182 WHA, 2010 WL 3001384, at *2 (N.D.Cal. July 29, 2010) (granting final approval where settlement was 5% of estimated damages); *In re Linerboard Antitrust Litig.*, 296 F.Supp.2d 568, 581 & n.5 (E.D.Pa.2003) (gathering cases where courts approved settlements achieving single-digit percentages of potential recoveries).

the settlement preliminary approval. Liss-Riordan Decl. at ¶¶ 23, 73. *See Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 622 (N.D.Cal.1979) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.")

### 2.   The Settlement Is the Product of Years of Litigation, Substantial Discovery, and Multiple Mediation Sessions Under the Guidance of Judge Ryu.

This factor concerns "the means by which the parties arrived at settlement." *Harris v. Vector Mktg. Corp.*, No. 08–5198, 2011 WL 1627973, at *8 (N.D.Cal. Apr. 29, 2011). For the parties "to have brokered a fair settlement, they must have been armed with sufficient information about the case to have been able to reasonably assess its strengths and value." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007).

Additionally, "the use of a mediator and the presence of discovery 'support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement.'" *Deaver*, 2015 WL 4999953, at *7 citing *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012); *Harris*, 2011 WL 1627973, at *8 (noting that the parties' use of a mediator "further suggests that the parties reached the settlement in a procedurally sound manner and that it was not the result of collusion or bad faith by the parties or counsel").

Here, the parties have exchanged extensive information necessary to make an informed evaluation of the case. *See* Liss-Riordan Decl. at ¶ 29. Specifically, they have litigated the issue of Lyft's independent contractor defense, and have exchanged information necessary to evaluate Plaintiffs' chances of success of an opposed motion for class certification, information relating to Lyft's arbitration provisions, and information needed to evaluate potential damages and penalties. Liss-Riordan Decl. at ¶¶ 2-28. All of this information was not only exchanged between parties, but also discussed in depth with Judge Ryu at four settlement conferences over several months. Liss-Riordan Decl. at ¶ 30. Thus, the parties were both armed with ample information to enter into an agreement and did so under the informed guidance of an experienced magistrate judge with substantial familiarity with wage and hour class actions. *Id.*

### 3. The Settlement Has No Obvious Deficiencies.

The Court next considers "whether there are obvious deficiencies in the Settlement Agreement." *Deaver*, 2015 WL 4999953, at *7. Such "obvious deficiencies" may include an overbroad release, insufficient notice, inadequate form of payment, or a cy pres beneficiary without a sufficient connection to the class and underlying claims. *E.g., Custom LED, LLC v. eBay, Inc*, No. 12-CV-00350-JST, 2013 WL 6114379, at *7 (N.D. Cal. Nov. 20, 2013). Additionally, an attorneys' fee provision may also be preliminarily evaluated as part of this inquiry, subject to final approval. *E.g., Bond v. Ferguson Enterprises, Inc*., No. 1:09-CV-01662, 2011 WL 284962, at *7 (E.D. Cal. Jan. 25, 2011).

Here, Class Members will release only those claims that could arise from their alleged misclassification as independent contractors. *See Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1334 (N.D. Cal. 2014) ("while the scope of the release in the proposed settlement is broad, it is acceptable because the claims released are limited to those based upon the facts set forth in the First Amended Complaint.") The parties have also carefully constructed a formula for payments to class members to ensure an equitable distribution of the settlement funds. No unclaimed funds will revert to Lyft; rather they will be redistributed amongst class members, and, if necessary, given to the parties' agreed upon, and court approved, *cy pres* designee. Additionally, the class notice provides all required information to Class Members in an easy-to-read format, as discussed above.

The attorneys' fee provision permits Plaintiffs' Counsel to apply for fees and costs not to exceed 30% of the gross settlement fund; the settlement is not contingent upon the Court approving Counsel's application. Counsel's costs are folded in to the 30% figure and are not separately recoverable. As will be briefed in later papers, a 30% fee, while above the Ninth Circuit's 25% "benchmark," is well-justified by the novelty and complexity of litigating one of the first "sharing economy" cases (only *O'Connor* was filed earlier, approximately two weeks before *Cotter*), and in fact is a lower percentage than many recent fee awards in California district courts. *E.g.*, *Lusby v. GameStop Inc*., No. C12-03783 HRL, 2015 WL 1501095, at *9

(N.D. Cal. Mar. 31, 2015) (finding a one-third fee award appropriate because to the results

achieved, the risk of litigation, the skill required and the quality of work, and the contingent

nature of the fee and the financial burden carried by the plaintiffs); *Barnes v. The Equinox Grp.,*

*Inc.*, No. C 10-3586 LB, 2013 WL 3988804, at *4 (N.D. Cal. Aug. 2, 2013) (awarding one-third

of gross settlement in fees and costs because counsel assumed substantial risk and litigated on a

contingency fee-basis); *see also Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL

248367, at *6 (N.D. Cal. Feb. 2, 2009) ("fee awards in class actions average around one-third of

the recovery").

### 4. The Settlement Does Not Unfairly Grant Preferential Treatment to Any Class Members.

Lastly, under this factor, the court assesses whether the allocation of the settlement fund

may "unfairly benefit certain class members." *Tijero v. Aaron Bros., Inc.*, No. C 10-01089 SBA,

2013 WL 60464, at *10 (N.D. Cal. Jan. 2, 2013). "[T]o the extent feasible, the plan should

provide class members who suffered greater harm and who have stronger claims a larger share

of the distributable settlement amount. *Hendricks v. StarKist Co*, No. 13-CV-00729-HSG, 2015

WL 4498083, at *7 (N.D. Cal. July 23, 2015) (citing cases). However, "courts recognize that an

allocation formula need only have a reasonable, rational basis, particularly if recommended by

experienced and competent counsel." *Id.* citing *Vinh Nguyen v. Radient Pharm. Corp.*, No. 11–

cv–00406, 2014 WL 1802293, at *5 (C.D.Cal. May 6, 2014).

Here, Drivers will receive settlement shares based on the amount of total work they

performed driving Lyft passengers.  Those Drivers who could be fairly characterized as having

worked most of their time (more than 30 hours per week for at least 50% of the weeks during

which they provided rides to Lyft passengers) receive a 50% increase in their allocated payment,

in recognition of what the Court here has commented may be their greater likelihood of

prevailing on the merits.  *See* Dkt. No. 94 at 18:15-18. Drivers with potential gratuity claims are

also awarded an increased payment.

//

1

2      Additionally, under this factor, a court may also preliminarily consider the propriety of

3  agreed upon class representative enhancements, which, like a request for attorneys' fees and

4  costs, is subject to further review on final approval. *Deaver*, 2015 WL 4999953, at *8.

5      As will also be briefed in later papers, the agreed upon enhancements for Cotter, Maciel,

6  and Knudtson, in the amounts of $5,000, $5,000, and $2,500, respectively, are in line with, if

7  not less than, awards in other cases in California district courts. *Lusby*, 2015 WL 1501095, at *5

8  (awarding $7,500 to each of the four class representatives from $750,000 fund); *Covillo v.

9  Specialtys Cafe,* No. C-11-00594 DMR, 2014 WL 954516, at *8 (N.D. Cal. Mar. 6, 2014)

10 (awarding $8,000 to class representatives from $2,000,000 fund); *see also In re Mego Fin. Corp.

11 Sec. Litig.*, 213 F.3d 454, 463 (9th Cir.2000) (approving $5,000 to two plaintiff representatives

12 of 5,400 potential class members in $1.75 million settlement); *Hopson v. Hanesbrands, Inc.*, No.

13 CV–08–0844, 2009 WL 928133, at *10 (N.D.Cal. Apr. 3, 2009) (approving $5,000 award to

14 one member of 217 member class from $408,420 settlement amount).

15                    **V.    CONCLUSION**

16      For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion

17 for Preliminary Approval, allow the parties to proceed with issuing notice to the Settlement

18 Class, and schedule a date for a Final Approval hearing.

19

20 Dated: January 26, 2016                    LICHTEN & LISS-RIORDAN, P.C.

21

22                                           By:  ___/s/_ *Shannon Liss-Riordan*_____
                                                 Shannon Liss-Riordan, *pro hac vice*
23                                               Attorney for Plaintiffs

24                                           CARLSON LEGAL SERVICES

25

26                                           By:  ___/s/_ *Matthew D. Carlson*_____
                                                 Matthew D. Carlson
27                                               Attorney for Plaintiffs

28