# EXHIBIT A

Matthew D. Carlson (State Bar No. 273242)
CARLSON LEGAL SERVICES
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (510) 239-4710
Email: mcarlson@carlsonlegalservices.com

Shannon Liss-Riordan (*Pro Hac Vice*)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
Email: sliss@llrlaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK COTTER, ALEJANDRA MACIEL, and JEFFREY KNUDTSON, on behalf of themselves and all others similarly situated, | **Case No.: 3:13-cv-04065-VC** |
| | **Hon. Vince Chhabria** |
| Plaintiffs, | **FIFTH AMENDED COMPLAINT FOR VIOLATIONS OF THE CALIFORNIA LABOR CODE AND CALIFORNIA BUSINESS & PROFESSIONS CODE** |
| v. | |
| LYFT, INC., | **CLASS ACTION** |
| Defendant. | |

Plaintiffs Patrick Cotter, Alejandra Maciel, and Jeffrey Knudtson (hereafter "Plaintiffs"), by and through their attorneys, bring this action on behalf of themselves and all others similarly situated against Defendant Lyft, Inc. (hereafter "Lyft" or "Defendant") and hereby allege as follows:

## I. NATURE OF THE ACTION

1.  Lyft is a San Francisco-based car service that refers to itself as a "ride-sharing business." Through its software implemented in the Lyft mobile phone application (the "Lyft Platform"), Lyft provides a means to enable a person who seeks transportation to a destination via automobile ("Rider(s)") to be picked up by a nearby person who is willing to transport the Rider to his or her destinations via automobile ("Driver(s)").

2.  This is a California class action[1] that challenges Lyft's policy of misclassifying its Drivers as "independent contractors" unprotected by the California Labor Code. Because Drivers are in fact Lyft employees, Lyft has also failed to reimburse its Drivers for work-related business expenses in violation of Cal. Lab. Code § 2802; improperly took gratuity payments given by Riders to Lyft's Drivers in violation of Cal. Lab. Code § 351; failed to pay its Drivers minimum wage in violation of Cal. Lab. Code §§ 1182.12, 1194, 1194.2, 1197, 1197.1, 1199, and California Industrial Welfare Commission Wage Order No. 9-2001 as amended ("Wage Order 9") (applicable to the transportation industry); failed to pay its Drivers overtime in violation of Cal. Lab. Code §§ 510, 1194, 1198, and Wage Order 9; failed to keep accurate records for its Drivers in violation of Cal. Lab. Code §§ 353 and 1174; failed to provide its Drivers with properly itemized wage statements in violation of Cal. Lab. Code § 226; failed to provide its Drivers with meal periods in violation of Cal. Lab. Code §§ 226.7, 512, and Wage Order 9; failed to pay its Drivers the reporting time pay required by Wage Order 9; failed to authorize and permit its Drivers to

---

[1] Plaintiffs do not waive their right to assert claims on behalf of a national class, and for appellate purposes reserve their rights with respect to this issue.

take rest periods in violation of Cal. Lab. Code § 226.7 and Wage Order 9, and failed to pay Drivers who have been terminated or who have been quit their wages when due in violation of Cal. Lab. Code §§ 201, 202, and 203.  The preceding violations are also violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"), and also subject Lyft to penalties pursuant to the Labor Code Private Attorneys General Act of 2004 ("PAGA").

## II.  JURISDICTION

3.   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy between Lyft and each named Plaintiff exceeds $75,000, inclusive of all recoverable attorneys' fees and penalties, exclusive of interest and costs, and because Plaintiff Maciel is a citizen of a Mexico and Lyft is a citizen of California. The Court also has continuing jurisdiction over this matter because, at the time of filing, it had jurisdiction pursuant to 28 U.S.C. § 1332(d).

## III. VENUE

4.    This Court is the proper venue for this matter pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiffs' claims and the claims of putative class members occurred in the Northern District of California. Specifically, the policies and practices at issue in this litigation were and are implemented at Lyft's principal place of business in San Francisco, California.

## IV.  THE PARTIES

5.   Plaintiff Patrick Cotter is a citizen of Washington, domiciled in Seattle. Plaintiff Cotter provided services as a Lyft Driver starting in September 2012. Plaintiff Cotter's employment with Lyft was terminated by Lyft in January 2013.

6.   Plaintiff Alejandra Maciel is a citizen of Mexico, domiciled in Tlayacapan, Mexico. Plaintiff Maciel provided services as a Lyft Driver starting on August 9, 2013. Plaintiff Maciel's employment with Lyft was terminated by Lyft on September 13, 2013.

7.    Plaintiff Jeffrey Knudtson is a citizen of California, domiciled in Santa Barbara. Plaintiff Knudtson began providing services as a Lyft Driver in October 2013 and is currently a Lyft Driver.

8.    Defendant Lyft, Inc. is a Delaware corporation with its headquarters and principal place of business in San Francisco, CA. Lyft's accounting, human resources, and all other departments are located in its San Francisco, CA headquarters.

## V. FACTUAL ALLEGATIONS

9.    As described above, Lyft is a San Francisco-based car services that refers to itself as a "ride-sharing business" that uses its "Lyft Platform" software to "match" an individual who needs a ride (a Rider) with someone willing to provide a ride (a Driver).[2]

10.    Lyft's business works as follows: The Lyft Platform is implemented via an application that must be downloaded to an iPhone or Android-based cellular phone by all Drivers and any prospective Rider. If a prospective Rider is in need of a Driver, the Rider uses the application to request a ride from a Driver in the Rider's geographical vicinity. All available Lyft Drivers in the vicinity are informed of the request via the Lyft application. The first Lyft Driver to accept a request is then "matched" with the Rider, and proceeds to pick up the Rider and transport him or her to his or her destination.

11.    Lyft expects its Drivers to accept all incoming requests from Riders unless the Driver is in the process of transporting another Rider at the time of a request.

12.    Drivers can receive requests whenever they indicate via the Lyft application that they are available to provide rides.

13.    Drivers and Riders were and are required to agree to the Lyft's Terms of Services ("TOS") as a prerequisite to utilizing the Lyft Platform.

---

[2] Plaintiffs are three of many Lyft Drivers throughout California, and accordingly the term "Driver" or "Drivers" as used herein is a term intended to encompass all Lyft Drivers in California, including Plaintiffs.

14. Lyft's uniform TOS provides that the agreement is governed by the laws of the State of California without regard to choice of law principles.

15. Lyft's uniform TOS and all policies therein were drafted, created, implemented, and carried out in the state of California.

16. Lyft misclassifies its Drivers as "independent contractors" rather than employees protected by the California Labor Code.

17. In fact and pursuant to California law, all Lyft Drivers are properly considered employees for reasons including, but not limited to, the following:

    a. Pursuant to Lyft's uniform business model, Drivers provide a service (i.e., transporting Riders) that benefits Lyft;

    b. Pursuant to Lyft's uniform TOS, Lyft retains the right to terminate Drivers for any or no reason, without explanation, at any time;

    c. Pursuant to Lyft's uniform TOS, Lyft retains the right to terminate Drivers if, in Lyft's discretion, the Driver behaved in a way that could be regarded as inappropriate;

    d. Pursuant to Lyft's uniform business model, Drivers do not engage in a business distinct from Lyft's business; rather, Drivers' services are the primary or sole source of income for Lyft;

    e. Pursuant to Lyft's uniform TOS, Lyft does not require Drivers to possess any skill above and beyond that necessary to obtain a normal driver's license;

    f. Pursuant to Lyft's uniform business model, Drivers' tenure with Lyft was for an indefinite period of time;

    g. Pursuant to Lyft's uniform business model, Lyft provides Drivers with the only instrumentality by which a Driver can perform services for Lyft, namely Lyft's software;

h.  Pursuant to Lyft's uniform TOS, Lyft does not require Drivers to invest in any equipment or materials required for his or her services; rather all Drivers must already own or have the legal right to operate a vehicle in good operating condition before he or she can work as a Lyft Driver. All Drivers must also already be named on an insurance policy covering the Driver's vehicle before he or she can work as a Lyft Driver;

i.  Pursuant to Lyft's uniform policy, Drivers must place a large pink mustache provided by Lyft on the front of the Driver's vehicle while the Driver is in the course of transporting a Rider;

j.  Pursuant to Lyft's uniform TOS, Lyft prohibits Drivers from setting rates of pay for their services; rather, their rates are determined by Lyft;

k.  Pursuant to Lyft's uniform TOS, Lyft requires its Drivers to consent to receiving email communications and text messages from Lyft, which include message notification emails, emails or text messages informing Drivers of potential available Riders, and emails or text messages informing Drivers of Lyft's promotions. Drivers are required to pay for receiving these text messages at the rate applied by the Driver's mobile phone service provider;

l.  Pursuant to Lyft's uniform policy, Drivers must undergo a two hour training session during which Drivers are told how to interact and converse with Riders;

m.  Pursuant to Lyft's uniform policy, Drivers' vehicles are evaluated for aesthetic purposes, including cleanliness, and Drivers' vehicles must pass this appearance evaluation in order for Drivers to work for Lyft;

n.  Pursuant to Lyft's uniform TOS, Lyft retains the right to shut down the Lyft Platform and the Lyft application, or to block Drivers from using the

Lyft Platform or the Lyft application, thereby retaining the right to prevent Drivers from picking up Riders;

o.  Pursuant to Lyft's uniform TOS, Lyft, at its sole discretion, may make available promotion offers to Riders without consulting with its Drivers;

p.  Pursuant to Lyft's uniform policy, Lyft retains the right to take adverse action against Drivers who do not work hours they are signed up to work;

q.  Pursuant to Lyft's uniform policy, Lyft retains the right to take adverse action against Drivers who do not accept a request for a ride from a Rider;

r.  Pursuant to Lyft's uniform policy, Lyft retains the right to take adverse action against Drivers who cancel requested rides prior to picking up the passenger;

s.  Pursuant to Lyft's uniform policy, Drivers are required to watch training videos that instruct them on how to interact with Riders;

t.  Pursuant to Lyft's uniform policy, Lyft limits the geographical locations in which its Drivers are permitted to work by limiting the distance of Lyft rides;

u.  Pursuant to Lyft's uniform policy, Lyft advertises that Drivers receive an average hourly rate of pay;

v.  Pursuant to Lyft's uniform TOS, Lyft procures insurance that provides Drivers with automobile liability insurance;

w.  Pursuant to Lyft's uniform policy, Lyft maintains records of Drivers' hours worked;

x.  Pursuant to Lyft's uniform policy, Drivers are not permitted to hire their own employees to drive for Lyft;

y.  Pursuant to Lyft's uniform TOS and policy, Lyft controls and restricts Drivers' ability to work and earn income; and

z.   Pursuant to Lyft's uniform policy, Drivers are required to abide by Lyft's "Rules of the Road" and instructions on their available "FAQs."

18.   Despite the fact that Drivers are, in fact, Lyft employees, Lyft has nevertheless failed to reimburse its Drivers, including Plaintiffs, for their work-related expenses, including but not limited to mileage costs and costs of cellular phone operation necessarily incurred because Lyft Drivers must use their automobiles to transport Riders and because Drivers must use their cellular phones in order to provide rides for Lyft.

19.   Despite the fact that Drivers are, in fact, Lyft employees, Lyft has nevertheless taken from Drivers, including Plaintiffs, gratuities given by Riders to Drivers.

20.   Despite the fact that Drivers are, in fact, Lyft employees, Lyft has nevertheless failed to pay its Drivers minimum wage.

21.   Despite the fact that Drivers are, in fact, Lyft employees, Lyft has nevertheless failed to pay its Drivers overtime pay for hours worked in excess of 40 per week or eight per day. From time to time, Plaintiff Knudtson worked for Lyft in excess of 40 hours per week but did not receive overtime compensation.

22.   Despite the fact that Drivers are, in fact, Lyft employees, Lyft has nevertheless failed to keep accurate time records for its Drivers in violation of Cal. Lab. Code § 1174;

23.   Despite the fact that Drivers are, in fact, Lyft employees, Lyft has nevertheless failed to provide its Drivers with itemized wage statements showing the information required by California Labor Code § 226.

24.   Despite the fact that Drivers are, in fact, Lyft employees, Lyft has nevertheless failed to provide its Drivers, including Plaintiffs, with 30-minute duty-free meal periods when its Drivers work more than five hours per day.

25.   Despite the fact that Drivers are, in fact, Lyft employees, Lyft has nevertheless required its Drivers to periodically report for work on days during which no work was available and/or days on which such Drivers were not put to work, but did not furnish such Drivers

with less than half of his or her usual or scheduled day's work or the reporting time pay required by Wage Order No. 9.

26. Despite the fact that Drivers are, in fact, Lyft employees, Lyft has nevertheless failed to authorize and permit its Drivers, including Plaintiffs, to take 10-minute duty-free rest periods for every four hours of Drivers' work time or major fraction thereof.

27. Despite the fact that Drivers are, in fact, Lyft employees, Lyft has nevertheless failed to pay all wages when due to its Drivers who have been discharged or who have quit.

## VI. CLASS ACTION ALLEGATIONS

28. Each of Plaintiffs' claims are brought on behalf of themselves and all others similarly situated pursuant to the class action mechanism set forth in Federal Rule of Civil Procedure 23.

29. This putative class is defined as:

> "All individuals who worked as Lyft Drivers in California from May 1, 2012 through the final disposition of this action."

**A. ASCERTAINABILITY**

30. It is administratively feasible to determine the members of the putative class through Lyft's records because Lyft maintains all Drivers' personal information, including contact information and pay records.

**B. NUMEROSITY**

31. There are tens of thousands of individuals who have worked as Lyft Drivers in California who are geographically dispersed.

**C. COMMONALITY**

32. Members of the putative class share common issues of fact, including but not limited to:

    a. The terms of Lyft's Terms of Service and the policies or practices identified above;

//

b.  Whether Lyft has had a policy or practice of failing to reimburse its Drivers for work-related business expenditures;

c.  Whether Lyft has had a policy or practice of taking from Drivers gratuities or a portion thereof given by Riders to Drivers;

d.  Whether Lyft has had a policy or practice of failing to pay its Drivers' minimum wage;

e.  Whether Lyft has had a policy or practice of failing to pay its Drivers' overtime compensation;

f.  Whether Lyft has had a policy or practice of failing to provide its Drivers with itemized wage statements showing the information required by Cal. Lab. Code § 226;

g.  Whether Lyft has had a policy or practice of failing to keep accurate time records for its Drivers in violation of Cal. Lab. Code § 1174;

h.  Whether Lyft has had a policy or practice of failing to provide its Drivers with 30-minute duty-free meal periods when its Drivers work more than five hours per day;

i.  Whether Lyft has had a policy or practice of failing to pay its Drivers reporting time pay as required by Wage Order 9;

j.  Whether Lyft has had a policy or practice of failing to failed to authorize and permit its Drivers, including Plaintiffs, to take 10-minute duty-free rest periods for every four hours of Drivers' work time or major fraction thereof; and

k.  Whether Lyft has had a policy or practice of failing to pay its Drivers who have been discharged or who have quit their wages when due.

33.  Members of the putative class share common issues of law, including:

//

a.  Whether members of the putative class were misclassified by Lyft as independent contractors under California law;

b.  Whether Lyft's policy or practice of failing to reimburse its Drivers for work-related business expenditures is in violation of Cal. Lab. Code § 2802;

c.  Whether Lyft's policy or practice of taking from Drivers gratuities or a portion thereof given by Riders to Drivers is in violation of Cal. Lab. Code § 351;

d.  Whether Lyft's policy or practice of failing to pay its Drivers' minimum wage is in violation of Cal. Lab. Code §§ 1182.12, 1194, 1194.2, 1197, 1197.1, and Wage Order 9;

e.  Whether Lyft's policy or practice of failing to pay its Drivers' overtime compensation is in violation of Cal. Lab. Code §§ 510, 1194, 1198, and Wage Order 9;

f.  Whether Lyft's policy or practice of failing to keep accurate time records for its Drivers is in violation of Cal. Lab. Code § 1174;

g.  Whether Lyft's policy or practice of failing to provide its Drivers with itemized wage statements showing the information required by Cal. Lab. Code § 226 is in violation of Cal. Lab. Code § 226;

h.  Whether Lyft's policy or practice of failing to provide its Drivers with 30-minute duty-free meal periods when its Drivers work more than five hours per day is in violation of Cal. Lab. Code §§ 226.7, 512, and Wage Order 9;

i.  Whether Lyft's policy or practice of failing to pay its Drivers reporting time pay is in violation of Wage Order 9;

j.  Whether Lyft's policy or practice of failing to authorize and permit its Drivers, including Plaintiffs, to take 10-minute duty-free rest periods for

every four hours of Drivers' work time or major fraction thereof is in violation of Cal. Lab. Code § 226.7 and Wage Order 9; and

k.  Whether Lyft's policy or practice of failing to pay its Drivers who have been discharged or who have quit their wages when due is in violation of Cal. Lab. Code §§ 201, 202, and 203.

34.  The common issues of law can be answered with proof common to members of the putative class, including:

a.  Lyft's TOS, to which Lyft and all Drivers must agree;

b.  Lyft's policies and practices applicable to all Drivers, including policies that tend to show Drivers are in fact employees rather than independent contractors;

c.  Lyft's policies or practices concerning its pay practices; and

d.  All other facts common to the putative class alleged above.

**D.   TYPICALITY**

35.  Plaintiffs' claims are typical of the claims of all members of the putative class. First, Plaintiffs, like all members of the putative class, were misclassified by Lyft as independent contractors.

36.  Second, Plaintiffs, like all members of the putative class, were harmed by Lyft's pay policies or practices as described above.

**E.   ADEQUACY**

37.  Plaintiffs are members of the putative class and will fairly and adequately represent and protect the interests of the members of the putative class. Plaintiffs have no conflicts of interests with members of the putative class.

38.  Counsel for Plaintiffs are competent and experienced in litigating employment-based class actions, including actions based on alleged misclassification.

//

**F.   PREDOMINANCE**

39.   Common questions of law and fact predominate over individual issues in this action for several reasons. First, the issue of misclassification can be resolved with proof of Lyft policies applicable to all Drivers in the putative class, including but not limited to the Lyft's uniform TOS. Second, the issue of Lyft's liability under the California Labor Code can be established as to all putative class members with proof that Lyft's pay practices are common as to all class members or an identifiable subset of putative class members.

**G.   SUPERIORITY**

40.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the relatively small monetary value of the claims asserted by members of the putative class, most if not all members of the putative class would likely find the cost of individually litigating their claims against Lyft to be prohibitive. Further, thousands of individual proceedings in lieu of a class action would be an unnecessary burden on the court system as well as the parties. Additionally, many members of the putative class may be unaware that they have legal recourse against Lyft for the conduct alleged herein.

## VII.  FIRST CLAIM

### Failure to Reimburse for Work-Related Expenditures

### Cal. Lab. Code § 2802

41.   Plaintiffs, on behalf of themselves and members of the putative class, reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein.

42.   Pursuant to California law, Lyft was and/or is the employer of Plaintiffs and members of the putative class.

//

//

43. Cal. Lab. Code § 2802 requires an employer to indemnify its employees for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties.

44. Plaintiffs and members of the putative class incurred unreimbursed costs, including but not limited to mileage costs, including costs for gas, and costs incurred for use of their cellular phones.

45. Such costs were incurred because Plaintiffs and members of the putative class were required to use automobiles to transport Lyft Riders while working for Lyft, and were required to use their cellular phones in order to work for and while working for Lyft.

46. Accordingly, Plaintiffs and each member of the putative class are entitled to reimbursement for such incurred costs, plus interest, attorney fees and costs.

## VIII.  SECOND CLAIM

### Conversion

47. Plaintiffs, on behalf of themselves and members of the putative class, reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein.

48. Pursuant to California law, Lyft was and/or is the employer of Plaintiffs and members of the putative class.

49. Plaintiffs and members of the putative class had a right to possess the full amount of gratuities given to them by Riders. Such gratuities are considered property under California Law. *See* Cal. Lab. Code § 351.

50. Lyft wrongfully and illegally took from Plaintiffs and members of the putative class a portion of the gratuities given to Plaintiffs and members of the putative class by Riders.

51. Plaintiffs and members of the putative class suffered economic harm in the amount of the gratuities taken from them.

*//*

## IX.  THIRD CLAIM

### Failure to Pay Minimum Wage

### Cal. Lab. Code §§ l182.12, 1194, 1194.2, 1197, 1197.1, and Wage Order 9

52.    Plaintiffs, on behalf of themselves and members of the putative class, reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein.

53.    Pursuant to California law, Lyft was and/or is the employer of Plaintiffs and members of the putative class.

54.    Cal. Lab. Code § 1194 states that any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

55.    Cal. Lab. Code § 1197 states that the minimum wage is that set by the commission in the applicable wage order, in this case Wage Order 9. Wage Order 9 incorporates by reference the minimum wage set by statute. Lyft failed to pay Plaintiffs and putative class members or an identifiable subset thereof minimum wage.

56.    Accordingly, Plaintiffs and members of the putative class or an identifiable subset thereof are entitled to minimum wage back pay and interest thereon, liquidated damages in the amount of the minimum wage back pay and interest thereon, reasonable attorneys' fees, costs of suit, and penalties.

## X.  FOURTH CLAIM

### Failure to Pay Overtime Wages

### Cal. Lab. Code §§ 510, 1194, 1198, and Wage Order 9

57.    Plaintiffs, on behalf of themselves and members of the putative class, reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein.

58. Pursuant to California law, Lyft was and/or is the employer of Plaintiffs and members of the putative class.

59. Cal. Lab. Code § 1198 and Wage Order 9 require employers to pay their employees at their overtime rate of pay for hours worked in excess of eight per day and/or 40 per week.

60. Cal. Lab. Code § 1194 states that any employee receiving less than the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

61. Plaintiff Knudtson and putative class members or a subset thereof worked for Lyft in excess of eight hours per day or forty hours per week, but were not paid at their overtime rate of pay for such work.

62. As a result of Lyft's unlawful conduct, Plaintiffs and members of the putative class or an identifiable subset thereof suffered economic losses as a result of Lyft's failure to pay overtime wages.

## XI.  FIFTH CLAIM

### Failure to Furnish Accurate Wage Statements

### Cal. Lab. Code § 226

63. Plaintiffs, on behalf of themselves and members of the putative class, reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein.

64. Pursuant to California law, Lyft was and/or is the employer of Plaintiffs and members of the putative class.

65. Cal. Lab. Code § 226 states that every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross

wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee and, beginning July 1, 2013, if the employer is a temporary services employer as defined in Section 201.3, the rate of pay and the total hours worked for each temporary services assignment.

66. Lyft unlawfully failed to provide Plaintiffs and members of the putative class with accurate itemized wage statements in writing showing gross wages earned, total hours worked, deductions, net wages earned, pay period, the name of the employee and the last four digits of his or her social security number, the legal name of the employer, and/or all applicable hourly rates.

67. Plaintiffs and members of the putative class suffered injury as a result of Defendant's conduct because they could not readily ascertain their rates of pay for their hours worked for Lyft and because the pay statements provided by Lyft do not include the last four digits of its Drivers' social security numbers.

//

68. The injuries suffered by Plaintiffs and members of the putative class as a result of this misconduct were as a result of Lyft's knowing and intentional failure to comply with Cal. Lab. Code § 226(a).

69. Accordingly, Plaintiffs and each member of the putative class are entitled to recover fifty dollars for the initial pay period in which a violation of § 226 occurred, and one hundred dollars for each violation of § 226 in a subsequent pay period, not to exceed a penalty of four thousand dollars per member of the putative class plus attorney fees, costs, and injunctive relief.

## XII. SIXTH CLAIM

### Failure to Provide Meal Periods

### Cal. Lab. Code §§ 226.7, 512, and Wage Order 9

70. Plaintiffs, on behalf of themselves and members of the putative class, reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein.

71. Pursuant to California law, Lyft was and/or is the employer of Plaintiffs and members of the putative class.

72. Cal. Lab. Code § 512 and Wage Order 9 require employers to provide all employees with one 30-minute duty-free meal period if such employee works more than five hours in one day.

73. Lyft did not provide Plaintiffs and putative class members or an identifiable subset thereof with 30-minute duty-free meal periods as required by California law

74. Accordingly, pursuant to Cal. Lab. Code § 226.7 and Wage Order 9, Plaintiffs and members of the putative class or an identifiable subset thereof are entitled one hour of pay at their regular rate of pay for each day on which the putative class member was not provided with a 30-minute duty-free meal period, plus interest.

//

### XIII. SEVENTH CLAIM

**Failure to Authorize and Permit Rest Periods**

**Cal. Lab. Code § 226.7 and Wage Order 9**

75.   Plaintiffs, on behalf of themselves and members of the putative class, reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein.

76.   Pursuant to California law, Lyft was and/or is the employer of Plaintiffs and members of the putative class.

77.   Wage Order 9 require employers to provide all employees with one 10-minute duty-free rest period for every four hours worked each day, or major fraction thereof.

78.   Lyft did not provide Plaintiffs and putative class members or an identifiable subset thereof with 10-minute duty-free rest periods as required by California law.

79.   Accordingly, pursuant to Cal. Lab. Code § 226.7 and Wage Order 9, Plaintiffs and members of the putative class or an identifiable subset thereof are entitled one hour of pay at their regular rate of pay for each day on which the putative class member was not provided with a 10-minute duty-free rest period, plus interest.

### XIV.  EIGHTH CLAIM

**Failure to Pay Wages When Due**

**Cal. Lab. Code §§ 201, 202, 203**

80.   Plaintiffs, on behalf of themselves and members of the putative class, reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein.

81.   Pursuant to California law, Lyft was and/or is the employer of Plaintiffs and members of the putative class.

82.   Cal. Lab. Code § 201 states that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately. Cal Lab.

Code § 202 states If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

83. Lyft failed to pay Plaintiffs Cotter and Maciel and a subset of putative class members who no longer work for Lyft their wages earned upon the termination of their respective employment relationships with Lyft.

84. Accordingly, pursuant to Cal. Lab. Code § 203, Plaintiffs Cotter and Maciel and members of the putative class are entitled to waiting time penalties.

## XIV.  NINTH CLAIM

### Failure to Keep Accurate Employment Records

### Cal. Lab. Code § 1174

85. Plaintiffs, on behalf of themselves and members of the putative class, reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein.

86. Pursuant to California law, Lyft was and/or is the employer of Plaintiffs and members of the putative class.

87. Labor Code § 1174(d) requires that every employer in California maintain "payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed" in California.  In addition, Cal. Lab. Code § 1174(d) requires that these records "be kept in accordance with rules established for this purpose by the [Industrial Welfare] commission."

88. Rules established by the commission, Wage Order 9, § 7, require that every employer in California "keep accurate information with respect to each employee," including without

limitation, "time records showing when the employee begins and ends each work period," as well as "[m]eal periods, split shift intervals and total daily hours worked."

89.   Lyft failed to maintain accurate records in compliance with Cal. Lab. Code § 1174(d) and/or Wage Order 9 for Plaintiffs and members of the putative class.

90.   Accordingly, Plaintiffs and members of the putative class are entitled to collect and seek a civil penalty from Lyft in the amount of $500 pursuant to Cal. Lab. Code § 1174.5.

## XIV.  TENTH CLAIM

### Failure to Pay For Reporting Time

### Wage Order 9

91.   Plaintiffs, on behalf of themselves and members of the putative class, reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein.

92.   Pursuant to California law, Lyft was and/or is the employer of Plaintiffs and members of the putative class.

93.   Wage Order 9, § 5, requires that for each workday that a California employee is required to report for work and does report, but is either not put to work or is furnished less than half of that employee's usual or scheduled day's work, each such employee must be paid an amount equal to half of his or her usual or scheduled day's pay, or in any event must be paid an amount equal to 2 hours at the employee's regular rate of pay.

94.   Plaintiffs and members of the putative class, or an identifiable subset thereof, have periodically been required to report for work but have either not been put to work, or have been furnished with less than half of his or her usual or scheduled day's work.

95.   In addition, Plaintiffs and members of the putative class or an identifiable subset thereof have not been compensated by Lyft as required by Wage Order 9, § 5.

//

//

96. Accordingly, Plaintiffs and members of the putative class or an identifiable subset thereof are entitled to and seek payment from Lyft of compensation pursuant to Wage Order 9, § 5, plus interest.

## XV.  ELEVENTH CLAIM

### Unlawful, Unfair, or Fraudulent Business Practices

### Cal. Bus. & Prof. Code § 17200, *et seq*.

97. Plaintiffs, on behalf of themselves and members of the putative class, reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein.

98. Pursuant to California law, Lyft was and/or is the employer of Plaintiffs and members of the putative class.

99. Lyft's violations of the above cited Labor Code provisions and/or Wage Order 9 constitute unlawful, unfair and/or fraudulent business practices prohibited by California Business & Professions Code § 17200, *et seq.* and are independently actionable under California Business & Professions Code § 17200, *et seq*.

100. As described above, Lyft's violations of the California Labor Code and/or Wage Order 9 caused Plaintiffs and members of the putative class irreparable harm, and Plaintiffs and members of the putative class are therefore entitled to restitution in the amount of this harm, as well as injunctive and declaratory relief.

101. Plaintiffs are further entitled to, and do, seek a declaration that the above described business practices are unlawful, unfair and/or fraudulent and also seek injunctive relief restraining Lyft from engaging in any of these unlawful, unfair and/or fraudulent business practices.

//

//

//

## XVI. TWELFTH CLAIM

**Penalties Pursuant to the Labor Code Private Attorneys General Act of 2004**

**(Representative Action)**

102.   Plaintiffs, on behalf of current or former Lyft Drivers in California, reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein.

103.   Cal. Lab. Code § 2699 provides for civil penalties for violations of California Labor Code provisions that may be recovered through a civil action brought by an aggrieved employee.

104.   Plaintiffs and all current and former Lyft Drivers in California are aggrieved employees as defined by Cal. Lab. Code § 2699(c) because they suffered injury as a result the following Labor Code violations committed by Lyft: Cal. Lab. Code § 226 (failure to provide Drivers with properly itemized statements); §§ 226.7, 512 (failure to provide Drivers with uninterrupted, duty-free meal and rest periods); §§ 351, 353 (withholding gratuities paid to Drivers and failing to keep proper records of such gratuities); § 226.8 (willfully misclassifying Drivers as independent contractors); § 432.5 (requiring drivers to sign illegal contracts); § 450 (requiring Drivers to purchase things of value as a condition of employment); §§ 1174, 1174.5 (failure to keep required accurate payroll records); §§ 510, 1194, 1194.2, 1197, 1197.1, 1198, 1999 (failure to pay Drivers minimum wages and proper overtime wages); §§ 551, 552 (permitting Drivers to work seven consecutive days); § 2802 (failure to reimburse Drivers for necessary work-related expenditures); and §§ 558, 1198, and 1199 (violations of Labor Code or Wage Orders).

105.   Plaintiffs have complied with the notice requirement of Cal. Lab. Code § 2699.3 by sending written notice by certified mail to Defendant and to the California Labor & Workforce Development Agency ("LWDA") with respect to all Labor Code violations asserted in this Complaint.

106. It has been 33 days or more since the LWDA was notified of certain Labor Code violations previously asserted in this Complaint, and the LWDA has not provided any notice that it will or will not investigate the alleged violations of which it was informed. As for other claims asserted in this Complaint, the LWDA has not yet provided such notice.

107. Lyft has not cured the Labor Code violations of which it was informed.

108. As a result, Plaintiffs are entitled to recover, and seek, civil penalties, attorney fees, and costs of suit herein.

**PRAYER FOR RELIEF**

109. Plaintiffs, on behalf of themselves and the members of each putative class, pray for relief as follows:

   a. Certification of this action as a class action as described above;

   b. Designation of Plaintiffs as representatives of the each putative class;

   c. Designation of Plaintiffs' Counsel as Class Counsel for each putative class;

   d. Damages for failure to reimburse for work-related expenditures, conversion, failure to pay minimum wages, failure to pay overtime wages, failure to provide meal periods, failure to pay for reporting time, and failure to authorize and permit rest periods;

   e. In the alternative to such damages, restitution pursuant to Cal. Bus. & Prof. Code § 17200, *et seq.*

   f. Statutory penalties, including pursuant to Cal. Lab. Code §§ 226, 226.8, 203, 1197.1 and 1174.5;

   g. Civil penalties pursuant to the Labor Code Private Attorneys General Act of 2004;

   h. Injunctive and declaratory relief pursuant to Cal. Bus. & Prof. Code § 17200, *et seq.*;

i.      Pre-judgment and post-judgment interest pursuant to the California Labor Code and Cal. Civ. Code § 3287;

j.      Attorneys' fees as provided by the California Labor Code, or as provided by the parties' agreement, if any; and

k.      Costs as provided by the California Labor Code, Fed. R. Civ. P. 54(d), Local Rule 54-3, and/or Cal. Code Civ. P. § 1021, or as provided by the parties' agreement, if any.

### DEMAND FOR JURY TRIAL

Plaintiffs, by and through their attorneys, hereby request a jury trial on all issues so triable.

Dated: January 26, 2016                     Carlson Legal Services


                                            By: ____/s/ Matthew D. Carlson_____
                                                  Matthew D. Carlson
                                                  Attorney for Plaintiffs