Matthew D. Carlson (State Bar No. 273242)
CARLSON LEGAL SERVICES
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (510) 239-4710
Email: mcarlson@carlsonlegalservices.com

Shannon Liss-Riordan (*Pro Hac Vice*)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
Email: sliss@llrlaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| PATRICK COTTER, ALEJANDRA MACIEL, and JEFFREY KNUDTSON, on behalf of themselves and all others similarly situated,<br><br>                          Plaintiffs,<br><br>             v.<br><br>LYFT, INC.,<br><br>                          Defendant. | Case No.: **3:13-cv-04065-VC**<br><br>**Hon. Vince Chhabria**<br><br>**PLAINTIFFS' OPPOSITION TO THE TEAMSTERS' AND OBJECTORS' MOTION TO INTERVENE**<br><br>Hearing date: May 5, 2016<br>Time: 10:00 a.m.<br>Courtroom: 4 |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     LEGAL STANDARD........................................................................................... 4

III.    ARGUMENT ....................................................................................................... 4

    A.     The Motion to Intervene Should Be Rejected as Untimely. ........................................ 4

    B.     Neither the Driver Objectors Nor the Teamsters Meet the Additional
       Requirements for Intervention as of Right or Permissive Intervention. .................... 6

      1.     Driver Objectors Do Not Meet the Requirements for Intervention as of Right
         or for Permissive Intervention. ................................................................... 7

        a.  Driver Objectors Do Not Have the Right to Intervene................................. 7

          i.   Driver Objectors' Legally Protectable Interests in the Litigation Are
            Protected by Their Right to Opt Out of the Settlement. ...................... 7

          ii.  Driver Objectors Have No Legally Protectable Interest in the Settlement of
            Plaintiffs' PAGA Claim. ................................................................... 8

        b.  Driver Objectors Have No Right to Intervene Because Their Interests Are
          Adequately Represented. ........................................................................ 10

        c.  Driver Objectors Should Not Be Granted Permissive Intervention Because
          Intervention Would Unduly Delay the Resolution of This Case and
          Implementation of the Benefits Negotiated for Lyft Drivers ....................... 11

      2.     The Teamsters Do Not Meet the Requirements for Intervention as of Right or
         Permissive Intervention. .......................................................................... 12

        a.  The Teamsters Have No Right to Intervene Because the Settlement Does Not
          Interfere with Its Interests........................................................................ 12

        b.  The Teamsters Should Not Be Granted Permissive Intervention Because It
          Does Not Have Claims Against Lyft in Common with the Underlying Case......... 14

    C.     If the Court Permits Either the Teamsters or Objectors to Intervene, It Should
       Be Only for the Limited Purpose of Objecting to the Settlement............................ 14

IV.     CONCLUSION.................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Alaniz v. California Processors, Inc.*
  73 F.R.D. 269 (N.D. Cal. 1976) ...................................................................... 7

*Alexander v. Fedex Ground Package Sys., Inc.*
  No. 05-CV-00038-EMC, 2015 WL 5698756 (N.D. Cal. Sept. 29, 2015).............. 11

*Alexander v. FedEx Ground Package System, Inc., et al.*
  Case No. 3:05-cv-38 EMC (N.D. Cal.)............................................................... 9

*Amaral v. Cintas Corp. No. 2*
  163 Cal. App. 4th 1157 78 Cal. Rptr. 3d 572 (2008)....................................... 3

*Allen v. Bedolla*
  787 F.3d 1218 (9th Cir. 2015) ........................................................................ 5

*Arias v. Superior Court*
  46 Cal. 4th 969, 209 P.3d 923 (2009).......................................................... 3, 9

*Baumann v. Chase Inv. Servs. Corp.*
  747 F.3d 1117 (9th Cir.) .............................................................................. 3, 9

*California v. Tahoe Reg'l Planning Agency*
  792 F.2d 775 (9th Cir. 1986). ...................................................................... 10

*Chavez v. PVH Corp.*
  No. 13-CV-01797 LHK, 2014 WL 6617142 (N.D. Cal. Nov. 20, 2014)................ 6

*Cohorst v. BRE Properties, Inc.*
  No. 10CV2666 JM BGS, 2011 WL 3475274 (S.D. Cal. Aug. 5, 2011) ................ 8

*Davis v. J.P. Morgan Chase & Co.*
  775 F. Supp. 2d 601 (W.D.N.Y. 2011)............................................................. 8

*Doe v. Cin-Lan, Inc.*
  No. 08-CV-12719, 2011 WL 37970 (E.D. Mich. Jan. 5, 2011) .......................... 8

*Grilli v. Metro. Life Ins. Co.*
  78 F.3d 1533 (11th Cir.) ................................................................................. 7

*Harris v. Vector Mktg. Corp.*
  No. C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011)...................... 8

*In re Novatel Wireless Sec. Litig.*
No. 08CV1689 AJB RBB, 2014 WL 2858518 (S.D. Cal. June 23, 2014) .............................. 14

*League of United Latin Am. Citizens v. Wilson*
131 F.3d 1297 (9th Cir.1997) ......................................................................................... 4

*Morazan v. Aramark Unif. & Career Apparel Grp., Inc.*
No. 13-CV-00936-YGR, 2013 WL 4734061 (N.D. Cal. Sept. 3, 2013) ................................... 5

*Northwest Forest Res. Council v. Glickman*
82 F.3d 825 (9th Cir.1996). .......................................................................................... 4

*Sagebrush Rebellion, Inc. v. Watt*
713 F.2d 525 (9th Cir. 1983) ....................................................................................... 13

*Smith v. Cardinal Logistics Mgmt. Corp.*
No. 07- 2104 SC, 2011 WL 3667462, *1 (N.D. Cal. Aug. 22, 2011) ....................................8

*State of Idaho v. Freeman*
625 F.2d 886 (9th Cir. 1980) ....................................................................................... 13

*United States v. Alisal Water Corp.*
370 F.3d 915 (9th Cir. 2004) ....................................................................................... 12

*United States v. Allegheny–Ludlum Indus., Inc*
517 F.2d 826 (5th Cir.1975) .......................................................................................... 7

*Washington State Bldg. & Const. Trades Council, AFL-CIO v. Spellma*
684 F.2d 627 (9th Cir. 1982) ....................................................................................... 13

*Zepeda v. PayPal, Inc.*
No. 10CV02500SBAJCS, 2014 WL 1653246 (N.D. Cal. Apr. 23, 2014) ................................. 7

**Rules**

Fed. R. Civ. P. 24 ..............................................................................................passim

**Statutes**

Cal. Lab. Code § 2699.....................................................................................................3

## I.    INTRODUCTION

Putative intervenors, Driver Objectors Angelica Rose Ferdinand, Helen Hebert, Leigh-Ann Johnson, Amir Kashanian, and Kelsey Tilander ("Driver Objectors"), and Teamsters Joint Council 7 and Joint Council 42 ("the Teamsters"), have made an eleventh-hour request to intervene in this action pursuant to Fed. R. Civ. P. 24.

Put simply, there is no need for either the Driver Objectors or the Teamsters to intervene. Driver Objectors' rights with respect to this litigation are protected by their right to opt out of the proposed settlement (or any modified version of the settlement, if the Court deems modification necessary). If the Driver Objectors elect to opt out, they will be free to file their own case and argue that Lyft has misclassified them as independent contractors. The Teamsters' rights are not affected in any way by this litigation, the proposed settlement, or any modified version of the settlement, as it will not be precluded from arguing that Lyft drivers are independent contractors in front of the National Labor Relations Board, and, if successful, potentially becoming the union representative for an organized driver workforce.

The Driver Objectors and the Teamsters have already filed their objections. There is no reason for the Court to go further and allow a formal intervention, the only result of which would likely be to unnecessarily complicate a case in which the parties are seeking Court approval of a settlement that has finally materialized after many months of hard-fought negotiations under the guidance of Judge Ryu.[1]

It appears the primary motivation behind the request to intervene is the misguided and legally unsupported belief that any settlement of this case *must* include reclassification of

---

[1]    The purpose of this requested intervention is unclear. Both Driver Objectors and the Teamsters first request to intervene "for purposes of settlement." Dkt. No. 190 at 10-13.  The request is later described as "limited" – with respect to the Teamsters, for purposes of representing drivers that have chosen it as their "representative," and with respect to Driver Objector Tilander individually, to intervene to prosecute Plaintiffs' PAGA claim. *Id.* at 1:20-25. The request is then modified again when both Driver Objectors and the Teamsters appear to argue that they should be permitted to intervene to further litigate the action in general. *E.g., id.* at p. 14. In any case, as discussed herein, any degree of intervention is not necessary, as Plaintiffs are fully capable of zealously litigating this case if further litigation is necessary.

drivers as employees, and that, absent intervention, such a settlement may be approved by the Court, which would somehow be the Court's "stamp of approval" on Lyft's decision to classify its drivers as independent contractors.  Indeed, the Teamsters' and Driver Objectors' counsel admitted as much at the preliminary approval hearing. This theory is untenable – as Plaintiffs have previously noted, the vast majority of independent contractor misclassification cases settle without the defendant having to reclassify its workers. Further, nothing about this settlement, or any settlement to which Plaintiffs would agree, or the Court's approval of such a settlement, would affect the right of Lyft drivers to argue going forward that they have been misclassified, or the right of Lyft drivers who opt out of the settlement to make this argument regarding their past work, or the Teamsters' right to argue to the NLRB that the drivers have been misclassified. Likewise, approval of the settlement would in no way be the Court's stamp of approval on Lyft's driver classification, or otherwise reflect or decide the merits of this litigation, or somehow preclude future challenges to drivers' classification.

Similarly, Objectors claim that they should be permitted to intervene because, without reclassification, the settlement provides "no meaningful relief." To the contrary, and as described in Plaintiffs' previous submissions, the settlement provides for job protection for legions of Lyft drivers through the modified termination provision and corresponding right to notice and opportunity to cure, provides a meaningful and inexpensive avenue to contest Lyft's decisions relating to deactivations, threatened deactivations, and issues relating to fares, tips, or average hourly guarantees (the most common grounds for disputes between Lyft and its drivers), and provides for monetary payments that are linked to the value and strength of each driver's case.

Driver Objector Tilander also specifically requests intervention on grounds that Plaintiffs have "abandoned" their PAGA claim by settling it without being reclassified, because only "employees" can assert PAGA claims, and that he should be able to intervene and continue to prosecute the claim. He also argues that he should be able to intervene because Plaintiffs did not value the claim as highly as he would have. Mr. Tilander's first argument would require the

1    Court to determine that parties to an independent contractor misclassification action could *never*

2    settle *any* Labor Code claims absent reclassification, because all relevant Labor Code statutes

3    apply only to "employees."  With respect to Mr. Tilander's second argument, Plaintiffs valued

4    their PAGA claim into the hundreds of millions of dollars, then applied case law upholding a

5    PAGA penalty reduced to one-third of damages because, in that case, a higher award would

6    have been unjust, oppressive, or confiscatory. *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th

7    1157, 1214, 78 Cal. Rptr. 3d 572, 618 (2008) citing Cal. Lab. Code § 2699(e). Plaintiffs

8    reasoned that such a limitation was a reasonably likely outcome in this case in light of the fact

9    that Lyft would argue that its classification of drivers was in good faith, and the fact that there

10   has been no prior judicial ruling that they are employees. Plaintiffs also considered potential

11   arguments regarding the manageability of a trial of PAGA claims and that PAGA penalties

12   would constitute an impermissible double recovery. Plaintiffs' analysis is a meaningful, good

13   faith valuation and evaluation of the claim that should not be second-guessed by an objector.

14   Moreover, and more importantly with respect to this Motion, Mr. Tilander has no standing to

15   object to settlement of the PAGA claim and therefore has no grounds on which to intervene with

16   respect to this claim. *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1123 (9th Cir.) *cert.*

17   *denied*, 135 S. Ct. 870, 190 L. Ed. 2d 702 (2014) (emphasis added); citing *Arias v. Superior*

18   *Court*, 46 Cal. 4th 969, 986, 209 P.3d 923, 933 (2009) (discussed further, *infra*).

19   

20        Mr. Tilander (and possibly other Driver Objectors, though it is unclear from the Motion)

21   also argues that he should be permitted to intervene to represent the interests of "full time"

22   drivers in order to "assist" the Court with its evaluation of their claims. This is simply

23   unnecessary. The Court, as well as Plaintiffs' counsel, is well aware of the Court's own stated

24   beliefs regarding the relative strength of full time drivers' claims (though, of course, even full

25   time drivers are not guaranteed to prevail at trial, should Lyft's arbitration clause not be

26   enforced). And indeed, Plaintiffs negotiated for a higher payout to full time drivers, an issue

27   (among any other issues identified by the Court) that they would continue to negotiate if the

28   Court deems it necessary. Mr. Tilander's offered "assistance" would add nothing to the equation.

In sum, neither the Teamsters nor Driver Objectors have the right to intervene under Rule 24, nor would intervention do anything to protect their rights better than those rights are currently protected under the proposed settlement (or any revised settlement, to which they would also have the right to object to, or opt out from).  Moreover, intervention would unnecessarily complicate resolution of this matter and likely delay significant non-monetary benefits, as well as monetary payments, due to more than 150,000 Lyft drivers. For these reasons, and the reasons discussed below, the Court should deny this motion.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 24 governs both intervention as of right and permissive intervention.

In the absence of a statute conferring an unconditional right to intervene (which is not at issue here), an applicant to intervene must demonstrate that: (1) the application is timely; (2) the applicant has an interest in the subject matter of the litigation; (3) absent intervention, the applicant's interest will be impaired; and (4) the existing parties inadequately represent the applicant's interests. *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir.1997).

A court may grant permissive intervention where the applicant to intervene demonstrates (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a common question of law or fact. *Id.* at 1308.

## III.     ARGUMENT

**A.     The Motion to Intervene Should Be Rejected as Untimely.**

In the Ninth Circuit, three criteria are considered in determining whether a motion to intervene is timely: (1) the stage of the proceedings; (2) whether the parties would be prejudiced; and (3) the reason for any delay in moving to intervene. *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 836–37 (9th Cir.1996).

//

In *Allen v. Bedolla*, 787 F.3d 1218, 1 (9th Cir. 2015), the Ninth Circuit affirmed denial of a motion to intervene in circumstances similar to this one, reasoning that even though the motion was filed "[u]pon learning details of the prospective settlement," it was untimely because it was "filed after four years of ongoing litigation, on the eve of settlement, and threatened to prejudice settling parties by potentially derailing settlement talks, and especially where Objectors' concerns could largely be addressed through the normal objection process." *Id*. at 1222.

The Teamsters and Driver Objectors do not address *Allen*, but Plaintiffs note that they delayed *more* than the proposed intervenors in *Allen*, who moved to intervene as soon as they had notice of the settlement. Here, the Teamsters and Driver Objectors admit that they had notice of the terms settlement by, at the latest, the first week in February. Dkt. No. 190 at 5:21-23. Yet for an unexplained reason, they delayed for nearly two months, *after* Plaintiffs submitted their Motion for Preliminary Approval, *after* the Court reviewed the Motion, the settlement agreement itself, and supporting documents, *after* the Court requested supplemental briefing, *after* the parties requested an extension of time to file supplemental briefing, *after* both parties prepared and filed the requested supplemental briefing, *after* the Court reviewed the supplemental briefing, and *after* they filed their own objections to the settlement – only to file this Motion *the day before* the preliminary approval hearing. The Court should not countenance such an unexplained delay.[2]

Moreover, it is undisputed that the Teamsters and Driver Objectors had notice that settlement discussions were taking place beginning in early June 2015, as the occurrence of the

---

[2]    While a few district court cases pre-dating *Allen*, to which the Teamsters and Driver Objectors cite, have suggested that timeliness is assessed based on when the proposed intervenor became aware the actual terms of the settlement, the Teamsters' and Objectors motion would be untimely even under this standard. *See Morazan v. Aramark Unif. & Career Apparel Grp., Inc.*, No. 13-CV-00936-YGR, 2013 WL 4734061, *4 (N.D. Cal. Sept. 3, 2013) (applying this timeliness standard and finding that a motion to intervene filed two months after learning of the settlement was untimely).

mediations was publicly available information on the Court's docket. Dkt. Nos. 132, 134, 142, and 157. Indeed, the simple fact that these mediations were occurring (repeatedly) should have alerted proposed intervenors that the parties might reach a settlement agreement that would undoubtedly affect their interests,[3] and is sufficient to "start the clock" for a motion to intervene. *Chavez v. PVH Corp.*, No. 13-CV-01797 LHK, 2014 WL 6617142, *5 (N.D. Cal. Nov. 20, 2014) (finding a motion to intervene untimely where "Proposed Intervenors may not have been 'certain that the [settlement] would be adverse to their interests, [but] they had reason to know that negotiations might produce' a settlement that would affect their own interests.")

Further, there is no doubt that intervention would prejudice legions of Lyft drivers by delaying both monetary and significant non-monetary benefits conferred by this settlement, or, if necessary, a revised settlement with a similar framework. Conversely, the Teamsters and Driver Objectors will suffer <u>no</u> prejudice if they are not permitted to intervene because, as discussed further below, the Driver Objectors have the right to opt out of the settlement and/or object to it (which they have already done), and the Teamsters' rights are not affected by this private wage and hour litigation in any way.

The substantial and unexplained delay in filing this Motion and the severe prejudice that intervention that would likely cause to more than 150,000 Lyft drivers if the Motion is granted are ample grounds for denying this Motion.

**B.      Neither the Driver Objectors Nor the Teamsters Meet the Additional Requirements for Intervention as of Right or Permissive Intervention.**

Should the Court determine that the Motion is timely despite the stage of the proceedings, and despite the prejudice that intervention would cause to Lyft drivers, both Driver Objectors and the Teamsters fail to satisfy the remaining requirements under Rule 24.[4]

---

[3]      However, as discussed below, the Teamsters itself has only a tangential and speculative interest in this litigation.

[4]      Though movants do not do so in their papers, Plaintiffs separately address the Driver Objectors' and the Teamsters' grounds for intervention because the analysis is different with respect to each.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**1.    Driver Objectors Do Not Meet the Requirements for Intervention as of Right or for Permissive Intervention.**

**a.    Driver Objectors Do Not Have the Right to Intervene.**

In addition to filing a timely motion, a proposed intervenor who seeks intervention as of right must also establish that (1) the applicant has an interest in the subject matter in the litigation; (2) absent intervention, the applicant's interest will be impaired; and (3) the existing parties inadequately represent the applicant's interest. Fed. R. Civ. P. 24.

While the Driver Objectors do have an interest in the subject matter of this litigation, they do not meet either of the additional requirements for intervention as of right. Plaintiffs address these requirements in turn.

    *i. Driver Objectors' Legally Protectable Interests in the Litigation Are Protected by Their Right to Opt Out of the Settlement.*

Though discussed obliquely in their papers, Driver Objectors appear to argue that the proposed settlement impairs their interests in prosecuting all of the "variety of labor and employment law protections under state and federal laws" because it "waives" the argument that Lyft drivers are employees. Dkt. No. 190 at 14:17-20.

As discussed repeatedly over the last several weeks, this position is flawed for one fundamental reason: Driver Objectors have the right to opt out of the settlement, argue that they have been misclassified, and seek remedies under all statutes under which they have an interest. Courts have routinely found that the right to opt out under Rule 23 renders intervention motions unnecessary.[5] The same result should follow here, and Driver Objectors' arguments to the contrary should be rejected.

---

[5] *Zepeda v. PayPal, Inc.*, No. 10CV02500SBAJCS, 2014 WL 1653246, at *6 (N.D. Cal. Apr. 23, 2014) *objections overruled*, No. C 10-1668 SBA, 2014 WL 4354386 (N.D. Cal. Sept. 2, 2014) citing *Alaniz v. California Processors, Inc.*, 73 F.R.D. 269, 289 (N.D. Cal. 1976) (in denying intervention in class action, reasoning that "the ability to opt out precludes the [i]ntervenors from satisfying the impairment-of-interest test"); also citing *United States v. Allegheny–Ludlum Indus., Inc.*, 517 F.2d 826, 845 (5th Cir.1975)); *Grilli v. Metro. Life Ins. Co.*, 78 F.3d 1533, 1536, 1538 (11th Cir.) (affirming district court's denial of intervention in class action because intervenors could object to the settlement or opt out and litigate separately); also citing *Cohorst v. BRE Properties, Inc.*, No. 10CV2666 JM BGS, 2011 WL 3475274, *6 (S.D.

ii.   *Driver Objectors Have No Legally Protectable Interest in the Settlement of Plaintiffs' PAGA Claim.*

Separately, Driver Objector Tilander also asserts that he has the right to intervene specifically with respect to the settlement of Plaintiffs' PAGA claim because his purported "interests" under PAGA are impaired by the settlement in two ways:

First, Mr. Tilander argues that, because the proposed settlement does not provide for reclassification of Lyft drivers as employees, Plaintiffs do not have standing to settle their PAGA claim because PAGA claims can be brought only by "employees," and he should be permitted to intervene to prosecute that claim in Plaintiffs' place. Mr. Tilander provides no legal support whatsoever for this argument, which, if logically extended, would preclude settlement of *all* Labor Code claims asserted in independent contractor misclassification actions if the settlement does not provide for reclassification. In contrast to Mr. Tilander's complete absence of authority on the issue, Plaintiffs have identified several independent contractor misclassification cases that have resulted in settlement of Labor Code claims, including PAGA claims, without reclassification of workers. *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011), *final approval granted Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012); *Smith v. Cardinal Logistics Mgmt. Corp.*, No. 07- 2104 SC, 2011 WL 3667462, *1 (N.D. Cal. Aug. 22, 2011);

---

Cal. Aug. 5, 2011) (in denying intervention in class action, reasoning that intervenor could opt out of the class and pursue her own damages action or raise objections to the settlement during the final fairness hearing); also citing *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 605 (W.D.N.Y. 2011) (in denying intervention in putative class action, reasoning that putative intervenors' interests "can be fully protected at the fairness hearing for final approval of the settlement" and "class members who do not want to be bound by the settlement will be given an opportunity to opt out and pursue their own claims separately"); also citing *Doe v. Cin-Lan, Inc.*, No. 08-CV-12719, 2011 WL 37970, at *2-3 (E.D. Mich. Jan. 5, 2011) (despite fact that intervenors' motion was timely and they possessed interest in putative class action, "intervention is not necessary to prevent their claims from being settled without their input" and intervenors could simply opt out of the class or remain in the class and voice concerns at the fairness hearing) (citations omitted). Moreover, as noted, nothing prevents Objectors or any other drivers from challenging, on a going forward basis, their misclassification under the wage and hour laws at issue in this case.

*Alexander v. FedEx Ground Package System, Inc., et al.*, Case No. 3:05-cv-38 EMC (N.D. Cal.) (preliminary approval granted, final approval pending).

   Mr. Tilander's argument makes no sense for the additional reason that if Labor Code claims were limited to individuals who are, in fact, "employees," independent contractors who allege they are misclassified could never bring them absent a preliminary finding that they are employees. Mr. Tilander's logic again shows that he simply assumes that all Lyft drivers are employees, when the reality is such a finding has not been made and is not guaranteed.

   Second, Mr. Tilander asserts his (and the other Driver Objectors') belief that the value of the PAGA claim has been discounted too steeply in settlement negotiations and that he should be permitted to intervene to negotiate what he thinks would be a "better" settlement value for that claim. However, Mr. Tilander does not have a legally protectable interest in the settlement of Plaintiffs' PAGA claim. The <u>only</u> entity that has standing to object to the amount of a PAGA settlement is the state, because "PAGA plaintiffs are private attorneys general who, stepping into the shoes of the LWDA, bring claims on behalf of the state agency," and "[t]he employee's recovery is thus **an incentive** to perform a service to the state, **not restitution** for wrongs done to members of the class." *Baumann*, 747 F.3d at 1123 *cert. denied*, 135 S. Ct. 870, (emphasis added) citing *Arias*, 46 Cal. 4th at 986. Indeed, highlighting the law enforcement (rather than private) nature of PAGA, PAGA has no notice requirements for aggrieved employees, nor may such employees opt out of a PAGA action, nor does the court inquire into the named plaintiff's and class counsel's ability to fairly and adequately represent other aggrieved employees. *Id.*

   Thus, because penalties payable to workers under PAGA are simply "incentives to perform a service to the state," it follows that only the state has an interest with respect to settlement of PAGA claims. Accordingly, Mr. Tilander's request to intervene on this ground should be rejected.

//

//

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### b.    Driver Objectors Have No Right to Intervene Because Their Interests Are Adequately Represented.

Assuming the Court determines that Driver Objectors' interests would be impaired by the proposed settlement (though they would not be), Driver Objectors must also show that their interests are "inadequately represented" in the current litigation. Fed. R. Civ. P. 24.

While Driver Objectors do set forth the general standard for determining adequacy of representation for purposes of a motion to intervene,[6] that standard has little application in the context of a motion to intervene in a class settlement. Indeed, the vast majority, if not all, courts that have considered a motion to intervene by unnamed class members have rejected the motion on grounds that their rights are protected by their ability to opt out of the settlement, and never get to the "adequacy of representation" factor. The reason for that is simple – class members' interests in the litigation are necessarily "adequately represented" because they have the right to opt out of the settlement to pursue their own claims under Rule 23.

Of course, this is precisely what the Driver Objectors can do in this case, and therefore their interests, and representation thereof, are entirely within their control. While Driver Objectors argue that they would make different arguments and "not waive their employee status," and not "discount" the value of their claims in settlement, nothing about this settlement prevents them from doing exactly that in a separate proceeding.

Driver Objectors also suggest that they should be permitted to intervene because they would be able to "assist" the Court in assessing the rights of "full time" Lyft drivers. First, this argument is irrelevant to the intervention analysis, which focuses exclusively on the rights of the proposed intervenors. Second, this is simply unnecessary, as both the Court and Plaintiffs are aware of the Court's views about the significance of the full time/part time distinction and have

---

[6]    The factors are (1) whether a party before the court will make the same arguments the prospective intervenor would; (2) whether the present party is capable and willing to make those same arguments; and (3) whether the intervenor would offer necessary elements to the proceedings that other parties would neglect. *California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 778 (9th Cir. 1986).

negotiated a settlement that takes this view into account.[7] Adding a Driver Objector to "assist" the Court is therefore unnecessary and would likely result in a counterproductive delay in resolving this litigation and conferring significant benefits to Lyft drivers.

Because Driver Objectors' legally protectable interests are protected by the opt out provision of Rule 23, and, alternatively, because they have the right to represent themselves (or obtain representation for themselves) upon opting out of the proposed settlement, their request for intervention as of right should be denied.

> **c.    Driver Objectors Should Not Be Granted Permissive Intervention Because Intervention Would Unduly Delay the Resolution of This Case and Implementation of the Benefits Negotiated for Lyft Drivers.**

A motion for permissive intervention may be granted if, in addition to being timely, the proposed intervener demonstrates that the applicant's claim or defense, and the main action, have a common question of law or fact. Fed. R. Civ. P. 24. However, in exercising its discretion to grant permissive intervention while a class settlement is pending, a court should consider whether intervention might unduly delay or prejudice the adjudication of the rights of the original parties. *See Alexander v. Fedex Ground Package Sys., Inc.*, No. 05-CV-00038-EMC, 2015 WL 5698756, *6 (N.D. Cal. Sept. 29, 2015) (denying request for permissive intervention in pending class settlement where intervention would threaten to derail the parties' settlement and because the movant had the ability to represent his own interests simply as an objector, or by opting out of the settlement and pursuing his own action).

Though Driver Objectors appear to recognize this legal principle, they <u>again</u> make the argument that they should be permitted to intervene so that they can argue to the Court that Lyft drivers are employees. This, <u>again</u>, fundamentally misunderstands the settlement and the effect of the settlement. At risk of belaboring the point, the settlement is not a determination of the merits of the case, and Driver Objectors will be free to make their arguments in a subsequent

---

[7]    As noted above, Plaintiffs will continue negotiations on this point (as well as any others) if the Court deems it necessary.

proceeding.

Mr. Tilander also argues that he should be granted permissive intervention to provide guidance to the Court in assessing the claims of full time drivers. For the reasons stated above, this is both unnecessary and counterproductive.

Thus, the result in *Alexander* should follow here, and the Court should not permit permissive intervention when it could well result in the derailment of a hard fought settlement reached after years of litigation, depriving more than 150,000 Lyft drivers of money, job protection, and other substantial benefits.

### 2. The Teamsters Do Not Meet the Requirements for Intervention as of Right or Permissive Intervention.

#### a. The Teamsters Have No Right to Intervene Because the Settlement Does Not Interfere with Its Interests.

"To trigger the right to intervene, an economic interest must be <u>concrete</u> and related to the underlying subject matter of the litigation." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004) (emphasis added). Additionally, even if the interest at issue is not economic in nature (as the Teamsters appear to assert here), "a party has a sufficient interest for intervention [as of right] purposes if it <u>will</u> suffer a practical impairment of its interests as a result of the pending litigation." *City of Emeryville v. Robinson*, 621 F.3d 1251, 1259 (9th Cir. 2010) (emphasis added). Thus, interests that are "speculative" or not contingent upon the results of the underlying litigation have no grounds for intervention as of right. *Id.*

The Teamsters' sole argument on this point is that Court approval of this settlement (or any settlement that does not provide for reclassification of drivers as employees) would "affirm[] that the drivers are independent contractors" and "impede" the Teamsters' pending claim in front of the NLRB. Once again: Court approval of the settlement would in no way "affirm" Lyft drivers' status as independent contractors or in any way preclude the Teamsters from pursuing their charge in front of the NLRB.  Court approval of the settlement would simply be a finding that a settlement agreement is fair and reasonable, not a ruling on the merits

of the case, and nothing in the settlement agreement itself even hints that the merits of the case have been resolved.[8] [9]

The Teamsters' request for intervention as of right misses both the purpose and impact of court approval of the settlement, as well as the settlement's future legal effect. Accordingly, the Teamsters' request for mandatory intervention should be rejected.[10]

---

[8] At the preliminary approval hearing, the Teamsters' counsel noted that the proposed revised Terms of Service requires drivers to not "interfere with or disrupt the Services or the Lyft Platform or the servers or networks connected to the Lyft Platform." The Teamsters view this provision as affecting its ability to represent drivers in potential labor disputes when and if it is allowed to represent drivers. This provision has no impact on the intervention analysis (nor does it impact the overall fairness of the agreement) for several reasons: First, Plaintiffs did not negotiate this provision; it is part of the current Lyft Terms of Service, and Lyft could continue to implement it regardless of the Teamsters' objections to it. Second, the impact of this provision on the Teamsters is speculative, as the Teamsters do not currently represent Lyft drivers, and in fact cannot do so absent legislative action or a finding by the NLRB, upheld on appeal, that drivers are in fact employees under the NLRA. Third, the settlement in no way prevents the Teamsters from challenging the enforceability of this provision. If this provision violates the NLRA, it will not be enforceable, and the mere fact that it remains in Lyft's Terms of Service under a court-approved wage and hour settlement does not preclude such a challenge.

[9] The Teamsters' cited authorities on this point are factually distinguishable, as in each case the proposed intervenor would have been affected by the outcome of the underlying litigation: In *State of Idaho v. Freeman*, 625 F.2d 886, 887 (9th Cir. 1980), the Ninth Circuit permitted intervention by the National Organization for Women ("NOW") in litigation challenging procedures for ratification of the proposed Equal Rights Amendment (ERA) to the Constitution of the United States. The Court reasoned that NOW "had an interest in the ratification of the amendment that would be impaired by an adverse decision." *Id.* In *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983), a case involving the creation of Birds of Prey Conservation Area, the Ninth Circuit held that the Audobon Society, a non-profit organization devoted to the protection of birds and other animals and their habitats, had the right to intervene because an adverse decision in that suit would impair the Society's interest in the preservation of birds and their habitats. In *Washington State Bldg. & Const. Trades Council, AFL-CIO v. Spellman*, 684 F.2d 627 (9th Cir. 1982), a case involving a challenge to a Washington state environmental initiative, the Ninth Circuit simply held that a sponsor of an initiative has the right to intervene in litigation which challenges the constitutionality of the initiative. *Id.* at 629-630.

[10] Because the Teamsters have no protectable interest in this litigation, it has no interests that must be "adequately represented," and Plaintiffs do not reach this analysis as they did with respect to Driver Objectors.

**b.    The Teamsters Should Not Be Granted Permissive Intervention Because It Does Not Have Claims Against Lyft in Common with the Underlying Case.**

As noted above, a timely motion for permissive intervention is appropriate only if, *inter alia*, the entity requesting intervention <u>has claims</u> in common with the underlying action. Fed. R. Civ. P. 24.

The Teamsters contend that it has "articulated a common question of law or fact sufficient to form the basis for permissive intervention." Dkt. No. 190 at 16:6-7. Plaintiffs cannot conceive of what these common questions might be, as the Teamsters <u>itself</u> has no wage and hour claims against Lyft.

Accordingly, there is no basis for the Teamsters to intervene in this action.

**C.    If the Court Permits Either the Teamsters or Objectors to Intervene, It Should Be Only for the Limited Purpose of Objecting to the Settlement.**

Lastly, if either the Teamsters or Objectors are permitted to intervene, it should be permitted only for the limited purpose of objecting to the settlement. *See In re Novatel Wireless Sec. Litig.*, No. 08CV1689 AJB RBB, 2014 WL 2858518, *2 (S.D. Cal. June 23, 2014) *amended in part*, No. 08CV1689 AJB RBB, 2014 WL 3341049 (S.D. Cal. July 8, 2014).

Plaintiffs reiterate that this Motion is inconsistent in setting forth the purpose for which the Teamsters and Driver Objectors wish to intervene (*see* fn. 1), which suggests that movants are not entirely sure of exactly what they would do if their Motion were to be granted. Accordingly, if the Court is inclined to grant the Motion, Plaintiffs request that the Court expressly limit its ruling to permit intervention for the <u>exclusive</u> purpose of objecting to the settlement so as to prevent further disruption of the resolution of this matter, and also reject the proposed complaints filed by the Teamsters and Driver Objectors in connection with this Motion.

### IV.    CONCLUSION

The proposed settlement agreement is a compromise that goes well beyond the success of most settlement agreements in misclassification cases and was based upon the careful and

reasoned judgment of counsel highly experienced in litigation of this type of matter, with the guidance of a mediator (a federal magistrate judge) also experienced in litigation of this type of matter. Plaintiffs continue to submit that the agreement is fair and reasonable and should be approved.

However, if the Court decides that the parties must revisit some of the terms of the settlement within its overall framework, there is no reason – nor any legal basis – for the Court to permit intervention, which would serve only to disrupt further proceedings and prevent upwards of 150,000 class members from realizing both monetary and real, job-protecting non-monetary benefits conferred by this settlement. The Motion should be denied.

Dated: March 31, 2016                         LICHTEN & LISS-RIORDAN, P.C.


                                              By: ____/s/_ *Shannon Liss-Riordan*_____
                                                  Shannon Liss-Riordan, *pro hac vice*
                                                  Attorney for Plaintiffs


                                              CARLSON LEGAL SERVICES


                                              By: ____/s/_ *Matthew D. Carlson*_____
                                                  Matthew D. Carlson
                                                  Attorney for Plaintiffs