# EXHIBIT 1

LICHTEN & LISS-RIORDAN, P.C.
MATTHEW D. CARLSON - # 273242
mcarlson@llrlaw.com
466 Geary Street, Suite 201
San Francisco, CA 94102
SHANNON LISS-RIORDAN - Pro Hac Vice
sliss@llrlaw.com
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:    617 994 5800

Attorneys for Plaintiffs COTTER, MACIEL, and KNUDTSON

KEKER & VAN NEST LLP
RACHAEL E. MENY - # 178514
rmeny@kvn.com
R. JAMES SLAUGHTER - # 192813
rslaughter@kvn.com
SIMONA A. AGNOLUCCI - # 246943
sagnolucci@kvn.com
ALEXANDER DRYER - # 291625
adryer@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
THOMAS M. MCINERNEY - # 162055
tmm@ogletreedeakins.com
Steuart Tower, Suite 1300, One Market Plaza
San Francisco, CA  94105
Telephone:    415 442 4810
Facsimile:    415 442 4870

Attorneys for Defendant LYFT, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK COTTER and ALEJANDRA MACIEL, JEFFREY KNUDTSON on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>LYFT, INC.,<br><br>          Defendant. | Case No. 3:13-cv-04065-VC<br><br>**REVISED CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**<br><br>Judge:        Hon. Vince Chhabria<br><br>Date Filed:    September 3, 2013<br>Trial Date:    None Set |

# Revised Class Action Settlement Agreement and Release

This Revised Class Action Settlement Agreement and Release, including Exhibits A–E hereto ("Settlement Agreement" or "Agreement"), is made and entered into by, between, and among Plaintiffs Patrick Cotter, Alejandra Maciel, and Jeffrey Knudtson (collectively "Named Plaintiffs"), on behalf of themselves and the Settlement Class as defined below, and Defendant Lyft, Inc. ("Defendant" or "Lyft"). Named Plaintiffs and Defendant (collectively, the "Parties") enter into this Agreement to effect a full and final settlement and dismissal with prejudice of all claims brought against Lyft in *Cotter et al. v. Lyft, Inc.*, Case No. 3:13-cv-04065-VC (N.D. Cal.), including as amended pursuant to this Agreement (the "Action"), and all claims based on or reasonably related thereto. This Agreement is intended to fully and finally compromise, resolve, discharge, and settle the Released Claims, as defined and on the terms set forth below, and to the full extent reflected herein, subject to the approval of the Court.

## I. RECITALS

1. This Agreement is made in consideration of the following facts:

2. WHEREAS, on September 3, 2013, Plaintiff Patrick Cotter filed a complaint in the Northern District of California asserting various wage- and expense-related claims against Lyft on behalf of himself and a proposed class of Drivers nationwide, thereby initiating the Action, *see* Docket Entry No. 1;

3. WHEREAS, on November 4, 2013, Plaintiff Cotter, along with Plaintiff Alejandra Maciel, filed a first amended complaint in the Action asserting various wage-, hour-, and expense-related claims against Lyft on behalf of themselves and a proposed class of Drivers nationwide, *see* Docket Entry No. 10;

4. WHEREAS, on December 23, 2013, Plaintiffs Cotter and Maciel filed a second amended complaint asserting various wage-, hour-, and expense-related claims against Lyft on behalf of themselves and a proposed class of Drivers nationwide, *see* Docket Entry No. 28;

5. WHEREAS, on August 7, 2014, the Court struck the class allegations in the Action on the grounds that the California laws asserted in the complaint did not create a cause of action for Drivers who drove entirely outside of California and that the choice of law provision in

1055708

Lyft's Terms of Service did not create a cause of action under California law, *see* Docket Entry No. 51;

6.      WHEREAS, on August 28, 2014, Plaintiffs Cotter and Maciel filed a third amended complaint in the Action asserting various wage-, hour-, and expense-related claims against Lyft on behalf of themselves and a proposed class of Drivers in California, *see* Docket Entry No. 55;

7.      WHEREAS, on March 11, 2015, the Court denied the Parties' cross-motions for summary judgment in the Action as to Plaintiffs Cotter and Maciel, *see* Docket Entry No. 94;

8.      WHEREAS, on July 15, 2015, the Named Plaintiffs filed a fourth amended complaint in the Action asserting various wage-, hour-, and expense-related claims against Lyft on behalf of themselves and a proposed class of Drivers in California, *see* Docket Entry No. 144;

9.      WHEREAS, the Parties have engaged in extensive discovery, including all of the following: Named Plaintiffs propounded multiple sets of written discovery, reviewed more than 8,300 pages of documents produced by Lyft, and analyzed several sets of confidential data made available by Lyft; Named Plaintiffs deposed multiple Lyft employees, including a Lyft senior executive; Lyft propounded written discovery and reviewed more than 1,700 pages of documents produced by Named Plaintiffs; and Lyft deposed Plaintiffs Cotter and Maciel.

10.     WHEREAS, the Named Plaintiffs allege generally that Lyft improperly classified them and all putative Settlement Class Members as independent contractors rather than employees, and assert derivative claims related thereto;

11.     WHEREAS, Lyft denies the allegations in the Action; denies that it has engaged in any wrongdoing; denies that any Settlement Class Member is or ever was an employee of Lyft; denies that it took gratuities from any Driver; denies that it failed to pay any Driver a minimum wage to the extent required by California law; denies that it failed to reimburse any Driver for business expenses to the extent required by California law; denies that it failed to provide any Driver with wage statements to the extent required by California law; denies that the Named Plaintiffs' allegations state valid claims; denies that a litigation class could properly be certified in

the Action; and states that it is entering into this Settlement Agreement solely to eliminate the uncertainties, burden, expense, and delay of further protracted litigation;

12.    WHEREAS, the Parties attended four mediation sessions with the Hon. Magistrate Judge Donna M. Ryu before agreeing to the terms of an arm's-length settlement (the "Initial Settlement Agreement");

13.    WHEREAS, on January 26, 2016, Named Plaintiffs filed a motion for preliminary approval of the Initial Settlement Agreement, on March 10, 2016, Named Plaintiffs filed a supplemental brief in support of preliminary approval, and on March 17, 2016, Lyft filed a brief in further support of preliminary approval, *see* Docket Entry Nos. 169, 177, and 185;

14.    WHEREAS, on March 24, 2016, the Court held a hearing on preliminary approval of the Initial Settlement Agreement;

15.    WHEREAS, on April 7, 2016, the Court issued an order denying preliminary approval of the Initial Settlement Agreement and outlining the terms of a revised settlement that "the Court would, at least on the current record, preliminarily approve," *see* Docket Entry No. 200;

16.    WHEREAS, the Parties attended a fifth mediation session with the Hon. Magistrate Judge Donna M. Ryu before agreeing to the terms of a revised arm's-length settlement, the instant Settlement Agreement;

17.    WHEREAS, the Named Plaintiffs and Class Counsel believe that the Settlement Agreement provides a favorable recovery for the Settlement Class, based on the claims asserted, the evidence developed, and the damages that might be proven against Lyft in the Action. The Named Plaintiffs and Class Counsel further recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action against Lyft through trial and appeals. They have also considered the uncertain outcome and the risk of any litigation, especially in complex litigation such as the Action, as well as the difficulties and delays inherent in any such litigation. They are also mindful of the inherent challenges of proof and the strength of the defenses to the alleged claims, and therefore believe that it is desirable that the Released Claims

1055708

be fully and finally compromised, settled, and resolved with prejudice and enjoined as set forth herein;

18.     WHEREAS, the Named Plaintiffs and Class Counsel, based on their own independent investigations and evaluations, have examined the benefits to be obtained under the terms of this Settlement Agreement, have considered the claims of the Named Plaintiffs, the claims of the average Settlement Class Member, the risks associated with the continued prosecution of the Action, and the likelihood of success on the merits of the Action, and believe that, after considering all the circumstances, including the uncertainties surrounding the risk of further litigation and the defenses that Lyft has asserted and could assert, the proposed Settlement set forth in this Agreement is fair, reasonable, adequate, in the best interests of the Named Plaintiffs and the Settlement Class, and confers substantial benefits upon the Settlement Class;

19.     WHEREAS, Named Plaintiffs warrant and represent that they are effecting this Settlement and executing this Agreement after having received full legal advice as to their respective rights and have had the opportunity to obtain independent counsel to review this Agreement;

20.     WHEREAS, the Parties further agree that the Agreement, the fact of this Settlement, any of the terms in the Agreement, and any documents filed in support of the Settlement shall not constitute, or be offered, received, claimed, construed, or deemed as, an admission, finding, or evidence of: (i) any wrongdoing, (ii) any violation of any statute or law, (iii) any liability on the claims or allegations in the Action on the part of any Released Parties, or (iv) the propriety of certifying a litigation class in the Action or any other proceeding, and shall not be used by any Person for any purpose whatsoever in any legal proceeding, including but not limited to arbitrations, other than a proceeding to enforce the terms of the Agreement.  There has been no final determination by any court as to the merits of the claims asserted by Named Plaintiffs against Lyft, nor has there been any final determination as to whether a class should be certified, other than for settlement purposes only;

21.     WHEREAS, for settlement purposes only, Lyft will stipulate to the certification of class claims that are subject to the certification requirements of Rule 23.  Lyft disputes that

certification is proper for the purposes of litigating the class' claims proposed in or flowing from the operative complaint in the Action;

22.     WHEREAS, the Parties desire to compromise and settle all issues and claims that have been, could have been, or should have been brought against Lyft in the Action;

23.     NOW, THEREFORE, IT IS HEREBY STIPULATED, CONSENTED TO, AND AGREED, by the Named Plaintiffs, for themselves and on behalf of the Settlement Class, and by Lyft that, subject to the approval of the Court, the Action shall be settled, compromised, and dismissed, on the merits and with prejudice, and the Released Claims shall be finally and fully compromised, settled, and dismissed as to the Released Parties, in the manner and upon the terms and conditions hereafter set forth in this Agreement.

## II.     DEFINITIONS

24.     In addition to the terms defined elsewhere in this Agreement, the following terms, used in this Settlement Agreement, shall have the meanings specified below:

a)     "Amended Complaint for Settlement" means the Amended Complaint in the Action, without material variation from Exhibit E, that Class Counsel shall seek to file pursuant to Paragraph 25 and shall file concurrently with the Preliminary Approval Order.

b)     "Asserted Claims" means all claims asserted in the Amended Complaint for Settlement and their associated allegations and prayer for relief.

c)     "Authorized Claimant" means any Settlement Class Member who submits a valid and timely Claim that qualifies for a payment under the terms of this Settlement Agreement.

d)     "Bar Date" means the final date by which a Claim Form must be postmarked or submitted online in order for a Settlement Class Member to be eligible to receive a Settlement Payment.  The Bar Date shall be the date of the Fairness Hearing, and shall be specifically identified and set forth in the Preliminary Approval Order and the Class Notice.

e)     "Claim" means the submission to be made by Settlement Class Members, using the Claim Form.

1055708

f) "Claim Form" means the claim form to be developed by the Parties and the Settlement Administrator, or an electronic equivalent of such claim form.

g) "Class Counsel" means Lichten & Liss-Riordan, P.C.

h) "Class Members' Released Claims" means any and all past and present claims, actions, demands, causes of action, suits, debts, obligations, damages, rights or liabilities, of any nature and description whatsoever, known or unknown, existing or potential, recognized now or hereafter, expected or unexpected, pursuant to any theory of recovery (including but not limited to those based in contract or tort, common law or equity, federal, state, or local law, statute, ordinance, or regulation, and for claims for compensatory, consequential, punitive or exemplary damages, statutory damages, penalties, interest, attorneys' fees, costs, or disbursements, including but not limited to those incurred by Class Counsel or any other counsel representing the Named Plaintiffs or any Settlement Class Members, other than those expressly awarded by the Court in the Fee and Expense Award authorized by this Agreement) that are based on or reasonably related to the claims asserted in the Action, including as amended pursuant to this Agreement, and specifically the following claims based on or reasonably relating to claims asserted or alleged in the Action: claims for unpaid wages (including claims for minimum wage, regular wages, overtime, final wages, calculation of the correct overtime or regular rate, and meal period and rest period premiums), expense reimbursements, interest, penalties (including waiting time penalties pursuant to Labor Code section 203, wage statement penalties pursuant to Labor Code section 226, and civil penalties pursuant to the Labor Code Private Attorneys General Act of 2004 (Labor Code sections 2698, et seq.) ("PAGA")), claims pursuant to Labor Code sections 200–204, 206.5, 207, 208, 210–214, 216, 218, 218.5, 218.6, 221, 225.5, 226, 226.3, 226.7, 226.8, 227.3, 351, 353, 432.4, 510, 512, 551–552, 558, 1174, 1174.5, 1182.12, 1194, 1194.2, 1194.3, 1197, 1197.1, 1198, 2753, 2802, 2804, and 2699 et seq., Code of Civil Procedure section 1021.5, California Code of Regulations, Title 8, Sections 11010 and 11040, the Industrial Welfare Commission Wage Orders, and claims under Business and Professions Code section 17200, et seq., the federal Fair Labor Standards Act, claims for attorneys' fees and costs, and unfair business practices.

i)     "Class Notice" means the notice of settlement to be provided to Settlement Class Members pursuant to Federal Rule of Civil Procedure 23, the Preliminary Approval Order, and this Settlement Agreement.

j)     "Court" means the United States District Court for the Northern District of California.

k)     "Dispute Resolution Fund" means the fund consisting of one hundred thousand dollars ($100,000) set aside from the Settlement Amount to be used: (i) to resolve any bona fide disputes that may arise regarding the calculation and disbursement of Settlement Payments according to the Plan of Allocation, as provided in Paragraph 52; and (ii) to disburse Settlement Payments to individuals mistakenly excluded from the Settlement Class, as provided in Paragraph 67.

l)     "District Court Final Approval Order" means the Final Judgment and order, which will be agreed to by the Parties, that is entered by the Court finally approving the Settlement and this Settlement Agreement in all respects, as further set forth in Paragraph 30.

m)     "Driver" means any individual who has been approved by Lyft to use the Lyft smartphone application in "driver mode."

n)     "Effective Date" means seven (7) days after which both of the following events have occurred: (i) the District Court Final Approval Order has been entered and (ii) the District Court Final Approval Order and Judgment have become Final.

o)     "Enhancement Payment" means the amount approved by the Court to be paid to each Named Plaintiffs, in addition to their respective payments under the Plan of Allocation, and as further described in Paragraph 39, in recognition of their efforts in coming forward as Named Plaintiffs and as consideration for a full, general, and comprehensive release of the Named Plaintiffs' General Released Claims.  Under the terms of Paragraph 39, Enhancement Payments are payable fourteen (14) days after the Effective Date.  Enhancement Payments shall be considered non-wages for which IRS Form 1099 will be issued to each of the Named Plaintiffs.

1055708

p)      "Escrow Account" means the bank account maintained by the Escrow Agent into which the Settlement Fund shall be deposited, pursuant to the Escrow Agreement, which shall be agreed to by the Parties.

q)      "Escrow Agent" means Garden City Group, the entity mutually agreed upon by Lyft and Class Counsel to maintain the Escrow Account, into which the Settlement Fund shall be deposited in accordance with the terms of this Agreement.

r)      "Exclusion/Objection Deadline" means the final date by which a Settlement Class Member may either (i) object to any aspect of the Settlement (pursuant to the Preliminary Approval Order and Section XI), or (ii) request to be excluded from the Settlement (pursuant to the Preliminary Approval Order and Section X). The Exclusion/Objection Deadline shall be sixty (60) days after the Mailed Notice Date, and shall be specifically identified and set forth in the Preliminary Approval Order and the Class Notice.

s)      "Fairness Hearing" means the hearing at or after which the Court will make a final decision pursuant to Federal Rule of Civil Procedure 23 as to whether the Settlement is fair, reasonable, and adequate and, therefore, finally approved by the Court.

t)      "Fee and Expense Award" means the attorneys' fees and expenses as awarded by the Court to Class Counsel and as further described in Paragraph 40. Under the terms of Paragraph 40, the Fee and Expense Award is payable fourteen (14) days after the Effective Date.

u)      "Final," when referring to a judgment order, means that (i) the judgment is a final, appealable judgment; and (ii) either (a) no appeal has been taken from the judgment as of the date on which all times to appeal therefrom have expired, or (b) an appeal or other review proceeding of the judgment having been commenced, such appeal or other review is finally concluded and no longer is subject to review by any court, whether by appeal, petitions for rehearing or re-argument, petitions for rehearing en banc, petitions for writ of certiorari, or otherwise, and such appeal or other review has been finally resolved in such manner that affirms the judgment order in its entirety.

v)      "Judgment" means the judgment to be entered in the Action on final approval of this Settlement, pursuant to Paragraph 30 and elsewhere in this Agreement.

w)      "Legally Authorized Representative" means an administrator/administratrix, personal representative, or executor/executrix of a deceased Settlement Class Member's estate; a guardian, conservator, or next friend of an incapacitated Settlement Class Member; or any other legally appointed Person responsible for handling the business affairs of a Settlement Class Member.

x)      "Mailed Notice Date" means the date of the initial distribution of the Notice of Settlement of Class Action to potential Settlement Class Members, as provided in Paragraphs 25 and 58.

y)      "Named Plaintiffs' General Released Claims" means any and all past, present, and future claims, actions, demands, causes of action, suits, debts, obligations, damages, rights or liabilities, of any nature and description whatsoever, known or unknown, existing or potential, recognized now or hereafter, expected or unexpected, pursuant to any theory of recovery (including but not limited to those based in contract or tort, common law or equity, federal, state, or local law, statute, ordinance, or regulation, and for claims for compensatory, consequential, punitive or exemplary damages, statutory damages, penalties, interest, attorneys' fees, costs, or disbursements against the Releasees (as defined below), including unknown claims covered by California Civil Code section 1542, as quoted below in Paragraph 71, by the Named Plaintiffs, arising during the period from the beginning of the Named Plaintiffs' first interaction with Lyft to the date on which the Court enters the Order of Final Approval of this Settlement, for any type of relief that can be released as a matter of law, including, without limitation, claims for wages, damages, unpaid costs, penalties (including civil and waiting time penalties), liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief with the exception of any claims which cannot be released as a matter of law. Plaintiffs Cotter, Maciel, and Knudtson will generally release all known and unknown claims against Lyft, and waive the application of section 1542 of the California Civil Code conditioned upon Court approval of an Enhancement Payment for them. The claims released pursuant to this paragraph

9

include but are not limited to the Class Members' Released Claims, as well as any other claims under any provision of the Fair Labor Standards Act, the California Labor Code (including sections 132a, 4553 et seq.) or any applicable California Industrial Welfare Commission Wage Orders, and claims under state or federal discrimination statutes, including, without limitation, the California Fair Employment and Housing Act, California Government Code section 12940 et seq.; the Unruh Civil Rights Act, California Civil Code section 51 et seq.; the California Constitution; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq.; the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.; the Age Discrimination in Employment Act of 1967, as amended; the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.; and all of their implementing regulations and interpretive guidelines.

z)     "Net Settlement Fund" means the Settlement Fund less the PAGA Payment, the Fee and Expense Award, Enhancement Payments, escrow fees, costs, Taxes, and expenses (including, but not limited to, any cost and expenses paid out of the Notice and Administration Fund, any estimated future costs and expenses approved by the Court) approved by the Court as further provided in this Agreement, and all other funds, payments, and amounts provided for in subparts (a) through (f) of Paragraph 78.

aa)     "Notice and Administration Fund" means the fund consisting of one hundred thousand dollars ($100,000) advanced by Lyft from the Settlement Amount to the Escrow Account to be used by the Settlement Administrator at the direction of Class Counsel to pay the costs of notifying the Settlement Class Members, soliciting the filing of Claims by Settlement Class Members, assisting Settlement Class Members in making their Claims, and otherwise administering, on behalf of the Settlement Class Members, the Settlement embodied in this Settlement Agreement, as further described in this Agreement.  The monies in the Notice and Administrative Fund are part of the Settlement Amount to be paid by the Lyft.  If for any reason the Settlement does not become Final or the Effective Date does not occur, the remaining money deposited into the Notice and Administration Fund shall be returned to Lyft, in accordance with the terms of the Escrow Agreement, and as further provided in Paragraph 66.

REVISED CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE
Case No.  3:13-cv-04065-VC

bb)    "Notice of Settlement of Class Action" means the long-form Court-approved notice, without material variation from Exhibit B.

cc)    "Opt-Out List" means the Court-approved list of all Persons who timely and properly requested exclusion from the Settlement Class, as further provided in Section X and Paragraph 30.

dd)    "PAGA Claims" means the Named Plaintiffs' representative action seeking penalties pursuant to the Private Attorneys General Act of 2004 ("PAGA") alleged in the operative complaint in the Action.

ee)    "PAGA Payment" means a total payment of one million dollars ($1,000,000) to settle all claims under the PAGA. From this amount, seventy-five percent (75%), or seven-hundred fifty-thousand dollars ($750,000), will be paid to the California Labor and Workforce Development Agency ("LWDA") for civil penalties pursuant to the PAGA and twenty five percent (25%), or two-hundred fifty-thousand dollars ($250,000), will be distributed to Class Members.

ff)    "Person" means any individual, corporation, partnership, association, affiliate, joint stock company, estate, trust, unincorporated association, entity, government and any political subdivision thereof, or any other type of business or legal entity.

gg)    "Plan of Allocation" means the plan for allocating the Net Settlement Fund between and among Authorized Claimants as approved by the Court, as further set forth in Paragraphs 43–49. Settlement Payments pursuant to the Plan of Allocation shall be considered non-wages for which IRS Form 1099 will be issued to Authorized Claimants if required.

hh)    "Preliminary Approval Date" means the date that the Court enters the Preliminary Approval Order and thus: (i) preliminarily approves the Settlement, and the exhibits thereto, and (ii) enters an order providing for notice to the Settlement Class, an opportunity to opt out of the Settlement Class, an opportunity to submit timely objections to the Settlement, a procedure for submitting claims, and setting a hearing on the fairness of the terms of Settlement, including approval of attorneys' fees and costs.

REVISED CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE
Case No. 3:13-cv-04065-VC

1055708

ii)	"Preliminary Approval Order" means the Order that the Named Plaintiffs and Lyft will seek from the Court, without material variation from Exhibit A. Entry of the Preliminary Approval Order shall constitute preliminary approval of the Settlement Agreement.

jj)	"Released Claims" means (i) Class Members' Released Claims and (ii) Named Plaintiffs' General Released Claims.

kk)	"Released Parties" or "Releasees" means (i) Lyft and its past, present, and future parents, subsidiaries, affiliates, divisions, joint ventures, licensees, franchisees, and any other legal entities, whether foreign or domestic, that are owned or controlled by Lyft and (ii) the past, present, and future shareholders, officers, directors, members, agents, employees, independent contractors, consultants, representatives, fiduciaries, insurers, attorneys, legal representatives, predecessors, successors, and assigns of the entities in Part (i) of this Subparagraph.

ll)	"Ride" means the pickup and transportation of a passenger or group of passengers traveling together, from origin to destination, by a Driver. A Ride begins when the Driver uses the Lyft smartphone application to accept a transportation request from a passenger and such acceptance is recorded by Lyft. A Ride ends when the Driver selects the "drop off" or equivalent option in the Lyft smartphone application (or the application selects such option automatically) and such selection is recorded by Lyft.

mm)	"Ride Mode" means the period between the beginning and end of a Ride.

nn)	"Settlement" means the settlement of the Action between and among the Named Plaintiffs, the Settlement Class Members, and Defendant, as set forth in this Settlement Agreement.

oo)	"Settlement Administrator" means Garden City Group, the neutral, third-party settlement administrator to be appointed by the Court.

pp)	"Settlement Amount" means twenty-seven million dollars ($27,000,000).

qq)	"Settlement Class" means all Drivers who gave at least one Ride in California during the Settlement Class Period. Excluded from the Settlement Class are Class

Counsel and their employees and immediate family members and the judicial officers and associated court staff assigned to the Action and their immediate family members.

rr) "Settlement Class Member" means any member of the Settlement Class.

ss) "Settlement Class Period" means the period from May 25, 2012 through the Preliminary Approval Date.

tt) "Settlement Fund" means the Settlement Amount.

uu) "Settlement Payment" means the payment to a Settlement Class Member calculated pursuant to the Plan of Allocation.

vv) "Summary Notice of Settlement of Class Action" means the form of summary notice, without material variation from Exhibit C.

**III. SUBMISSION OF THE SETTLEMENT AGREEMENT TO THE COURT FOR PRELIMINARY AND FINAL APPROVAL**

25. Promptly upon execution of this Settlement Agreement, the Named Plaintiffs shall submit to the Court the Amended Complaint for Settlement, which Named Plaintiffs shall seek to enter pursuant to the agreement of the parties, and a motion for preliminary approval of the Settlement. The motion for preliminary approval shall include a proposed plan for the sending of the Notice of Settlement of Class Action to Settlement Class Members within sixty (60) days after the Preliminary Approval Date (the Mailed Notice Date), and establishing a period of sixty (60) days from the Mailed Notice Date within which any Settlement Class Member may (i) request exclusion from the Settlement Class, (ii) object to the proposed Settlement, or (iii) object to Class Counsel's request for attorneys' fees and costs and for enhancement payments to the Named Plaintiffs (the Exclusion/Objection Deadline). The motion for preliminary approval shall also request that any hearing on final approval of the Settlement and any determination on the request for attorneys' fees, costs, and enhancement payments (the "Fairness Hearing") be set for no earlier than twenty-one (21) days after the Exclusion/Objection Deadline; that Class Counsel shall file a petition for awards of attorneys' fees and costs and enhancement payments at least twenty-one (21) days before the Exclusion/Objection Deadline; and that any reply briefs on such motions and petitions be filed fourteen (14) days before the Fairness Hearing.

26.     The Parties stipulate to certification under Federal Rules of Civil Procedure 23(a) and 23(b)(3), for settlement purposes only, of the Settlement Class, excluding the Settlement Class's PAGA Claims.  Each Party agrees that this stipulation shall not be used by any Person for any purpose whatsoever in any legal proceeding, including but not limited to arbitrations, other than a proceeding to enforce the terms of the Agreement, as further set forth in this Agreement.

27.     The Parties and their counsel shall use their best efforts to obtain a District Court Final Approval Order approving the Settlement.

28.     The Parties agree to submit to the Court for its consideration this Settlement Agreement, including all Exhibits: Preliminary Approval Order (Exhibit A); Notice of Settlement of Class Action (Exhibit B), Summary Notice of Settlement of Class Action (Exhibit C), Summary of Revisions to Lyft's Terms of Service and Product (Exhibit D), and Amended Complaint for Settlement (Exhibit E).

29.     Solely for purposes of implementing this Agreement and effectuating the proposed Settlement, the Parties agree and stipulate that:

a)      Named Plaintiffs shall seek the Court's permission to enter the Amended Complaint for Settlement, without material variation from Exhibit E, and Lyft shall consent to such amendment pursuant to Federal Rule of Civil Procedure 15(a)(2).  The Amended Complaint for Settlement shall be submitted concurrently with the submission of the motion for preliminary approval of the Settlement so that such complaint may be entered promptly upon approval of the Court.  Obtaining the Court's approval to file the Amended Complaint for Settlement, and the subsequent prompt entry of the Amended Complaint for Settlement, are material conditions of this Settlement Agreement.  The Parties agree that the filing of the Amended Complaint for Settlement will streamline the settlement process and ensure that more money can be paid to Settlement Class Members by saving the costs of multiple notice and approval processes.  The Parties further agree and stipulate that Lyft may seek an order from the Court that the allegations in the Amended Complaint for Settlement are deemed controverted by the answer previously filed by Lyft in response to the currently operative complaint, such that no further responsive pleading from Lyft is required.  If for any reason the Settlement does not become Final or the Effective

REVISED CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE
Case No.  3:13-cv-04065-VC

1055708

Date does not occur, the Amended Complaint for Settlement shall be stricken from the record and the operative complaint shall revert to the filed complaint that preceded the Amended Complaint for Settlement.

b)      The Court may enter the Preliminary Approval Order, without material variation from Exhibit A, preliminarily approving the Settlement and this Agreement.  Among other things, the Preliminary Approval Order shall grant leave to preliminarily certify the Settlement Class for settlement purposes only; approve the Named Plaintiffs as class representatives, appoint Class Counsel to represent the Settlement Class, and appoint the Settlement Administrator; approve the Notice of Settlement of Class Action, the Summary Notice of Settlement of Class Action, and the class notice plan embodied in the Settlement Agreement, and approve them as consistent with Federal Rule of Civil Procedure 23 and due process; set out the requirements for objecting to the Settlement, excluding Settlement Class Members from the Settlement Class, all as provided in this Agreement; provide that certification and all actions associated with certification are undertaken on the condition that the certification and other actions shall be automatically vacated if this Agreement is terminated, as provided in this Agreement; preliminarily enjoin all Settlement Class Members and their Legally Authorized Representatives, unless and until they submit a timely request for exclusion pursuant to the Settlement Agreement, from filing or otherwise participating in any other suit based on the Class Members' Released Claims, or from attempting to effect an opt-out of a group, class, or subclass of individuals; and schedule the Fairness Hearing.

30.    At the Fairness Hearing, the Named Plaintiffs shall request entry of a District Court Final Approval Order and a Judgment, to be agreed upon by the Parties, the entry of which is a material condition of this Settlement Agreement, and that, among other things:

a)      finally approves the Settlement as fair, reasonable, and adequate, within the meaning of Federal Rule of Civil Procedure 23 and due process, and directs its consummation pursuant to the terms of the Settlement Agreement;

b)      finds that Class Counsel and the Named Plaintiffs adequately represented the Settlement Class for the purpose of entering into and implementing the Agreement;

1055708

c)      re-confirms the appointment of the Settlement Administrator and finds that the Settlement Administrator has fulfilled its duties under the Settlement;

d)      finds that the Class Notice (i) constituted the best practicable notice; (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action, and their right to exclude themselves from or object to the proposed settlement and to appear at the Fairness Hearing; (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) met all applicable requirements of Federal Rule of Civil Procedure 23, due process, and any other applicable rules or law;

e)      finds that the CAFA Notice sent by Lyft complied with 28 U.S.C. § 1715 and all other provisions of the Class Action Fairness Act of 2005;

f)      approves the Opt-Out List and determines that the Opt-Out List is a complete list of all Settlement Class Members who have timely requested exclusion from the Settlement Class and, accordingly, shall neither share in nor be bound by the District Court Final Approval Order and Judgment;

g)      dismisses the Action on the merits and with prejudice, and without fees or costs except as provided in this Agreement;

h)      directs that the District Court Final Approval Order and Judgment of dismissal shall be final and entered forthwith;

i)      without affecting the finality of the District Court Final Approval Order and Judgment, reserves jurisdiction over the Named Plaintiffs, the Settlement Class, and Lyft as to all matters concerning the administration, consummation, and enforcement of this Settlement Agreement;

j)      adjudges that, as of the Effective Date, the Named Plaintiffs, and all Settlement Class Members who have not been excluded from the Settlement Class as provided in the Opt-Out List approved by the Court, and their heirs, estates, trustees, executors, administrators, principals, beneficiaries, representatives, agents, assigns, and successors, and/or anyone claiming through them or acting or purporting to act for them or on their behalf,

16

1055708

regardless of whether they have received actual notice of the proposed Settlement, have conclusively compromised, settled, discharged, and released Named Plaintiffs' General Released Claims (in the case of the Named Plaintiffs) and Class Members' Released Claims (in the case of the Settlement Class Members) against Lyft and the Released Parties, and are bound by the provisions of this Agreement;

k)      declares this Agreement and the District Court Final Order and Judgment to be binding on, and have res judicata and preclusive effect in, all pending and future lawsuits or other proceedings: (i) that encompass the Named Plaintiffs' General Released Claims and that are maintained by or on behalf of the Named Plaintiffs and/or their heirs, estates, trustees, executors, administrators, principals, beneficiaries, representatives, agents, assigns, and successors, and/or anyone claiming through them or acting or purporting to act for them or on their behalf, and (ii) that encompass the Class Members' Released Claims and that are maintained by or on behalf of any Settlement Class Member who has not been excluded from the Settlement Class as provided in the Opt-Out List approved by the Court and/or his or her heirs, estates, trustees, executors, administrators, principals, beneficiaries, representatives, agents, assigns, and successors, and/or anyone claiming through them or acting or purporting to act for them or on their behalf, regardless of whether the Settlement Class Member previously initiated or subsequently initiates individual litigation or other proceedings encompassed by the Class Members' Released Claims, and even if such Settlement Class Member never received actual notice of the Action or this proposed Settlement;

l)      permanently bars and enjoins the Named Plaintiffs, and all other Settlement Class Members who have not been excluded from the Settlement Class as provided in the Opt-Out List approved by the Court, from (i) filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in any other lawsuit or administrative, regulatory, arbitration, or other proceeding in any jurisdiction based on the Named Plaintiffs' General Released Claims (in the case of the Named Plaintiffs) and the Class Members' Released Claims (in the case of the Settlement Class Members) and (ii) organizing Settlement Class Members into a separate group, class, or subclass for purposes of pursuing as a purported class action any

1055708

lawsuit or administrative, regulatory, arbitration, or other proceeding (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action) based on the Class Members' Released Claims;

m) determines that the Agreement and the Settlement provided for herein, and any proceedings taken pursuant thereto, are not, and should not in any event be offered, received, or construed as evidence of, a presumption, concession, or an admission by any Party of liability or non-liability or of the certifiability or non-certifiability of a litigation class, or of any misrepresentation or omission in any statement or written document approved or made by any Party; provided, however, that reference may be made to this Agreement and the Settlement provided for herein in such proceedings as may be necessary to effectuate the provisions of this Agreement, as further set forth in this Agreement;

n) orders that the certification of the Settlement Class and final approval of the proposed Settlement, and all actions associated with them, are undertaken on the condition that they shall be vacated if the Settlement Agreement is terminated or disapproved in whole or in part by the Court, or any appellate court and/or other court of review, or if Lyft invokes the right to withdraw from the settlement as provided in Paragraphs 87–88 in which event the Agreement and the fact that it was entered into shall not be offered, received, or construed as an admission or as evidence for any purpose, including but not limited to an admission by any Party of liability or non-liability or of any misrepresentation or omission in any statement or written document approved or made by any Party, or of the certifiability of a litigation class, as further provided in Paragraphs 90–91;

o) authorizes the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications, and expansions of this Agreement, including all Exhibits hereto, as (i) shall be consistent in all material respects with the District Court Final Approval Order and (ii) do not limit the rights of Settlement Class Members; and

p) contains such other and further provisions consistent with the terms of this Settlement Agreement to which the Parties expressly consent in writing.

1055708

31.     At the Fairness Hearing and as a part of the final approval of this Settlement, Class Counsel will also request approval of the Plan of Allocation set forth in Section V.  Any modification to the Plan of Allocation by the Court shall not (i) affect the enforceability of the Settlement Agreement, (ii) provide any of the Parties with the right to terminate the Settlement Agreement, or (iii) impose any obligation on the Defendant to increase the consideration paid in connection with the Settlement.

32.     At the Fairness Hearing, Class Counsel may also request entry of an Order approving Class Counsel's application for an award of attorneys' fees and expenses and for enhancement payments to the Named Plaintiffs.  Any such Fee and Expense Award or Enhancement Payment shall be paid exclusively from the Settlement Fund.  In no event shall Lyft otherwise be obligated to pay for any attorneys' fees and expenses or enhancement payments. The disposition of Class Counsel's application for a Fee and Expense Award, and for Enhancement Payments, is within the sound discretion of the Court and is not a material term of this Settlement Agreement, and it is not a condition of this Settlement Agreement that such application be granted.  Any disapproval or modification of such application by the Court shall not (i) affect the enforceability of the Settlement Agreement, (ii) provide any of the Parties with the right to terminate the Settlement Agreement, or (iii) impose any obligation on the Defendant to increase the consideration paid in connection with the Settlement.

## IV.     SETTLEMENT CONSIDERATION

33.     The Settlement includes both monetary and non-monetary components, as set forth in detail below.

34.     The total monetary component of the Settlement from Lyft is the Settlement Amount ($27,000,000).  This is an "all in" number that includes, without limitation, all monetary benefits and payments to the Settlement Class, Enhancement Payments, Fee and Expense Award, escrow fees, Taxes and Tax Expenses (as defined below), PAGA Payment, and all other costs and expenses relating to the Settlement (including, but not limited to, administration costs and expenses, notice costs and expenses, and settlement costs and expenses).  Under no circumstances shall Lyft be required to pay anything more than the Settlement Amount.  In no event shall Lyft

be liable for making any payments under this Settlement, or for providing any relief to Settlement Class Members, before the deadlines set forth in this Agreement.

35.     Lyft shall pay this monetary component of the Settlement into the Escrow Account, for the benefit of the Settlement Class, as follows: (i) within twenty-one (21) days of the Preliminary Approval Date, Lyft shall pay into the Escrow Account one hundred thousand dollars ($100,000) to be used by the Settlement Administrator at the direction of Class Counsel for reasonable costs in connection with providing notice of the Settlement to Settlement Class Members and for other administrative expenses (the "Notice and Administration Fund"), according to the terms in Section VI; and (ii) within seven (7) days after the Effective Date, Lyft shall pay into the Escrow Account the remaining amount of the Settlement Amount ($26,900,000). After the Effective Date, Lyft shall not have any right to the return or reversion of the Settlement Fund, or any portion thereof, except as provided in Section IX.

36.     The Settlement Fund shall be deposited, at the times specified in Paragraph 35, into an account backed by the full faith and credit of the United States government or an agency thereof, such as an account insured by the Federal Deposit Insurance Corporation ("FDIC") pass-through insurance program. The Parties and the Escrow Agent agree to treat the Settlement Fund as a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B–1, and the Escrow Agent, as administrator of the Escrow Account within the meaning of Treasury Regulation § 1.468B–2(k)(3), shall be responsible for filing tax returns for the Escrow Account and paying from the Escrow Account any and all taxes, including any interest or penalties thereon (the "Taxes"), owed with respect to the Escrow Account, to the extent necessary. In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph, including if necessary the "relation-back election" (as defined in Treas. Reg. § 1.468B–1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

1055708

37.    All Taxes arising with respect to the income, if any, earned by the Settlement Fund, (including any Taxes that may be imposed upon the Defendant with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes), and any expenses and costs incurred in connection with the payment of Taxes pursuant to this Paragraph (including, without limitation, expenses of tax attorneys and/or accountants and mailing, administration, and distribution costs and expenses relating to the filing or the failure to file all necessary or advisable tax returns (the "Tax Expenses")), shall be paid out of the Settlement Fund. Lyft shall not have any liability or responsibility for the Taxes or the Tax Expenses. The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund and the distributions and payments therefrom, including, without limitation, the tax returns described in Treas. Reg. § 1.468B–2(k), and to the extent applicable, Treas. Reg. § 1.468B–2(1). Such tax returns shall be consistent with the terms herein, and in all events shall reflect that all Taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund. The Escrow Agent shall also timely pay Taxes and Tax Expenses out of the Settlement Fund to the extent necessary, and is authorized to withdraw from the Escrow Account amounts necessary to pay Taxes and Tax Expenses. The Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Settlement Agreement. Neither the Parties nor their counsel shall have any responsibility or liability for the acts or omissions of the Escrow Agent.

38.    The Named Plaintiffs and all Settlement Class Members who receive a payment of any kind from the Settlement Fund (including, in the case of the Named Plaintiffs, Enhancement Payments) expressly acknowledge that such payments shall be considered non-wages for which an IRS Form 1099 will be issued, if required. The Named Plaintiffs and all Settlement Class Members who receive a payment of any kind from the Settlement Fund agree to timely pay in full all of the federal, state, and municipal income taxes owed on such payments. In the event that state or federal authorities subsequently determine that any Named Plaintiff or Settlement Class Member should be classified as an employee rather than an independent contractor, each such

Named Plaintiff or Settlement Class Member agrees that he or she shall promptly complete and submit to the IRS Form 4669.

39.     The terms of this Agreement relating to the Fee and Expense Award and Enhancement Payments were not negotiated by the Parties before full agreement was reached as to all other material terms of the proposed Settlement, including, but not limited to, any terms relating to the relief to the Settlement Class.  Lyft agrees not to oppose a request for an Enhancement Payment for Plaintiffs Cotter, Maciel, and Knudtson, as awarded by the Court, up to a maximum of five thousand dollars ($5,000), five thousand dollars ($5,000), and two thousand five hundred dollars ($2,500), respectively.  The Named Plaintiffs and Class Counsel agree not to seek an Enhancement Payment in excess of the above amount.  Any Enhancement Payments, as awarded by the Court, shall be payable from the Settlement Fund contained in the Escrow Account, as ordered,  fourteen (14) days after the Effective Date.

40.     Class Counsel agrees not to seek an award of fees and costs from the Court in excess of three-million six-hundred seventy-five thousand dollars ($3,675,000) from the Settlement Fund (not including, but in addition to, costs of administration).  Lyft agrees not to oppose a request for attorneys' fees and costs up to three-million six-hundred seventy-five thousand dollars ($3,675,000) from the Settlement Fund.  Any Fee and Expense Award, as awarded by the Court, shall be payable from the Settlement Fund contained in the Escrow Account, as ordered, fourteen (14) days after the Effective Date.

41.     The non-monetary component of the Settlement from Lyft is a set of revisions to Lyft's Terms of Service and modifications to the Lyft product.  The mutually agreed upon language that will be used to implement these changes is attached hereto as Exhibit D.  The following is intended as a summary only, and the text of Exhibit D controls.  Lyft agrees that, in accordance with Exhibit D:

a)     On or before twenty one (21) days after the Effective Date, Lyft will modify the at-will termination provision in Lyft's current Terms of Service to remove Lyft's ability to deactivate a Driver's account for any reason and to replace those Terms of Service

provisions with language delineating specific actions that will constitute breach of contract by a Driver and/or result in termination of the Driver's Terms of Service or agreements with Lyft.

b)      On or before twenty one (21) days after the Effective Date, Lyft will modify the arbitration provision in Lyft's current Terms of Service to state explicitly that Lyft will pay for the arbitration fees and costs unique to arbitration (excluding attorney fees and costs, unless the arbitrator awards such fees and costs and excluding a portion of the filing fee for any arbitration initiated by a Driver) for any claims brought by Lyft against a Driver, or for claims brought by a Driver against Lyft that: (i) are based on an alleged employment relationship between Lyft and a Driver; (ii) arise out of, or relate to, Lyft's actual deactivation of a Driver's account or a threat by Lyft to deactivate a Driver's account; (iii) arise out of, or relate to, Lyft's actual termination of a Driver's agreement with Lyft under the termination provisions of Lyft's Terms of Service (currently Section 16 of the Terms of Service) or a threat by Lyft to terminate a Driver's agreement; or (iv) arise out of, or relate to, Fares (as defined in Lyft's Terms of Service, including Lyft's commissions on Fares), tips, or average hourly guarantees owed by Lyft to drivers for services, other than disputes relating to referral bonuses, other Lyft promotions, or consumer-type disputes.

c)      As soon as is practical following product review and testing, Lyft will create a "favorite driver" option that results in some benefit to Drivers who Lyft passengers designate as a "favorite."

d)      As soon as is practical following product review and testing, Lyft will modify its smartphone applications to provide Drivers with additional information about a potential Lyft passenger prior to a Driver accepting any ride request from the passenger.

42.      Lyft maintains the right to make further changes to its Terms of Service, including the language set forth in Exhibit D, and/or the Lyft platform in the future, so long as such changes do not materially and adversely undermine the non-monetary terms set forth in Paragraph 41(a)–(d).  In addition, Lyft  maintains the right to made changes any of the non-monetary terms set forth in Paragraph 41(a)–(d) if changes to those terms are warranted by a significant change in

1055708

statutory or common law that is material to the classification of independent contractors or employees.

## V. PLAN OF ALLOCATION AND DISBURSEMENT OF SETTLEMENT PAYMENTS

43.     To receive a payment from the Settlement, a Settlement Class Member or his Legally Authorized Representative must timely submit a Claim Form that satisfies the requirements of Paragraph 44, must not have submitted a request for exclusion, and must be eligible for a payment under the Plan of Allocation in Paragraphs 46–47.  Each Settlement Class Member who satisfies these criteria is an Authorized Claimant.

44.     A Claim Form is timely if it is postmarked by the Bar Date and mailed to the Settlement Administrator at the address in the Notice of Settlement of Class Action, or if it is submitted online by the Bar Date. The Claim Form must be signed (electronically, if submitted online) under penalty of perjury.

45.     Settlement Payments shall be calculated using a points system, in accordance with the following Plan of Allocation.

46.     Each Authorized Claimant shall be awarded:

a)     two hundred twenty seven (227) points for each Ride given in the period from May 25, 2012 through September 30, 2012;

b)     six hundred (600) points for each sixty (60) minute period in Ride Mode for the period from October 1, 2012 through the Preliminary Approval Date; and

c)     an additional one hundred twenty (120) points for each sixty (60) minute period in Ride Mode for the period from January 14, 2013 through December 23, 2013.

47.     For each Authorized Claimant who spent 30 or more hours per week in Ride Mode in 50 percent or more of the weeks in the Settlement Class Period in which he or she gave at least one Ride, the points calculated according to Paragraph 46 above shall be doubled (i.e., multiplied by 2).

48.     The Settlement Administrator shall calculate the number of points to which each Authorized Claimant is entitled.  The determination of each Authorized Claimant's number of

Rides and time in Ride Mode shall be based on the relevant records that Lyft is able to identify following a good-faith inquiry, and Lyft shall make a diligent effort to supply the records to the Settlement Administrator in a standard electronic format such as a Comma Separated Value file.

49. Following the award of points to all Authorized Claimant, each Authorized Claimant's points shall be divided by the sum of the points awarded to the Authorized Claimants as a whole, and the resulting fraction shall be multiplied by the Net Settlement Fund. The product of this calculation is the Settlement Payment that each Authorized Claimant shall receive.

50. The Settlement Administrator shall use reasonable efforts to disburse Settlement Payments to all Authorized Claimants within ninety (90) days after the Effective Date, but in no event before twenty-one (21) days after the Effective Date. Such disbursements shall be made by direct payment via electronic funds transfer if possible or by check via first-class mail if necessary. The Settlement Administrator shall confer with Class Counsel and with Lyft to determine which, if any, Authorized Claimants are able to receive direct payment via electronic funds transfer. Subject to and as limited by all applicable legal and contractual obligations, Lyft shall make a diligent effort to supply the Settlement Administrator with the electronic funds transfer information, if any, that the Settlement Administrator requests for Authorized Claimants. For those Settlement Payments for which the Settlement Administrator attempts payment by electronic funds transfer but such transfer is unsuccessful, and for those Settlement Payments for which the Settlement Administrator attempts payment by check but such check is returned as undeliverable, the Settlement Administrator shall make a diligent effort to obtain updated electronic payment information or mailing addresses and attempt a second disbursement if the Settlement Payment is likely to be greater than fifty dollars ($50).

51. The Settlement Administrator shall send with each Settlement Payment disbursement an explanation (in a concurrent electronic mail message for an electronic funds transfer and in an enclosed letter for a check) of how the Authorized Claimant's Settlement Payment was calculated and how the Authorized Claimant may challenge that calculation (as set forth in Paragraph 52). At the same time, the Settlement Administrator shall send a letter, via electronic mail if possible and via first-class mail if necessary, to each claimant who is not an

Authorized Claimant explaining that the claimant is not entitled to a payment under this Settlement and that the claimant may challenge that determination (as set forth in Paragraph 52).

52. If an Authorized Claimant or Settlement Class Member disagrees with the calculation of his or her Settlement Payment, the records used for such calculation (that is, his or her number of Rides and/or time in Ride Mode), or the determination that he or she is not an Authorized Claimant, he or she may challenge the calculation, records, or determination. The Authorized Claimant or Settlement Class Member must send the challenge, along with any supporting documentation, to the Settlement Administrator such that it is postmarked no later than sixty (60) days from the date of the initial disbursement of Settlement Payments. The Settlement Administrator shall resolve the challenge based on input from Class Counsel and Lyft, who shall cooperate in good faith to assist the Settlement Administrator. Class Counsel and Lyft acknowledge in this regard that, as provided for by Paragraph 126, they remain subject to the jurisdiction of the United States District Court for the Northern District of California for all purposes related to this Settlement Agreement. In the event that the Settlement Administrator resolves the challenge in favor of the Authorized Claimant or Settlement Class Member, the Settlement Administrator shall provide the Authorized Claimant or Settlement Class Member with a disbursement from the Dispute Resolution Fund.

53. The Parties recognize that the Settlement Payments to be paid to Authorized Claimants reflect settlement of a dispute over the Released Claims. The Parties agree that the Settlement Payments are not, and are not intended to be made as a payment with respect to, a penalty or a punishment of the type or kind contemplated by Internal Revenue Service Code Section 162(f), except that the PAGA Payment is a civil penalty. With the exception of the PAGA Payment, no governmental entity is directly or indirectly a recipient of any portion of the payments made pursuant to this Settlement, and no governmental entity has any interest or involvement of any type or kind in the litigation hereby settled. The payments made herein are not made or received with the intention of avoiding or reducing any liability to a governmental entity of any type or kind.

1055708

54.     As provided in Paragraph 38, Authorized Claimants shall be solely responsible for the timely payment in full of all federal, state, and municipal income taxes owed on Settlement Payments, and, if necessary, the prompt completion and submission to the IRS of Form 4669. Neither Party has made any representation to the other Party as to the taxability or tax implications of any Settlement Payments or other payments pursuant to this Agreement.

## VI.     NOTICE AND ADMINISTRATION FUND AND MAILING OF CLASS NOTICE

55.     The Notice and Administration Fund shall be used by the Settlement Administrator to pay the costs of identifying and notifying Settlement Class Members, and, as allowed by the Court, soliciting the filing of Claims, facilitating the claims process, and otherwise administering the Settlement on behalf of the Settlement Class Members.  Any notice and administration costs, as well as all applicable Taxes and escrow fees, shall be paid out of the Notice and Administration Fund and, if the Notice and Administration Fund is exhausted, out of the Settlement Fund.  Notice and administration costs shall include, among other things, identifying the last-known electronic and/or postal mailing addresses for Settlement Class Members, mailing, printing (if necessary), and publishing notice, as directed by the Court, and the cost of processing Claims and distributing the Net Settlement Fund to Settlement Class Members.

56.     Lyft will provide the Settlement Administrator the names and last-known electronic and postal mail addresses of potential Settlement Class Members that it is able to identify following a good-faith inquiry.

57.     To the extent that sending the Notice of Settlement of Class Action via postal mail is necessary under the terms of Paragraph 59, before any mailing, the Settlement Administrator shall make a good-faith attempt to obtain the most-current names and postal mail addresses for all potential Settlement Class Members to receive such postal mail, including cross-checking the names and/or postal mail addresses it received from Lyft, as well as any other sources, with appropriate databases (e.g., the National Change of Address Database) and performing further reasonable searches (e.g., through Lexis/Nexis) for more-current names and/or postal mail addresses for potential Settlement Class Members.  All potential Settlement Class Members'

1055708

names and postal mail addresses obtained through these sources shall be protected as confidential and not used for purposes other than the notice and administration of this Settlement.

58.     The Settlement Administrator shall send a copy of the Notice of Settlement of Class Action by electronic mail to each potential Settlement Class Member, as well as to Class Counsel and to counsel for Lyft.

59.     If any Notice of Settlement of Class Action sent via electronic mail to any potential Settlement Class Member in accordance with Paragraph 58 is undeliverable, the Settlement Administrator will promptly log each such Notice of Settlement of Class Action and provide copies of the log to Class Counsel and counsel for Lyft, as requested.  The Settlement Administrator shall then send the Notice of Settlement of Class Action to the potential Settlement Class Member's postal mailing address on file via first-class mail.  If any Notice of Settlement of Class Action sent to any potential Settlement Class Member via first-class mail is returned to the Settlement Administrator as undeliverable, the Settlement Administrator will promptly log each such Notice of Settlement of Class Action and provide copies of the log to Class Counsel and counsel for Lyft, as requested.  If the postal mailing is returned with a forwarding address, the Settlement Administrator shall forward the postal mailing to that address.  For any remaining returned postal mailings, the Settlement Administrator shall made a good-faith search of an appropriate database, and postal mailings shall be forwarded to any new postal mail address obtained through such a search.  In the event that any Notice of Settlement of Class Action is returned as undeliverable a second time, no further postal mailing shall be required.

60.     The Parties agree that the procedures set forth in this Section constitute reasonable and the best practicable notice under the circumstances and an appropriate and sufficient effort to locate current addresses for Settlement Class Members such that no additional efforts to do so shall be required.

61.     The Settlement Administrator will provide Class Notice by, at a minimum, (i) electronic mail notice without material variation from the form attached as Exhibit B; (ii) if necessary in accordance with Paragraph 59, first-class mail (where available) notice without material variation from the form attached as Exhibit B; and (iii) a content-neutral settlement

1055708

website managed by the Settlement Administrator, and approved by counsel for the Parties, which will contain further information about the Settlement and Claims process, including relevant pleadings. The Class Notice shall comply with Federal Rule of Civil Procedure 23 and due process.

62. The Class Notice shall inform potential Settlement Class Members that Settlement Payments will be made by direct payment via electronic funds transfer if possible or by check via first-class mail if necessary. If the Settlement Administrator, in consultation with Lyft, determines that it is feasible to receive updated electronic funds transfer from potential Settlement Class Members who do not have current electronic funds transfer information on file with Lyft, the Settlement Administrator shall provide an opportunity for potential Settlement Class Members to submit such updated information. The Settlement Administrator shall provide an opportunity for potential Settlement Class Members to submit updated postal mailing addresses.

63. Thirty (30) days before the Bar Date or at such other time or times as the Settlement Administrator deems appropriate, the Settlement Administrator shall distribute by electronic mail a neutral notice reminding Settlement Class Members who have not submitted a Claim Form of the need to do so in order to receive a Settlement Payment. The Settlement Administrator shall make additional reasonable efforts to locate and remind Settlement Class Members who have not submitted a Claim Form and whose Settlement Payment would likely be at least two hundred dollars ($200) of the need to submit a Claim Form in order to receive a Settlement Payment. Such reasonable efforts may include, but are not limited to, attempting to contact such Settlement Class Members by postal mail in addition to electronic mail.

64. The Parties agree to notify each other and the Settlement Administrator of the receipt of any request for exclusion or objection to this Settlement within one (1) business day of receipt.

65. As of the Effective Date, any balance, including interest if any, remaining in the Notice and Administration Fund, less expenses incurred but not yet paid, shall be deposited into the Settlement Fund.

1055708

66. If the Settlement is not approved, is overturned, or is modified on appeal or as a result of further proceedings on remand of any appeal with respect to the Settlement, or if the Effective Date otherwise does not occur, the balance of the Notice and Administration Fund which has not been expended pursuant to this Agreement, and the balance of the Settlement Fund, including all earned or accrued interest, shall be returned to Lyft within five (5) days, or as soon as practicable, as set forth in this Agreement and in accordance with the Escrow Agreement.

67. If any individual whose name does not appear on the list of potential Settlement Class Members that Lyft provides the Settlement Administrator pursuant to Paragraph 56 (and who has not previously opted out of the Settlement Class), believes that he or she is a Settlement Class Member, he or she shall have the opportunity to dispute his or her exclusion from the Settlement Class. If an individual believes he or she is a Settlement Class Member, he or she must notify the Settlement Administrator within a reasonable amount of time after the first mailing of the Notice of Settlement of Class Action. The Parties will meet and confer regarding any such individuals in an attempt to reach an agreement as to whether any such individual should be regarded as a Settlement Class Member. If the Parties so agree, the Settlement Administrator will mail a Notice of Settlement of Class Action and Claim Form to the individual, and treat the individual as a Settlement Class Member for all other purposes. Such an individual will have all of the same rights as any other Settlement Class Member under this Agreement. In the event that the initial disbursement of Settlement Payments has begun (in accordance with this Settlement Agreement) at the time that the Parties agree that such individual should be regarded as a Settlement Class Member and that such individual submits a valid Claim Form, the Settlement Payment to such individual shall be disbursed from the Dispute Resolution Fund.

## VII. RELEASES

68. The Released Claims against each and all of the Released Parties shall be released and dismissed with prejudice and on the merits (without an award of costs to any party other than as provided in this Agreement) upon entry of District Court Final Approval Order and Judgment.

69. As of the Effective Date, the Named Plaintiffs, and all Settlement Class Members who have not been excluded from the Settlement Class as provided in the Opt-Out List,

1055708

individually and on behalf of their heirs, estates, trustees, executors, administrators, representatives, agents, successors, and assigns, and anyone claiming through them or acting or purporting to act on their behalf, agree to forever release, discharge, hold harmless, and covenant not to sue each and all of the Released Parties from each and all of the Named Plaintiffs' General Released Claims (in the case of the Named Plaintiffs) and the Class Members' Released Claims (in the case of the Settlement Class Members), and by operation of the Judgment shall have fully and finally released, relinquished, and discharged all such claims against each and all of the Released Parties; and they further agree that they shall not now or hereafter initiate, maintain, or assert any Named Plaintiffs' General Released Claims (in the case of the Named Plaintiffs) and any Class Members' Released Claims (in the case of the Settlement Class Members) against the Released Parties in any other court action or before any administrative body, tribunal, arbitration panel, or other adjudicating body. Without in any way limiting the scope of the release described in Paragraphs 24(h) and 24(y) or in the remainder of this Section, this release covers, without limitation, any and all claims for attorneys' fees, costs, or disbursements incurred by Class Counsel or any other counsel representing the Named Plaintiffs or Settlement Class Members, or by the Named Plaintiffs or Settlement Class Members, or any of them, in connection with or related in any manner to the Action, the Settlement of the Action, the administration of such Settlement, and/or the Released Claims, except to the extent otherwise specified in the Agreement.

70.    As of the Effective Date, the Named Plaintiffs, and all Settlement Class Members who have not been excluded from the Settlement Class as provided in the Opt-Out List, shall be permanently barred and enjoined from initiating, asserting, or prosecuting against the Released Parties in any federal or state court or tribunal any and all Named Plaintiffs' General Released Claims (in the case of the Named Plaintiffs) and any Class Members' Released Claims (in the case of the Settlement Class Members), as further provided in Paragraph 30(l).

71.    The Named Plaintiffs and the Settlement Class Members expressly acknowledge that they are familiar with principles of law such as Section 1542 of the California Civil Code, which provides:

REVISED CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE
Case No. 3:13-cv-04065-VC

1055708

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

72.     With respect to the Class Members' Released Claims, as described in Paragraph 24(h), each Settlement Class Member shall be deemed to have expressly, knowingly, and voluntarily waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits he or she may otherwise have had pursuant to Section 1542 of the California Civil Code and all similar federal or state laws, rights, rules, or legal principles of any other jurisdiction that may be applicable herein.  In connection with the release, the Settlement Class Members acknowledge that they are aware that they may hereafter discover claims presently unknown and unsuspected or facts in addition to or different from those which they now know or believe to be true with respect to matters released herein.  Nevertheless, the Settlement Class Members acknowledge that a portion of the consideration received herein is for a release with respect to unknown damages and complaints, whether resulting from known injuries and consequences or from unknown injuries or unknown consequences of known or unknown injuries, and state that it is the intention of the Settlement Class Members in agreeing to this release fully, finally, and forever to settle and release all matters and all claims that exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action), constituting Class Members' Released Claims.

73.     With respect to the Named Plaintiffs' General Released Claims, as described in Paragraph 24(y), each Named Plaintiff shall be deemed to have expressly, knowingly, and voluntarily waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits he or she may otherwise have had pursuant to Section 1542 of the California Civil Code and all similar federal or state laws, rights, rules, or legal principles of any other jurisdiction that may be applicable herein.  In connection with the release, the Named Plaintiffs acknowledge that they are aware that they may hereafter discover claims presently unknown and unsuspected or facts in addition to or different from those which they now know or believe to be true with respect to matters released herein.  Nevertheless, the Named Plaintiffs acknowledge that a portion

1055708

of the consideration received herein is for a release with respect to unknown damages and complaints, whether resulting from known injuries and consequences or from unknown injuries or unknown consequences of known or unknown injuries, and state that it is the intention of the Named Plaintiffs in agreeing to this release fully, finally, and forever to settle and release all matters and all claims that exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action), constituting Named Plaintiffs' General Released Claims.

74. Each Named Plaintiff further acknowledges, agrees, and understands that: (i) he or she has read and understands the terms of this Agreement; (ii) he or she has been advised in writing to consult with an attorney before executing this Agreement; (iii) he or she has obtained and considered such legal counsel as he deems necessary; (iv) he or she has been given twenty-one (21) days to consider whether or not to enter into this Agreement (although he or she may elect not to use the full 21 day period at his option);

75. Each Named Plaintiff further acknowledges, agrees, and understands that he or she is expressly, knowingly, and voluntarily waiving and relinquishing, to the fullest extent permitted by law, all rights or claims arising under the Age Discrimination in Employment Act of 1967. Each Named Plaintiff may revoke his or her acceptance of the Enhancement Payment in consideration for the Named Plaintiffs' General Released Claims within seven (7) days after the date he or she signs it. Any revocation must be in writing and received by counsel for Defendants.

76. Subject to Court approval, the Named Plaintiffs, and all Settlement Class Members who have not been excluded from the Settlement Class as provided in the Opt-Out List, shall be bound by this Settlement Agreement, and all of their claims shall be dismissed with prejudice and released, even if they never received actual notice of the Action or this Settlement.

## VIII. ADMINISTRATION OF THE SETTLEMENT FUND

77. The Settlement Administrator or its authorized agents in consultation with the Parties and subject to the supervision, direction, and approval of the Court, shall administer and

1055708

identify Claims submitted by Settlement Class Members, and shall calculate the allocation of and oversee the distribution of the Settlement Fund to Settlement Class Members.

78. The Notice and Administration Fund and the Settlement Fund shall be applied as follows:

a) to pay all costs and expenses incurred in connection with providing Class Notice to Settlement Class Members and, as allowed by the Court, locating Settlement Class Members' last-known postal mail addresses, soliciting Claims, assisting with the filing of Claims, processing Claim Forms and any objections, challenges, and requests for exclusion, administering and distributing the Settlement Fund to the Settlement Class, and escrow fees and costs, in accordance with the terms provided for the Notice and Administration Fund in Section VI;

b) subject to the approval and further order(s) of the Court, and according to the terms provided in Paragraph 39, to pay to Plaintiffs Cotter, Maciel, and Knudtson Enhancement Payments based on contributions and time expended assisting in the litigation, up to a maximum of five thousand dollars ($5,000), five thousand dollars ($5,000), and two thousand five hundred dollars ($2,500), respectively;

c) subject to the approval and further order(s) of the Court, and according to the terms of Paragraph 40, to pay the Fee and Expense Award as ordered by the Court;

d) to pay Taxes and Tax Expenses owed by the Settlement Fund, according to the terms in Paragraphs 36–37;

e) to pay any costs and expenses incurred in connection with the services provided by the Escrow Agent;

f) to fund the Dispute Resolution Fund;

g) after the Effective Date and subject to the approval and further order(s) of the Court, to distribute the balance of the Net Settlement Fund for the benefit of the Settlement Class pursuant to the Plan of Allocation, or as otherwise ordered by the Court, provided that no funds from the Net Settlement Fund shall be disbursed until after the Effective Date; and

h) if necessary, to make further distributions according to the terms of Paragraph 79.

1055708

79.     One hundred eighty (180) days after the distribution of the balance of the Net Settlement Fund for the benefit of the Settlement Class, should any amount remain in the Net Settlement Fund or the Notice and Administration Fund, but not the Dispute Resolution Fund, the Settlement Administrator shall disburse from such amounts Settlement Payments to those Authorized Claimants who did not receive a full Settlement Payment due to the exhaustion of the Dispute Resolution Fund.  Next, should any amount remain in the Net Settlement Fund, the Dispute Resolution Fund, or the Notice and Administration Fund, the Settlement Administrator shall make a further distribution of such amounts pursuant to the Plan of Allocation to those Settlement Class Members who received an initial Settlement Payment and whose residual share would likely be at least fifty dollars ($50).  If any funds are not successfully disbursed through this further distribution (for example, if checks are not cashed or returned as undeliverable), the Settlement Administrator shall direct such unclaimed funds to the Legal Aid Society–Employment Law Center, which the parties agree has a direct and substantial nexus to the interests of the Settlement Class, and thus provides for a "next best distribution" to the Settlement Class.

80.     Settlement Class Members who are not on the Opt-Out List approved by the Court shall be subject to and bound by the provisions of the Settlement Agreement, the releases contained herein, and the Judgment with respect to all Class Members' Released Claims, regardless of whether they seek or obtain any distribution from the Settlement Fund.

81.     Lyft shall bear no responsibility for the costs, fees, or expenses related to the administration and distribution of the Settlement Fund.  Neither Lyft nor its counsel shall have any responsibility for, interest in, or liability whatsoever with respect to any solicitation, receipt, or processing of Claims, the Settlement Fund, any Plan of Allocation, the calculations or disbursement of Settlement Payments, the payment or withholding of Taxes, the distribution of the Net Settlement Fund, or any losses incurred in connection with any such matters.

82.     The Settlement Administrator shall be responsible for issuing copies of IRS Form 1099 for the Named Plaintiffs and for all Settlement Class Members who receive a payment of

1055708

any kind from the Settlement Fund (including, in the case of the Named Plaintiffs, Enhancement Payments) and for whom such form is required.

83.     Neither Lyft nor Plaintiffs nor their counsel shall have any liability concerning the appointment of the Settlement Administrator and any actions taken by it.

84.     Payment from the Settlement Fund and Net Settlement Fund made pursuant to and in the manner set forth herein shall be deemed conclusive of compliance with this Settlement Agreement as to all Settlement Class Members.

85.     No Settlement Class Member shall have any claim against the Named Plaintiffs, Class Counsel, or the Settlement Administrator based on distributions made substantially in accordance with this Settlement Agreement and/or orders of the Court.  No Settlement Class Member shall have any claim against Lyft or its counsel relating to distributions made under this Settlement.

## IX.     EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION OF SETTLEMENT AGREEMENT

86.     If the Court does not approve the Settlement as set forth in this Settlement Agreement, or does not enter the District Court Final Approval Order and Judgment that will be agreed upon by the Parties, or if the Court enters the Judgment and appellate review is sought, and on such review, the entry of Judgment is vacated, modified in any way, or reversed, or if the District Court Final Approval Order does not otherwise become Final, then this Settlement Agreement shall be cancelled and terminated, unless all Parties, in their sole discretion within thirty (30) days from the date of such ruling, provide written notice to all other Parties hereto of their intent to proceed with the Settlement under the terms of the Judgment as it may be modified by the Court or any appellate court.

87.     Lyft shall have the right to withdraw from the Settlement if leave to file the Amended Complaint for Settlement is not granted on the Preliminary Approval Date or if the Amended Complaint for Settlement does not become the operative complaint in the Action promptly thereafter.  If Lyft chooses, pursuant to its sole and absolute discretion, to exercise this

1055708

right, it must do so within thirty (30) days of the Preliminary Approval Date, by providing written notice to Class Counsel.

88.     Lyft shall have the right to withdraw from the Settlement if the number of Settlement Class Members who attempt to exclude themselves from the Settlement Class equals or exceeds ███████ potential Settlement Class Members.  If Lyft chooses, pursuant to its sole and absolute discretion, to exercise this right, it must do so within ten (10) days of receipt of the Settlement Administrator's opt-out list as provided in Paragraph 100, by providing written notice to Class Counsel.

89.     In the event that (i) the Settlement is not approved, is overturned, or is materially modified by the Court or on appeal, (ii) the Judgment does not become Final, or (iii) this Settlement Agreement is terminated, cancelled, or fails to become effective for any reason, then within five (5) business days after written notice is sent by Class Counsel or counsel for Defendant to all Parties hereto, the Notice and Administration Fund, less any funds paid or expenses incurred but not yet paid, the Settlement Fund, and any other cash deposited by Lyft into the Escrow Account pursuant to this Agreement shall be refunded to Lyft, including interest earned or accrued.

90.     In the event that: (i) the Settlement is not approved, is overturned, or is materially modified by the Court or on appeal, (ii) the Judgment does not become Final, or (iii) this Settlement Agreement is terminated, cancelled, or fails to become effective for any reason, then: (a) the Settlement shall be without force and effect upon the rights of the Parties hereto, and none of its terms shall be effective or enforceable, with the exception of this Paragraph, which shall remain effective and enforceable; (b) the Parties shall be deemed to have reverted nunc pro tunc to their respective status as of November 19, 2015, including with respect to any Court-imposed deadlines; (c) Lyft shall be refunded the amounts paid pursuant to this Agreement but not yet spent or disbursed; (d) all Orders entered in connection with the Settlement, including the certification of the Settlement Class and the approval for filing of the Amended Complaint for Settlement, shall be vacated without prejudice to any Party's position on the issue of class certification, the issue of amending the complaint, or any other issue, in this Action or any other

action, and the Parties shall be restored to their litigation positions existing on the date of execution of this Agreement; and (e) the Parties shall proceed in all respects as if the Settlement Agreement and related documentation and orders had not been executed, and without prejudice in any way from the negotiation or fact of the Settlement or the terms of the Settlement Agreement. The Settlement Agreement, the Settlement, all documents, orders, and other evidence relating to the Settlement, the fact of their existence, any of their terms, any press release or other statement or report by the Parties or by others concerning the Settlement Agreement, the Settlement, their existence, or their terms, any negotiations, proceedings, acts performed, or documents executed pursuant to or in furtherance of the Settlement Agreement or the Settlement shall not be offered, received, or construed as evidence of a presumption, concession, or an admission of liability, of the certifiability of a litigation class, or of any misrepresentation or omission in any statement or written document approved or made, or otherwise used by any Person for any purpose whatsoever, in any trial of this Action or any other action or proceedings.

91. Lyft does not agree or consent to certification of the Settlement Class for any purpose other than to effectuate the Settlement of the Action. If this Settlement Agreement is terminated pursuant to its terms, or the Effective Date for any reason does not occur, all Orders certifying the Settlement Class for purposes of effecting this Settlement Agreement, and all preliminary and/or final findings regarding the Settlement Class certification order, shall be automatically vacated upon notice to the Court, the Action shall proceed as though the Settlement Class had never been certified pursuant to this Settlement Agreement and such findings had never been made, and the Action shall revert nunc pro tunc to the procedural status quo as of the date and time immediately before the execution of the Settlement Agreement, in accordance with this Settlement Agreement.

## X.    PROCEDURES FOR REQUESTS FOR EXCLUSION

92. Settlement Class Members (with the exception of the Named Plaintiffs) may opt-out of the Settlement. Those who wish to exclude themselves (or "opt out") from the Settlement Class must submit timely, written requests for exclusion. To be effective, such a request must include the Settlement Class Member's name, address, and telephone number; a clear and

unequivocal statement that the Settlement Class Member wishes to be excluded from the Settlement Class and that the Settlement Class Member understands that he or she is still bound by the release of the PAGA Claims upon Final Approval of the Settlement and Final Judgment; and the signature of the Settlement Class Member or the Legally Authorized Representative of the Settlement Class Member. The request must be mailed to the Settlement Administrator at the address provided in the Notice of Settlement of Class Action and must be postmarked no later than the Exclusion/Objection Deadline. The date of the postmark shall be the exclusive means used to determine whether a request for exclusion has been timely submitted. Requests for exclusion must be exercised individually by the Settlement Class Member, not as or on behalf of a group, class, or subclass, except that such individual exclusion requests may be submitted by a Settlement Class Member's Legally Authorized Representative.

93. The Settlement Administrator shall promptly log each request for exclusion that it receives and provide copies of the log and all such requests for exclusion to Class Counsel and counsel for Lyft, as requested.

94. The Settlement Administrator shall prepare a list of all Persons who timely and properly requested exclusion from the Settlement Class and shall, before the Fairness Hearing, submit an affidavit to the Court attesting to the accuracy of the list.

95. All Settlement Class Members who are not included in the Opt-Out List approved by the Court shall be bound by this Agreement, and all their claims shall be dismissed with prejudice and released as provided for herein, even if they never received actual notice of the Action or this proposed Settlement.

96. The Settlement Administrator, in its sole discretion, shall determine whether a request for exclusion was timely submitted. The Settlement Administrator's decision shall be final, binding, and nonappealable.

97. The Named Plaintiffs agree not to request exclusion from the Settlement Class.

98. Settlement Class Members may object to or opt out of the Settlement, but may not do both. Any Settlement Class Member who submits a timely request for exclusion may not file

1055708

an objection to the Settlement, submit a Claim, or receive a Settlement Payment, and shall be deemed to have waived any rights or benefits under the Settlement Agreement.

99.     Notwithstanding the submission of a timely request for exclusion, Class Members will still be bound by the settlement and release of the PAGA Claims or remedies under the Final Judgment pursuant to *Arias v. Superior Court*, 46 Cal. 4th 969 (2009).  Requests for exclusion do not apply to the PAGA Claims.

100.     No later than ten (10) business days after the Exclusion/Objection Deadline, the Settlement Administrator shall provide to Class Counsel and counsel for Lyft a complete opt-out list together with copies of the opt-out requests.  Notwithstanding any other provision of this Settlement Agreement, if more than ██████████ Settlement Class Members opt out of the Settlement, Lyft at its sole and exclusive option may elect to rescind and revoke the entire Settlement Agreement, thereby rendering the Settlement null and void in its entirety, by sending written notice that it revokes the Settlement pursuant to this Paragraph to Class Counsel within ten (10) business days following receipt of the Settlement Administrator's opt-out list.

## XI.     PROCEDURES FOR OBJECTIONS

101.     Any Settlement Class Member that wishes to object to the fairness, reasonableness, or adequacy of this Agreement or the proposed Settlement must provide to the Settlement Administrator (who shall forward it to Class Counsel and Counsel for Lyft), and file with the Court, a timely statement of the objection, as set forth below.

102.     To be timely, the objection must be postmarked and mailed to the Settlement Administrator, and filed with the Court, no later than the Exclusion/Objection Deadline.  The date of the postmark on the return-mailing envelope shall be the exclusive means used to determine whether objection has been timely submitted.

103.     The objection must contain at least the following: (i) the objector's full name, address, telephone, and signature; (ii) a clear reference to the Action; (iii) a statement of the specific legal and factual basis for each objection argument; and (iv) a statement whether the objecting person or entity intends to appear at the Fairness Hearing, either in person or through counsel and, if through counsel, a statement identifying that counsel by name, bar number,

REVISED CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE
Case No.  3:13-cv-04065-VC

1055708

address, and telephone number. All objections shall be signed by the objecting Settlement Class Member (or his Legally Authorized Representative), even if the Settlement Class Member is represented by counsel.

104. Any Settlement Class Member (and/or his attorney), or any attorney working for a governmental entity, who wishes to appear in the Action to object to the settlement or who is representing or assisting a Settlement Class Member in connection with any objection to the settlement (including, but not limited to, by drafting or preparing papers for an objection on behalf of a Settlement Class Member) must provide to the Settlement Administrator (who shall forward it to Class Counsel and counsel for Lyft) and file with the Clerk of the Court a notice of appearance no later than the Exclusion/Objection Deadline.

105. The right to object to the proposed settlement must be exercised individually by a Settlement Class Member or his attorney, and not as a member of a group, class, or subclass, except that such individual objections may be submitted by a Settlement Class Member's Legally Authorized Representative.

106. Any Settlement Class Member who does not file a timely notice of intent to object in accordance with this Section shall waive the right to object or to be heard at the Fairness Hearing and shall be forever barred from making any objection to the proposed Settlement, the Plan of Allocation, the Fee and Expense Award, and the Enhancement Payments. Settlement Class Members who object to the proposed Settlement shall remain Settlement Class Members, and shall be deemed to have voluntarily waived their right to pursue an independent remedy against Lyft and the Released Parties. To the extent any Settlement Class Member objects to the proposed Settlement, and such objection is overruled in whole or in part, such Settlement Class Member will be forever bound by the District Court Final Approval Order and Judgment.

107. In the event that any Person objects to or opposes this proposed Settlement, or attempts to intervene in or otherwise enter the Action, the Parties agree to use their best efforts to cooperate in the defense of the Settlement. Notwithstanding the foregoing, it shall be Class Counsel's sole responsibility to respond to any objections made with respect to any application for the Fee and Expense and Enhancement Payments.

1055708

# XII. ADDITIONAL PROVISIONS

108. All of the Exhibits to this Agreement are an integral part of the Settlement and are incorporated by reference as though fully set forth herein.

109. The Named Plaintiffs and Class Counsel acknowledge that an adequate factual record has been established that supports the Settlement and, apart from the limited discovery described in the next sentence, hereby waive any right to conduct further discovery to assess or confirm the Settlement. Notwithstanding the prior sentence, the Parties agree to reasonably cooperate with respect to limited confirmatory discovery to be agreed upon related to the last-known addresses of Settlement Class Members.

110. Unless otherwise noted, all references to "days" in this Agreement shall be to calendar days. In the event any date or deadline set forth in this Agreement falls on a weekend or federal legal holiday, such date or deadline shall be on the first business day thereafter.

111. This Agreement supersedes all prior negotiations and agreements and may be amended or modified only by a written instrument signed by counsel for all Parties or the Parties' successors-in-interest.

112. The Parties reserve the right, subject to the Court's approval, to make any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement. Such extensions must be in writing to be enforceable.

113. The Settlement Agreement, the Settlement, the fact of the Settlement's existence, any of terms of the Settlement Agreement, any press release or other statement or report by the Parties or by others concerning the Settlement Agreement or the Settlement, and/or any negotiations, proceedings, acts performed, or documents executed pursuant to or in furtherance of the Settlement Agreement or the Settlement: (i) may not be deemed to be, may not be used as, and do not constitute an admission or evidence of the validity of any Released Claims or of any wrongdoing or liability of Lyft; and (ii) may not be deemed to be, may not be used as, and do not constitute an admission or evidence of any fault, wrongdoing, or omission by Lyft in any trial, civil, criminal, or administrative proceeding of the Action or any other action or proceedings in any court, administrative agency, or other tribunal.

1055708

114. The Released Parties shall have the right to file the Settlement Agreement, the District Court Final Approval Order and Judgment, and any other documents or evidence relating to the Settlement in any action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good-faith settlement, judgment bar, reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

115. The Parties to the Settlement Agreement agree that the Settlement Amount and the other terms of the Settlement were negotiated at arm's length and in good faith by the Parties, resulted from numerous arm's-length mediation sessions presided over by the Hon. Magistrate Judge Donna M. Ryu, and reflect a settlement that was reached voluntarily based upon adequate information and sufficient discovery and after consultation with experienced legal counsel.

116. The Named Plaintiffs and Class Counsel have concluded that the Settlement set forth herein constitutes a fair, reasonable, and adequate resolution of the claims that the Named Plaintiffs asserted against Lyft, including the claims on behalf of the Settlement Class, and that it promotes the best interests of the Settlement Class.

117. To the extent permitted by law, all agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Settlement Agreement.

118. The Parties agree that the Plaintiffs and Class Counsel are not required to return any documents produced by Lyft until the final resolution of the Action. Within sixty (60) days following the Effective Date, Class Counsel shall return to Lyft all documents produced in the Action, or confirm in writing that all such documents have been destroyed, in a manner consistent with the terms of any applicable Protective Order in the Action, and to the extent practicable.

119. The waiver by one Party of any breach of this Settlement Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Settlement Agreement.

120. This Settlement Agreement, including its Exhibits, constitutes the entire agreement among the Parties, and no representations, warranties, or inducements have been made to any

Party concerning this Settlement Agreement or its Exhibits, other than the representations, warranties, and covenants contained and memorialized in this Settlement Agreement and its Exhibits.

121.    This Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Settlement Agreement shall exchange among themselves original signed counterparts.

122.    The Parties hereto and their respective counsel agree that they will use their best efforts to obtain all necessary approvals of the Court required by this Settlement Agreement.

123.    This Settlement Agreement shall be binding upon and shall inure to the benefit of the successors and assigns of the Parties hereto, including any and all Released Parties and any corporation, partnership, or other entity into or with which any Party hereto may merge, consolidate, or reorganize.

124.    This Settlement Agreement shall not be construed more strictly against one Party than another merely because of the fact that it may have been prepared by counsel for one of the Parties, it being recognized that because of the arm's-length negotiations resulting in the Settlement Agreement, all Parties hereto have contributed substantially and materially to the preparation of the Settlement Agreement.

125.    Except where this Settlement Agreement itself provides otherwise, all terms, conditions, and Exhibits are material and necessary to this Settlement Agreement and have been relied upon by the Parties in entering into this Settlement Agreement.

126.    This Settlement Agreement shall be governed by federal law. To the extent that federal law does not apply, this Settlement Agreement shall be governed by and construed in accordance with the laws of the State of California, without regard to choice of law principles. Any action based on this Settlement Agreement, or to enforce any of its terms, shall be venued in the United States District Court for the Northern District of California, which shall retain jurisdiction over all such disputes. All Parties to this Settlement Agreement shall be subject to the jurisdiction of the United States District Court for the Northern District of California for all

1055708

purposes related to this Settlement Agreement.  This Paragraph relates solely to the law governing this Settlement Agreement and any action based thereon, and nothing in this Paragraph shall be construed as an admission or finding that California law applies to the Released Claims of any Named Plaintiffs or Settlement Class Members who reside outside of the state.

127.     The Court shall retain continuing and exclusive jurisdiction over the Parties to this Settlement Agreement for the purpose of the administration and enforcement of this Settlement Agreement.

128.     The headings used in this Settlement Agreement are for the convenience of the reader only, and shall not affect the meaning or interpretation of this Settlement Agreement.

129.     In construing this Settlement Agreement, the use of the singular includes the plural (and vice-versa) and the use of the masculine includes the feminine (and vice-versa).

130.     Each Party to this Settlement Agreement warrants that he, she, or it is acting upon his or its independent judgment and upon the advice of his or its counsel, and not in reliance upon any warranty or representation, express or implied, of any nature of any kind by any other Party, other than the warranties and representations expressly made in this Settlement Agreement.

131.     Signatory counsel warrant that they are fully authorized to execute this Agreement on behalf of their respective co-counsel listed below.  Each counsel signing this Settlement Agreement on behalf of his/her clients who are unable to sign the Agreement on the date that it is executed by other Parties represents that such counsel is fully authorized to sign this Settlement Agreement on behalf of his/her clients; provided, however, that all Parties who have not executed this Agreement on the date that it is executed by the other Parties shall promptly thereafter execute this Agreement, and in any event no later than one (1) week after the Agreement has been executed by counsel.

//
//
//
//
//

1055708

SIGNED AND AGREED,

Dated: May 11, 2016

KEKER & VAN NEST LLP

By: _____

RACHAEL E. MENY
R. JAMES SLAUGHTER
SIMONA A. AGNOLUCCI
ALEXANDER DRYER

THOMAS M. MCINERNEY
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.

Attorneys for Defendant LYFT, INC.

Dated: May 11, 2016

LICHTEN & LISS-RIORDAN, P.C.

By: _____

MATTHEW D. CARLSON
SHANNON LISS-RIORDAN

Attorneys for Plaintiffs COTTER,
MACIEL, and KNUDTSON

1055708

# EXHIBIT A

Shannon Liss-Riordan (*Pro Hac Vice*)
sliss@llrlaw.com
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800

Matthew D. Carlson (State Bar No. 273242)
mcarlson@llrlaw.com
LICHTEN & LISS-RIORDAN, P.C.
466 Geary St., Suite 201
San Francisco, California 94102
Telephone: (617) 994-5800

Attorneys for Plaintiffs COTTER, MACIEL, and KNUDTSON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK COTTER, ALEJANDRA MACIEL, and JEFFREY KNUDTSON, on behalf of themselves and all others similarly situated,<br><br>                 Plaintiffs,<br><br>          v.<br><br>LYFT, INC.,<br><br>                Defendant. | Case No.: 3:13-cv-04065-VC<br><br>[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT<br><br><br>Date:      June 2, 2016<br>Time:     10:00 a.m.<br>Dept:     Courtroom 4<br>Judge:   Hon. Vince Chhabria |

Plaintiffs have filed a Motion for Preliminary Approval of the class action settlement reached with Defendant Lyft, Inc., a hearing on which was held on June 2, 2016. The Court has carefully considered the Settlement Agreement together with all exhibits thereto, all the filings related to the Settlement, the arguments of counsel, and the record in this case. The Court hereby gives its preliminary approval of the Settlement; finds that the Settlement and Settlement Agreement are sufficiently fair, reasonable and adequate to allow dissemination of notice of the Settlement to the Settlement Class and to hold a Fairness Hearing; orders the Class Notice be sent to the Settlement Class in accordance with the Settlement Agreement and this Order; and schedules a Fairness Hearing to determine whether the proposed Settlement is fair, adequate and reasonable.

**IT IS HEREBY ORDERED THAT:**

1.  The Settlement Agreement is hereby incorporated by reference in this Order, and all terms or phrases used in this Order shall have the same meaning as in the Settlement Agreement.

2.  The Court preliminarily approves the Settlement, together with all of its Exhibits, finding that the terms of the Agreement are fair, reasonable, and adequate, and within the range of possible approval and sufficient to warrant providing notice to the Settlement Class.

3.  Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), the Court certifies, for settlement purposes only, the following Settlement Class: "All Lyft Drivers who gave at least one Ride in California during the period from May 25, 2012 through the date of this Order."

4.  The Court finds, for settlement purposes only, that the Action may be maintained as a class action on behalf of the Settlement Class because:

    a.  Numerosity: Class Counsel estimate that more than 100,000 individuals have potential claims and are members of the Settlement Class. This satisfies the Rule 23(a)(1) numerosity requirement.

    b.  Commonality: The threshold for commonality under Rule 23(a)(2) is not high and single common issue will suffice. Plaintiffs allege, among other things, that Lyft's terms of

service establish that Drivers are employees. This issue is common to the Settlement Class.

    c.   Typicality. Named Plaintiffs' claims are typical of the claims of the Settlement Class Members and satisfy Rule 23(a)(3).

    d.   Adequacy: There are no conflicts of interest between Named Plaintiffs and Settlement Class members and Named Plaintiffs have retained competent counsel to represent the Settlement Class. Class Counsel regularly engage in complex litigation similar to the present case and have dedicated substantial resources to the prosecution of this matter. The adequacy requirement is satisfied.

    e.   Predominance and Superiority: There is predominance and superiority. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The common legal and factual issue listed in the preliminary approval papers predominate all over other issues. Resolution of the common question constitutes a significant part of Plaintiffs' and Settlement Class Members' claims.

5.    Pursuant to the stipulation submitted by the parties concurrently with the submission of the motion for preliminary approval, the Court grants leave to file the Fifth Amended Complaint in the form attached to the Settlement Agreement.

6.    The Court appoints as class representatives, for settlement purposes only, Named Plaintiffs Patrick Cotter, Alejandra Maciel, and Jeffrey Knudtson. The Court finds, for settlement purposes only, that the Named Plaintiffs will adequately represent the Settlement Class.

7.    Pursuant to Federal Rule of Civil Procedure 23(g), and for settlement purposes only, the Court designates as Class Counsel the law firm of Lichten & Liss-Riordan, P.C. The Court preliminarily finds that, based on the work Class Counsel have done identifying, investigating, and prosecuting the claims in this action; Class Counsel's experience in handling class actions and claims of this type asserted in this Action; Class counsel's knowledge of the applicable law; and the resources

Class Counsel have and will commit to representing the class, that Class Counsel have represented and will represent the interests of the Settlement Class fairly and adequately.

8.     The Court appoints Garden City Group as the Settlement Administrator, which shall administer the Settlement in accordance with the terms and conditions of this Order and the Settlement Agreement.

9.     The Court finds that the proposed Class Notice and the proposed plan of distribution of the Class Notice meets the requirements of Federal Rule of Civil Procedure 23(c)(2)(B), and hereby directs the Claims Administrator to proceed with the notice distribution in accordance with the terms of the Agreement.

10.    Any Settlement Class Members who wishes to opt out from the Agreement must do so within 60 days of the Mailed Notice Date and in accordance with the terms of the Agreement.

11.    Any Settlement Class Members who wishes to object to the Agreement must do so within 60 days of the Mailed Notice Date and in accordance with the terms of the Agreement.

12.    The Court has reviewed and approves the claims process.  To be considered timely, a Claim Form must be submitted by a Settlement Class Member so that it is postmarked and mailed to the Settlement Administrator, or submitted online via the settlement website, by no later than the Fairness Hearing, that is, by _____, 2016.  Any Claim Form postmarked or submitted after this date may be rejected as untimely and invalid.  However, the parties have agreed to consider late-filed claims and will cooperate to ensure the greatest possible participation by class members.

13.    The Court finds that the Notice plan, including the form, content, and method of dissemination of the Class Notice to Settlement Class Members as described in the Settlement Agreement, (i) is the best practicable notice; (ii) is reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the lawsuit and the Settlement and of their right to object to or exclude themselves from the proposed Settlement; (iii) is reasonable and constitutes

1   due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meets all

2   applicable requirements of Federal Rule of Civil Procedure 23 and due process.

3   14.   The Court approves the procedures set forth in the Settlement Agreement and the Notice of

4         Settlement of Class Action for exclusions from and objections to the Settlement.

5   15.   The Court preliminarily enjoins all Settlement Class Members and their Legally Authorized

6         Representatives, unless and until they submit a timely request for exclusion pursuant to the

7         Settlement Agreement, (i) from filing, commencing, prosecuting, intervening in, or participating

8         as plaintiff, claimant, or class member in any other lawsuit or administrative, regulatory,

9         arbitration, or other proceeding in any jurisdiction based on the Released Claims; (ii) from filing,

10        commencing, or prosecuting a lawsuit or administrative, regulatory, arbitration, or other

11        proceeding as a class action on behalf of any Settlement Class Members (including by seeking to

12        amend a pending complaint to include class allegations or seeking class certification in a pending

13        action), based on the Released Claims; and (iii) from attempting to effect an opt-out of a group,

14        class, or subclass of individuals in any lawsuit or administrative, regulatory, arbitration, or other

15        proceeding based on the Released Claims.

16  16.   The Court directs that a hearing be scheduled on _____, 2016 at _____ a.m./p.m.

17        (the "Fairness Hearing") to assist the Court in determining whether the Settlement is fair,

18        reasonable and adequate; whether Final Judgment should be entered dismissing with prejudice

19        Lyft in the above-captioned action; whether Class Counsels application for fees and expenses

20        should be approved; and whether Class Counsel's request for enhancement payments to the

21        Named Plaintiffs should be approved.  Plaintiffs shall file a Motion for Final Approval of Class

22        Action Settlement and a Motion for Attorneys' Fees, Costs, and Class Representative Service

23        Awards no later than 14 days before the hearing.

24  17.   Neither the Settlement, nor any exhibit, document or instrument delivered thereunder shall be

25        construed as or deemed to be evidence of an admission or concession by Lyft of an interpretation

26

27

28

of, any liability or wrongdoing by Lyft, or of the truth of any allegations asserted by Plaintiffs, Settlement Class Members or any other person.

18.    If the Settlement is not finally approved, or the Effective Date does not occur, or the Settlement is terminated under its terms, then (a) all parties will proceed as if the Settlement (except those provisions that, by their terms, expressly survive disapproval or termination of the Settlement) had not been executed and the related orders and judgment had not been entered, preserving in that event all of their respective claims and defenses in the action; and (b) all releases given will be null and void.  In such an event, this Court's orders regarding the Settlement, including this Preliminary Approval Order, shall not be used or referred to in litigation for any purpose. Nothing in the foregoing paragraph is intended to alter the terms of the Settlement Agreement with respect to the effect of the Settlement Agreement if it is not approved.

19.    The Court directs that the following deadlines are established by this Preliminary Approval Order:

     a.   Mailed Notice Date:  within 60 days of this Preliminary Approval Order.

     b.   Opt-Out Deadline:  60 days after the Mailed Notice Date.

     c.   Objection Deadline: 60 days after the Mailed Notice Date.

     d.   Claims Submission Date:  _____, 2016 [date of Fairness Hearing] (though, as described above, later claims may be accepted).

     e.   Fairness Hearing:  _____, 2016 at _____ a.m./p.m.

**IT IS SO ORDERED.**

Date: _____

_____
Hon. Vince Chhabria
United States District Judge

# EXHIBIT B

# If you used the Lyft smartphone application to give rides to passengers in California between May 25, 2012 and [Preliminary Approval Date], you could get a payment from a class action settlement.

*A court authorized this notice. This is not a solicitation from a lawyer.*

- A lawsuit claims that Lyft, Inc. violated various laws and regulations by classifying drivers in California as independent contractors rather than employees. Lyft denies these allegations but has agreed to settle the lawsuit by paying $27,000,000.00, changing its Terms of Service, and changing how its product works.

- The Court in charge of this case still has to decide whether to approve the settlement. If it does, drivers who used the Lyft smartphone application to give rides to passengers in California between May 25, 2012 and [Preliminary Approval Date] will be eligible for payment from Lyft.

- Your legal rights are affected whether you act or don't act. Read this notice carefully.

| Summary of Your Legal Rights and Options | |
|---|---|
| Submit a claim | The only way to get a payment. Give up your right to be part of another case against Lyft about the claims being resolved by this settlement. **In order to receive a payment, you must submit a claim, which you can do electronically or by mail, as explained below in paragraph 9.** [A hyperlink will be included here that will take class members down to paragraph 9.] Submitting a claim will not affect your right to assert claims against Lyft arising after approval of this settlement. |
| Exclude yourself from the settlement | Get no payment. Keep your right to be part of another case against Lyft about the claims being resolved by this settlement. |
| Object to the settlement | Write to the Court about why you don't like the settlement. You cannot object in order to ask the Court for a higher payment for yourself personally, although you can object to the payment terms (or any other terms) that apply generally to the class. |
| Go to a hearing | Follow the procedures below to ask to speak in Court about the fairness of the settlements. The Court will hold a hearing for the settlement to decide whether to approve it. |
| Do nothing | Get no payment. Give up your right to right to assert the claims being resolved by this settlement. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

**Questions? Visit www.[___].com or call (8XX) [___-____].**
**Para una notificación en español, visitar nuestro website.**

1059148

# What This Notice Contains

BASIC INFORMATION ...................................................................................................3

1.    WHY AM I RECEIVING THIS NOTICE? ...............................................3

2.    WHAT IS THIS LAWSUIT ABOUT?.......................................................3

3.    WHAT IS A CLASS ACTION AND WHO IS INVOLVED?....................3

4.    WHY IS THERE A SETTLEMENT?.........................................................3

WHO IS IN THE SETTLEMENT? .................................................................................4

5.    WHO IS INCLUDED IN THE CLASS UNDER THE SETTLEMENT? .....4

THE SETTLEMENT BENEFITS—WHAT YOU GET ................................................4

6.    WHAT DOES THE SETTLEMENT PROVIDE? .....................................4

7.    WHAT CAN I GET FROM THE SETTLEMENT?...................................5

8.    WHAT IF I DISAGREE WITH MY PAYMENT?....................................5

HOW YOU GET A PAYMENT—SUBMITTING A CLAIM .......................................6

9.    HOW CAN I GET A PAYMENT? ............................................................6

10.   WHEN WOULD I GET MY PAYMENT? ................................................6

11.   WHAT AM I GIVING UP BY STAYING IN THE CLASS AND GETTING A PAYMENT? .................7

EXCLUDING YOURSELF FROM THE SETTLEMENT ...........................................7

12.   HOW DO I GET OUT OF THIS SETTLEMENT?...................................7

13.   IF I DON'T EXCLUDE MYSELF, CAN I SUE LYFT FOR THE SAME THING LATER?...................7

14.   IF I EXCLUDE MYSELF, CAN I GET MONEY FROM THIS SETTLEMENT? ...................7

THE LAWYERS REPRESENTING YOU ....................................................................8

15.   DO I HAVE A LAWYER IN THIS CASE? ..............................................8

16.   HOW WILL THE LAWYERS BE PAID?  ARE THE CLASS REPRESENTATIVES BEING PAID?...8

OBJECTING TO THE SETTLEMENT ........................................................................8

17.   HOW DO I TELL THE COURT THAT I DON'T LIKE THE SETTLEMENT? ...................8

18.   WHAT'S THE DIFFERENCE BETWEEN OBJECTING AND EXCLUDING?...................9

THE COURT'S FAIRNESS HEARING .......................................................................9

19.   WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?...................9

20.   DO I HAVE TO COME TO THE HEARING? ..........................................9

21.   MAY I SPEAK AT THE FAIRNESS HEARING?..................................10

IF YOU DO NOTHING ...............................................................................................10

22.   WHAT HAPPENS IF I DO NOTHING AT ALL? ..................................10

GETTING MORE INFORMATION............................................................................10

23.   ARE THERE MORE DETAILS ABOUT THE SETTLEMENT?............10

24.   HOW DO I GET MORE INFORMATION?.............................................10

# Basic Information

**1.     WHY AM I RECEIVING THIS NOTICE?**

Lyft's records show that you used the Lyft smartphone application to give rides to passengers in California between May 25, 2012 and [Preliminary Approval Date].

The Court sent you this notice because you have a right to know about a proposed settlement of a class action lawsuit, and about your options, before the Court decides whether to approve the settlement. If the Court approves it and after any objections and appeals are resolved, an administrator appointed by the Court will make the payments that the settlement allows. Everyone who makes a claim will be informed of the progress of the settlement.

This package explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the United States District Court for the Northern District of California, and the case is known as *Patrick Cotter, et al. v. Lyft, Inc.*, Case No. 3:13-cv-04065-VC.

**2.     WHAT IS THIS LAWSUIT ABOUT?**

This lawsuit claims, generally, that Lyft improperly classified drivers who gave rides in California as independent contractors rather than employees and that as a result of this classification, Lyft violated various laws and regulations.

Lyft denies that drivers were or are employees and denies the claims in the lawsuit. Lyft argues that it complied with all applicable federal, state, and local laws and regulations at all times, and it has asserted various defenses to the claims.

**3.     WHAT IS A CLASS ACTION AND WHO IS INVOLVED?**

In a class action lawsuit, one or more people, called "Class Representatives," sue on behalf of themselves and others who have similar claims. All these people together are a "Class" or "Class Members." One court resolves the issues for everyone in the Class—except for those people who choose to exclude themselves from the Class. People who do not exclude themselves and remain in the Class may not file their own lawsuit on the issues that were resolved in the class action.

Here, the Class Representatives are current and/or former drivers who used the Lyft smartphone application to give rides to passengers in California. Their names are Patrick Cotter, Alejandra Maciel, and Jeffrey Knudson. These Class Representatives sued the Defendant, Lyft, Inc., on behalf of themselves and other drivers who gave rides to passengers in California.

**4.     WHY IS THERE A SETTLEMENT?**

The Court did not decide in favor of the drivers or Lyft. Instead, both sides agreed to a settlement. That way, they avoid the cost of a trial, and the people affected will get compensation and the benefits of changes to Lyft's Terms of Service and product. The Class

Representatives and their lawyers think the settlement is best for everyone who gave rides to passengers using the Lyft smartphone application because they believe that that the amount Lyft has agreed to pay, along with the changes Lyft has agreed to make to its Terms of Service and product, is fair, adequate, and reasonable in light of the risks of continued litigation, and the time required to litigate the case.

## Who Is in the Settlement?

**5.     WHO IS INCLUDED IN THE CLASS UNDER THE SETTLEMENT?**

All current and former drivers who gave at least one ride to passengers in California between May 25, 2012 and [Preliminary Approval Date] are Class Members under this settlement.

## The Settlement Benefits—What You Get

**6.     WHAT DOES THE SETTLEMENT PROVIDE?**

Lyft has agreed to pay money to Class Members, change its Terms of Service, and change its product:

- Lyft has agreed to create a settlement fund of $27,000,000.00 for payments by Lyft to Class Members.  Under a Plan of Allocation in the settlement, this fund will first be used to pay for (1) the costs of providing notice to the Class (such as this document) and administering the settlement, and (2) the lawyers' fees, expenses, and enhancement payments approved by the Court (see Question 16 for more details on these payments).  The remaining amount in the settlement fund, called the "Net Settlement Fund," will then be distributed to Class Members who make a valid claim, as described in Question 7.

- Lyft has agreed to change its Terms of Service to remove its ability to deactivate a driver's account for any reason.  Instead, Lyft will list the specific, limited categories of actions that may result in termination of a driver's agreement with Lyft/deactivation of a driver's account.

- Lyft has agreed to change its Terms of Service to provide that Lyft will pay for arbitration fees and costs (other than an initial filing fee) for any claims brought by Lyft against a driver, or for claims brought by a driver against Lyft, for certain disputes related to driver deactivation/termination, ride fees, and employment-related claims.  Arbitration is a way of resolving disputes without going to Court.

- Lyft has agreed to implement an optional pre-arbitration negotiation process that can be used by drivers, including deactivated drivers, to resolve disputes with Lyft without having to invoke the arbitration process.

- Lyft has agreed to change its product to create a "favorite driver" option that will result in benefits to drivers who Lyft passengers choose as a "favorite."

- Lyft has agreed to change its product to provide drivers with additional information about potential Lyft passengers before drivers accept ride requests from those passengers.

## 7. WHAT CAN I GET FROM THE SETTLEMENT?

Payments to Class Members who submit valid claims (see Question 9) will be made based on each such Class Member's share of the "Net Settlement Fund." A Class Member's share will be determined by the number of "Points" awarded to the Class Member.

The settlement awards Points based on Lyft's records as to the number of Rides a Class Member gave and/or the amount of time a Class Member spent in "Ride Mode." These Points do not have a value fixed at any particular dollar amount; they vary depending on how many people make a claim for a share of the settlement. For the purposes of calculating points, the settlement defines a Ride as beginning when a driver uses the Lyft smartphone application to accept a transportation request from a passenger and ending when a driver selects the "drop off" option in the Lyft smartphone application. The settlement defines Ride Mode as the period between the beginning and end of a Ride.

Points will be awarded as follows:

- For each Ride given in the period from May 25, 2012 through September 30, 2012, a Class Member will receive two hundred twenty seven (227) Points.

- For each sixty-minute period in Ride Mode for the period from October 1, 2012 through [Preliminary Approval Date], a Class Member will receive six hundred (600) Points.

- For each sixty-minute period in Ride Mode for the period from January 14, 2013 through December 23, 2013, a Class Member will receive an additional one hundred twenty (120) Points.

- For each Class Member who spent thirty (30) or more hours per week in Ride Mode in fifty (50) percent or more of the weeks in the period from May 25, 2012 through [Preliminary Approval Date] in which he or she gave at least one Ride, the points calculated above will be multiplied by 2, so that the Class Member receives double the number of Points than would otherwise be awarded.

After Points are awarded to all Class Members submitting valid claims, the Net Settlement Fund will be divided among those Class Members in proportion to each Class Member's Points. The exact amount each such Class Member will receive cannot be calculated until (1) the Court approves the settlement; (2) amounts are deducted from the settlement fund for the costs of providing notice to the Class, administering the settlement, paying lawyers' fees and expenses, and making enhancement payments approved by the Court; and (3) the Settlement Administrator determines the number of Class Members who excluded themselves, submitted valid claims, and after payments are made, successfully received their payment.

## 8. WHAT IF I DISAGREE WITH MY PAYMENT?

There is a process in the settlement for you to challenge the determination of the amount of your settlement payment. The Settlement Administrator, with input from Class Counsel and Lyft, will determine the amount of each settlement payment and will resolve any objections to your settlement amount. You will get further details in the letter you receive about your payment.

# How You Get a Payment—Submitting a Claim

**9.     HOW CAN I GET A PAYMENT?**

To qualify for payment, you must submit a claim, either electronically or through a paper claim form.

To submit a claim electronically, go to **www.[    ].com** and enter your Claimant ID and Verification Number, provided below.  [Website name will be linked to website where claims can be submitted.]

Claimant ID: [__]
Verification Number: [__]

To submit a claim by paper, please contact the Settlement Administrator at (8XX) [___-____] or [__]@[__].com for instructions.

**In order to receive a monetary payment from this settlement, you must submit your claim no later than [__].**

If you have current electronic payment account information on file with Lyft, the settlement payment will be deposited directly into your account.  If you prefer, you can request your payment be made by check.  It is your responsibility to keep current electronic payment information on file with Lyft or the Settlement Administrator, or, if you want to receive payment by check, you must inform the Settlement Administrator of any change in your address, which was listed on the outside of the envelope containing this notice or at the top of the email containing this notice. You may update your address with the Settlement Administrator by submitting your former and current addresses to:

Lyft Class Action Settlement
Settlement Administrator
c/o [__]

You can also submit your address information via email to [__]@[__].com.

Please include your Claimant ID on any correspondence sent to the Settlement Administrator.

**If you do not keep your electronic payment information or your address current, your settlement payment may be delayed and it is possible that you will not receive your settlement payment**.

**10.     WHEN WOULD I GET MY PAYMENT?**

The Court will hold a hearing on [__], to decide whether to approve the settlement.  If the Court approves the settlement after that, it is anticipated that you would receive your payment in 2016.  However, if there are appeals, it may take time to resolve them, perhaps more than a year. Everyone who submits a claim will be informed of the progress of the settlement.  Please be patient.

1059148

**11.    WHAT AM I GIVING UP BY STAYING IN THE CLASS AND GETTING A PAYMENT?**

Unless you exclude yourself, you are staying in the Class, and that means that you can't sue, continue to sue, or be part of any other lawsuit against Lyft about the legal issues resolved by this settlement.  It also means that all of the Court's orders will apply to you and legally bind you.  If you submit a claim, you will agree to a "Release of Claims," available online as part of the claim submission process, which describes exactly the legal claims that you give up if you get settlement benefits. Submitting a claim will not affect your right to assert claims against Lyft arising after the approval of this settlement.

# Excluding Yourself from the Settlement

If you don't want a payment from this settlement, but you want keep the right to sue or continue to sue Lyft, on your own, about the legal issues resolved by this settlement, then you must take steps to get out.  This is called excluding yourself—or is sometimes referred to as opting out of the settlement Class.

**12.    HOW DO I GET OUT OF THIS SETTLEMENT?**

To exclude yourself from the settlement, you must send a letter by mail, **postmarked on or before [__]**, to the Settlement Administrator at the following address:

> Lyft Class Action Settlement
> Settlement Administrator
> c/o [__]

Your letter must contain: (1) a clear statement that you wish to be excluded from this case, *Cotter v. Lyft*, (2) your name (and former names, if any), address, and telephone number; (3) your signature (or the signature of your legally authorized representative).

If, before the deadline, you request to be excluded from the settlement, you will not receive any payment under the settlement and you will not be bound by anything that happens in this case.  However, if the settlement is finally approved, the settlement will prohibit you from making further claims under the California Labor Code Private Attorneys General Act of 2004 (also called "PAGA"), regardless of whether you ask to be excluded.

**13.    IF I DON'T EXCLUDE MYSELF, CAN I SUE LYFT FOR THE SAME THING LATER?**

Unless you exclude yourself, you give up the right to sue Lyft for the claims that this settlement resolves. However, not excluding yourself will not affect your right to assert claims against Lyft arising after the approval of this settlement.  If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately.  You must exclude yourself from this Class to continue your own lawsuit.  **Remember, the exclusion deadline is [__].**

**14.    IF I EXCLUDE MYSELF, CAN I GET MONEY FROM THIS SETTLEMENT?**

No.  If you exclude yourself, do not submit a claim to ask for any money.  However, you may sue, continue to sue, or be part of a different lawsuit against Lyft.

# The Lawyers Representing You

**15.    DO I HAVE A LAWYER IN THIS CASE?**

You do not need to hire your own lawyer.  The Court has decided that the interests of the Class, including you if you do not exclude yourself, are represented by these lawyers:

Shannon Liss-Riordan
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Phone:  617-994-5800
lyftlawsuit@llrlaw.com

Matthew D. Carlson
LICHTEN & LISS-RIORDAN, P.C.
466 Geary Street, Suite 201
San Francisco, CA 94102
Phone:  617-994-5800
lyftlawsuit@llrlaw.com

You and other Class Members will not be separately charged for these lawyers, who are referred to as "Class Counsel."  If you want to be represented by your own lawyer, you may hire one at your own expense.

**16.    HOW WILL THE LAWYERS BE PAID?  ARE THE CLASS REPRESENTATIVES BEING PAID?**

Class Counsel will ask the Court for fees and costs up to $3,675,000.  Class Counsel also will ask for an enhancement payment of up to $5,000 each for Patrick Cotter and Alejandra Maciel, and up to $2,500 for Jeffrey Knudson, for their services as the Class Representatives and for their efforts in bringing this case.  The actual amounts awarded to Class Counsel and the Class Representatives will be determined by the Court.

# Objecting to the Settlement

You can tell the Court that you don't agree with the settlement or some part of it.

**17.    HOW DO I TELL THE COURT THAT I DON'T LIKE THE SETTLEMENT?**

If you're a Class Member, you can object to the settlement if you don't like any part of it.  You can give reasons why you think the Court should not approve it.  The Court will consider your views.  If the Court rejects your objection, you will still be bound by the terms of the settlement, but you will also receive a monetary award.

To object, you must send your written objection by mail, **postmarked on or before [Exclusion/Objection Deadline]**, to the following two addresses:

Clerk of the Court
U.S. District Court, N.D. Cal.
450 Golden Gate Avenue, 17th Floor
San Francisco, CA, 94102

Lyft Class Action Settlement
Settlement Administrator
c/o [__]

Your written objection must contain: (1) your full name, address, telephone number, and signature; (2) a heading that clearly refers to this case, *Cotter v. Lyft*; (3) a statement of the specific legal or factual reasons for your objection; and (4) a statement of whether you intend to appear at the Fairness Hearing, either in person or by having a lawyer represent you, and, if you will have a lawyer represent you, a statement identifying that lawyer by name, bar number, address, and telephone number. Your objection must be signed by you (or your legally authorized representative), even if you are represented by a lawyer.

## 18. WHAT'S THE DIFFERENCE BETWEEN OBJECTING AND EXCLUDING?

Objecting is simply telling the Court that you don't like something about the settlement. You can object only if you stay in the Class. Excluding yourself is telling the Court that you don't want to be part of the Class. If you exclude yourself, you cannot object to the settlement because the case no longer affects you.

# The Court's Fairness Hearing

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you don't have to.

## 19. WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?

The Court has preliminarily approved the settlement and will hold a hearing, called a Fairness Hearing, to decide whether to give final approval to the settlement. At the hearing, the Court also will consider the award of lawyers' fees and expenses to Class Counsel and the request for enhancement payments to the Class Representatives.

The Court has scheduled the Fairness Hearing for [__] on [__], 2016, in Courtroom 4 of the United States District Court, Northern District of California located at 450 Golden Gate Avenue, 17th Floor, San Francisco, California 94102.

## 20. DO I HAVE TO COME TO THE HEARING?

No. Class Counsel will answer any questions the Court may have. However, you have the right to attend the Fairness Hearing and be represented by your own lawyer at your own expense. If you plan to attend the Fairness Hearing, you may contact Class Counsel to confirm the date and time, as the hearing may be rescheduled without further notice.

**21.    MAY I SPEAK AT THE FAIRNESS HEARING?**

You may ask the Court for permission to speak at the Fairness Hearing by following the steps listed under Question [__] above.  If you have requested exclusion from the Settlement, however, you may not speak at the Fairness Hearing.

# If You Do Nothing

**22.    WHAT HAPPENS IF I DO NOTHING AT ALL?**

If you do nothing, you'll get no money from this settlement.  But, unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Lyft about the legal issues resolved by this settlement. Doing nothing will not affect your right to assert claims against Lyft arising after the approval of this settlement.

# Getting More Information

**23.    ARE THERE MORE DETAILS ABOUT THE SETTLEMENT?**

This notice summarizes the proposed settlement.  More details are in a settlement agreement.  You can get a copy of the settlement agreement by writing to Lichten & Liss-Riordan, P.C. at 729 Boylston Street, Suite 2000, Boston, MA 02116, lyftlawsuit@llrlaw.com, or by visiting www.[___].com.

**24.    HOW DO I GET MORE INFORMATION?**

You can visit www.[___].com, call (8XX) [___-____], or write to Lyft Class Action Settlement, Settlement Administrator, c/o [__].  The website provides answers to common questions about the settlement, a claim-submission option, and key documents related to this case and this Settlement.

**PLEASE DO NOT CALL OR WRITE THE COURT
OR THE OFFICE OF THE CLERK OF COURT REGARDING THIS NOTICE**

10

Envelope #10 with window

_____

_____

_____

Business
Mail Return
No Postage
Necessary

Lyft Class Action Settlement

c/o _____

_____

_____

11

# EXHIBIT C

## LEGAL NOTICE

# If you used the Lyft smartphone application to give rides to passengers in California between May 25, 2012 and [Preliminary Approval Date], you could get a payment from a class action settlement.

### Para una notificación en español, visitar nuestro website.

A settlement has been proposed in a class action lawsuit about drivers who used Lyft, Inc.'s smartphone application in California. Lyft will create a settlement fund of $27,000,000 for drivers and make changes to its Terms of Service and product. If you qualify, you may submit a claim to get benefits, or you can exclude yourself from the settlement, or object to it.

The United States District Court for the Northern District of California authorized this notice. Before any money is paid, the Court will have a hearing to decide whether to approve the settlement.

### Who's Included?

You are a Class Member and could get benefits if you are a driver who used the Lyft smartphone application to give rides to passengers in California between May 25, 2012 and [Preliminary Approval Date].

### What's this About?

The lawsuit claims that Lyft violated various laws and regulations by classifying drivers in California as independent contractors rather than employees. Lyft denies these claims. The Court did not decide who was right, but both sides agreed to a settlement to resolve the case.

### What Does the Settlement Provide?

Lyft will create a settlement fund of $27,000,000 for drivers. Lyft also will change its Terms of Service to provide (1) that it can deactivate drivers only for specific reasons rather than any reason and (2) that it will pay certain costs to arbitrate disputes about deactivation and many pay issues. Finally, Lyft will change its product to create a "favorite

driver" feature and to give drivers more information about passengers before accepting ride requests. Your share of the fund will depend on the number of Class Members who submit valid claims and the number of rides you gave and/or hours you drove. Generally, if you drove more, you will get more money.

### How Do You Ask for a Payment?

A detailed notice and claim package contains everything you need. Just visit the website or call the number below to get one. To qualify for a payment, you must submit a claim by [ ].

### What Are Your Other Options?

If you don't want to be legally bound by the settlement, you must exclude yourself by [ ], or you won't be able to sue, or continue to sue, Lyft about the legal claims being resolved by this settlement. If you exclude yourself, you can't get money from this settlement. If you stay in the settlement, you may object to it by [ ]. The detailed notice explains how to exclude yourself or object.

The Court will hold a hearing in this case (*Patrick Cotter, et al. v. Lyft, Inc.*, Case No. 3:13-cv-04065-VC) on [ ], to consider whether to approve the settlement and a request by the lawyers representing all Class Members (Lichten & Liss-Riordan, P.C. of Boston, MA and San Francisco, CA) for up to $3,675,000 in fees and costs, for investigating the facts, litigating the case, and negotiating the settlement. The fees and costs will be paid out of the settlement fund. You may ask to appear at the hearing, but you don't have to. For more information, visit the website or call the number below, or write to Lyft Class Action Settlement, Settlement Administrator, c/o [ ].

**QUESTIONS? VISIT WWW.[ ].COM OR CALL (8XX) [ ]**

1059149

# EXHIBIT D

# Revised Settlement
## Changes to Lyft's Terms of Service and Product

**Revised Termination Provision**

<u>Restricted Activities</u>

With respect to your use of the Lyft Platform and your participation in the Services, you agree that you will not:

a) impersonate any person or entity;

b) stalk, threaten, or otherwise harass any person, or carry any weapons;

c) violate any law, statute, rule, permit, ordinance or regulation;

d) interfere with or disrupt the Services or the Lyft Platform or the servers or networks connected to the Lyft Platform;

e) post Information or interact on the Lyft Platform or Services in a manner which is false, inaccurate, misleading (directly or by omission or failure to update information), defamatory, libelous, abusive, obscene, profane, offensive, sexually oriented, threatening, harassing, or illegal;

f) use the Lyft Platform in any way that infringes any third party's rights, including but not limited to: intellectual property rights, copyright, patent, trademark, trade secret or other proprietary rights or rights of publicity or privacy;

g) post, email or otherwise transmit any malicious code, files or programs designed to interrupt, damage, destroy or limit the functionality of any computer software or hardware or telecommunications equipment or surreptitiously intercept or expropriate any system, data or personal information;

h) forge headers or otherwise manipulate identifiers in order to disguise the origin of any information transmitted through the Lyft Platform;

i) "frame" or "mirror" any part of the Lyft Platform, without our prior written authorization or use meta tags or code or other devices containing any reference to us in order to direct any person to any other web site for any purpose; or

j) modify, adapt, translate, reverse engineer, decipher, decompile or otherwise disassemble any portion of the Lyft Platform or any software used on or for the Lyft Platform;

k) rent, lease, lend, sell, redistribute, license or sublicense the Lyft Platform or access to any portion of the Lyft Platform;

l) use any robot, spider, site search/retrieval application, or other manual or automatic device or process to retrieve, index, scrape, "data mine", or in any way reproduce or circumvent the navigational structure or presentation of the Lyft Platform or its contents;

m)  link directly or indirectly to any other web sites;

n) transfer or sell your User account, password and/or identification to any other party;

o) discriminate against or harass anyone on the basis of race, national origin, religion, gender, gender identity, physical or mental disability, medical condition, marital status, age or sexual orientation; or

p) cause any third party to engage in the restricted activities above.

<u>Driver Representations, Warranties, and Agreements</u>

By providing Services as a Driver on the Lyft Platform, you represent, warrant, and agree that:

a) You possess a valid driver's license and are authorized and medically fit to operate a motor vehicle and have all appropriate licenses, approvals and authority to provide transportation to Riders in all jurisdictions in which you provide Services.

b) You own, or have the legal right to operate, the vehicle you use when providing Services, and such vehicle is in good operating condition and meets the industry safety standards and all applicable statutory and state department of motor vehicle requirements for a vehicle of its kind.

c) You will not engage in reckless behavior while driving, drive unsafely, operate a vehicle that is unsafe to drive, be involved in a motor vehicle accident or collision of any kind, permit an unauthorized third party to accompany you in the vehicle while providing Services, provide Services as a Driver while under the influence of alcohol or drugs, or take action that harms or threatens to harm the safety of the Lyft community or third parties.

d) You will only provide Services using the vehicle that has been reported to, and approved by, Lyft and for which a photograph has been provided to Lyft, and you will not transport more passengers than can securely be seated in such vehicle (and no more than seven (7) passengers in any instance).

e) You will not make any misrepresentation regarding Lyft, the Lyft Platform, the Services or your status as a Driver.

f) You will not, while providing the Services, operate as a public carrier or taxi service, accept street hails, charge for rides (except as expressly provided in this Agreement), demand that a rider pay in cash, or use a credit card reader, such as a Square Reader, to accept payment, or engage in any other activity in a manner that is inconsistent with your obligations under this Agreement.

g) You will not attempt to defraud Lyft or Riders on the Lyft Platform or in connection with your provision of Services. If we suspect that you have engaged in fraudulent activity we may withhold applicable Ride Fees or other payments for the ride(s) in question.

h) You will make reasonable accommodation Riders and/or for service animals, as required by law.

i) You agree that we may obtain information about you, including your criminal and driving records, and you agree to provide any further necessary authorizations to facilitate our access to such records during the term of the Agreement.

j) You have a valid policy of liability insurance (in coverage amounts consistent with all applicable legal requirements) that names or schedules you for the operation of the vehicle you use to provide Services.

k) You will pay all applicable federal, state and local taxes based on your provision of Services and any payments received by you.

<u>Term and Grounds for Termination</u>

This Agreement is effective upon your creation of a User account.   This Agreement may be terminated:

a) by User, without cause, upon seven (7) days' prior written notice to Lyft; or

b) by either Party immediately, without notice, upon the other Party's material breach of this Agreement, including but not limited to any breach of Section 7 or breach of Section 8(a) through (i) of this Agreement.

In addition, Lyft may terminate this Agreement or deactivate your User account immediately in the event: (1) you no longer qualify to provide Services or to operate the approved vehicle under applicable law, rule, permit, ordinance or regulation; (2) you fall below Lyft's star rating or cancellation threshold; (3) Lyft has the good faith belief that such action is necessary to protect the safety of the Lyft community or third parties, provided that in the event of a deactivation pursuant to (1)-(3) above, you will be given notice of the potential or actual deactivation and an opportunity to attempt to cure the issue to Lyft's reasonable satisfaction prior to Lyft permanently terminating the Agreement.

For all other breaches of this Agreement, you will be provided notice and an opportunity to cure the breach. If the breach is cured in a timely manner and to Lyft's satisfaction, this Agreement will not be permanently terminated.

Sections [X-Y] shall survive any termination or expiration of this Agreement.

**Payment of Arbitration Fees**

With respect to any Claims brought by Lyft against a Driver, or for Claims brought by a Driver against Lyft that: (A) are based on an alleged employment relationship between Lyft and a Driver; (B) arise out of, or relate to, Lyft's actual deactivation of a Driver's User account or a threat by Lyft to deactivate a Driver's User account; (C) arise out of, or relate to, Lyft's actual termination of a Driver's Agreement with Lyft under the termination provisions of this Agreement, or a threat by Lyft to terminate a Driver's Agreement; or (D) arise out of, or relate to, Fares (as defined in this Agreement, and including Lyft's commission on the Fares), tips, or average hourly guarantees owed by Lyft to Drivers for Services, other than disputes relating to referral bonuses, other Lyft promotions, or consumer-type disputes (the subset of Claims in subsections (A)-(D) shall be collectively referred to as "Driver Claims"), Lyft shall pay all costs unique to arbitration (as compared to the costs of adjudicating the same claims before a court), including the regular and customary arbitration fees and expenses (to the extent not paid by Lyft pursuant to the fee provisions above).  However, if you are the party initiating the Driver Claim, you shall be responsible for contributing up to an amount equal to the filing fee that would be paid to initiate the claim in the court of general jurisdiction in the state in which you provide Services to Riders, unless a lower fee amount would be owed by you pursuant to the AAA rules, applicable law, or subsection (e)(1) above.  Any dispute as to whether a cost is unique to arbitration shall be resolved by the arbitrator.

Except as provided in Federal Rule of Civil Procedure 68 or any state equivalents, each party shall pay its own attorneys' fees and pay any costs that are not unique to the arbitration (i.e., costs that each party would incur if the claim(s) were litigated in a court such as costs to subpoena witnesses and/or documents, take depositions and purchase deposition transcripts, copy documents, etc.).

At the end of any arbitration, the arbitrator may award reasonable fees and costs or any portion thereof to you if you prevail, to the extent authorized by applicable law.

**Optional Pre-Arbitration Negotiation Process**

Before initiating any arbitration or proceeding, you and Lyft may agree to first attempt to negotiate any dispute, claim or controversy between the parties informally for 30 days, unless this time period is mutually extended by you and Lyft. A party who intends to seek negotiation under this subsection must first send to the other a written Notice of Dispute ("Notice"). The Notice must (i) describe the nature and basis of the claim or dispute; and (ii) set forth the specific relief sought. All offers, promises, conduct and statements, whether oral or written, made in the course of the negotiation by any of the parties, their agents, employees, and attorneys are confidential, privileged and inadmissible for any purpose, including as evidence of liability or for impeachment, in arbitration or other proceeding involving the parties, provided that evidence that is otherwise admissible or discoverable shall not be rendered inadmissible or non-discoverable as a result of its use in the negotiation.

This subsection shall survive any termination of this Agreement. You or Lyft may seek negotiation under this subsection notwithstanding termination of this Agreement or deactivation of your User account.

**Product Modifications**

1. **A "Favorite" Driver Product Option**: Lyft is willing to create some type of "favorite" driver option, pursuant to which passengers would be able to "favorite" a driver and that drivers would receive some benefit from being designated as a rider's "favorite".

a. Lyft cannot yet commit to the specific method by which drivers would benefit for being "favorited", as any product changes need to be tested before being rolled out. Lyft would, however, explore whether this "favorite" option could impact the matching algorithm in some way that benefits drivers, such as providing the driver and that rider with preferential matching. If that could not work, other options could be explored such as providing the drivers with extra ride credits, or bonus tips from passengers.

2. **Surfacing Additional Information Prior to Ride Acceptance**: Lyft is willing to provide additional information about a potential passenger to drivers prior to the driver accepting any ride request, such as passenger ratings, estimated time to passenger pickup, and more detailed passenger profile information.

# EXHIBIT E

1  Shannon Liss-Riordan (*Pro Hac Vice*)
   sliss@llrlaw.com
2  LICHTEN & LISS-RIORDAN, P.C.
3  729 Boylston Street, Suite 2000
   Boston, MA 02116
4  Telephone: (617) 994-5800

5
   Matthew D. Carlson (State Bar No. 273242)
6  mcarlson@llrlaw.com
   LICHTEN & LISS-RIORDAN, P.C.
7  466 Geary St., Suite 201
   San Francisco, California 94102
8  Telephone: (617) 994-5800

9
   Attorneys for Plaintiffs COTTER, MACIEL, and KNUDTSON
10

11

12              **UNITED STATES DISTRICT COURT**

13              **NORTHERN DISTRICT OF CALIFORNIA**

14

15  PATRICK COTTER, ALEJANDRA MACIEL,      **Case No.: 3:13-cv-04065-VC**
    and JEFFREY KNUDTSON, on behalf of
16  themselves and all others similarly situated,   **Hon. Vince Chhabria**

17                                          **FIFTH AMENDED COMPLAINT FOR**
                                            **VIOLATIONS OF THE CALIFORNIA**
18                    Plaintiffs,           **LABOR CODE AND CALIFORNIA**
                                            **BUSINESS & PROFESSIONS CODE**
19            v.
                                            **CLASS ACTION**
20  LYFT, INC.,

21                    Defendant.

22

23

24

25

26

27

28

Plaintiffs Patrick Cotter, Alejandra Maciel, and Jeffrey Knudtson (hereafter "Plaintiffs"), by and through their attorneys, bring this action on behalf of themselves and all others similarly situated against Defendant Lyft, Inc. (hereafter "Lyft" or "Defendant") and hereby allege as follows:

## I. NATURE OF THE ACTION

1.	Lyft is a San Francisco-based car service that refers to itself as a "ride-sharing business." Through its software implemented in the Lyft mobile phone application (the "Lyft Platform"), Lyft provides a means to enable a person who seeks transportation to a destination via automobile ("Rider(s)") to be picked up by a nearby person who is willing to transport the Rider to his or her destinations via automobile ("Driver(s)").

2.	This is a California class action[1] that challenges Lyft's policy of misclassifying its Drivers as "independent contractors" unprotected by the California Labor Code. Because Drivers are in fact Lyft employees, Lyft has also failed to reimburse its Drivers for work-related business expenses in violation of Cal. Lab. Code § 2802; improperly took gratuity payments given by Riders to Lyft's Drivers in violation of Cal. Lab. Code § 351; failed to pay its Drivers minimum wage in violation of Cal. Lab. Code §§ 1182.12, 1194, 1194.2, 1197, 1197.1, 1199, and California Industrial Welfare Commission Wage Order No. 9-2001 as amended ("Wage Order 9") (applicable to the transportation industry); failed to pay its Drivers overtime in violation of Cal. Lab. Code §§ 510, 1194, 1198, and Wage Order 9; failed to keep accurate records for its Drivers in violation of Cal. Lab. Code §§ 353 and 1174; failed to provide its Drivers with properly itemized wage statements in violation of Cal. Lab. Code § 226; failed to provide its Drivers with meal periods in violation of Cal. Lab. Code §§ 226.7, 512, and Wage Order 9; failed to pay its Drivers the reporting time pay required by Wage Order 9; failed to authorize and permit its Drivers to

---

[1] Plaintiffs do not waive their right to assert claims on behalf of a national class, and for appellate purposes reserve their rights with respect to this issue.

take rest periods in violation of Cal. Lab. Code § 226.7 and Wage Order 9, and failed to pay Drivers who have been terminated or who have been quit their wages when due in violation of Cal. Lab. Code §§ 201, 202, and 203. The preceding violations are also violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"), and also subject Lyft to penalties pursuant to the Labor Code Private Attorneys General Act of 2004 ("PAGA").

## II. JURISDICTION

3.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy between Lyft and each named Plaintiff exceeds $75,000, inclusive of all recoverable attorneys' fees and penalties, exclusive of interest and costs, and because Plaintiff Maciel is a citizen of a Mexico and Lyft is a citizen of California. The Court also has continuing jurisdiction over this matter because, at the time of filing, it had jurisdiction pursuant to 28 U.S.C. § 1332(d).

## III. VENUE

4.  This Court is the proper venue for this matter pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiffs' claims and the claims of putative class members occurred in the Northern District of California. Specifically, the policies and practices at issue in this litigation were and are implemented at Lyft's principal place of business in San Francisco, California.

## IV. THE PARTIES

5.  Plaintiff Patrick Cotter is a citizen of Washington, domiciled in Seattle. Plaintiff Cotter provided services as a Lyft Driver starting in September 2012. Plaintiff Cotter's employment with Lyft was terminated by Lyft in January 2013.

6.  Plaintiff Alejandra Maciel is a citizen of Mexico, domiciled in Tlayacapan, Mexico. Plaintiff Maciel provided services as a Lyft Driver starting on August 9, 2013. Plaintiff Maciel's employment with Lyft was terminated by Lyft on September 13, 2013.

7.  Plaintiff Jeffrey Knudtson is a citizen of California, domiciled in Santa Barbara. Plaintiff Knudtson began providing services as a Lyft Driver in October 2013 and is currently a Lyft Driver.

8.  Defendant Lyft, Inc. is a Delaware corporation with its headquarters and principal place of business in San Francisco, CA. Lyft's accounting, human resources, and all other departments are located in its San Francisco, CA headquarters.

### V. FACTUAL ALLEGATIONS

9.  As described above, Lyft is a San Francisco-based car services that refers to itself as a "ride-sharing business" that uses its "Lyft Platform" software to "match" an individual who needs a ride (a Rider) with someone willing to provide a ride (a Driver).[2]

10. Lyft's business works as follows: The Lyft Platform is implemented via an application that must be downloaded to an iPhone or Android-based cellular phone by all Drivers and any prospective Rider. If a prospective Rider is in need of a Driver, the Rider uses the application to request a ride from a Driver in the Rider's geographical vicinity. All available Lyft Drivers in the vicinity are informed of the request via the Lyft application. The first Lyft Driver to accept a request is then "matched" with the Rider, and proceeds to pick up the Rider and transport him or her to his or her destination.

11. Lyft expects its Drivers to accept all incoming requests from Riders unless the Driver is in the process of transporting another Rider at the time of a request.

12. Drivers can receive requests whenever they indicate via the Lyft application that they are available to provide rides.

13. Drivers and Riders were and are required to agree to the Lyft's Terms of Services ("TOS") as a prerequisite to utilizing the Lyft Platform.

---

[2] Plaintiffs are three of many Lyft Drivers throughout California, and accordingly the term "Driver" or "Drivers" as used herein is a term intended to encompass all Lyft Drivers in California, including Plaintiffs.

14.  Lyft's uniform TOS provides that the agreement is governed by the laws of the State of California without regard to choice of law principles.

15.  Lyft's uniform TOS and all policies therein were drafted, created, implemented, and carried out in the state of California.

16.  Lyft misclassifies its Drivers as "independent contractors" rather than employees protected by the California Labor Code.

17.  In fact and pursuant to California law, all Lyft Drivers are properly considered employees for reasons including, but not limited to, the following:

   a.  Pursuant to Lyft's uniform business model, Drivers provide a service (i.e., transporting Riders) that benefits Lyft;

   b.  Pursuant to Lyft's uniform TOS, Lyft retains the right to terminate Drivers for any or no reason, without explanation, at any time;

   c.  Pursuant to Lyft's uniform TOS, Lyft retains the right to terminate Drivers if, in Lyft's discretion, the Driver behaved in a way that could be regarded as inappropriate;

   d.  Pursuant to Lyft's uniform business model, Drivers do not engage in a business distinct from Lyft's business; rather, Drivers' services are the primary or sole source of income for Lyft;

   e.  Pursuant to Lyft's uniform TOS, Lyft does not require Drivers to possess any skill above and beyond that necessary to obtain a normal driver's license;

   f.  Pursuant to Lyft's uniform business model, Drivers' tenure with Lyft was for an indefinite period of time;

   g.  Pursuant to Lyft's uniform business model, Lyft provides Drivers with the only instrumentality by which a Driver can perform services for Lyft, namely Lyft's software;

h. Pursuant to Lyft's uniform TOS, Lyft does not require Drivers to invest in any equipment or materials required for his or her services; rather all Drivers must already own or have the legal right to operate a vehicle in good operating condition before he or she can work as a Lyft Driver. All Drivers must also already be named on an insurance policy covering the Driver's vehicle before he or she can work as a Lyft Driver;

i. Pursuant to Lyft's uniform policy, Drivers must place a large pink mustache provided by Lyft on the front of the Driver's vehicle while the Driver is in the course of transporting a Rider;

j. Pursuant to Lyft's uniform TOS, Lyft prohibits Drivers from setting rates of pay for their services; rather, their rates are determined by Lyft;

k. Pursuant to Lyft's uniform TOS, Lyft requires its Drivers to consent to receiving email communications and text messages from Lyft, which include message notification emails, emails or text messages informing Drivers of potential available Riders, and emails or text messages informing Drivers of Lyft's promotions. Drivers are required to pay for receiving these text messages at the rate applied by the Driver's mobile phone service provider;

l. Pursuant to Lyft's uniform policy, Drivers must undergo a two hour training session during which Drivers are told how to interact and converse with Riders;

m. Pursuant to Lyft's uniform policy, Drivers' vehicles are evaluated for aesthetic purposes, including cleanliness, and Drivers' vehicles must pass this appearance evaluation in order for Drivers to work for Lyft;

n. Pursuant to Lyft's uniform TOS, Lyft retains the right to shut down the Lyft Platform and the Lyft application, or to block Drivers from using the

Lyft Platform or the Lyft application, thereby retaining the right to prevent Drivers from picking up Riders;

o.  Pursuant to Lyft's uniform TOS, Lyft, at its sole discretion, may make available promotion offers to Riders without consulting with its Drivers;

p.  Pursuant to Lyft's uniform policy, Lyft retains the right to take adverse action against Drivers who do not work hours they are signed up to work;

q.  Pursuant to Lyft's uniform policy, Lyft retains the right to take adverse action against Drivers who do not accept a request for a ride from a Rider;

r.  Pursuant to Lyft's uniform policy, Lyft retains the right to take adverse action against Drivers who cancel requested rides prior to picking up the passenger;

s.  Pursuant to Lyft's uniform policy, Drivers are required to watch training videos that instruct them on how to interact with Riders;

t.  Pursuant to Lyft's uniform policy, Lyft limits the geographical locations in which its Drivers are permitted to work by limiting the distance of Lyft rides;

u.  Pursuant to Lyft's uniform policy, Lyft advertises that Drivers receive an average hourly rate of pay;

v.  Pursuant to Lyft's uniform TOS, Lyft procures insurance that provides Drivers with automobile liability insurance;

w.  Pursuant to Lyft's uniform policy, Lyft maintains records of Drivers' hours worked;

x.  Pursuant to Lyft's uniform policy, Drivers are not permitted to hire their own employees to drive for Lyft;

y.  Pursuant to Lyft's uniform TOS and policy, Lyft controls and restricts Drivers' ability to work and earn income; and

z.  Pursuant to Lyft's uniform policy, Drivers are required to abide by Lyft's "Rules of the Road" and instructions on their available "FAQs."

18.  Despite the fact that Drivers are, in fact, Lyft employees, Lyft has nevertheless failed to reimburse its Drivers, including Plaintiffs, for their work-related expenses, including but not limited to mileage costs and costs of cellular phone operation necessarily incurred because Lyft Drivers must use their automobiles to transport Riders and because Drivers must use their cellular phones in order to provide rides for Lyft.

19.  Despite the fact that Drivers are, in fact, Lyft employees, Lyft has nevertheless taken from Drivers, including Plaintiffs, gratuities given by Riders to Drivers.

20.  Despite the fact that Drivers are, in fact, Lyft employees, Lyft has nevertheless failed to pay its Drivers minimum wage.

21.  Despite the fact that Drivers are, in fact, Lyft employees, Lyft has nevertheless failed to pay its Drivers overtime pay for hours worked in excess of 40 per week or eight per day. From time to time, Plaintiff Knudtson worked for Lyft in excess of 40 hours per week but did not receive overtime compensation.

22.  Despite the fact that Drivers are, in fact, Lyft employees, Lyft has nevertheless failed to keep accurate time records for its Drivers in violation of Cal. Lab. Code § 1174;

23.  Despite the fact that Drivers are, in fact, Lyft employees, Lyft has nevertheless failed to provide its Drivers with itemized wage statements showing the information required by California Labor Code § 226.

24.  Despite the fact that Drivers are, in fact, Lyft employees, Lyft has nevertheless failed to provide its Drivers, including Plaintiffs, with 30-minute duty-free meal periods when its Drivers work more than five hours per day.

25.  Despite the fact that Drivers are, in fact, Lyft employees, Lyft has nevertheless required its Drivers to periodically report for work on days during which no work was available and/or days on which such Drivers were not put to work, but did not furnish such Drivers

with less than half of his or her usual or scheduled day's work or the reporting time pay required by Wage Order No. 9.

26. Despite the fact that Drivers are, in fact, Lyft employees, Lyft has nevertheless failed to authorize and permit its Drivers, including Plaintiffs, to take 10-minute duty-free rest periods for every four hours of Drivers' work time or major fraction thereof.

27. Despite the fact that Drivers are, in fact, Lyft employees, Lyft has nevertheless failed to pay all wages when due to its Drivers who have been discharged or who have quit.

## VI. CLASS ACTION ALLEGATIONS

28. Each of Plaintiffs' claims are brought on behalf of themselves and all others similarly situated pursuant to the class action mechanism set forth in Federal Rule of Civil Procedure 23.

29. This putative class is defined as:

> "All individuals who worked as Lyft Drivers in California from May 1, 2012 through the final disposition of this action."

### A. ASCERTAINABILITY

30. It is administratively feasible to determine the members of the putative class through Lyft's records because Lyft maintains all Drivers' personal information, including contact information and pay records.

### B. NUMEROSITY

31. There are tens of thousands of individuals who have worked as Lyft Drivers in California who are geographically dispersed.

### C. COMMONALITY

32. Members of the putative class share common issues of fact, including but not limited to:

   a. The terms of Lyft's Terms of Service and the policies or practices identified above;

//

b. Whether Lyft has had a policy or practice of failing to reimburse its Drivers for work-related business expenditures;

c. Whether Lyft has had a policy or practice of taking from Drivers gratuities or a portion thereof given by Riders to Drivers;

d. Whether Lyft has had a policy or practice of failing to pay its Drivers' minimum wage;

e. Whether Lyft has had a policy or practice of failing to pay its Drivers' overtime compensation;

f. Whether Lyft has had a policy or practice of failing to provide its Drivers with itemized wage statements showing the information required by Cal. Lab. Code § 226;

g. Whether Lyft has had a policy or practice of failing to keep accurate time records for its Drivers in violation of Cal. Lab. Code § 1174;

h. Whether Lyft has had a policy or practice of failing to provide its Drivers with 30-minute duty-free meal periods when its Drivers work more than five hours per day;

i. Whether Lyft has had a policy or practice of failing to pay its Drivers reporting time pay as required by Wage Order 9;

j. Whether Lyft has had a policy or practice of failing to failed to authorize and permit its Drivers, including Plaintiffs, to take 10-minute duty-free rest periods for every four hours of Drivers' work time or major fraction thereof; and

k. Whether Lyft has had a policy or practice of failing to pay its Drivers who have been discharged or who have quit their wages when due.

33. Members of the putative class share common issues of law, including:

//

a.  Whether members of the putative class were misclassified by Lyft as independent contractors under California law;

b.  Whether Lyft's policy or practice of failing to reimburse its Drivers for work-related business expenditures is in violation of Cal. Lab. Code § 2802;

c.  Whether Lyft's policy or practice of taking from Drivers gratuities or a portion thereof given by Riders to Drivers is in violation of Cal. Lab. Code § 351;

d.  Whether Lyft's policy or practice of failing to pay its Drivers' minimum wage is in violation of Cal. Lab. Code §§ 1182.12, 1194, 1194.2, 1197, 1197.1, and Wage Order 9;

e.  Whether Lyft's policy or practice of failing to pay its Drivers' overtime compensation is in violation of Cal. Lab. Code §§ 510, 1194, 1198, and Wage Order 9;

f.  Whether Lyft's policy or practice of failing to keep accurate time records for its Drivers is in violation of Cal. Lab. Code § 1174;

g.  Whether Lyft's policy or practice of failing to provide its Drivers with itemized wage statements showing the information required by Cal. Lab. Code § 226 is in violation of Cal. Lab. Code § 226;

h.  Whether Lyft's policy or practice of failing to provide its Drivers with 30-minute duty-free meal periods when its Drivers work more than five hours per day is in violation of Cal. Lab. Code §§ 226.7, 512, and Wage Order 9;

i.  Whether Lyft's policy or practice of failing to pay its Drivers reporting time pay is in violation of Wage Order 9;

j.  Whether Lyft's policy or practice of failing to authorize and permit its Drivers, including Plaintiffs, to take 10-minute duty-free rest periods for

every four hours of Drivers' work time or major fraction thereof is in violation of Cal. Lab. Code § 226.7 and Wage Order 9; and

    k.  Whether Lyft's policy or practice of failing to pay its Drivers who have been discharged or who have quit their wages when due is in violation of Cal. Lab. Code §§ 201, 202, and 203.

34.  The common issues of law can be answered with proof common to members of the putative class, including:

    a.  Lyft's TOS, to which Lyft and all Drivers must agree;

    b.  Lyft's policies and practices applicable to all Drivers, including policies that tend to show Drivers are in fact employees rather than independent contractors;

    c.  Lyft's policies or practices concerning its pay practices; and

    d.  All other facts common to the putative class alleged above.

**D.    TYPICALITY**

35.  Plaintiffs' claims are typical of the claims of all members of the putative class. First, Plaintiffs, like all members of the putative class, were misclassified by Lyft as independent contractors.

36.  Second, Plaintiffs, like all members of the putative class, were harmed by Lyft's pay policies or practices as described above.

**E.    ADEQUACY**

37.  Plaintiffs are members of the putative class and will fairly and adequately represent and protect the interests of the members of the putative class. Plaintiffs have no conflicts of interests with members of the putative class.

38.  Counsel for Plaintiffs are competent and experienced in litigating employment-based class actions, including actions based on alleged misclassification.

*//*

**F.    PREDOMINANCE**

39.    Common questions of law and fact predominate over individual issues in this action for several reasons. First, the issue of misclassification can be resolved with proof of Lyft policies applicable to all Drivers in the putative class, including but not limited to the Lyft's uniform TOS. Second, the issue of Lyft's liability under the California Labor Code can be established as to all putative class members with proof that Lyft's pay practices are common as to all class members or an identifiable subset of putative class members.

**G.    SUPERIORITY**

40.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the relatively small monetary value of the claims asserted by members of the putative class, most if not all members of the putative class would likely find the cost of individually litigating their claims against Lyft to be prohibitive. Further, thousands of individual proceedings in lieu of a class action would be an unnecessary burden on the court system as well as the parties. Additionally, many members of the putative class may be unaware that they have legal recourse against Lyft for the conduct alleged herein.

## VII.  FIRST CLAIM

### Failure to Reimburse for Work-Related Expenditures

### Cal. Lab. Code § 2802

41.    Plaintiffs, on behalf of themselves and members of the putative class, reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein.

42.    Pursuant to California law, Lyft was and/or is the employer of Plaintiffs and members of the putative class.

//

//

43. Cal. Lab. Code § 2802 requires an employer to indemnify its employees for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties.

44. Plaintiffs and members of the putative class incurred unreimbursed costs, including but not limited to mileage costs, including costs for gas, and costs incurred for use of their cellular phones.

45. Such costs were incurred because Plaintiffs and members of the putative class were required to use automobiles to transport Lyft Riders while working for Lyft, and were required to use their cellular phones in order to work for and while working for Lyft.

46. Accordingly, Plaintiffs and each member of the putative class are entitled to reimbursement for such incurred costs, plus interest, attorney fees and costs.

## VIII. SECOND CLAIM

### Conversion

47. Plaintiffs, on behalf of themselves and members of the putative class, reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein.

48. Pursuant to California law, Lyft was and/or is the employer of Plaintiffs and members of the putative class.

49. Plaintiffs and members of the putative class had a right to possess the full amount of gratuities given to them by Riders. Such gratuities are considered property under California Law. *See* Cal. Lab. Code § 351.

50. Lyft wrongfully and illegally took from Plaintiffs and members of the putative class a portion of the gratuities given to Plaintiffs and members of the putative class by Riders.

51. Plaintiffs and members of the putative class suffered economic harm in the amount of the gratuities taken from them.

//

## IX.  THIRD CLAIM

### Failure to Pay Minimum Wage

### Cal. Lab. Code §§ l182.12, 1194, 1194.2, 1197, 1197.1, and Wage Order 9

52.    Plaintiffs, on behalf of themselves and members of the putative class, reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein.

53.    Pursuant to California law, Lyft was and/or is the employer of Plaintiffs and members of the putative class.

54.    Cal. Lab. Code § 1194 states that any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

55.    Cal. Lab. Code § 1197 states that the minimum wage is that set by the commission in the applicable wage order, in this case Wage Order 9. Wage Order 9 incorporates by reference the minimum wage set by statute. Lyft failed to pay Plaintiffs and putative class members or an identifiable subset thereof minimum wage.

56.    Accordingly, Plaintiffs and members of the putative class or an identifiable subset thereof are entitled to minimum wage back pay and interest thereon, liquidated damages in the amount of the minimum wage back pay and interest thereon, reasonable attorneys' fees, costs of suit, and penalties.

## X.  FOURTH CLAIM

### Failure to Pay Overtime Wages

### Cal. Lab. Code §§ 510, 1194, 1198, and Wage Order 9

57.    Plaintiffs, on behalf of themselves and members of the putative class, reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein.

58. Pursuant to California law, Lyft was and/or is the employer of Plaintiffs and members of the putative class.

59. Cal. Lab. Code § 1198 and Wage Order 9 require employers to pay their employees at their overtime rate of pay for hours worked in excess of eight per day and/or 40 per week.

60. Cal. Lab. Code § 1194 states that any employee receiving less than the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

61. Plaintiff Knudtson and putative class members or a subset thereof worked for Lyft in excess of eight hours per day or forty hours per week, but were not paid at their overtime rate of pay for such work.

62. As a result of Lyft's unlawful conduct, Plaintiffs and members of the putative class or an identifiable subset thereof suffered economic losses as a result of Lyft's failure to pay overtime wages.

## XI.  FIFTH CLAIM

### Failure to Furnish Accurate Wage Statements

### Cal. Lab. Code § 226

63. Plaintiffs, on behalf of themselves and members of the putative class, reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein.

64. Pursuant to California law, Lyft was and/or is the employer of Plaintiffs and members of the putative class.

65. Cal. Lab. Code § 226 states that every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross

wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee and, beginning July 1, 2013, if the employer is a temporary services employer as defined in Section 201.3, the rate of pay and the total hours worked for each temporary services assignment.

66.    Lyft unlawfully failed to provide Plaintiffs and members of the putative class with accurate itemized wage statements in writing showing gross wages earned, total hours worked, deductions, net wages earned, pay period, the name of the employee and the last four digits of his or her social security number, the legal name of the employer, and/or all applicable hourly rates.

67.    Plaintiffs and members of the putative class suffered injury as a result of Defendant's conduct because they could not readily ascertain their rates of pay for their hours worked for Lyft and because the pay statements provided by Lyft do not include the last four digits of its Drivers' social security numbers.

//

68. The injuries suffered by Plaintiffs and members of the putative class as a result of this misconduct were as a result of Lyft's knowing and intentional failure to comply with Cal. Lab. Code § 226(a).

69. Accordingly, Plaintiffs and each member of the putative class are entitled to recover fifty dollars for the initial pay period in which a violation of § 226 occurred, and one hundred dollars for each violation of § 226 in a subsequent pay period, not to exceed a penalty of four thousand dollars per member of the putative class plus attorney fees, costs, and injunctive relief.

## XII. SIXTH CLAIM

### Failure to Provide Meal Periods

### Cal. Lab. Code §§ 226.7, 512, and Wage Order 9

70. Plaintiffs, on behalf of themselves and members of the putative class, reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein.

71. Pursuant to California law, Lyft was and/or is the employer of Plaintiffs and members of the putative class.

72. Cal. Lab. Code § 512 and Wage Order 9 require employers to provide all employees with one 30-minute duty-free meal period if such employee works more than five hours in one day.

73. Lyft did not provide Plaintiffs and putative class members or an identifiable subset thereof with 30-minute duty-free meal periods as required by California law

74. Accordingly, pursuant to Cal. Lab. Code § 226.7 and Wage Order 9, Plaintiffs and members of the putative class or an identifiable subset thereof are entitled one hour of pay at their regular rate of pay for each day on which the putative class member was not provided with a 30-minute duty-free meal period, plus interest.

//

## XIII. SEVENTH CLAIM

### Failure to Authorize and Permit Rest Periods

### Cal. Lab. Code § 226.7 and Wage Order 9

75. Plaintiffs, on behalf of themselves and members of the putative class, reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein.

76. Pursuant to California law, Lyft was and/or is the employer of Plaintiffs and members of the putative class.

77. Wage Order 9 require employers to provide all employees with one 10-minute duty-free rest period for every four hours worked each day, or major fraction thereof.

78. Lyft did not provide Plaintiffs and putative class members or an identifiable subset thereof with 10-minute duty-free rest periods as required by California law.

79. Accordingly, pursuant to Cal. Lab. Code § 226.7 and Wage Order 9, Plaintiffs and members of the putative class or an identifiable subset thereof are entitled one hour of pay at their regular rate of pay for each day on which the putative class member was not provided with a 10-minute duty-free rest period, plus interest.

## XIV. EIGHTH CLAIM

### Failure to Pay Wages When Due

### Cal. Lab. Code §§ 201, 202, 203

80. Plaintiffs, on behalf of themselves and members of the putative class, reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein.

81. Pursuant to California law, Lyft was and/or is the employer of Plaintiffs and members of the putative class.

82. Cal. Lab. Code § 201 states that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately. Cal Lab.

Code § 202 states If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

83. Lyft failed to pay Plaintiffs Cotter and Maciel and a subset of putative class members who no longer work for Lyft their wages earned upon the termination of their respective employment relationships with Lyft.

84. Accordingly, pursuant to Cal. Lab. Code § 203, Plaintiffs Cotter and Maciel and members of the putative class are entitled to waiting time penalties.

## XIV.  NINTH CLAIM

### Failure to Keep Accurate Employment Records

### Cal. Lab. Code § 1174

85. Plaintiffs, on behalf of themselves and members of the putative class, reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein.

86. Pursuant to California law, Lyft was and/or is the employer of Plaintiffs and members of the putative class.

87. Labor Code § 1174(d) requires that every employer in California maintain "payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed" in California.  In addition, Cal. Lab. Code § 1174(d) requires that these records "be kept in accordance with rules established for this purpose by the [Industrial Welfare] commission."

88. Rules established by the commission, Wage Order 9, § 7, require that every employer in California "keep accurate information with respect to each employee," including without

limitation, "time records showing when the employee begins and ends each work period," as well as "[m]eal periods, split shift intervals and total daily hours worked."

89.    Lyft failed to maintain accurate records in compliance with Cal. Lab. Code § 1174(d) and/or Wage Order 9 for Plaintiffs and members of the putative class.

90.    Accordingly, Plaintiffs and members of the putative class are entitled to collect and seek a civil penalty from Lyft in the amount of $500 pursuant to Cal. Lab. Code § 1174.5.

## XIV.  TENTH CLAIM

### Failure to Pay For Reporting Time

### Wage Order 9

91.    Plaintiffs, on behalf of themselves and members of the putative class, reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein.

92.    Pursuant to California law, Lyft was and/or is the employer of Plaintiffs and members of the putative class.

93.    Wage Order 9, § 5, requires that for each workday that a California employee is required to report for work and does report, but is either not put to work or is furnished less than half of that employee's usual or scheduled day's work, each such employee must be paid an amount equal to half of his or her usual or scheduled day's pay, or in any event must be paid an amount equal to 2 hours at the employee's regular rate of pay.

94.    Plaintiffs and members of the putative class, or an identifiable subset thereof, have periodically been required to report for work but have either not been put to work, or have been furnished with less than half of his or her usual or scheduled day's work.

95.    In addition, Plaintiffs and members of the putative class or an identifiable subset thereof have not been compensated by Lyft as required by Wage Order 9, § 5.

//

//

96. Accordingly, Plaintiffs and members of the putative class or an identifiable subset thereof are entitled to and seek payment from Lyft of compensation pursuant to Wage Order 9, § 5, plus interest.

## XV. ELEVENTH CLAIM

### Unlawful, Unfair, or Fraudulent Business Practices

### Cal. Bus. & Prof. Code § 17200, *et seq.*

97. Plaintiffs, on behalf of themselves and members of the putative class, reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein.

98. Pursuant to California law, Lyft was and/or is the employer of Plaintiffs and members of the putative class.

99. Lyft's violations of the above cited Labor Code provisions and/or Wage Order 9 constitute unlawful, unfair and/or fraudulent business practices prohibited by California Business & Professions Code § 17200, *et seq.* and are independently actionable under California Business & Professions Code § 17200, *et seq.*

100. As described above, Lyft's violations of the California Labor Code and/or Wage Order 9 caused Plaintiffs and members of the putative class irreparable harm, and Plaintiffs and members of the putative class are therefore entitled to restitution in the amount of this harm, as well as injunctive and declaratory relief.

101. Plaintiffs are further entitled to, and do, seek a declaration that the above described business practices are unlawful, unfair and/or fraudulent and also seek injunctive relief restraining Lyft from engaging in any of these unlawful, unfair and/or fraudulent business practices.

//

//

//

# XVI. TWELFTH CLAIM

## Penalties Pursuant to the Labor Code Private Attorneys General Act of 2004

## (Representative Action)

102. Plaintiffs, on behalf of current or former Lyft Drivers in California, reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein.

103. Cal. Lab. Code § 2699 provides for civil penalties for violations of California Labor Code provisions that may be recovered through a civil action brought by an aggrieved employee.

104. Plaintiffs and all current and former Lyft Drivers in California are aggrieved employees as defined by Cal. Lab. Code § 2699(c) because they suffered injury as a result the following Labor Code violations committed by Lyft: Cal. Lab. Code § 226 (failure to provide Drivers with properly itemized statements); §§ 226.7, 512 (failure to provide Drivers with uninterrupted, duty-free meal and rest periods); §§ 351, 353 (withholding gratuities paid to Drivers and failing to keep proper records of such gratuities); § 226.8 (willfully misclassifying Drivers as independent contractors); § 432.5 (requiring drivers to sign illegal contracts); § 450 (requiring Drivers to purchase things of value as a condition of employment); §§ 1174, 1174.5 (failure to keep required accurate payroll records); §§ 510, 1194, 1194.2, 1197, 1197.1, 1198, 1999 (failure to pay Drivers minimum wages and proper overtime wages); §§ 551, 552 (permitting Drivers to work seven consecutive days); § 2802 (failure to reimburse Drivers for necessary work-related expenditures); and §§ 558, 1198, and 1199 (violations of Labor Code or Wage Orders).

105. Plaintiffs have complied with the notice requirement of Cal. Lab. Code § 2699.3 by sending written notice by certified mail to Defendant and to the California Labor & Workforce Development Agency ("LWDA") with respect to all Labor Code violations asserted in this Complaint.

106.   It has been 33 days or more since the LWDA was notified of certain Labor Code violations previously asserted in this Complaint, and the LWDA has not provided any notice that it will or will not investigate the alleged violations of which it was informed. As for other claims asserted in this Complaint, the LWDA has not yet provided such notice.

107.   Lyft has not cured the Labor Code violations of which it was informed.

108.   As a result, Plaintiffs are entitled to recover, and seek, civil penalties, attorney fees, and costs of suit herein.

## **PRAYER FOR RELIEF**

109.   Plaintiffs, on behalf of themselves and the members of each putative class, pray for relief as follows:

   a.   Certification of this action as a class action as described above;

   b.   Designation of Plaintiffs as representatives of the each putative class;

   c.   Designation of Plaintiffs' Counsel as Class Counsel for each putative class;

   d.   Damages for failure to reimburse for work-related expenditures, conversion, failure to pay minimum wages, failure to pay overtime wages, failure to provide meal periods, failure to pay for reporting time, and failure to authorize and permit rest periods;

   e.   In the alternative to such damages, restitution pursuant to Cal. Bus. & Prof. Code § 17200, *et seq.*

   f.   Statutory penalties, including pursuant to Cal. Lab. Code §§ 226, 226.8, 203, 1197.1 and 1174.5;

   g.   Civil penalties pursuant to the Labor Code Private Attorneys General Act of 2004;

   h.   Injunctive and declaratory relief pursuant to Cal. Bus. & Prof. Code § 17200, *et seq.*;

i.      Pre-judgment and post-judgment interest pursuant to the California Labor Code and Cal. Civ. Code § 3287;

j.      Attorneys' fees as provided by the California Labor Code, or as provided by the parties' agreement, if any; and

k.      Costs as provided by the California Labor Code, Fed. R. Civ. P. 54(d), Local Rule 54-3, and/or Cal. Code Civ. P. § 1021, or as provided by the parties' agreement, if any.

## DEMAND FOR JURY TRIAL

Plaintiffs, by and through their attorneys, hereby request a jury trial on all issues so triable.


Dated: May 11, 2016                         LICHTEN & LISS-RIORDAN, P.C.


By:     /s/  *Shannon Liss-Riordan*
        Shannon Liss-Riordan, *pro hac vice*
        Matthew D. Carlson
        Attorneys for Plaintiffs