UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK COTTER, et al.,<br><br>   Plaintiffs,<br><br>   v.<br><br>LYFT, INC.,<br><br>   Defendant. | Case No.  13-cv-04065-VC<br><br>**ORDER DENYING MOTION TO SEAL**<br>Re: Dkt. No. 236 |

   Lyft moves to file under seal portions of its response to the Court's request for further briefing regarding the plaintiffs' motion for preliminary approval of class action settlement, and portions of the Gibson declaration in support of that response.  Specifically, Lyft seeks to keep two pieces of information from the public: the total amount of commissions Lyft took from "Prime Time" payments by Lyft riders in California between August 18, 2014 and August 31, 2015 after accounting for "Power Driver" bonuses, and the total amount of commissions Lyft took from Prime Time payments by Lyft riders in California between August 31, 2015 and June 5, 2016, again after accounting for Power Driver bonuses.

   Lyft argues first that the "good cause" standard applies to its motion to file under seal, citing *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006).  Lyft argues that this standard applies because the information it seeks to seal is not related to a "dispositive" motion and is instead related to claims asserted in "another lawsuit" – that is, *Zamora v. Lyft, Inc.*, No. 16-cv-02558-VC.  But the law of this Circuit is that a party seeking to seal materials submitted with a motion that is "more than tangentially related to the merits of [the] case" – regardless whether that motion is "technically 'dispositive'" – must demonstrate that there are "compelling reasons" to keep the documents under seal, not merely show that there is "good

cause" to do so.  *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016).  The material Lyft seeks to seal was filed in connection with a motion for preliminary approval – a motion that, as the Court has previously noted, is more than tangentially related to the merits of this case.  *See* Dkt. No. 183.  What's more, the precise information sought to be sealed is highly relevant to the Court's evaluation of whether *this* case, *Cotter v. Lyft, Inc.*, No. 13-cv-04065-VC, can properly be resolved via settlement.  The amount of commissions Lyft took from Prime Time payments in the two periods described above is necessary to assess the potential value of claims being released by the proposed settlement agreement – the parties agree that the *Cotter* settlement agreement releases the *Zamora* claims for civil penalties under the California Private Attorneys General Act for Lyft's alleged violation of California Labor Code section 351 in taking Prime Time commissions through the date of preliminary approval, as well as the *Zamora* plaintiffs' claims under California's Unfair Competition Law and common law conversion, to the extent those claims rely on violations of section 351 before the date of preliminary approval.  The value of those released claims is thus relevant to the question whether the proposed settlement is fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23(e)(2), which entails a consideration whether plaintiffs' counsel's failure to seek additional compensation for the release of the Prime Time statutory gratuity claims should be fatal to the motion for preliminary approval.  For all of these reasons, Lyft must show that there are compelling reasons to keep this information from the public.

      Lyft does argue that compelling reasons exist here because the total amount of commissions it took in the two periods is a trade secret, and/or that competitors could gain an unfair advantage against Lyft in the ridesharing market if they knew these figures.  But the total amount of commissions Lyft took from Prime Time payments, i.e. its revenue from this product, is not a trade secret.  "'A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.'"  *Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1222 (Fed. Cir. 2013) (quoting Restatement (First) of Torts § 757, cmt. b).  While the

algorithms and "proprietary price models" that Lyft uses to set its fares and the rate of Prime Time premiums and, in turn, its commissions from those moneys *are* trade secrets, the bare *output* of those algorithms and price models (i.e., the total amount of commissions taken) is not. Though the manner in which Lyft determines its pricing is an important part of its competitive strategy, its revenue is not strategy but rather the *result* of that strategy.

And while Lyft may be correct that its competitors could gain an unfair advantage against it if they knew the precise contours of its pricing algorithms, as the Gibson declaration indicates, Lyft's "proprietary pricing models" consist of "various components," including many undisclosed inputs. Thus the Court and the public can only speculate as to what inputs are incorporated into Lyft's Prime Time pricing algorithm and how Lyft manipulates that information to calculate what Lyft deems the highest rate the market will bear. And while Lyft makes the bare assertion that a competitor could use the total number of hours driven in the class period and the total value of Prime Time commissions taken in the two time periods described above to reverse engineer Lyft's proprietary Prime Time pricing model, that assertion is implausible. The Court cannot see how the aggregate output of the pricing model (i.e. the total amount of commissions taken) from two large time periods and a single piece of input information (i.e. the number of hours driven during the class period) relevant to a different formula (Lyft's base fare rate) for a different time period – since the class period and the Prime Time commissions periods do not precisely overlap – could ever be used to reverse engineer the sophisticated formula or formulas Lyft uses to calculate its Prime Time premiums and determine its rates of commission after accounting for Power Driver bonuses.

Because Lyft has not shown that there are compelling reasons to file these documents under seal, the motion is denied. *See Ctr. for Auto Safety*, 809 F.3d at 1101; *see also In re Hewlett-Packard Co. S'holder Derivative Litig.*, No. 12-cv-06003-CRB, Dkt. No. 411 (N.D. Cal. July 28, 2015). Accordingly, the Clerk of the Court is directed to unseal Lyft's response to the Court's request for further briefing and the Gibson declaration in support of the response, Dkts. No. 236-4 and 236-6, on Friday, June 24, 2016.

**IT IS SO ORDERED.**

Dated: June 23, 2016

_____

VINCE CHHABRIA
United States District Judge