TEAGUE P. PATERSON, SBN 226659
COSTA KERESTENZIS, SBN 186125
SUSAN K. GAREA, SBN 260407
LORRIE E. BRADLEY, SBN 309411
BEESON, TAYER & BODINE, APC
483 Ninth Street, 2nd Floor
Oakland, CA  94607
Telephone:     (510) 625-9700
Facsimile:      (510) 625-8275
Email:            lbradley@beesontayer.com

Attorneys for Objectors
Angelica Rose Ferdinand, Helen Hebert, Leigh-Ann Johnson, Amir Kashanian,
Kelsey Tilander, and Teamsters Joint Councils Nos. 7 and 42

# UNITED STATES DISTRICT COURT CALIFORNIA

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK COTTER, ALEJANDRA MACIEL, and JEFFREY KNUDTSON, on behalf of themselves and all others similarly situated,, <br><br> Plaintiffs, <br><br> v. <br><br> LYFT, INC., <br><br> Defendant. | Case No. 3:13-CV-04065-VC <br><br> **APPLICATION FOR ATTORNEYS' FEES AND COSTS** <br><br> Hearing Date:        December 1, 2016 <br> Hearing Time:       10:00 a.m. <br> Courtroom:           4, 17th Floor <br> Judge:                   Hon. Vince Chhabria <br> Complaint Filed:    September 3, 2013 |

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...................................................................................ii

I.      SUMMARY OF PROCEDURAL HISTORY .................................................... 1

II.     OBJECTORS PROVIDED A BENEFIT TO THE CLASS ................................ 2

        A.      The Court Adopted Objectors' Arguments Regarding the Insufficiency
                of Monetary Relief .................................................................... 2

        B.      The Court Adopted Objectors' Arguments Regarding the Insufficiency
                of Non-Monetary Relief ............................................................. 5

        C.      The Court Adopted Objectors' Arguments Regarding Arbitration............................ 7

III.    OBJECTORS' ATTORNEYS ARE ENTITLED TO ATTORNEYS' FEES
        AND COSTS  ............................................................................... 9

        A.      An Award of Attorneys' Fees for Objectors' Counsel Is Justified by
                Objectors' Participation in the Settlement Process .................................... 9

        B.      Objectors' Counsel's Fees Are Reasonable............................................ 11

IV.     CONCLUSION................................................................................ 13

1
2

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Barjon v. Dalton,*
132 F.3d 496 (9th Cir. 1997)...................................................................................12

*Bellinghausen v. Tractor Supply Co.,*
306 F.R.D. 245 (N.D. Calif. 2015)......................................................................12, 13

*Berry v. Urban Outfitters Wholesale Inc.,*
No. 13-cv-2628, 2015 WL 580579 (N.D. Cal. Feb. 11, 2015) ..................................12

*Class Plaintiffs v. Jaffe & Schlesinger, P.A.,*
19 F.3d 1306 (9th Cir. 1994).....................................................................................9

*Denny v. Jenkins & Gilchrist,*
230 F.R.D. 317 (S.D.N.Y. 2005)..............................................................................10

*Domestic Air Transp. Antitrust Litig.,*
148 F.R.D. 297 (N.D. Ga. 1993)..............................................................................10

*Frankenstein v. McCrory,*
425 F.Supp. 762 (S.D.N.Y. 1977)............................................................................10

*Great Neck Capital Appreciation Investment Partnership LP v. PricewaterhouseCoopers LLP,*
212 F.R.D. 400 (E.D. Wis. 2002).............................................................................9

*Greko v. Diesel U.S.A. Inc.,*
No. 10-cv-2576 NC, 2013 WL 1789602 (N.D. Cal. Apr. 26, 2013)............................12

*Hall v. Cole,*
412 U.S. 1 (1973) .....................................................................................................9

*Hensley v. Eckerhart,*
461 U.S. 424 (1983) ................................................................................................13

*In re Prudential Ins. Co. of Am. Sale Practices Litig.,*
273 F.Supp.2d 563 (D. N.J. 2003).............................................................................9

*In re Washington Public Power Supply Sys. Sec. Litig.,*
19 F.3d 1291 (9th Cir. 1994)....................................................................................12

*Iskanian v. CLS Transp.*
*L.A. LLC,* 59 Cal.4th 349 (2014)...............................................................................5

*Lindy Bros. Builders Inc. v. American Radiator & Standard Sanitary Corp.,*
540 F.2d 102 (3d Cir. 1976).......................................................................................9

*Park v. Thompson Corp.,*
633 F.Supp.2d 8 (S.D.N.Y. 2009)............................................................................10

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air,*
478 U.S. 546 (1986)................................................................................................12

*Postier v. Louisiana-Pac. Corp.*,
  No. 09-cv-3290, 2014 WL 1760010 (N.D. Cal. Apr. 29, 2014) ................................... 12

*Rodriguez v. West Publishing Corp.*,
  602 Fed. App'x 385, 387 (9th Cir. 2015) ............................................................. 13

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir.2002) ............................................................................. 9

*Wren v. RGIS Inventory Specialists*,
  No. C-06-5778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ............................. 12

**Statutes**
California Labor Code §1194 ................................................................................. 11
California Labor Code § 2802 ........................................................................... 3, 11
California Labor Code Private Attorney Generals Act (PAGA"), Cal Lab. Code § 2698 *et seq.* passim
National Labor Relations Act, 29 U.S.C. §§ 151 et seq. ....................................... 7, 11
Norris-LaGuardia Act, 29 USC § 101 *et seq.* ......................................................... 7

**Other Authorities**
Cal. DLSE Opinion Nos. 1990.07.23 and 1988.08.12 ............................................. 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.  SUMMARY OF PROCEDURAL HISTORY

Plaintiffs filed an action on September 3, 2013, challenging Defendant Lyft's misclassification of drivers as independent contractors instead of employees, and various of Defendant's violations of the California Labor Code on behalf of a class of Lyft drivers in California who drove from May 1, 2012 through the final disposition of the case.  (Fifth Amended Compl. ¶ 29.)

Plaintiffs and Defendant Lyft reached a settlement filed with this Court in January 2016.  The settlement provided for certain monetary and non-monetary relief to the approximately 100,000 class members, but left in place Lyft's characterization of drivers as independent contractors instead of employees.  (Settlement Agreement of January 26, 2016 ¶ 11.)  The monetary relief to the class was in the total amount of $12,250,000.  (Settlement Agreement of January 26, 2016 ¶ 30.)

The individual Objectors (Ferdinand, Hebert, Johnson, Kashanian, and Tilander) are members of the putative class.  Teamsters Joint Council Nos. 7 and 42 represent workers in the transportation industry in California.  They have been involved in legislative and political affairs involving the State of California's response to employers misclassifying workers as independent contractors and are involved in organizing gig-economy drivers employed by Lyft and other transportation network companies.

On March 15, 2016, the Objectors timely filed their objections to the parties' motion for preliminary approval of the settlement.  Objectors' position was that the proposed settlement of January 2016 was inadequate because it significantly discounted the class's monetary claims and did not adequately distinguish between drivers who had driven for a short term or only occasionally, and long-term, full-time drivers in apportioning the monetary relief.  Objectors also challenged the proposed settlement on the grounds that it allowed continued unlawful misclassification of employees and that the prospective, non-monetary relief was largely meaningless, and that the amount of funds attributed to Plaintiffs' California Labor Code Private Attorney Generals Act (PAGA") lacked support and provided for too little relief.  Objectors also filed a Motion to Intervene on March 23, 2016.  The Court held a hearing on the preliminary approval of the settlement on March 24, 2016.

On April 8, the Court entered an order denying preliminary approval of the settlement.  As grounds for the Court's order, the Court noted that the settlement underestimated the drivers' claim

for work-related mileage reimbursements by approximately half.  The Court also found that the settlement severely undervalued the class's and the State of California's claims under the Private Attorney Generals Act ("PAGA").  Given these defects, the non-monetary components of the settlement, which included an arbitration policy under which drivers could contest their termination from Lyft and other disputes with the company, were insufficient to overcome the low monetary value.

The Revised Settlement Agreement provides that the Court shall set a hearing on the request for attorneys' fees, costs, and enhancement payments no earlier than 21 days after the deadline for class members to opt out or object.  (Revised Settlement, Doc. 2016-1, at 13.)  The Court set the Fairness Hearing and hearing on the request for fees on December 1, 2016.  (Order Granting Preliminary Approval of Class Settlement, Doc. 256.)  Accordingly, and in light of the schedule set by the Revised Settlement, Objectors submit this application for attorneys' fees and costs.

## II.  OBJECTORS PROVIDED A BENEFIT TO THE CLASS

The Objectors addressed many deficiencies in the initial settlement agreement that the Court adopted in its Order denying preliminary approval of the initial settlement agreement.  The Court's denial of the initial settlement agreement ultimately lead the parties to return to mediation and negotiate a revised settlement agreement, which improved the economic recovery available to class members, and specifically, increased the recovery for full-time drivers.  (Revised Class Action Settlement and Release ¶¶ 34, 43-49.)

### A.  The Court Adopted Objectors' Arguments Regarding the Insufficiency of Monetary Relief

The Objectors argued that the monetary component of the settlement was not sufficient to compensate class members for their claims, and that it significantly undervalued certain claims, including the class's overtime and minimum wage claims.  Objectors submitted the following:

- Objecting Class Members ... have not received the overtime pay to which they are entitled.  Further, Plaintiffs have failed to provide calculation of an appropriate overtime rate.  To the extent Lyft drivers are paid a piece rate, they are entitled to overtime pay at a rate equal their week's pay divided by hours worked in tasks central to the piece rate multiplied by 1.5  *See* Cal. DLSE Opinion Nos. 1990.07.23 and 1988.08.12 (describing overtime calculation for commission and piece rate employees).  Given the size of

1    the class, the unsupported claim of [a lack of] overtime liability does not
     appear fair or credible.

2    • Valuing minimum wage liability at zero is likewise inadequate. Objecting
3      Class Members note that on various occasions they have not received the
       applicable minimum wage for their hours worked. For example, Objectors
4      have each had the following experiences on multiple occasions: (1) lengthy
       drives to pick up a Lyft customer only to take that customer on a very short
5      trip, such that the total work time divided by the piece rate results in less
       than a minimum wage, and (2) traffic conditions that result in longer-in-
6      time rides such that the piece rate does not result in payment of the
       minimum wage. Moreover, Lyft's commission (which can equal 20% of
7      the ride share fee) is deducted from a driver's piece rate thereby increasing
       the incidents of failure to pay minimum wage. Plaintiffs do not address the
8      impact of expenses and costs otherwise reimbursable under Labor Code
       section 2802 with respect to payment of the minimum wage.

9    (Objections to Preliminary Approval of Proposed Class Settlement, Doc. 180, at 6.)

10          The Court agreed with the Objectors that the initial settlement undervalued class members'

11   claims but based its conclusion primarily on the undervaluation of the mileage reimbursement claim

12   given the actual miles driven by class members as of the hearing date. (Order Denying Motion for

13   Preliminary Approval, Doc. 200, at 14-15.) However, the Court ordered the parties to explain the

14   low valuation for these claims in any subsequent motion for preliminary approval:

15   • The Teamsters object to the decisions by plaintiffs' counsel to value the
       drivers' other claims at such low amounts – for example, the decisions to
16     value the overtime claims at $900,000 and the minimum wage claims at $0.
       On the surface, it appears that any problems in these valuations would be
17     minor matters of degree, in contrast to the fundamental defects inherent in
       the reimbursement and PAGA valuations. Nonetheless, if the parties wish
18     to present another agreement for preliminary approval, counsel for the
       plaintiffs should be prepared to better explain why they valued these claims
19     as they did.

20   (Order Denying Motion for Preliminary Approval, Doc. 200, at 21.)

21          The Objectors also argued that the initial settlement shortchanged full-time drivers, given the

22   strength of their claims:

23   • The class is varied and contains no subclasses, including drivers who have
       driven for Lyft once, and those for whom it has been their primary, full-
24     time occupation. The extent to which Plaintiffs' experience is typical or
       representative of the entire class is unclear and not addressed by their
25     papers. Two of the Plaintiffs, Cotter and Maciel, worked as Lyft drivers
       for only a short period of time, four months and six weeks respectively.
26
     • Because the only Plaintiff that may have worked overtime was added post-
27     settlement via the FAC offered "for settlement purposes only" it appears
       this and other claims associated with full-time drivers were not adequately
28     represented in negotiation. Indeed, Plaintiffs' calculations do not reflect the

Objecting Class Members' experience.  Objecting Class Members have worked full time for Lyft and, at times, more than full time.

- Unlike the other two Plaintiffs, Mr. Knudtson was not deposed and did not participate in discovery.  It is clear that Mr. Knudtson was added very late in the proceedings, following settlement, for the sole purpose of lending typicality with respect to the more valuable and stronger claims the Plaintiffs seek to waive and release.

(Objections to Preliminary Approval of Proposed Class Settlement, Doc. 180, at 3-4, 6.)

The Court agreed, and specifically cited the Objectors:

- As previously noted, the proposed settlement gives full-time drivers (i.e., those class members who worked at least 30 hours a week in at least half of the weeks they drove for Lyft) a fifty percent premium above part-time drivers in recognition that, as a practical matter, full-time drivers may have stronger claims for employee status at trial. If the parties had proposed a settlement amount tethered to the maximum value of the reimbursement claim as of the date of the preliminary approval hearing, it would have been possible to give the full-time drivers a much larger premium than fifty percent (by orders of magnitude) while still achieving a greater monetary recovery for all class members. And a much larger premium for full-time drivers is warranted given the acknowledgement by all parties involved (including the Teamsters) that they have a stronger case.

(Order Denying Motion for Preliminary Approval, Doc. 200, at 17.)

The Objectors noted that the amount that the initial settlement amount allocated to PAGA penalties was severely undervalued and without a sound legal basis:

- After reducing their PAGA liability by two-thirds, it is then further reduced by 25% to reflect what drivers would receive under a PAGA award (as the statute requires 75% of a PAGA award to be remitted to the State for the purpose of funding Labor Code standards enforcement), which equals approximately $5.5 million.  Yet the "PAGA Payment" under the settlement agreement equals 2.2% of that amount, or $122,250, of which $91,875, or 75% is remitted to the State.  (*See* Settlement Agreement at 10, ¶ "dd").  As noted above, in calculating the initial PAGA liability, Plaintiffs had already reduced their calculation by 75% to arrive at their $5.5 million amount "owed to the drivers," and so there is no basis to apply an additional reduction.  The PAGA assessment shortchanges the State in terms of its proper and important efforts to enforce the Labor Code, described below, as well as drivers.

(Objections to Preliminary Approval of Proposed Class Settlement, Doc. 180, at 7.)

The Court also took issue with the "slashing" of the PAGA penalties:

- There is a second problem with the way counsel for the plaintiffs reached their settlement figure – a problem that would likely defeat preliminary approval even if the reimbursement error were corrected. This problem involves their calculation of the maximum PAGA penalty, along with their seemingly arbitrary reduction of that penalty to a miniscule portion of the settlement amount – $122,250, which is less than one percent of the total.

- Furthermore, in estimating the maximum reasonable PAGA penalty, there is no basis for slashing it by seventy-five percent (as plaintiffs' counsel did here) on the ground that the State of California would be entitled to recover that portion. Just because the State would receive it doesn't mean it's not part of the penalty.

(Order Denying Motion for Preliminary Approval, Doc. 200, at 15-16.)

Objectors also noted that, under the California Supreme Court's decision in *Iskanian v. CLS Transp. L.A. LLC*, 59 Cal.4th 349 (2014), PAGA penalties cannot be waived by an arbitration agreement containing a class-action waiver:

- Plaintiffs have discounted all of their claims as a result of an illegal arbitration class-action waiver contained in Lyft's "Terms of Use" provisions. However, even if given effect, such agreements are not applicable to PAGA claims because a "PAGA representative action is ... a type of qui tam action," and the "government entity on whose behalf the plaintiff files suit is always the real party in interest in the suit" and, therefore the arbitration and representative action waiver is inapplicable.

- Rather than accept settled law, Plaintiffs assert the U.S. Supreme Court has not passed on the question, despite the fact that it has denied certiorari on the issue at each opportunity.... Therefore it is inappropriate to deeply-discount PAGA liability based on a purported class-waiver that is inapplicable to PAGA claims.

(Objections to Preliminary Approval of Proposed Class Settlement, Doc. 180, at 7-8, quoting *Iskanian*, internal citations omitted.)

The Court adopted these arguments in denying preliminary approval of the initial settlement:

- Finally, as the Teamsters note, PAGA claims are not subject to class action waiver, so at a minimum the class members could not be forced to arbitrate those claims individually.

(Order Denying Motion for Preliminary Approval, Doc. 200, at 20.)

**B.     The Court Adopted Objectors' Arguments Regarding the Insufficiency of Non-Monetary Relief**

The Objectors also argued that the non-monetary prospective relief provided in the initial settlement was of limited value.  Among other arguments, Objectors argued that the initial agreement did not necessarily materially limit Lyft's ability to terminate drivers:

- With respect to the first requirement, the settlement does not limit the scope of reasons that Lyft can deactivate drivers, and the agreement provides no standard for assessing Lyft's reasonableness in adopting any standard, for example, as it lacks a "just cause" provision.  Instead,

the revised terms of use list a large number of potential reasons for deactivation all of which existed previously, and it is not clear that Lyft currently deactivates drivers for reasons other than the large number of enumerated reasons.

(Objections to Preliminary Approval of Proposed Class Settlement, Doc. 180, at 19.)

The Court cited this objection in its evaluation of the value of the initial settlement's non-monetary relief:

- It is difficult to tell, on the current record, just how significant these changes would be. Although Lyft could no longer terminate drivers at will, the list of ways a driver can breach the proposed contract is quite long, and it's not clear that Lyft has ever terminated a driver in the past for a reason not listed in the newly-proposed contract.

(Order Denying Motion for Preliminary Approval, Doc. 200, at 11.)

The Objectors also argued that California law already requires employers to pay the cost of arbitration, so the provision requiring Lyft to pay was not a benefit as claimed:

- For this reason, a key provision of the "prospective relief" is illusory since it merely requires  Lyft to waive drivers' arbitration expenses to the extent they exceed normal litigation costs, which is already required by California law.

(Objections to Preliminary Approval of Proposed Class Settlement, Doc. 180, at 21.)

The Court's decision reflected the Objectors' point, and addressed this argument in rejecting the initial settlement:

- Finally, although Lyft would be required to pay arbitration-specific fees if a dispute is not resolved with a driver internally, California law already requires a company to pay most or all of those fees in disputes relating to employment.

(Order Denying Motion for Preliminary Approval, Doc. 200, at 12.)

Although not specifically addressed by the Court in its Order, the Objectors argued that the settlement failed to correct Lyft terms of service that restrict drivers from participating in mutual assistance to improve working conditions:

- Worse still, the Proposed Settlement leaves in place provisions that on their face permit Lyft to terminate or deactivate drivers who wish to engage in protected activity for the purpose of improving their working conditions, including lobbying, advocating or striking, as the revised terms allow termination of drivers who "interfere with or disrupt Services," "create liability," "or cause [Lyft] to become subject to regulation as a

1   transportation carrier or provider of taxi service," or to "cause any third
    party to engage in the restricted activities."

2   (Objections to Preliminary Approval of Proposed Class Settlement, Doc. 180, at 20.)

3   In the revised settlement, the Parties agreed to eliminate this objectionable term:

4

5   • Lyft has agreed to remove from its Terms of Service the provision that
      permits deactivation for drivers who "create liability for us or cause us to
      become subject to regulation as a transportation carrier or provider of taxi

6     service."

7   (Brief ISO Plaintiffs' Motion for Preliminary Approval of Revised Class Action Settlement at 8.)

8   **C.   The Court Adopted Objectors' Arguments Regarding Arbitration.**

9   The Objectors also provided strong arguments that the parties overestimated the strength of

10  Lyft's arbitration clause that the Court adopted in denying approval.

11  First, Objectors raised the possibility that the National Labor Relations Act could prohibit a

12  class waiver in an arbitration agreement:

13  • [I]n the context of employment arbitration, class and representative waivers
      are unconscionable as they entail a waiver of statutory rights, namely rights

14    guaranteed under the NLRA and Norris-LaGuardia Act.

15  (Objections to Preliminary Approval of Proposed Class Settlement, Doc. 180, at 22.)

16  As noted by Objectors, Plaintiffs' counsel was aware of this possibility because they filed,

17  and later withdrew, charges with the National Labor Relations Board.  (Objections to Preliminary

18  Approval of Proposed Class Settlement, Doc. 180, at 23.)

19  The Court agreed that the initial settlement failed to consider the effect of the NLRA on the

20  class waiver:

21  • [T]he plaintiffs' lawyers did not even mention the possibility that they
      could attack the arbitration provision as a violation of the NLRA in their

22    motion for preliminary approval.

23  (Order Denying Motion for Preliminary Approval, Doc. 200, at 19-20.)

24  Second, the Objectors raised the possibility that Lyft, by litigating on the merits, had waived

25  its right to compel arbitration as to the class:

26  • Because Lyft has litigated, engaged in discovery, and filed dispositive
      motions, Plaintiffs have a strong argument that Lyft waived its right to

27    compel arbitration.... Other courts presented with this argument have
      declined to extend or adopt the reasoning in *TFT-LCD*, both because of the

28    significant expenditure of judicial resources involved before the arbitration

---

APPLICATION FOR ATTORNEYS' FEES
Case No. 3:13-CV-04065-VC                                                          7

agreement is asserted, and because it allows a party to litigate on the merits and later assert the arbitration agreement if judgment is denied.

(Objections to Preliminary Approval of Proposed Class Settlement, Doc. 180, at 23-24.)

The Court's decision adopted or reflected this argument, stating:

- First, Lyft could be held to have waived its right to compel arbitration as to the class. After all, Lyft explicitly waived its right to assert the arbitration provision against the named plaintiffs. And it did so in an attempt to get a favorable ruling on the merits from this Court before class certification. It would arguably be unfair for Lyft to pursue litigation in a federal class action in hope of obtaining a favorable district court ruling at summary judgment, only to keep an arbitration provision in its back pocket in case things didn't go as planned.

(Order Denying Motion for Preliminary Approval, Doc. 200, at 19.)

Finally, the Objectors argued that, even if Lyft's arbitration agreement were found to be enforceable, it cannot waive claims under PAGA:

- Plaintiffs have discounted all of their claims as a result of an illegal arbitration class-action waiver contained in Lyft's "Terms of Use" provisions.  However, even if given effect, such agreements are not applicable to PAGA claims because a "PAGA representative action is … a type of qui tam action," and the "government entity on whose behalf the plaintiff files suit is always the real party in interest in the suit" and, therefore the arbitration and representative action waiver is inapplicable.

(Objections to Preliminary Approval of Proposed Class Settlement, Doc. 180, at 7-8.)

The Court adopted this reasoning, specifically citing Objectors' arguments:

- Finally, as the Teamsters note, PAGA claims are not subject to class action waiver, so at a minimum the class members could not be forced to arbitrate those claims individually.  In all, the plaintiffs' lawyers have overstated the risk that the unnamed class members could be compelled to individual arbitration following class certification.

(Order Denying Motion for Preliminary Approval, Doc. 200, at 20.)

Objectors provided a benefit to the class by raising several crucial arguments in opposition to the initial settlement.  The Court indicated in its Order that it considered these objections and incorporated many of them in its Order denying preliminary approval.  The denial led to the parties renegotiating the settlement, resulting in a settlement more favorable to class members.

The effect of these objections was that Lyft and the Plaintiffs returned with a proposed settlement of higher value and that provides significantly more money to the state under PAGA. The value of the settlement more than doubled – from $12.25 million in the initial settlement to $27

1    million in the revised settlement.  Although the Teamsters and other individual objectors have

2    submitted objections even to the revised settlement and opposed final approval of the settlement, to

3    the extent the Court has finally approved the proposed settlement, the result of the Objectors' efforts

4    was to substantially improve the terms of the settlement.

5    **III.   OBJECTORS' ATTORNEYS ARE ENTITLED TO ATTORNEYS' FEES AND COSTS**

6             Class counsel's attorneys' fees and costs are to be paid out of the common Settlement Fund.

7    (*See* Revised Class Action Settlement and Release, ¶ 40, Doc. 206-1.)  The common fund doctrine

8    allows attorneys' fees to be paid out of a common fund when the attorneys' services benefit the fund,

9    that is, when they "create, increase, protect, or preserve the fund." *Class Plaintiffs v. Jaffe &*

10   *Schlesinger, P.A.*, 19 F.3d 1306, 1308 (9th Cir. 1994) (quoting *Lindy Bros. Builders Inc. v. American*

11   *Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 112 (3d Cir. 1976)).  The rationale behind the

12   common fund doctrine is that the class members who benefit from the attorneys' services should

13   share in the litigation expenses; otherwise, they would be unjustly enriched if they benefited by did

14   not contribute.  *Hall v. Cole*, 412 U.S. 1, 6 (1973).

15

16   **A.     An Award of Attorneys' Fees for Objectors' Counsel Is Justified by Objectors'
             Participation in the Settlement Process**

17            Objectors' counsel may also receive payment from the common fund, as long as they

18   substantially enhance the benefit to the class under the settlement.  *Vizcaino v. Microsoft Corp.*, 290

19   F.3d 1043, 1052 (9th Cir.2002).  Objectors who add value to the settlement, by increasing the amount

20   available to the class, making it possible for more class members to receive a payment from the

21   settlement, or by challenging the attorneys' fees award to lead counsel, confer a benefit on the class.

22   *In re Prudential Ins. Co. of Am. Sale Practices Litig.*, 273 F.Supp.2d 563, 567-69 (D. N.J. 2003).

23            Other grounds that justify an award of attorneys' fees to counsel for objectors include those

24   who, by raising questions about the terms or effects of the settlement render an "important service" to

25   the court.  *Great Neck Capital Appreciation Investment Partnership LP v. PricewaterhouseCoopers*

26   *LLP*, 212 F.R.D. 400, 412-13 (E.D. Wis. 2002).  Several courts have recognized that the participation

27   of objectors have transformed the approval hearing to an adversarial process, generated debate,

28   refined issues with the settlement for the court, and caused the court to spend more time considering

the adequacy of the settlement.  *Denny v. Jenkins & Gilchrist*, 230 F.R.D. 317, 353-54 (S.D.N.Y. 2005); *Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 359 (N.D. Ga. 1993); *Frankenstein v. McCrory*, 425 F.Supp. 762, 767 (S.D.N.Y. 1977).  Broad participation, including the adversarial participation of objectors, is particularly important in the settlement approval hearing because of the risk of collusion once the parties reach a settlement.  *Park v. Thompson Corp.*, 633 F.Supp.2d 8, 11 (S.D.N.Y. 2009).

Here, after the Court rejected the initial settlement, the parties held a subsequent mediation session and negotiated a revised class settlement agreement with significant changes.  Notably, the revised settlement agreement increased the monetary value of the settlement from $12.25 million to $27 million, to capture a larger percentage of the class's reimbursement claims.  (Brief ISO Plaintiffs' Motion for Preliminary Approval of Revised Class Action Settlement at 1-2.)  Additionally, the revised settlement doubled the recovery available to drivers considered "full time."  (Brief ISO Plaintiffs' Motion for Preliminary Approval of Revised Class Action Settlement at 5-6.)

The revised agreement also made changes to the non-monetary portion of the settlement. Among these changes, Lyft added to its "deactivation" or termination policy an option for drivers to receive notice of the alleged violation and an opportunity to cure it before termination.  (Brief ISO Plaintiffs' Motion for Preliminary Approval of Revised Class Action Settlement at 6.)  Plaintiffs and Lyft also agreed to implement a pre-arbitration negotiation process to resolve minor disputes short of arbitration, and extend this option to drivers that have already been deactivated, and Lyft agreed to remove an objectionable Term of Service that allowed the company to terminate drivers who "create liability for us or cause us to become subject to regulation as a transportation carrier or a provider of taxi service."  (Brief ISO Plaintiffs' Motion for Preliminary Approval of Revised Class Action Settlement at 7-8.)  The Objectors had specifically objected to this language in the Terms of Service, both in their Objections and in their unfair labor practice charge filed with the National Labor Relations Board.  (Objections to Preliminary Approval of Proposed Class Settlement, Doc. 180, at 20.)

In addition, the revised settlement also allocated $1 million for PAGA claims.  (Brief ISO Plaintiffs' Motion for Preliminary Approval of Revised Class Action Settlement at 4-5.)  The initial

settlement allocated $122,250 to PAGA claims.  The increase in the PAGA allocation follows arguments made by Objectors to the initial settlement that the initial PAGA amount was inappropriately discounted and shortchanged both the State of California and the drivers.

The objections filed by the individual drivers and the Teamsters contributed to the adversarial nature of the approval process, leading to the rejection of the initial settlement, further mediation, negotiations, and subsequent settlement with improved benefits to the class.  The Objectors also assisted in increasing the benefit of the settlement to drivers considered full-time, based on the strength of their claims.  As in the cases cited above, the Objectors generated debate, refined and highlighted issues for the Court in a complex settlement, and prevented collusion between the parties in the settlement.  The Objectors were able to force a closer look at specific issues, such as the objectionable "transportation carrier" language of the Terms of Service, that may have otherwise been overlooked.  The Objectors also advocated for increased allocation of PAGA penalties and against the enforceability of the class waiver in Lyft's arbitration agreement under the National Labor Relations Act, positions that may not otherwise have had an advocate without their participation.  As a result, Objectors' counsel are entitled to their reasonable attorneys' fees.

**B.     Objectors' Counsel's Fees Are Reasonable**

Several of the sections of the Labor Code under which the Plaintiffs have recovered damages under the settlement allow for the recovery of attorney fees, including Section 1194, (unpaid overtime: "reasonable attorney's fees and cost of suit"), Section 2802 (expense reimbursement: "reasonable costs, including but not limited to, attorney's fees incurred by the employee in enforcing the rights granted by this section"), and PAGA, Section 2699 ("reasonable attorney's fees and costs").

Because counsel for Objectors added to the common fund by preserving and increasing the fund through their objections, counsel for Objectors seek their reasonable attorneys' fees under these fee-shifting provisions of the Labor Code.  Following the Objectors' argument in the case, the monetary amount available to the settlement class more than doubled, and the amount designated for PAGA penalties increased to $1 million.  The Objectors contributed in a substantial way to the denial of the initial proposed settlement.

In a common fund case, the district court has discretion to choose to award attorneys' fees based either on a percentage of the fund method or the lodestar method. *In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295-96 (9th Cir. 1994). The lodestar method involves multiplying the reasonable hours expended by counsel by a reasonable hourly rate. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). Various multipliers to the hourly rate may be applied based on the risk of the litigation, whether the case is taken on contingency or not, the results achieved, and the quality of representation. *Washington Public Power*, 19 F.3d at 1299-1305.

Here, Objectors' counsel request payment of attorneys' fees based on the lodestar method. Objectors' counsel requests rates of $400 per hour for partners and $250 per hour for associates or to the extent class counsel's hourly recovery from the settlement exceeds those rates, at rates awarded to class counsel. The "relevant community" for the determining the reasonable hourly rate is the district where the lawsuit proceeds. *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). In this case, that is the Northern District of California.

Recent cases in the Northern District of California have held that these hourly rates are reasonable for similar wage and hour litigation. For example, last year the Northern District of California awarded an hourly rate of $400 for a law firm partner in a wage and hour case. *Berry v. Urban Outfitters Wholesale Inc.*, No. 13-cv-2628, 2015 WL 580579 (N.D. Cal. Feb. 11, 2015) (rejecting initial request of $550 per hour for partner). In 2014, the same court awarded a slightly higher hourly rate in a wage and hour case. *Postier v. Louisiana-Pac. Corp.*, No. 09-cv-3290, 2014 WL 1760010 (N.D. Cal. Apr. 29, 2014) (awarding $425 per hour for partner at litigation firm with 20 years of experience). In another wage and hour case in the same district, hourly rates ranged from $300 to $700. *Greko v. Diesel U.S.A. Inc.*, No. 10-cv-2576 NC, 2013 WL 1789602 (N.D. Cal. Apr. 26, 2013). The court awarded fees in a similar range in 2011, $650 for class counsel with 17 years of experience and $625-$325 for counsel with less experience. *Wren v. RGIS Inventory Specialists*, No. C-06-5778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011).

In *Bellinghausen v. Tractor Supply Co.*, the Northern District of California in 2015 concluded that hourly rates between $250 and $700 were reasonable, based on the court's own review of recent

1   cases.  306 F.R.D. 245 (N.D. Calif. 2015).  Counsel in the *Bellinghausen* case with 16, 6, and 4 years

2   of experience with wage and hour litigation, respectively, were entitled to hourly rates of $650, $400,

3   and $375.  *Id.*

4           The hourly rates of $400 for partners and $250 for associates are well within the presumptive

5   range of reasonableness in this district, tending toward the lower end of some recent fee awards.

6           The total award of attorneys' fees and costs requested by Objectors' counsel is $62,720.19,

7   representing 170.3 hours, with $1,485.19 being costs and $61,235 being attorneys' fees.  This is a

8   reasonable amount of time.  A reasonable attorney's fee is calculated by "the number of hours

9   reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart*,

10  461 U.S. 424, 433 (1983).  The party seeking fees must show "that the fees and costs were reasonably

11  necessary to achieve the result obtained."  *Rodriguez v. West Publishing Corp.*, 602 Fed. App'x 385,

12  387 (9th Cir. 2015).  Counsel for objectors have done so by submitting itemized records of attorney

13  time entries, recorded contemporaneously by the firm's computer system.  (*See* Paterson Decl. at ¶

14  8.)

15                          IV.  <u>CONCLUSION</u>

16          WHEREFORE, Objectors Angelica Rose Ferdinand, Helen Hebert, Leigh-Ann Johnson, Amir

17  Kashanian, Kelsey Tilander, and Teamsters Joint Councils Nos. 7 and 42 hereby request this Court to

18  award attorneys' fees and costs to Objectors' counsel in the amount of $67, 215.19, for increasing the

19  common fund and otherwise substantially benefiting class members.

20

21  Dated:  November 10, 2016                    BEESON, TAYER & BODINE, APC

22

23                                  By:      */s/ Lorrie E. Bradley*
                                            LORRIE E. BRADLEY
24                                          Attorneys for Objectors Angelica Rose
                                            Ferdinand, Helen Hebert, Leigh-Ann Johnson,
25                                          Amir Kashanian, Kelsey Tilander, and
                                            Teamsters Joint Councils Nos. 7 and 42
26

27

28