Shannon Liss-Riordan (State Bar No. 310719)
sliss@llrlaw.com
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800

Matthew D. Carlson (State Bar No. 273242)
mcarlson@llrlaw.com
LICHTEN & LISS-RIORDAN, P.C.
466 Geary St., Suite 201
San Francisco, California 94102
Telephone: (415) 630-2651

Attorneys for Plaintiffs COTTER, MACIEL,
and KNUDTSON, on behalf of themselves
and all others similarly situated,

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK COTTER, ALEJANDRA MACIEL, and JEFFREY KNUDTSON, on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>      v.<br><br>LYFT, INC.,<br><br>           Defendant. | **Case No.: 3:13-cv-04065-VC**<br><br>**Hon. Vince Chhabria**<br><br>**NOTICE OF MOTION AND MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS AND FOR CLASS REPRESENTATIVE SERVICE AWARDS**<br><br>Hearing Date: December 1, 2016<br>Time: 10:00 a.m.<br>Courtroom: 4 |

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................... 1

II.     LEGAL STANDARD ..................................................................................................... 2

III.    DISCUSSION ................................................................................................................. 4

        A.  Counsel's Fee Request is Fair and Reasonable and Far Below the Ninth Circuit's 25% Benchmark .................................................................................................... 4

        B.  Other Factors Support Plaintiffs' Request for Fees ......................................... 5

             1.  The Monetary and Non-Monetary Results Achieved by this Settlement Support Plaintiffs' Request ........................................................................ 6

             2.  The Risks of Litigating this Case Were Substantial ................................... 8

             3.  Counsel Have Demonstrated Significant Skill Throughout the Litigation of this Matter and Have Extensive Background in this Field of Law .................... 9

             4.  Counsel Incurred a Substantial Financial Burden in Litigating this Case on a Contingency Fee Basis ........................................................................ 10

             5.  Plaintiffs' Requested Fee Award is Far Less than Awards in Similar Cases ............ 12

             6.  The Reaction of the Class (or Lack Thereof) Supports Plaintiffs' Fee Request ........ 13

             7.  A Lodestar Cross-Check, if Applied, Supports Plaintiffs' Fee Request .................... 13

        C.  Plaintiffs' Request for Class Representative Service Enhancements is Reasonable ....... 24

V.      CONCLUSION ............................................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

*Ackerman v. W. Elec. Co.*,
   643 F. Supp. 836 (N.D. Cal. 1986) ........................................................................... 15

*Aichele v. City of Los Angeles*,
   2015 WL 5286028 (C.D. Cal. Sept. 9, 2015) ............................................................. 3

*Albion Pac. Prop. Res., LLC v. Seligman*,
   329 F. Supp. 2d 1163 (N.D. Cal. 2004) ..................................................................... 14

*Alvarado v. FedEx Corp.*,
   2011 WL 4708133 (N.D.Cal. 2011) ........................................................................... 19

*Barbosa v. Cargill Meat Solutions Corp.*,
   297 F.R.D. 431 (E.D.Cal.2013) ................................................................................. 12

*Barnes v. The Equinox Group, Inc.*,
   2013 WL 3988804 (N.D. Cal. 2013) .................................................................... 5, 12

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) .......................................................................... 16, 17

*Betancourt v. Advantage Human Resourcing, Inc.*,
   2016 WL 344532 (N.D. Cal. Jan. 28, 2016) ........................................................ 21, 22

*Bower v. Cycle Gear, Inc*,
   2016 WL 4439875 (N.D. Cal. 2016) .......................................................................... 10

*Brawner v. Bank of Am. Nat'l Ass'n*,
   2016 WL 161295 (N.D. Cal. Jan. 14, 2016) ............................................................... 6

*Brinskele v. United States*,
   2014 WL 4832263 (N.D. Cal. May 22, 2014) ........................................................... 16

*Buccellato v. AT & T Operations, Inc.*,
   No. 10 Civ. 463, 2011 WL 3348055 (N.D.Cal. Jun. 30, 2011) ................................. 17

*Burden v. SelectQuote Insurance Services*,
   2013 WL 3988771 (N.D.Cal., 2013) ................................................................. i, 10, 12

*Camden I Condominium Association v. Dunkle*,
   946 F.2d 768 (11th Cir.1991) ...................................................................................... 3

*Conley v. Sears, Roebuck & Co.*,
222 B.R. 181 (D.Mass.1998) ................................................................. 17

*Cotter v. Lyft, Inc.*,
60 F. Supp. 3d 1067 (N.D. Cal. 2015) ................................... 1, 9, 24, 25

*Cotton v. City of Eureka, Cal.*,
889 F. Supp. 2d 1154 (N.D. Cal. 2012) ............................................... 16

*Covillo v. Specialtys Cafe*,
2014 WL 954516 (N.D. Cal. Mar. 6, 2014) ........................................ 24

*Cuviello v. Feld Entm't, Inc.*,
2015 WL 154197 (N.D. Cal. Jan. 12, 2015) ....................................... 22

*Davis v. J.P. Morgan Chase & Co.*,
827 F.Supp.2d 172 (W.D.N.Y.2011) .................................................. 17

*Defenbaugh v. JBC & Associates, Inc.*,
2004 WL 1874978 (N.D. Cal. Aug. 10, 2004) ................................... 19

*Dixon v. City of Oakland*,
2014 WL 6951260 (N.D. Cal. Dec. 8, 2014) ....................................... 22

*Flannery v. California Highway Patrol*,
71 Cal.Rptr.2d 632 (Cal.App. 1 Dist.,1998) ....................................... 23

*Fleury v. Richemont N. Am., Inc.*,
2009 WL 1010514 (N.D. Cal. Apr. 14, 2009) ...................................... 4

*Garcia v. Resurgent Capital Services, L.P.*,
2012 WL 3778852 (N.D.Cal.,2012) ............................................. 19, 20

*Garner v. State Farm Mut. Auto. Ins. Co.*,
2010 WL 1687829 (N.D. Cal. Apr. 22, 2010) ................................... 8, 9

*Gauchat-Hargis v. Forest River, Inc.*,
2013 WL 4828594 (E.D. Cal. Sept. 9, 2013) ...................................... 19

*Glass v. UBS Financial Services, Inc.*
2007 WL 221862 (N.D.Cal. Jan. 26, 2007) ......................................... 14

*Glendora Community Redevelopment Agency v. Demeter*,
202 Cal.Rptr. 389 (Cal.App. 2 Dist.,1984) ......................................... 18

*Gong-Chun v. Aetna Inc.*,
2012 WL 2872788 (E.D. Cal. July 12, 2012) ..................................... 20

*Gutierrez v. Wells Fargo Bank, N.A.*,
  2015 WL 2438274 (N.D. Cal. May 21, 2015) .......................................................................... 21

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (C.A.9 (Cal.),1998) ........................................................................................... 2

*Hendricks v. Starkist Co*,
  2016 WL 5462423 (N.D. Cal., 2016) ............................................................................... passim

*Hernandez v. Erin Capital Mgmt., LLC*,
  2011 WL 4595802 (C.D. Cal. Oct. 3, 2011) ........................................................................... 19

*In re Activision Sec. Litig.*,
  723 F.Supp. 1373 (N.D.Cal.1989) ............................................................................................ 3

*In re Butler*,
  2015 WL 3658409 (Cal.App. 1 Dist., 2015) .................................................................... 21, 22

*In re California Indirect Purchases*,
  1998 WL 1031494 (Cal.Sup.Ct. 1998) ................................................................................... 17

*In re Cardinal Health Inc. Sec. Litig.*,
  528 F.Supp.2d 752 (S.D. Ohio 2007) ..................................................................................... 17

*In re Consumer Privacy Cases*,
  175 Cal. App. 4th 545 n.13 (2009) ................................................................................... 5, 24

*In re Continental Ill. Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992) .................................................................................................... 4

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
  586 F.Supp.2d 732 (S.D.Tex.2008) ....................................................................................... 17

*In re Magsafe Apple Power Adapter Litig.*,
  2015 WL 428105 (N.D. Cal. Jan. 30, 2015) .......................................................................... 21

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir.2000) ............................................................................................. 12, 24

*In re Mercury Interactive Corp. Securities Litigation*,
  618 F.3d 988 (9th Cir. 2010) .................................................................................................. 13

*In re Nuvelo, Inc. Sec. Litig.*,
  2011 WL 2650592 (N.D. Cal. July 6, 2011) ............................................................................ 8

*In re Omnivision Technologies, Inc. Securities Litigation*,
  2015 WL 3542413 (N.D.Cal., 2015) ...................................................................................... 12

*In re Rite Aid Sec. Litig.*,
    362 F.Supp.2d 587 (E.D.Pa.2005) ........................................................ 17

*In re Rossco Holdings, Inc.*,
    2014 WL 2611385 (C.D. Cal. May 30, 2014) ...................................... 15

*In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*,
    56 F.3d 295 (1st Cir. 1995) .................................................................... 3

*Johnson v. Brennan*,
    2011 WL 4357376 (S.D.N.Y. 2011) ...................................................... 17

*Kanawi v. Bechtel Corp.*,
    2011 WL 782244 (N.D. Cal. Mar. 1, 2011) ............................................ 8

*Kilopass Tech., Inc. v. Sidense Corp.*,
    82 F. Supp. 3d 1154  (N.D. Cal. 2015) ................................................ 16

*Knight v. Red Door Salons, Inc.*,
    2009 WL 248367 (N.D.Cal.,2009) .......................................................... 3

*Laffitte v. Robert Half Intern. Inc.*,
    376 P.3d 672 (Cal. 2016)........................................................... 2, 15, 18

*Lealao v. Beneficial California, Inc.*,
    97 Cal.Rptr.2d 797 (Cal.App. 1 Dist.,2000)........................................ 23

*Lema v. Comfort Inn Merced*,
    2014 WL 1577042 (E.D. Cal. Apr. 17, 2014) ...................................... 18

*Lopez v. Youngblood*
    (E.D.Cal. Sep. 2, 2011, No. 07-0474-DLB) 2011 WL 10483569 ......... 14, 18, 20, 23

*Lota by Lota v. Home Depot U.S.A., Inc.*,
    2013 WL 6870006 (N.D. Cal. Dec. 31, 2013) ...................................... 19

*Lusby v.GameStop Inc.*,
    2015 WL 1501095 (N.D. Cal. Mar. 31, 2015) ................................. 12, 24

*Maley v. Del Global Techs. Corp.*,
    186 F.Supp.2d 358 (S.D.N.Y.2002) ...................................................... 17

*McKenzie v. Federal Exp. Corp.*,
    2012 WL 2930201 (C.D.Cal. July 2, 2012)............................................ 16

*Monterrubio v. Best Buy Stores, L.P.*,
    291 F.R.D. 443 (E.D. Cal. 2013) .......................................................... 24

NOTICE OF MOTION AND MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS AND FOR CLASS
REPRESENTATIVE SERVICE AWARDS
CASE NO. 3:13-CV-04065-VC

*Morales v. Conopco, Inc.*,
  2016 WL 6094504 (E.D.Cal., 2016) ............................................................ 3

*Morgret v. Applus Technologies, Inc.*,
  2015 WL 3466389 (E.D.Cal.,2015) ............................................................ 17

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D.Cal.2004) ............................................................ 13

*Natural Gas Anti-Trust Cases I, II, III & IV*,
  2006 WL 5377849 (Cal.Sup.Ct. 2006) ............................................................ 17

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*,
  2009 WL 2408560 (D. Mass. Aug. 3, 2009) ............................................................ 17

*O'Connor v. Uber Techs., Inc.*,
  311 F.R.D. 547 (N.D. Cal. 2015) ............................................................ 9, 21

*Ramirez v. Lovin' Oven Catering Suffolk, Inc.*,
  No. 11 Civ. 520, 2012 WL 651640 (S.D.N.Y. Feb. 24, 2012)............................................................ 17

*Real v. Cont'l Grp., Inc.*,
  116 F.R.D. 211 (N.D. Cal. 1986) ............................................................ 20

*Reiter v. Sonotone Corp.*,
  442 U.S. 330 (1979) ............................................................ 11

*Rodgers v. Claim Jumper Rest., LLC*,
  2015 WL 1886708 (N.D. Cal. Apr. 24, 2015) ............................................................ 15

*Rodriguez v. Cty. of Los Angeles*,
  96 F. Supp. 3d 1012 (C.D. Cal. 2014) ............................................................ 16, 20

*Romero v. Producers Dairy Foods, Inc.*,
  2007 WL 3492841 (E.D.Cal.,2007) ............................................................ 12

*Russell v. EF International Language Schools, Inc.*,
  2016 WL 6304628 (Cal.App. 2 Dist., Oct. 27, 2016) ............................................................ 2

*San Francisco Baykeeper v. W. Bay Sanitary Dist.*,
  2011 WL 6012936 (N.D. Cal. Dec. 1, 2011)............................................................ 22

*Santiago v. Equable Ascent Fin.*,
  2013 WL 3498079 (N.D. Cal. July 12, 2013) ............................................................ 19

*Schiller v. David's Bridal, Inc.*,
  2012 WL 2117001 (E.D. Cal. June 11, 2012) ............................................................ 5

*Serrano v. Priest*,
   20 Cal. 3d 25 (1977) ................................................................. 2, 23

*Sierra Club v. U.S. E.P.A.*,
   625 F. Supp. 2d 863 (N.D. Cal. 2007) ....................................... 18, 19, 20

*Singer v. Becton Dickinson and Co.*,
   2010 WL 2196104 (S.D.Cal. 2010) ................................................ 12

*Sproul v. Astrue*,
   2013 WL 394056 (S.D. Cal. Jan. 30, 2013) ..................................... 14

*Steiner v. American Broadcasting Co., Inc.*,
   248 Fed.Appx. 780 (9th Cir. 2007) ............................................... 17

*Swedish Hospital Corp. v. Shalala*,
   1 F.3d 1261 (D.C.Cir.1993) ......................................................... 3

*Taylor v. Meadowbrook Meat Company, Inc.*,
   2016 WL 4916955 (N.D.Cal., 2016) ............................................... 6

*U.S. v. City and County of San Francisco*,
   748 F.Supp. 1416 (N.D.Cal. 1990) ................................................ 19

*Villalpando v. Exel Direct Inc.*,
   3:12-cv-04137-JCS ...................................................................... 21, 22

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir.2002) ................................................. passim

*Weiss v. Mercedez–Benz*,
   899 F.Supp. 1297 (D.N.J.1995) ................................................... 17

*Wershba v. Apple Comput., Inc.*,
   91 Cal. App. 4th 224 (2001) ..................................................... 2, 17

*Williams v. Weyerhaeuser Co.*,
   2002 WL 373578 (Cal.App. 1 Dist.,2002) ...................................... 18

*Willner v. Manpower Inc.*,
   2015 WL 3863625 (N.D. Cal. June 22, 2015) ................................... 6

*Wilson v. Bank of America Nat'l Trust & Sav. Ass'n.*,
   No. 643872 (Cal.Sup.Ct. 1982) ................................................... 17

*Wren v. RGIS Inventory Specialists*,
   2011 WL 1230826 (N.D.Cal. 2011) .............................................. 19

*Yeager v. Bowlin*,
  2010 WL 2303273 (E.D. Cal. June 7, 2010) ............................................................ 19

*Zeltser v. Merrill Lynch & Co., Inc.*,
  2014 WL 4816134 (S.D.N.Y.,2014) ...................................................................... 17

**TO DEFENDANT AND ITS ATTORNEYS OF RECORD: PLEASE TAKE**

**NOTICE** that on Thursday, December 1, 2016, at 10:00 a.m., or as soon thereafter as the matter can be heard before the Honorable Vince Chhabria, in Courtroom 4, 17th Floor, U.S. District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA, 94102, Plaintiffs will and hereby do move the Court pursuant to Federal Rule of Civil Procedure 23 for an Order granting Plaintiffs' request for attorneys' fees and costs and class representative service awards.

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities below; the Declaration of Shannon Liss-Riordan filed concurrently herewith; the Declaration of Matthew D. Carlson filed concurrently herewith; filed concurrently herewith; all supporting exhibits filed herewith; all other pleadings and papers filed in this action; and any argument or evidence that may be presented at the hearing in this matter.

## I.     INTRODUCTION

Plaintiffs hereby request Court approval of this application for attorneys' fees and class representative service enhancements.  As described in their preliminary approval motion, Plaintiffs are only seeking the attorneys' fees they were requesting under the parties' original settlement agreement, $3.675 million. Given the increased settlement amount of $27 million, this fee request comes to less than 14% of the settlement fund – far below the Ninth Circuit "benchmark" of 25%. Plaintiffs do not separately request reimbursement of costs. As discussed herein and in the Declarations submitted herewith, this fee request is more than justified by the cutting-edge nature of this case, the skill and creativity used in litigating the issues, the case law made here that has assisted and will assist other workers challenging their misclassification as independent contractors, the unusually high risk taken on by filing the case, and the significant monetary and non-monetary relief obtained, on a reasonable timeline, for Class Members.

Plaintiffs also note the importance of contingency fee awards in encouraging plaintiffs' attorneys to file and litigate – efficiently – cases of importance, particularly those on behalf of lower wage workers, and particularly those that are risky and uncertain. Because not every such case results in a fee award, fees that are awarded on a contingency basis from common fund settlements are essential for the continued prosecution of cases like this one.

Plaintiffs further request $5,000 for Plaintiffs Cotter and Maciel and $2,500 for Plaintiff Knudtson for their service in this litigation. These awards are reasonable and well within the range of approved incentive payments in class action litigation. Indeed, merely associating their names with a high-profile lawsuit such as this one created a tremendous risk of being black-balled in the "gig economy" industry and beyond.  When searching for their names on the internet, potential employers will quickly find reference to this case.  These awards are also reasonable given Plaintiffs' participation in discovery (including full day depositions for Plaintiffs Cotter and Maciel), as well as Plaintiffs' significant time spent responding to numerous sets of document requests, interrogatories, and requests for admission. The requested enhancements are in line with, if not less than, incentive awards in similar actions.

## II.    LEGAL STANDARD

In a class action settlement, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. Fed. R. Civ. P. 23(h). Courts have the power to award reasonable attorneys' fees and costs where, as here, a litigant proceeding in a representative capacity secures a "substantial benefit" for a class of persons. *See e.g., Hendricks v. Starkist Co*, 2016 WL 5462423, at *10 (N.D. Cal., 2016) *citing Serrano v. Priest*, 20 Cal. 3d 25, 38 (1977). The two methods for determining reasonable fees in the class action settlement context are the "lodestar/multiplier" method and the "percentage of recovery" method. *Hendricks*, 2016 WL 546523, at *10, citing *Wershba v. Apple Comput., Inc.*, 91 Cal. App. 4th 224, 254 (2001); accord *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir.1998).

Where federal substantive law provides the basis for the underlying cause of action, it is left up to the district court's discretion which method to use. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir.2002). But where, as here, plaintiff brings only state law claims, the Court looks to the state's law in deciding the method. *Hendricks*, 2016 WL 5462423, at *10; *see also, e.g.* Cal. Lab. Code §§ 2802, 1194, 2699 (providing for attorneys' fees to prevailing party).

Just several months ago, the California Supreme Court endorsed the use of the percentage method of awarding attorneys' fees, citing the method's relative ease of calculation, alignment of incentives between counsel and the class, a better approximation of market conditions in a contingency case, and the encouragement it provides counsel to seek an early settlement and avoid unnecessarily prolonging the litigation. *Laffitte v. Robert Half Intern. Inc.*, 376 P.3d 672, 686, 205 Cal.Rptr.3d 555, 573, 1 Cal.5th 480, 503 (Cal. 2016) (approving attorneys' fee award in the amount of one-third of gross settlement); *see also Russell v. EF International Language Schools, Inc.*, 2016 WL 6304628, at *9 (Cal.App. 2 Dist., Oct. 27, 2016) (affirming one-third fee award over objection and noting that "[s]ome appellate courts have questioned whether the percentage-of-the-benefit method is a valid justification for an

award of attorneys' fees in a class action settlement. Our Supreme Court recently resolved the issue.") (internal citation omitted).

The vast majority of Ninth Circuit and other federal courts are in accord. *See Aichele v. City of Los Angeles*, 2015 WL 5286028, *5 (C.D. Cal. Sept. 9, 2015) ("Many courts and commentators have recognized that the percentage of the available fund analysis is the preferred approach in class action fee requests because it more closely aligns the interests of the counsel and the class, *i.e.*, class counsel directly benefit from increasing the size of the class fund and working in the most efficient manner.").[1]

One of the principle advantages of the percentage approach for awarding fees in class action litigation is the fact that it is result-oriented, thereby promoting the more efficient use of attorney time and resources, rather than encouraging attorneys to prolong litigation in order to inflate their recoverable hours. *See In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295 (1st Cir. 1995) ("[U]sing the [percentage of fund] method . . . enhances efficiency, or, put in the reverse, using the lodestar method in such a case encourages inefficiency. Under the latter approach, attorneys not only have a monetary incentive to spend as many hours as possible (and bill for them) but also face a strong disincentive to early settlement"). Similarly, the percentage method better approximates the workings of the marketplace by ensuring that attorneys receive compensation for the true value of their services and skills. *Id.* at 307 ("Another point is worth making: because the [percentage of fund] technique is result-oriented rather than process-oriented, it better approximates the

---

[1]      *See also Knight v. Red Door Salons*, Inc., 2009 WL 248367, at *5 (N.D.Cal. 2009) ("use of the percentage method in common fund cases appears to be dominant") citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir.2002); *In re Activision Sec. Litig.*, 723 F.Supp. 1373, 1374–77 (N.D.Cal.1989) (collecting authority and describing benefits of the percentage method over the lodestar method); *Morales v. Conopco, Inc.*, 2016 WL 6094504, at *7 (E.D.Cal., 2016) ("Because of the ease of calculation and the pervasive use of the percentage-of-recovery method in common fund cases, the court thus adopts this method."); *Swedish Hospital Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C.Cir.1993) ("a percentage of the fund method is the appropriate mechanism for determining the attorney fees award in common fund cases"); *Camden I Condominium Association v. Dunkle*, 946 F.2d 768, 774 (11th Cir.1991) ("we believe that the percentage of the fund approach is the better reasoned in a common fund case").

workings of the marketplace . . . the market pays for the result achieved") (quoting *In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992)); *see also Fleury v. Richemont N. Am., Inc.*, 2009 WL 1010514, *3 (N.D. Cal. Apr. 14, 2009) ("Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.... [i]f this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing") (internal citation omitted).

Here, counsel have efficiently litigated this case for several years and have achieved significant monetary and non-monetary benefits for Class Members. Notably, in comparison, counsel have spent just as long or longer litigating many other cases on behalf of workers at considerable expense and without any compensation for it. Liss-Riordan Decl. at ¶ 13, n.3. Unsuccessful cases demonstrate why the percentage approach is essential to plaintiff-side firms that engage in contingency practice on behalf of low-wage workers: for every successful case, there are always others that will be vigorously pursued for years only to result in no recovery for the class or counsel. Liss-Riordan Decl. at ¶ 14. Plaintiff-side contingency practice on behalf of low wage workers, who cannot afford to pay out-of-pocket for counsel, is made possible by a system by which counsel can obtain contingency fee awards for those cases that are successful. *Id.* Accordingly, the Court should employ the percentage of recovery method of awarding attorneys' fees in this case.

## III.    DISCUSSION

**A.    Counsel's Fee Request is Fair and Reasonable and Far Below the Ninth Circuit's 25% Benchmark**

In the Ninth Circuit, a fee award of 25% of the recovery is the benchmark percentage fee award, which may be adjusted depending on analysis of certain relevant factors (discussed *infra*). *Vizcaino*, 290 F.3d at 1050. While California courts do not formally recognize the federal

25% benchmark, federal courts applying California law on a motion for fees nonetheless use it as a starting point in evaluating the request. *Hendricks*, 2016 WL 546523, at *10 *citing Schiller v. David's Bridal, Inc.*, 2012 WL 2117001, at *17 (E.D. Cal. June 11, 2012); *see also In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 558 n.13 (2009) (recognizing that most fee awards in California are based on percentage calculations ranging from 25% to 33%).

Here, Plaintiffs request a fee award of only 13.61% of the common fund – just more than half of the 25% benchmark. As discussed below, this percentage award is dramatically less than awards in similar cases, and provides class members with $5,325,000 in funds that would not have been available had Plaintiffs requested and been awarded a typical contingency fee award of one-third of the settlement.

**B.      Other Factors Support Plaintiffs' Request for Fees**

Typically, courts will consider various factors to determine whether an upward (or, less often, a downward) adjustment from the 25% benchmark is warranted and counsel will often submit briefing regarding why a fee request above the 25% benchmark should be awarded. In this case, however, where counsel seeks approximately half of the benchmark, such briefing seems superfluous. Nonetheless, Plaintiffs address the applicable factors because they lend further support to Plaintiffs' very reasonable request.

There is no definitive set of factors that California courts require to be considered in determining the reasonableness of attorneys' fees under a percentage-of-the-fund approach; however, federal courts assessing fee requests under California standards have utilized factors identified by the Ninth Circuit: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *Hendricks*, 2016 WL 5462423, at *11 (N.D.Cal. 2016) citing *Vizcaino*, 290 F.3d at 1048-50. Other courts have additionally considered (6) reactions from the class; and, in its discretion, (7) a lodestar cross-check. *See Barnes v. The Equinox Group, Inc.*, 2013 WL 3988804, at *4 (N.D. Cal. 2013).

*//*

## 1. The Monetary and Non-Monetary Results Achieved by this Settlement Support Plaintiffs' Request

"Ninth Circuit precedent requires courts to award class counsel fees based on the total benefits being made available to class members," including the benefits of non-monetary relief. *Brawner v. Bank of Am. Nat'l Ass'n*, 2016 WL 161295, at *5 (N.D. Cal. Jan. 14, 2016); *Vizcaino*, 290 F.3d at 1049 ("Incidental or non-monetary benefits conferred by the litigation are a relevant circumstance" in assessing the results achieved by a settlement); *Taylor v. Meadowbrook Meat Company, Inc.*, 2016 WL 4916955, at *5 (N.D.Cal., 2016) ("When determining the value of a settlement, courts consider the monetary and non-monetary benefits that the settlement confers."); *Willner v. Manpower Inc.*, 2015 WL 3863625, at *7 (N.D. Cal. June 22, 2015) (a change in policy, even if it cannot be specifically valued, must factor into courts' analysis of the degree of success achieved by a settlement).

Here, Plaintiffs have achieved substantial relief for Class Members and have done so after just three years of litigation. The settlement provides guaranteed, and timely, relief to Class Members who, without it, risked obtaining nothing. Indeed, without this settlement, this Court or an appellate court may have enforced Lyft's arbitration and class action waiver provisions against the class, thus limiting even potential recovery to only those Class Members motivated enough to seek out counsel (and who recognized their potential legal claims here). Even without such a ruling on arbitration, without this settlement, Class Members would run the risk of losing on the merits at trial or on appeal.

The settlement provides significant monetary relief – $27 million, which (after deduction for fees, administration expenses, incentive payments for the lead plaintiffs, and a payment to the state for PAGA penalties) will be distributed in full to class members. The non-monetary terms of the settlement will provide Lyft drivers with more job security, more financial security, and a real means to bring their grievances to Lyft's attention and get them resolved quickly. Most importantly, Lyft will no longer be able to deactivate drivers at will, for any reason, and instead will only be able to deactivate drivers for specific, delineated reasons

and/or after providing notice and an opportunity to cure. Drivers who are deactivated – or who are threatened with deactivation – will have the right to arbitrate the issue before neutral decision-makers at Lyft's expense. Further, Lyft will pay for arbitration of *all* disputes regarding driver compensation and those relating to an alleged employment relationship.[2] Lyft has also agreed to implement an optional pre-arbitration negotiation process for all drivers, whether they have been deactivated or not, and regardless of the nature of the dispute. This provision will give drivers a voice to discuss with Lyft disputes large and small, without necessarily having to invoke the arbitration process. Where the informal process fails, drivers will have a realistic means of vindicating their rights without having to pay the high costs of arbitration that they may have otherwise have had to pay under the AAA's Commercial Rules.

Taken together, these terms will encourage Lyft to resolve disputes quickly and informally (*i.e.*, without resorting to costly arbitration), will deter Lyft from deactivating drivers or threatening to deactivate drivers without a contractual basis to do so (as Plaintiffs allege it has done in the past), thereby saving jobs and income, and will transfer the financial burden from drivers to Lyft if disputes do need to be resolved in arbitration.

The settlement further requires Lyft to implement features to its app that will have a day-to-day benefit for drivers. Lyft has agreed to provide drivers with additional information concerning ride requests. Specifically, it will provide the estimated time of arrival to pick up potential riders (and, of course, under the revised termination provision, drivers cannot be deactivated for declining ride requests). Thus, drivers will be able to make an informed decision regarding whether they want to accept a request that may, for example, require waiting in traffic before picking up the passenger. The settlement also obligates Lyft to implement a "favorite driver" program, pursuant to which the platform will now include a function where passengers

---

[2]     As noted in Plaintiffs' motion for preliminary approval, Dkt. No. 169 at p. 21; Dkt. No. 169-2 at ¶¶ 24-28; Exhs. A-D, this is a significant benefit to drivers, as workers bringing claims under arbitration agreements that classify them as independent contractors have faced challenges in establishing that respondent companies must pay for arbitration, challenges that create a deterrent against workers bringing such claims in arbitration.

can identify his or her driver as a "favorite." Favorite drivers will have the opportunity to win prizes.

These non-monetary benefits of the settlement, though not precisely quantifiable, add job security, a realistic avenue to resolving disputes, and day-to-day value, in addition to the substantial monetary payments to be made to participating class members. Accordingly, this factor weighs in favor of Plaintiffs' request.

## 2. The Risks of Litigating this Case Were Substantial

There are many risks inherent in litigating a class action – class certification, arbitration provisions, a decision on the merits, and potential appeals are all issues that can result in no recovery whatsoever to class members or class counsel. For this reason, courts routinely find that this factor supports a fee request above the 25% benchmark. *Hightower v. JPMorgan Chase Bank, N.A.*, 2015 WL 9664959, at *11 (C.D. Cal. 2015)(approving 30% fee request in part because "the risk of no recovery for Plaintiffs, as well as for Class Counsel, if they continued to litigate, were very real"); *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687829, *2 (N.D. Cal. Apr. 22, 2010) (approving 30% fee request and emphasizing "Class Counsel prosecuted this case on a purely contingent basis, agreeing to advance all necessary expenses, knowing that they would only receive a fee if there were a recovery"); *In re Nuvelo, Inc. Sec. Litig.*, 2011 WL 2650592, *2 (N.D. Cal. July 6, 2011) (approving 30% fee request and noting "It is an established practice to reward attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all"); *Kanawi v. Bechtel Corp.*, 2011 WL 782244, *2 (N.D. Cal. Mar. 1, 2011) (approving 30% fee request and reasoning "[s]uch a practice encourages the legal profession to assume such a risk and promotes competent representation for plaintiffs who could not otherwise hire an attorney").

In this case, Plaintiffs, Class Members, and their counsel faced all of these risks, every one of which could have resulted in no recovery whatsoever. For example, complicated issues regarding arbitration provisions are now pending in the Ninth Circuit and are likely headed to the United States Supreme Court, the outcome of which could make cases like this one even

more challenging to prosecute on a class basis. *See, e.g., O'Connor v. Uber Techs., Inc.*, 311 F.R.D. 547 (N.D. Cal. 2015) *appeal pending*, Ninth Cir. No. 16-15595.

Further, Plaintiffs in this case faced a risk of proceeding on the merits of their claims before a jury, for which this Court expressed reservations about their likelihood of success. *Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1067, 1081 (N.D. Cal. 2015) (noting that a jury would "be handed a square peg and asked to choose between two round holes."). Notably, Lyft has not been the subject of as much negative public attention as has its rival Uber, which may have posed a greater trial risk for the plaintiffs in this case as compared to the plaintiffs in the *O'Connor v. Uber* case. In order to prevail in this case, Plaintiffs would have had to prevail on *every significant issue presented* here to recover for Class Members, and Lyft had to prevail just *once* to derail the entire case. This factor, therefore, supports Plaintiffs' request.

### 3. Counsel Have Demonstrated Significant Skill Throughout the Litigation of this Matter and Have Extensive Background in this Field of Law

Prosecuting class actions requires an "extraordinary commitment of time, resources, and energy from Class Counsel," and, many times, settlements "simply [are not] possible but for the commitment and skill of Class Counsel." *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687829, at *2 (N.D.Cal. 2010). This is particularly so where a "case was wholly without precedent, raised numerous novel and complex issues of both law and fact, and required a considerable effort from Class Counsel simply to be in a position to file suit, let alone to litigate this case successfully." *Id.*

Here, counsel filed a case on the cutting edge of the law – one that raised numerous novel and complex issues of both law and fact. Indeed, at the outset of the case, this Court expressed serious reservations about whether Plaintiffs would be able to even withstand a motion for summary judgment. Not only was the case novel at the time it was filed (now, this case and *O'Connor* are the templates for litigating misclassification cases against other "gig economy" companies), but it also required tremendous risk-taking for it to even happen.

Amidst this uncertain legal landscape, Plaintiffs conducted substantial, but efficient, discovery that was sufficient to withstand a motion for summary judgment and which prepared them to move for class certification. *See* Liss-Riordan Decl. at ¶ 16; Carlson Decl. at ¶¶ 14, 16, 22-25. Once settlement discussions began, counsel negotiated a compromise resulting in substantial monetary benefits to Class Members, as well as unusual non-monetary benefits that are frequently overlooked as a source of significant value in settlements. None of this could have happened without counsel's skill.

Class Members have been represented by highly experienced counsel who focus on wage-hour class actions, with a specialty in cases involving independent contractor misclassification, tips, and arbitration clauses. Liss-Riordan Decl. at ¶¶ 2-12; *see also* Carlson Decl. at ¶¶ 4-9. Ms. Liss-Riordan has been widely recognized as one of the leading plaintiffs' lawyers nationally for her work on behalf of employees in wage and hour litigation, and her firm is well known as one of the preeminent employee-side firms engaged nationwide in this area of practice. Liss-Riordan Decl. at ¶¶ 2-12; Exhs. A-K thereto. She has been a leader and pioneer in the sub-field of independent contractor misclassification over the last decade, and has obtained significant first-of-their-kind victories in cases challenging independent contractor misclassification in a variety of industries, including the cleaning industry, the adult entertainment industry, the at-home call center industry, and delivery industry. *Id.*

Counsel's skill and extensive experience in this area of law, coupled with their willingness to take on highly risky cases, justifies Plaintiffs' fee request.

### 4. Counsel Incurred a Substantial Financial Burden in Litigating this Case on a Contingency Fee Basis

The contingent nature of litigating a class action and the financial burden assumed typically justifies an increase from the 25% benchmark, as counsel litigates with no payment and no guarantee that the time or money expended will result in any recovery. *Bower v. Cycle Gear, Inc*, 2016 WL 4439875, at *7 (N.D. Cal. 2016) (awarding 30% of common fund for fees and noting that counsel had litigated the action for almost two years with no payment and no

guarantee of recovery); *see also Hendricks*, 2016 WL 5462423, at *12 (finding that enhancement from 25% benchmark was warranted because class counsel carried a substantial financial burden both in advancing out-of-pocket costs and in representing plaintiff and the class members on a contingency basis); *see also Hightower v. JPMorgan Chase Bank, N.A.*, 2015 WL 9664959, at *10 (C.D. Cal. 2015) ("any law firm undertaking representation of a large number of affected employees in wage and hour actions inevitably must be prepared to make a tremendous investment of time, energy, and resources with the very real possibility of an unsuccessful outcome and no fee recovery of any kind.") (internal quotations omitted) *citing Vizcaino*, 290 F.3d at 1051 ("attorneys whose compensation depends on their winning the case must make up in compensation in the cases they win for the lack of compensation in the cases they lose").

Substantial fee awards encourage counsel to take on risky cases on behalf of clients who cannot pay hourly rates and would therefore not otherwise have realistic access to courts. That access is particularly important for the effective enforcement of public protection statutes, such as the wage laws at issue here. Thus, "private suits provide a significant supplement to the limited resources available to [government enforcement agencies] for enforcing [public protection] laws and deterring violations." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 344 (1979) (addressing anti-trust laws). By incentivizing plaintiffs' attorneys to take on risky, high-stakes, and important litigation, and devote themselves to it aggressively and fully, fee awards serve an important purpose and extend the access of top legal talent to constituencies such as low-wage workers who would otherwise never be able to confront large corporations such as Lyft, who are themselves represented by top-rated and top-billing attorneys.

In this case, counsel have litigated this case for more than three years, with no payment to date and no guarantee of recovery. The financial risk was particularly acute before the case was even filed, and in the early stages of the case, when Plaintiffs' original counsel, Attorney Carlson, was a solo practitioner with no guarantees that a larger firm would be interested in signing on as co-counsel in an uncertain case such as this one. Further, as discussed in *Vizcaino*,

the fees awarded in this case – though modest in comparison to percentages awarded in similar cases – will be used to support future cases on behalf of workers in California, as well as providing compensation for counsel for past and future cases where the risks result in no reward.[3]

### 5. Plaintiffs' Requested Fee Award is Far Less than Awards in Similar Cases

As discussed above, the percentage of the fund requested is far less than the 25% benchmark established by the Ninth Circuit, which weighs in favor of the request. *See In re Omnivision Technologies, Inc. Securities Litigation*, 2015 WL 3542413, at *2 (N.D.Cal., 2015) (finding the fact that counsel sought less than the 25% benchmark (22%) weighed in favor of fee request).

Many, if not most, fee awards in class settlements exceed the 25% benchmark and far exceed Plaintiffs' approximately 14% request here. *Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841, at *4 (E.D.Cal.,2007) (in wage and hour action, stating "fee awards in class actions average around one-third of the recovery" and awarding fees in that amount) (citing 4 Newberg and Conte, Newberg on Class Actions § 14.6 (4th ed.2007)); *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 457–58, 463 (9th Cir.2000) (upholding fee award of 33.3% of $1.725 million settlement); *see also Lusby v.GameStop Inc.*, 2015 WL 1501095, *9 (N.D. Cal. Mar. 31, 2015) (in wage and hour action, awarding fees in the amount of one-third of common fund); *Singer v. Becton Dickinson and Co.*, 2010 WL 2196104, at *8 (S.D.Cal. 2010) (same); *Burden v. SelectQuote Insurance Services*, 2013 WL 3988771, at *4 (N.D.Cal., 2013) (same); *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 450 (E.D.Cal.2013) (same); *Barnes*, 2013 WL 3988804, *4; (same). Accordingly, a comparison of Plaintiffs' request here to the 25% benchmark and awards in similar cases supports Plaintiffs' request of approximately 14%.

---

[3] Plaintiffs' counsel's firm has now opened a second office in San Francisco and is expanding its practice to reach thousands more low-wage workers on the West Coast, which is made possible by the contingency fee system, which provides compensation in some cases that make up for lack of any compensation in other cases. Liss-Riordan Decl. at n. 5.

### 6. The Reaction of the Class (or Lack Thereof) Supports Plaintiffs' Fee Request

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 528–29 (C.D.Cal.2004). Here, after receiving notice of the proposed settlement, the Court received objections from just *eight* of the 202,030 Class Members who received the notice. *See* Plaintiffs' Response to Objections. Of those eight objectors, five commented on the fee request, and only two of these made substantive objections to the amount of fees. One of them (a repeat objector, *see Larsen v. Trader Joe's Co.*, No. 11-CV-05188-WHO, 2014 WL 3404531, at *7 (N.D. Cal. July 11, 2014), *appeal dismissed* (Nov. 17, 2014) mistakenly believed this case had not involved much litigation and appeared not to realize that it had gone through the summary judgment process. Dkt. No. 264 at ¶ 5 (Sweeney). The other objected on the ground that the settlement amount is too high, thus expressing an opposition to this type of case even being filed. Dkt. No. 260 (Cheney). The other three referenced this Motion, but did not argue that the fees requested were too high (Dkt. Nos. 263 (Teamsters), 261 (Gaussoin). The scarcity of objections by Class Members to the settlement, or the fee provision in particular, demonstrates the class's approval of the result in this case and further bolsters counsel's reasonable request for fees.[4]

### 7. A Lodestar Cross-Check, if Applied, Supports Plaintiffs' Fee Request

Both federal and California courts have the discretion to employ (or decline to employ) a "lodestar cross-check" on a request for a percentage of the fund fee award. *Laffitte*, 376 P.3d at 688. However, as noted before, the California Supreme Court in *Laffitte* has now made clear

---

[4] The class notice informed Class Members of the amount that counsel intended to request in fees. *See* Dkt. No. 255 at ¶ 16. In addition, this motion for fees is being filed more than two weeks before the final approval hearing, and Class Members are receiving additional notice today regarding the settlement, informing them that the fee request is now on file and that they are free to submit objections to it, if they wish, before the final approval hearing. *See In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010).

that this cross-check is not required.  Plaintiffs submit that a cross-check is not necessary in this case.  However, even if the Court were to employ one, the cross-check supports the requested fees here.

> a.    *The Court May Exercise its Discretion to Forego a Lodestar Cross-Check.*

The Ninth Circuit has commented that the utility of the lodestar cross-check is limited. *Vizcaino*, 290 F.3d at 1050 ("The lodestar method is merely a cross-check on the reasonableness of a percentage figure, and it is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement."). While in some cases, the cross-check may be a useful reference point in determining the fairness of a fee award, in others it is not. *See Lopez v. Youngblood* (E.D.Cal. Sep. 2, 2011, No. 07-0474-DLB) 2011 WL 10483569 ("A lodestar cross-check is not required in this circuit, and in a case such as this, is not a useful reference point"); *Glass v. UBS Financial Services, Inc.* 2007 WL 221862 (N.D.Cal. Jan. 26, 2007) ("Under the circumstances presented here, where the early settlement resulted in a significant benefit to the class, the Court finds no need to conduct a lodestar cross-check [as] [c]lass counsel's prompt action in negotiating a settlement while the state of the law remained uncertain should be fully rewarded.").

Moreover, it is well recognized that the lodestar cross-check can reward unnecessary overbilling, inflation of timekeeping records, and inefficient litigation. *See Albion Pac. Prop. Res., LLC v. Seligman*, 329 F. Supp. 2d 1163, 1170-71 (N.D. Cal. 2004) (noting that "[a] fee applicant should neither be rewarded for hiring expensive legal counsel nor penalized for hiring more efficient legal counsel. Thus, if a fee applicant can demonstrate that its attorneys billed fewer hours than reasonably competent counsel would have billed, the fee applicant should be reimbursed at an above-average hourly rate"); *Sproul v. Astrue*, 2013 WL 394056, *2 (S.D. Cal. Jan. 30, 2013) ("Courts are loathe to penalize experienced counsel for efficient representation under contingency agreements…"). Indeed, in most cases, counsel are adept at inefficient litigation, thus making the lodestar crosscheck a largely irrelevant formality.

This case is not an average case. This case was one of the first to challenge a "gig economy" company's classification of its workers as independent contractors, and Attorney Carlson undertook tremendous financial risk to file the case. *See* Carlson Decl. at ¶¶ 10-11. Moreover, once the case was filed, counsel litigated the case in a manner designed to proceed to the merits, not to drive up fees and costs with needless discovery motions and the like, and obtained a settlement that did not take into account the prospect that fees might be limited by a lodestar cross-check. *See* Liss-Riordan Decl. at ¶ 16; Carlson Decl. at ¶¶ 14, 16. Under the circumstances here, as well as due to the California Supreme Court's recent holding in *Laffitte*, the Court should not feel required to tether attorneys' fees to a lodestar cross-check.

          *b.*      *In Any Event, The Lodestar Cross-Check, if Applied, Confirms that Plaintiffs' Request is Reasonable*

However, should the Court elect to apply it, the lodestar cross-check – simply a comparison of Counsel's lodestar (the number of hours counsel reasonably expended on the litigation by a reasonable hourly billing rate) to the percentage of the fund requested[5] – supports the request for fees here.

Here, Counsel's lodestar is currently approximately $1,157,250. Liss-Riordan Decl. at ¶¶ 27 (summarizing); 16-26; Carlson Decl. at ¶¶ 14-21.[6] Thus, the requested fee produces an

---

[5]     *See, e.g.*, *Hendricks*, 2016 WL 5462423, at *12 citing *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 579 (2004)

[6]     In assessing counsel's lodestar (for cross-check purposes or otherwise), a court is permitted to "us[e] counsel declarations summarizing overall time spent, rather than demanding and scrutinizing daily time sheets in which the work performed was broken down by individual task." *Laffitte*, 376 P.3d at 688; *see also Ackerman v. W. Elec. Co.*, 643 F. Supp. 836, 863-64 (N.D. Cal. 1986), *aff'd*, 860 F.2d 1514 (9th Cir. 1988) (noting that "the Ninth Circuit requires only that the affidavits be sufficient to enable the court to consider all the factors necessary to determine a reasonable attorney's fee award …California law is in accord with the Ninth Circuit view."); *In re Rossco Holdings, Inc.*, 2014 WL 2611385, *8 (C.D. Cal. May 30, 2014) ("In California, an attorney need not submit contemporaneous time records in order to recover attorney fees"); *Rodgers v. Claim Jumper Rest., LLC*, 2015 WL 1886708, *10 (N.D. Cal. Apr. 24, 2015) ("Plaintiff's counsel is not required to record in great detail how each minute of his time was expended" and can instead "meet his burden of justifying his fees by simply listing his hours and "identifying the general subject matter of his time expenditures"); *Brinskele v. United*

NOTICE OF MOTION AND MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS AND FOR CLASS REPRESENTATIVE SERVICE AWARDS
CASE NO. 3:13-CV-04065-VC

15

"implicit multiplier" of 3.18. *Id.* However, this multiplier will likely be significantly lower, as it does not account for future work, including time spent finalizing these papers, further work overseeing the claims administration process, likely defending the settlement on appeal, and ultimately enforcing the settlement. Liss-Riordan Decl. at ¶ 17; Carlson Decl. at ¶ 15. *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481–82 (S.D.N.Y. 2013) (noting that "[i]n wage and hour cases, Class Counsel is often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund…[b]ecause class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower because the award includes not only time spent prior to the award, but after in enforcing the settlement.") (internal citations and quotations omitted).

But whatever future work may occur, the current multiplier is amply supported by legal authority. *Vizcaino*, 290 F.3d at 1051, n. 6 (affirming district court's percentage-based fee award that represented multiplier of 3.65 and noting that "most" multipliers in common fund cases range from 1.0 to 4.0); *McKenzie v. Federal Exp. Corp.*, 2012 WL 2930201 at *10 (C.D.Cal. July 2, 2012) (in wage and hour action, approving percentage-based fee award that represented multiplier of 3.2); *Morgret v. Applus Technologies, Inc.*, 2015 WL 3466389, at *17

---

*States*, 2014 WL 4832263, *2 (N.D. Cal. May 22, 2014) ("[b]ased upon the court's familiarity with this litigation and counsel's work, the court is able to assess the reasonableness of the hours claimed by counsel without the need to inspect contemporaneous time records.", report and recommendation adopted, 2014 WL 4826153 (N.D. Cal. Sept. 29, 2014); *Rodriguez v. Cty. of Los Angeles*, 96 F. Supp. 3d 1012, 1023-24 (C.D. Cal. 2014) ("Courts generally accept the reasonableness of hours supported by declarations of counsel."); *Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1169 (N.D. Cal. 2015) ("[T]he party seeking fees need not provide comprehensive documentation to prevail"); *Cotton v. City of Eureka, Cal.*, 889 F. Supp. 2d 1154, 1177 (N.D. Cal. 2012) ("The lack of contemporaneous records does not justify an automatic reduction in the hours claimed, but such hours should be credited only if reasonable under the circumstances and supported by other evidence such as testimony or secondary documentation").

(E.D.Cal.,2015) (in wage and hour action, approving percentage-based fee award that represented multiplier of 3.9); *Buccellato v. AT & T Operations, Inc.,* No. 10 Civ. 463, 2011 WL 3348055, at *2 (N.D.Cal. Jun. 30, 2011) (in wage and hour action, approving percentage-based fee award that represented multiplier of 4.3); *Wershba v. Apple Computer, Inc.*, 110 Cal.Rptr.2d 145, 170 (Cal.App. 6 Dist. 2001) ("Multipliers can range from 2 to 4 or even higher."). Indeed, legions of courts presiding over wage and hour class actions have approved of much higher multipliers (either in the context of a lodestar crosscheck or when fees are awarded pursuant to the lodestar formula).[7] Numerous federal and state courts in other types of complex litigation have done the same.[8]

---

[7] *See Johnson v. Brennan*, 2011 WL 4357376, at *20 (S.D.N.Y. 2011) (in wage and hour action, noting that "[c]ourts regularly award lodestar multipliers from two to six times lodestar"); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481–82 (S.D.N.Y. 2013) (in wage and hour action, approving of 6.3 multiplier in lodestar cross-check analysis); citing *Ramirez v. Lovin' Oven Catering Suffolk, Inc.,* No. 11 Civ. 520, 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) (in wage and hour action, approving of 6.8 multiplier in lodestar cross-check analysis); *Davis v. J.P. Morgan Chase & Co.,* 827 F.Supp.2d 172, 184–86 (W.D.N.Y.2011) (in wage and hour action, approving of 5.3 multiplier in lodestar cross-check analysis); *see also Zeltser v. Merrill Lynch & Co., Inc.*, 2014 WL 4816134, at *10 (S.D.N.Y.,2014) (in wage and hour action, approving of 5.1 multiplier in lodestar cross-check analysis and noting "[w]hile this multiplier is near the higher end of the range of multipliers that courts have allowed, this should not result in penalizing Plaintiffs' counsel for achieving an early settlement, particular where, as here, the settlement amount is substantial.");; *Maley v. Del Global Techs. Corp.,* 186 F.Supp.2d 358, 371 (S.D.N.Y.2002) ("modest multiplier" of 4.65 in wage and hour class action was "fair and reasonable").

[8] *See Steiner v. American Broadcasting Co., Inc.,* 248 Fed.Appx. 780, 783, at *2 (9th Cir. 2007) (affirming percentage of fund award 6.85 times lodestar); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (awarding fees that came to multiplier of 8.3); *In re Enron Corp. Sec., Derivative & ERISA Litig.,* 586 F.Supp.2d 732, 803 (S.D.Tex.2008) (multiplier of 5.2); *In re Cardinal Health Inc. Sec. Litig.,* 528 F.Supp.2d 752, 768 (S.D. Ohio 2007) (multiplier of 6); *In re Rite Aid Sec. Litig.,* 362 F.Supp.2d 587 (E.D.Pa.2005) (multiplier of 7); *Weiss v. Mercedez–Benz,* 899 F.Supp. 1297 (D.N.J.1995) (multiplier of 9.3); Conley v. Sears, Roebuck & Co., 222 B.R. 181, 182 (D.Mass.1998) (multiplier of 8.9); *Natural Gas Anti-Trust Cases I, II, III & IV,* 2006 WL 5377849, at *4 (Cal.Sup.Ct. 2006) ("This Court and numerous cases have applied multipliers of between 4 and 12 to counsel's lodestar in awarding fees."); *In re California Indirect Purchases*, 1998 WL 1031494, at *10 (Cal.Sup.Ct. 1998) (citing *Wilson v. Bank of America Nat'l Trust & Sav. Ass'n.,* No. 643872 (Cal.Sup.Ct. 1982) (multiplier of 10 times the hourly rate awarded) (cited in 3 Newberg & Conte, Newberg on Class Actions, § 1403, at 14-5 n.21), and *Glendora*

Accordingly, the multiplier of 3.18 here is reasonable – particularly when the multiplier will likely be far less when all of the work finally done. Additionally, Plaintiffs submit that awarding counsel the full amount of the requested fees to advance court access to low income workers and to litigate forward-thinking cases would result in greater social value than would spreading around a small amount of additional money to class members.

### i. Counsel's Hours Worked are Reasonable

In order to calculate counsel's lodestar for purposes of the cross-check, Plaintiffs have submitted declarations attesting to the estimated number of hours Ms. Liss-Riordan, Mr. Carlson, Ms. Pagano, and the firm's paralegals have spent on this litigation. Such estimates are sufficient documentation of hours worked under the lodestar analysis. *Laffitte*, 1 Cal.5th at 505 ("detailed time sheets" are not required as part of a lodestar calculation – whether as a cross-check or otherwise); *see also* citations at n. 6.

Their hours are summarized as follows:

| Name | Total Hours Worked to Date |
|------|---------------------------|
| Shannon Liss-Riordan (attorney) | 570 |
| Matthew Carlson (attorney) | 1,290 |
| Adelaide Pagano (attorney) | 50 |
| Sarah Mason, Elizabeth Lopez-Beltrán, Erin O'Reilly (paralegals) | 200 |

Counsel's time spent on this case can be generally divided into several categories of activity, all of which is recoverable under well-established case law:

- Pre-litigation investigation: *see, e.g.*, *Sierra Club v. U.S. E.P.A.*, 625 F. Supp. 2d 863, 870 (N.D. Cal. 2007); *see also Lema v. Comfort Inn Merced*, 2014 WL 1577042 (E.D. Cal. Apr. 17, 2014) (approving of pre-litigation work "reasonably necessary to secure information, evaluate Plaintiff's case, and prepare the complaint for filing")

*Community Redevelopment Agency v. Demeter*, 202 Cal.Rptr. 389, 398, 155 Cal.App.3d 465, 479 (Cal.App. 2 Dist.,1984) (approving of 12 times lodestar multiplier); *see also Williams v. Weyerhaeuser Co.*, 2002 WL 373578, at *12 (Cal.App. 1 Dist.,2002) (affirming percentage of fund fee award that was 4.48 times lodestar).

- Legal research and drafting: *See Santiago v. Equable Ascent Fin.*, 2013 WL 3498079, at *6 (N.D. Cal. July 12, 2013).

- Propounding and responding to discovery: *See, e.g., Yeager v. Bowlin*, 2010 WL 2303273, at *7 (E.D. Cal. June 7, 2010) *aff'd*, 495F. App'x 780 (9th Cir. 2012) (drafting discovery); *Gauchat-Hargis v. Forest River, Inc.*, 2013 WL 4828594, at *4 (E.D. Cal. Sept. 9, 2013) (responding to discovery).

- Depositions: *E.g., Garcia v. Resurgent Capital Services, L.P.*, 2012 WL 3778852, at *6 (N.D.Cal.,2012).

- Communication between co-counsel: *E.g., Defenbaugh v. JBC & Associates, Inc.*, 2004 WL 1874978 (N.D. Cal. Aug. 10, 2004).

- Communication with opposing counsel: *E.g., Hernandez v. Erin Capital Mgmt., LLC*, 2011 WL 4595802, at *3 (C.D. Cal. Oct. 3, 2011).

- Settlement conferences: *E.g., Lota by Lota v. Home Depot U.S.A., Inc.*, 2013 WL 6870006, at *10 (N.D. Cal. Dec. 31, 2013).

- Court appearances: *E.g., Alvarado v. FedEx Corp.*, 2011 WL 4708133, at *28 (N.D.Cal. 2011).

- Settlement administration: *E.g., Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *30 (N.D.Cal. 2011).[9]

Because this case has been efficiently litigated, there is no need for the Court to comb through records of numerous attorneys and staff to eliminate duplicative billing, nor could there be a reasonable argument that this case was overstaffed. Notably, collaboration and coordination

---

[9]     Attorney Liss-Riordan has spent a significant amount of time traveling to the West Coast for this case. While travel time is compensable, *U.S. v. City and County of San Francisco*, 748 F.Supp. 1416, 1422 (N.D.Cal. 1990), these hours are not included here as much of the travel was for work on this case as well as other cases. Liss-Riordan Decl. at n. 5. Additionally, Attorney Liss-Riordan has also spent a substantial amount of time communicating with the press regarding this case. This time is also compensable, *City and County of San Francisco*, 748 F.Supp. 1416 at 1423, but is not included here either.

In addition, Attorney Carlson performed a great deal of administrative clerical work on this case prior to his association with Attorney Liss-Riordan and Lichten & Liss-Riordan, P.C. Such work is recoverable by a solo practitioner without support staff, *Sierra Club*, 625 F. Supp. 2d at 869, but these hours are also not included here. Carlson Decl. at n. 1.

of efforts is *not* the same as impermissible double billing. *Sierra Club*, 625 F. Supp. 2d at 868. This is specifically so with respect to work on, for example, legal research or a motion where attorneys may be given discrete tasks, *Garcia v. Resurgent Capital Servs., L.P.*, 2012 WL 3778852, at *7 (N.D. Cal. Aug. 30, 2012), or where there is reason for multiple persons to attend depositions or court hearings. *Rodriguez v. Barrita, Inc.*, 2014 WL 2967925, at *6 (N.D. Cal. July 1, 2014). Indeed, it would be uncommon for a single attorney to litigate a complex class action. Additionally, as noted above, Plaintiffs' estimates do not take into account work finalizing these papers, time that will be spent finishing the administration of the settlement, as well as time that may need to be spent defending the settlement on appeal. Liss-Riordan Decl. at ¶ 17; Carlson Decl. at ¶ 15. They are also conservative and under-inclusive, as they do not reflect many hours spent strategizing about the case. Carlson Decl. at ¶¶ 13, 21.

### ii.    *Counsel's Hourly Rates are Reasonable*

To determine a reasonable hourly rate, courts look to the rates for comparable legal services in the local community, in this case the Northern District of California. *E.g., Gong-Chun v. Aetna Inc.*, 2012 WL 2872788, at *21 (E.D. Cal. July 12, 2012). Also relevant is a comparison of plaintiffs' counsel's asserted rates to defense counsel's rates charged to their clients. *Real v. Cont'l Grp., Inc.*, 116 F.R.D. 211, 213 (N.D. Cal. 1986) (noting that "Defendant's counsel's hours and rates are relevant" to the determining the reasonableness of the hourly rate and hours requested by plaintiff's counsel in their fee petition).

Plaintiffs submit the following hourly rates for counsel and staff: [10]

| Name | Hourly Rate |
|------|-------------|
| Shannon Liss-Riordan (attorney) | $800 |
| Matthew Carlson (attorney) | $500 |
| Adelaide Pagano (attorney) | $325 |
| Sarah Mason, Elizabeth Lopez-Beltrán, Erin O'Reilly (paralegals) | $200 |

---

[10]    *See* Liss-Riordan Decl. at ¶¶ 18-26; Carlson Decl. at ¶¶ 17-20

Attorney Liss-Riordan's rate is in line with, if not lower, than the rates that have been approved in this district for other top lawyers. *See, e.g., Gutierrez v. Wells Fargo Bank, N.A.*, 2015 WL 2438274, *5 (N.D. Cal. May 21, 2015) (in consumer class action, finding reasonable rates for Bay Area attorneys of between $475-$975 for partners); *see also Betancourt v. Advantage Human Resourcing, Inc.*, 2016 WL 344532, *8 (N.D. Cal. Jan. 28, 2016) (in employment law class action, court recently found "reasonable rates for partners range from $560 to $800"); *In re Magsafe Apple Power Adapter Litig.*, 2015 WL 428105, *12 (N.D. Cal. Jan. 30, 2015) (in consumer class action, finding that "[i]n the Bay Area, reasonable hourly rates for partners range from $560 to $800"). Indeed, Ms. Liss-Riordan's rate is less than at least one partner who has worked for defense counsel's firm. *In re Butler*, 2015 WL 3658409, at *2 (Cal.App. 1 Dist., 2015) ($950 per hour), is on par with established Bay Area wage and hour practitioners, *see Villalpando v. Exel Direct Inc.*, 3:12-cv-04137-JCS, Dkt. No. 344-1 at ¶ 74 (asserting $795 hourly rate for wage and hour firm partner), and is less than rates that have been charged by defendant's lead counsel against whom she is litigating in *O'Connor*. Liss-Riordan Decl. at ¶ 18.

Ms. Liss-Riordan's work warrants this rate (if not higher) because of her exceptional qualifications and status as a national expert on wage and hour litigation. She is especially well known for successfully representing low wage workers in scores of cases that include precedent-setting trials and appeals. In this case, Ms. Liss-Riordan, along with the other attorneys working with her and under her direction, were able to draw from the wealth of experience that she and her firm have developed over the last decades in the area of wage law, and her particular expertise in independent contractor misclassification cases. Ms. Liss-Riordan's national prominence in this field, breadth of experience, success in litigating employment misclassification cases in new and emerging industries, and comparison to defense counsel's rates, justifies an hourly rate of $800, if not more.

The rate asserted for Mr. Carlson, who was admitted to practice in 2010, is also reasonable. *Betancourt*, 2016 WL 344532, *8 (reasonable rates for associates in the Bay Area

range from $285 to $510). Comparatively, defense counsel's firm charges $500 per hour for an attorney who, like Mr. Carlson, graduated from law school in 2010. *In re Butler*, 2015 WL 3658409, at *2. Mr. Carlson's rate is also on par with plaintiffs-side wage and hour attorneys in the Bay Area with <u>less</u> experience. *Villalpando*, 3:12-cv-04137-JCS, Dkt. No. 344-1 at ¶ 74 (asserting $500 hourly rate for plaintiffs-side wage and hour attorney admitted in 2012). Accordingly, Mr. Carlson's $500 hourly rate is reasonable.[11]

The rate asserted for Ms. Pagano, a 2014 Harvard Law School graduate who has more than two years of licensed experience, is also reasonable. *See, e.g., Dixon v. City of Oakland*, 2014 WL 6951260, *7 (N.D. Cal. Dec. 8, 2014) (approving hourly rate of $325 for associate with two years' experience); *Cuviello v. Feld Entm't, Inc.*, 2015 WL 154197, *2 (N.D. Cal. Jan. 12, 2015) (awarding fees of $325 per hour to an associate with 2 years' experience); *San Francisco Baykeeper v. W. Bay Sanitary Dist.*, 2011 WL 6012936, *7 (N.D. Cal. Dec. 1, 2011) (awarding rate of $300 for attorney with 2 years' experience); *see also Villalpando*, 3:12-cv-04137-JCS, Dkt. No. 344-1 at ¶ 74 (asserting $500 hourly rate for plaintiffs-side wage and hour attorney admitted in 2014).

Lastly, the rates asserted by counsel's firm's paralegals are reasonable. *Betancourt*, 2016 WL 344532, *8 (reasonable rates and paralegals and litigation support staff range from $150 to $240); *see also In re Butler*, 2015 WL 3658409, at *2 (noting that defense counsel's firm charged $260 per hour for paralegal work); *Dixon*, 2014 WL 6951260, at *10 ("The court finds that a reasonable hourly rate for paralegals … is $200 per hour"); *Zoom Elec., Inc.*, 2013 WL 2297037, *4 (quoting market rates of "between $180 and $225 per hour for law clerks and paralegals" in 2013); *see also Villalpando*, 3:12-cv-04137-JCS, Dkt. No. 344-1 at ¶ 74 (asserting up to $250 hourly rate for plaintiffs-side wage and hour paralegals).

//

---

[11] Mr. Carlson also had an hourly rate of $425 awarded approximately three years ago. Carlson Decl. at ¶ 17-18; *see also Gates v. Deukmejian*, 987 F.2d 1392, 1407 (9th Cir. 1992) (looking to rate at the time of fee application rather than rate charged at the time litigation began).

### iii. Counsel's Lodestar

| Name | Hours Worked to Date | Hourly Rate | Lodestar |
|---|---|---|---|
| Shannon Liss-Riordan (attorney) | 570 | $800 | $456,000 |
| Matthew Carlson (attorney) | 1,290 | $500 | $645,000 |
| Adelaide Pagano (attorney) | 50 | $325 | $16,250 |
| Sarah Mason, Elizabeth Lopez-Beltrán, Erin O'Reilly (paralegals) | 200 | $200 | $40,000 |
| **Total Lodestar** | | | $1,157,250 |

### iv. A 3.18 Multiplier to Counsel's Lodestar Is Reasonable Here

California courts have a "relatively permissive attitude on the use of multipliers." *Lealao v. Beneficial California, Inc.*, 97 Cal.Rptr.2d 797, 815, 82 Cal.App.4th 19, 43 (Cal.App. 1 Dist.,2000). Once the court has fixed the lodestar, a court may apply a multiplier to the lodestar if warranted after the consideration of certain enhancement factors like (1) the results obtained; (2) the novelty and difficulty of the questions involved; (3) the requisite legal skill necessary to litigate the case; (4) the preclusion of other employment due to acceptance of the case; and (5) whether the fee is fixed or contingent. *Hendricks*, 2016 WL 5462423, at *12 citing *Serrano v. Priest*, 20 Cal. 3d 25, 48 (1977). Notably, while federal law generally precludes courts from using as a basis for a multiplier factors that has already been "baked in" to unadorned lodestar calculations (*i.e.*, the novelty and complexity of the case, counsel's skill, and the contingent risk enhancement), California law is not so restrictive. *Flannery v. California Highway Patrol*, 71 Cal.Rptr.2d 632, 642, 61 Cal.App.4th 629, 645 (Cal.App. 1 Dist.,1998) (rejecting federal restrictions on lodestar multipliers); *see also Lealao*, 97 Cal.Rptr.2d at 815.

In this case, as discussed thoroughly in Plaintiffs' various filings, Plaintiffs have achieved excellent monetary and non-monetary results for class members. They have made favorable law for other workers allegedly misclassified as independent contractors. The novelty and difficulty of the questions involved in this litigation, and the skill required to recognize and litigate them, should be immediately apparent. The fee in this case was not guaranteed and, as

described above, Attorney Carlson filed this case on his own, initially without the support of an established law firm or any support staff. For a long period of time, while a sole proprietor, he devoted approximately 50% of his working hours to this case, to the exclusion of other work that would have earned him contemporaneous income. Carlson Decl. at ¶ 13. Accordingly, if the Court elects to use the lodestar method, Plaintiffs submit that a 3.18 multiplier is reasonable.[12]

## C. Plaintiffs' Request for Class Representative Service Enhancements is Reasonable

Under both federal and California law, named plaintiffs are generally entitled to a service award for initiating the litigation on behalf of absent class members, taking time to prosecute the case, and incurring financial and personal risk. *See In re Consumer Privacy Cases*, 96 Cal.Rptr.3d at 131 (affirming $5,000 incentive payments from $10.75 million fund); *Lusby*, 2015 WL 1501095, *5 (awarding $7,500 to each of the four class representatives from $750,000 fund); *Covillo v. Specialtys Cafe*, 2014 WL 954516, *8 (N.D. Cal. Mar. 6, 2014) (awarding $8,000 to class representatives from $2,000,000 fund); see also *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir.2000) (approving $5,000 to two plaintiff representatives of 5,400 potential class members in $1.75 million settlement); *Hopson v. Hanesbrands, Inc.*, 2009 WL 928133, *10 (N.D.Cal. Apr. 3, 2009) (approving $5,000 award to one member of 217 member class from $408,420 settlement amount).

In this case, the requested service enhancements to Plaintiffs Cotter, Maciel, and Knudtson in the amounts of $5,000, $5,000, and $2,500 are reasonable. These enhancement payments, totaling $12,500, comprise only a tiny fraction – .046% – of the overall settlement amount. *See Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 462 (E.D. Cal. 2013) (finding total incentive payment of .62% of entire settlement reasonable). Likewise, as will be documented in Plaintiffs' Motion for Final Approval, there is no "drastic disparity" in the size of each payment relative to the settlement shares of class members, some of whom will be receiving thousands of dollars in their settlement payment. *See id.*

---

[12] Notably, Plaintiffs' fee request is inclusive of their out-of-pocket costs, which, to date, are more than $30,000. Liss-Riordan Decl. at ¶ 28.

Further, the Plaintiffs' incentive payments are warranted by their hard work on this case and the risk undertaken by them on behalf of the class. Plaintiff Cotter has had his name attached to this case since its inception. Both Plaintiffs Cotter and Maciel sat for full day depositions; Plaintiff Maciel flew to San Francisco from Mexico specifically for her deposition and paid out of her pocket to do so and has not yet been reimbursed. Carlson Decl. at ¶ 22. As documented in counsel's declaration, all three Plaintiffs worked closely with counsel to respond to multiple sets of document requests, interrogatories, and requests for admission, and produced more than 1,000 pages of documents. Carlson Decl. at ¶¶ 23-25. Additionally, given the inordinate attention this case has received, potential employers have seen, and undoubtedly will see, Plaintiffs' names associated with this litigation – a fact not helpful to Plaintiffs' potential employment prospects, particularly with "gig economy" companies. Carlson Decl. at ¶ 26. Under these circumstances, the requested enhancements are reasonable, if not low.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion and enter the submitted proposed Order.


Dated: November 16, 2016                    LICHTEN & LISS-RIORDAN, P.C.


                                            By: ___/s/ Shannon Liss-Riordan_____
                                                Shannon Liss-Riordan
                                                Attorney for Plaintiffs