UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK COTTER, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>LYFT, INC.,<br><br>        Defendant. | Case No.  13-cv-04065-VC<br><br>**ORDER GRANTING FINAL APPROVAL OF SETTLEMENT AGREEMENT**<br><br>Dkt No. 271, 272 |

        The motion for final approval of the settlement agreement is granted.  The agreement is not perfect.  And the status of Lyft drivers under California law remains uncertain going forward.  But the agreement falls within a range of reasonable outcomes given the benefits it achieves for drivers and the risks involved in taking the case to trial.

        This ruling does not rehash the history of the case or the issues addressed in prior rulings.  For a full background on the case, please see those prior rulings, which can be accessed at the Court's website.[1]  *Cotter v. Lyft, Inc.*, Dkt. No. 94, 60 F. Supp. 3d 1067 (N.D. Cal. 2015) (denying the parties' cross-motions for summary judgment); *Cotter v. Lyft, Inc.*, Dkt. No. 200, 176 F. Supp. 3d 930 (N.D. Cal. 2016) (denying the motion for preliminary approval of the $12 million settlement); *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030 (N.D. Cal. 2016) (granting the motion for preliminary approval of the $27 million settlement); *Cotter v. Lyft, Inc.*, Dkt. No. 293, 13-cv-4065 (N.D. Cal. Dec 23, 2016) (requiring supplemental notice to class members).  The first section of this ruling addresses one additional substantive objection to the settlement

---

[1] http://www.cand.uscourts.gov/VC/Cotter-v-Lyft.

agreement. The second section adopts, in large part but not fully, the language from the proposed order submitted by the parties relating to final approval of the settlement agreement and the motion for attorneys' fees filed by the plaintiffs.

# I

Almost all substantive concerns relating to the settlement agreement were addressed in two prior rulings: the order denying the request for preliminary approval of the $12 million settlement, and the order granting the request for preliminary approval of the $27 million settlement. Of the new substantive objections raised at the final approval stage, all are rejected, and only one is significant enough to merit a detailed written response: the objection by the Teamsters to a portion of the release language. Under this language, any driver who did not opt out of the settlement class will release all claims that were brought in the lawsuit, as well as all claims that arise under the facts raised in the lawsuit (even if those claims weren't brought). One claim not brought in this case, but that would arise under the same facts, is a claim based on the federal Fair Labor Standards Act. The Teamsters contend a district judge should not approve a settlement in a Rule 23 wage-and-hour class action, brought under state law, that releases FLSA claims.

The language of the FLSA certainly doesn't cover this situation. The language the Teamsters cite speaks only to the circumstances in which a plaintiff will be allowed to *participate* in an FLSA action, not to circumstances in which a plaintiff who is not participating in an FLSA action will be allowed to release potential FLSA claims:

> An [FLSA] action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

The Teamsters argue that this is worker-protective language, designed to help ensure that potential FLSA plaintiffs will not lose the opportunity to pursue their own claims. They thus

seem to contend that, even if the language of the statute doesn't directly speak to waivers of future FLSA claims, district courts should derive from this worker-protective language a principle that FLSA waivers may not (or should not) be included in Rule 23 class settlements. The problem with this argument, among other things, is that Congress did not actually adopt the above-quoted language with a worker-protective purpose. To the contrary, it was part of an effort by Congress in 1947 to limit FLSA liability for employers. *See* 29 U.S.C. § 251; *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989). And as part of this effort, Congress amended the statute to limit the ability of workers to participate in FLSA actions, allowing participation only when a worker affirmatively opts in, as opposed to before, when a "class" in an FLSA action could include anyone who didn't opt out. *See* Portal-to-Portal Act of 1947, Pub. L. No. 80-49, § 5, 61 Stat. 84, 87.

It's true, as the Teamsters note, that a couple of district court rulings suggest that Rule 23 settlements can't, or shouldn't, release FLSA claims. *Stokes v. Interline Brands, Inc.*, No. 12-CV-05527-JD, 2014 WL 5826335, at *4 (N.D. Cal. Nov. 10, 2014); *Tijero v. Aaron Bros., Inc.*, No. C 10-01089 SBA, 2013 WL 60464, at *7-8 (N.D. Cal. Jan. 2, 2013). But those decisions don't explain how the literal language of section 216 could be read to preclude a release of FLSA claims to settle a lawsuit asserting state law claims. Nor do they explain how the purposes behind this language could lead to a conclusion that FLSA claims should not be released.[2]

In short, the statutory language does not bar the release of unasserted FLSA claims in Rule 23 class actions, and there is nothing about the purpose behind this language that should cause a district court to decline to approve such a waiver. In other words, there is no greater

---

[2] For their part, the plaintiffs and Lyft cite cases holding that the doctrine of claim preclusion bars an FLSA suit by someone who was subject to a prior Rule 23 settlement in which FLSA claims were released. *See, e.g.*, *Richardson v. Wells Fargo Bank, N.A.*, 839 F.3d 442, 450-52 (5th Cir. 2016); *Rangel v. PLS Check Cashers of California, Inc.*, No. CV 16-6119 DMG (SSX), 2016 WL 6821788, at *6 (C.D. Cal. Nov. 16, 2016). Although those cases are somewhat helpful in explaining why there is no great concern with releasing FLSA claims in a Rule 23 class action settlement so long as the compensation for the release of all claims is fair and reasonable, they don't fully answer the question here, because claim preclusion would apply regardless of whether the prior judgment approving the settlement was right or wrong. *See, e.g.*, *Lipnicki v. Meritage Homes Corp.*, No. 3:10-CV-605, 2014 WL 923524, at *16 (S.D. Tex. Feb. 13, 2014).

3

reason to prevent Rule 23 class settlements from releasing unasserted FLSA claims than there is to prevent those settlements from releasing other unasserted claims that arise from the facts of the case. What matters is that the settlement terms are fair and reasonable in light of all the claims being released (asserted or not), that class members receive appropriate notice of the proposed settlement, and that class members be given the chance to opt out of the class if they wish to preserve their own claims.

## II

As is customary with class action settlements, the parties have submitted a proposed order for the Court to sign. These proposed orders typically contain language explaining how the procedural requirements for a class action settlement have been met, stating that all properly-filed objections have been considered, finding that the request for attorneys' fees is reasonable, and holding that the overall settlement is fair. Sometimes these proposed orders also contain language enjoining members of the settlement class from filing any action in the future based on claims that are released in the agreement. The proposed order submitted by the parties in this case includes language to that effect. This language is unnecessary and likely inappropriate (if not unconstitutional). If members of the settlement class wish to file an action against Lyft in the future, it will be up to the forum in which the action is filed to decide whether that action is barred by this settlement. The Court therefore declines to adopt that language. This has the practical effect of rendering inoperable the language in the settlement agreement by which the parties agree to an injunction barring future claims that may be released by virtue of the settlement. *See* Dkt. No. 206-1 at ¶¶ 17, 29(b), 30(l), 70.

Other than that, the language from the proposed order submitted by the parties is adopted largely verbatim, as follows:

1.     The Court grants the Motion for Final Approval of the Revised Class Action Settlement Agreement and Release and grants final approval to the Settlement. The Settlement Agreement is hereby incorporated into this District Court Final Approval Order ("Order and

Final Judgment"), and all terms used herein shall have the same meanings set forth in the Settlement Agreement.

2.	This Court has personal jurisdiction over all Settlement Class Members and subject matter jurisdiction to approve the Settlement Agreement.

3.	The Court confirms its previous certification of the following Settlement Class, for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23(b)(3): All Lyft Drivers who gave at least one Ride in California during the period from May 25, 2012 through the date of the Preliminary Approval Order (July 1, 2016).  Excluded from the class are Class Counsel and their employees and immediate family members and the judicial officers and associated court staff assigned to the Action and their immediate family members.

4.	The Court confirms its previous appointment of the following people as Class Representatives:  Patrick Cotter, Alejandra Maciel, and Jeffrey Knudtson.  The Court finds that these Class Representatives have adequately represented the Settlement Class for purposes of entering into and implementing the Settlement.

5.	In accordance with Plaintiffs' Motion for Attorneys' Fees, Expenses, and Enhancement Payments, the Court finds that the following Enhancement Payments are fair and reasonable, and orders said awards to be paid pursuant to the Settlement Agreement:

  i)	Patrick Cotter: $5,000.

  ii)	Alejandra Maciel: $5,000.

  iii)	Jeffrey Knudtson: $2,500.

6.	The Court confirms its previous appointment of the law firm of Lichten & Liss-Riordan, P.C. as Class Counsel.

7.	The Court finds that Class Counsel have adequately represented the Settlement Class for purposes of entering into and implementing the Settlement.

8.	The Court hereby awards to Class Counsel attorneys' fees in the amount of $3,654,116.62 (the requested $3,675,000 less $20,883.38 for the costs of administering supplemental notice).  *See* Dkt. No. 293 at ¶ 6.  The Court finds that the attorneys' fee award is

fair and reasonable under the percentage-of-the-recovery method based upon the following factors: (1) the results obtained by counsel in this case; (2) the significant risks and complex issues involved in this case, which required a high level of skill and a high quality of work to overcome; (3) the fees' contingency upon success, which meant counsel risked time and effort and advanced costs with no guarantee of compensation; (4) the range of awards made in similar cases, which justifies the award requested here that represents only approximately 14 percent of the Settlement Amount; and (5) the notice and opportunity to object available to Class Members and the absence of any compelling objections.  These factors justify an award that falls well below the Ninth Circuit's 25 percent benchmark.  The Court therefore finds that the requested fee award comports with the applicable law and is justified by the circumstances of this case.  The Court understands that Class Counsel is not seeking additional out-of-pocket costs and on that basis declines to award any costs.

9. The Court confirms its previous appointment of Garden City Group as the Settlement Administrator and finds that it has so far fulfilled its duties under the Settlement.

10. The Court orders that $350,883.38 ($330,000 from the settlement fund, plus the $20,883.38 deducted from Plaintiffs' counsel's fee award as set forth above) shall be paid to the Settlement Administrator for expenses relating to notice and administration of the Settlement.  This is in addition to the $100,000 already received by the Settlement Administrator for the fulfillment of its duties.

11. The Court confirms its previous findings in the Preliminary Approval Order that, for settlement purposes only, the Action meets all the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3).

12. The Court approves the Settlement set forth in the Settlement Agreement, with the understanding that the terms purporting to enjoin future actions have been rendered inoperable by this ruling.  The Court finds that the Settlement Agreement is, within the meaning of Rule 23(e) of the Federal Rules of Civil Procedure, fair, reasonable, and adequate and in the best interests of, the Named Plaintiffs, the Settlement Class, and each of the Settlement Class

Members, and is consistent and in compliance with all requirements of due process and federal law. The Court further finds that the Settlement is the result of arm's-length negotiations between experienced counsel representing the interests of the Named Plaintiffs, the Settlement Class Members, and the Defendant. The Court further finds that the Parties have evidenced full compliance with the Court's Preliminary Approval Order and other Orders relating to this Settlement. The Settlement shall be consummated pursuant to the terms of the Settlement Agreement, which the Parties are hereby directed to perform.

13. The Court finds that the Class Notice plan as performed by the Parties – including the form, content, and method of dissemination of the Class Notice and Supplemental Notice to Settlement Class Members, as well as the procedures followed for locating (when necessary) current postal addresses for Settlement Class Members for notice purposes: (i) constituted the best practicable notice; (ii) was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action and of their right to exclude themselves or object to the Settlement and to appear at the Fairness Hearing; (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) met all applicable requirements of Federal Rule of Civil Procedure 23 and due process, and any other applicable rules or law.

14. Fed. R. Civ. P. 23(c)(2)(B) requires that class notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."

15. The Court finds that the notice program, previously approved by the Court in its Preliminary Approval Order, and supplemented by the additional notice called for in the Court's December 23, 2016 order, has been implemented and complies with Fed. R. Civ. P. 23(c)(2)(B). The Preliminary Approval Order outlined the form and manner by which the Settlement Class

Members would be provided with notice of the Settlement, the Fairness Hearing, and related matters.

16. The notice program was extensive and robust. Among other things, it included individual notice via email (and, as necessary, postal mail) to every member of the Settlement Class for whom contact information was available. On August 30, 2016, the Settlement Administrator sent the Class Notice (with claim submission instructions) by email to the 202,030 Class Members for whom an email address was available and by postal mail to the 252 Class Members for whom an email address was unavailable. For those email messages that were returned as undeliverable, on September 8, 2016, the Administrator sent a Class Notice and a claim form by postal mail. For those postal mail messages that were returned as undeliverable, the Settlement Administrator made multiple additional efforts to identify new contact information. Ultimately, the Settlement Administrator successfully contacted 201,678 Class Members, which represents approximately 99.6 percent of the Class.

17. Following these initial efforts, the Administrator sent a reminder message by email on November 4, 2016 to all those Class Members who had not yet submitted claims. In addition, the Administrator sent a reminder message by postal mail on November 11, 2016 to all those Class Members who had not received the November 4, 2016 reminder via email (because an email address was unavailable) and to all those Class Members who had not yet submitted claims and whose Settlement Payments may exceed $200. The Administrator sent another message by email to all Class Members on November 16, 2016. This most recent message reminded Class Members who had not yet filed claims to do so. The message also informed Class Members that Class Counsel's fee petition had been filed and that any objections to that petition could be submitted through November 30, 2016.

18. On December 23, 2016, the Court ordered the parties and Administrator to allow for a second notice period beginning not later than January 1, 2017, and concluding on January 31, 2017. The Supplemental Notice, approved by the Court, informed Class Members that they

had until January 31, 2017, to opt out from the settlement and to object to the settlement and/or the fee petition filed on November 16, 2016.

19. On December 30, 2016, the Administrator emailed Supplemental Notices to the 198,631 Class Members for whom it had viable email addresses. Viable email addresses were identified by counting those email addresses provided by Lyft to which GCG was able to successfully email the initial Notice, and those email addresses provided directly by Class Members who had already filed a claim. The Administrator identified 3,428 Class Members requiring paper Supplemental Notices to be mailed to their physical addresses on file, either because Lyft was not able to provide an email address or because the initial Notice email sent to these Class Members was rejected by the Class Members' email providers. On December 30, 2016, the Administrator mailed paper Supplemental Notices to these 3,428 Class Members. The emailed Supplemental Notice was ultimately undeliverable to 1,127 of the Class Members to whom it was sent. GCG's records included physical mailing addresses for 1,124 of these Class Members. GCG mailed paper Supplemental Notices to these Class Members. As of February 2, 2017, a total of 218 paper Supplemental Notices had been returned to GCG as undeliverable without forwarding address information, and 118 had been returned to GCG with forwarding address information provided by the U.S. Postal Service. GCG promptly conducted an advanced address search for all Class Members whose paper Supplemental Notices were returned by the U.S. Postal Service as undeliverable without forwarding address information. As of February 2, 2017, GCG has remailed a total of 184 paper Supplemental Notices to updated addresses obtained from the U.S. Postal Service and through an advanced address search. Ultimately, the Administrator successfully delivered the Supplemental Notice to approximately 99.1 percent of Class Members.

20. Proof that email and postal mail notices complied with the Preliminary Approval Order and the Court's subsequent Order regarding a second notice period has been filed with the Court. This notice program fully complied with Fed. R. Civ. P. 23 and the requirements of due process. It provided due and adequate notice to the Class; in fact, the "reach rate" of the class

notice was nearly 100 percent.  Furthermore, the large number of claim requests received as of February 2, 2017 – 94,440 out of 202,518 Class Members, subject to final confirmation – provides further evidence of the sufficiency of notice.

21. The Court has reviewed Exhibit I to the Declaration of Loree Kovach filed on November 16, 2016, Dkt. No. 277-1, and Exhibit E to the Declaration of Loree Kovach filed on February 10, 2017, Dkt. No. 303-1, and approves Exhibits I and E as together constituting the complete list of all Persons who have submitted timely requests for exclusion from the Settlement Class.

22. The Court finds that the Plan of Allocation is fair, reasonable, and adequate.  The Plan of Allocation provides monetary recovery in some form, on a pro rata basis based on the amount of time driving using the Lyft platform, to all Settlement Class Members who file a timely claim.  The Court hereby orders that Class Members will be permitted to submit claims up to February 28, 2017, or later as the parties may agree.  The Court also notes that there is no reversion of the Settlement Fund, maximizing the amount of payments to Settlement Class Members.  Accordingly, the Plan of Allocation is approved.

23. The Court has reviewed the objections to this Settlement and overrules them.  The Court notes that despite an extensive and robust Class Notice program, only 18 class members (including six class members who have joined the Teamsters' various objections) – out of a class of more than 200,000 – objected.  By any measure, the response to the proposed Settlement has been positive.  The Court overrules the objections and finds that they are without merit for the reasons set forth in Class Counsel's filings and in open Court.  Although Plaintiffs identify various procedural deficiencies in multiple objections, the Court need not rely on such deficiencies in overruling the objections, all of which fail on the merits.

24. Pursuant to this Order and Final Judgment, with respect to the Released Parties, Class Members' Released Claims, as defined in Paragraph 24(h) of the Settlement Agreement (which definition is incorporated herein by reference), are hereby dismissed with prejudice and without costs, other than those permitted under the Settlement Agreement.

25. Pursuant to this Order and Final Judgment, with respect to the Released Parties, Named Plaintiffs' General Released Claims, as defined in Paragraph 24(y) of the Settlement Agreement (which definition is incorporated herein by reference), are hereby dismissed with prejudice and without costs, other than those permitted under the Settlement Agreement.

26. As of the Effective Date, the Named Plaintiffs, and all Settlement Class Members who have not been excluded from the Settlement Class, as provided in the Opt-Out List approved by the Court, and their heirs, estates, trustees, executors, administrators, principals, beneficiaries, representatives, agents, assigns, and successors, and/or anyone claiming through them or acting or purporting to act for them or on their behalf, regardless of whether they have received actual notice of the proposed Settlement, have conclusively compromised, settled, discharged, and released Named Plaintiffs' General Released Claims (in the case of the Named Plaintiffs) and Class Members' Released Claims (in the case of the Settlement Class Members) against Lyft and the Released Parties, and are bound by the provisions of this Agreement.

27. The Settlement Agreement and this Order are binding on, and have res judicata and preclusive effect in, all pending and future lawsuits or other proceedings: (i) that encompass the Named Plaintiffs' General Released Claims and that are maintained by or on behalf of the Named Plaintiffs and/or their heirs, estates, trustees, executors, administrators, principals, beneficiaries, representatives, agents, assigns, and successors, and/or anyone claiming through them or acting or purporting to act for them or on their behalf, and (ii) that encompass the Class Members' Released Claims and that are maintained by or on behalf of any Settlement Class Member who has not been excluded from the Settlement Class as provided in the Opt-Out List approved by this Order and/or his or her heirs, estates, trustees, executors, administrators, principals, beneficiaries, representatives, agents, assigns, and successors, and/or anyone claiming through them or acting or purporting to act for them or on their behalf, regardless of whether the Settlement Class Member previously initiated or subsequently initiates individual litigation or other proceedings encompassed by the Class Members' Released Claims, and even if such Settlement Class Member never received actual notice of the Action or this proposed Settlement.

28. Except as explicitly provided in the Settlement Agreement, neither the Settlement (approved or not approved) nor any exhibit, document, or instrument delivered thereunder, nor any statement, transaction, or proceeding in connection with the negotiation, execution, or implementation of the Settlement, nor any proceedings taken pursuant thereto, shall be admissible in this or any other proceeding for any purpose, including as evidence, a presumption, concession, or an admission. Without limitation of the foregoing, nothing contained in the Settlement (approved or not approved) nor any exhibit, document, or instrument delivered thereunder, nor any statement, transaction, or proceeding in connection with the negotiation, execution, or implementation of the Settlement, nor any proceedings taken pursuant thereto, shall be given any form of res judicata, collateral estoppel, or judicial estoppel effect against Lyft or the other Released Parties in any administrative or judicial forum or proceeding. Notwithstanding the foregoing, reference may be made to the Agreement and the Settlement provided for therein in such proceedings as may be necessary to effectuate the provisions of the Agreement, as further set forth in the Agreement.

29. The Court orders that if the Settlement Agreement is terminated or disapproved in whole or in part by any court, or if Lyft invokes the right to withdraw from the Settlement as provided in the Settlement Agreement, or the Effective Date for any reason does not occur, the orders certifying the Settlement Class for purposes of effecting the Settlement Agreement, and all preliminary and/or final findings regarding the Settlement Class certification orders, shall be automatically vacated upon notice to the Court, the Action shall proceed as though the Settlement Class had never been certified pursuant to the Settlement Agreement and such findings had never been made, and the Action shall revert nunc pro tunc to the procedural status quo as of the date and time immediately before the execution of the Settlement Agreement, in accordance with the Settlement Agreement. In such event, the Agreement and the fact that it was entered into shall not be offered, received, or construed as an admission or as evidence for any purpose, including but not limited to an admission by any Party of liability or non-liability or of

any misrepresentation or omission in any statement or written document approved or made by any Party, or of the certifiability of a litigation class

30. The Court finds the Settlement is in good faith pursuant to federal law and California Code of Civil Procedure 877.6, including that the amount to be paid in the Settlement is in accord with the Named Plaintiffs' and the Settlement Class Members' potential total recovery and Lyft's potential liability; that the allocation of the Settlement is fair; that the Settlement is not meant to be the equivalent of liability damages; that the Settlement considers the relevant financial circumstances of Lyft; and that the Settlement is not the product of and does not evince collusion, fraud, or tortious conduct.  The Court finds that the CAFA Notices sent by Lyft complied with 28 U.S.C. § 1715 and all other provisions of the Class Action Fairness Act of 2005.  The tax status set forth in the Settlement Agreement for the Escrow Account established by Class Counsel is approved.  The Court finds, under Fed. R. Civ. P. 54(b), that there is no just reason for delay in entering final judgment, and directs that this Judgment shall be final and entered forthwith.

31. The Parties, without further approval from the Court, may agree to and adopt such amendments, modifications, and expansions of this Agreement, including all Exhibits hereto, as: (i) shall be consistent in all material respects with this Order and (ii) do not limit the rights of Settlement Class Members.

32. Without affecting the finality of this Judgment, the Court reserves jurisdiction over the Named Plaintiffs, the Settlement Class, and Lyft as to all matters concerning the administration, consummation, and enforcement of the Settlement Agreement.

**IT IS SO ORDERED.**

Dated:  March 16, 2017

_____
VINCE CHHABRIA
United States District Judge